**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2811-WJM-KLM

AECOM Technical Services, Inc.,

     Plaintiff/Counterclaim Defendant,

v.

Flatiron | AECOM, LLC,

     Defendant/Counterclaim Plaintiff.

---

**ORDER GRANTING IN PART AND DENYING IN PART AECOM'S
MOTION TO DISMISS THE AMENDED COUNTERCLAIM PURSUANT TO
FED. R. CIV. P. 12(b)(6) AND 9(b) AND DENYING FLATIRON'S
REQUEST FOR LEAVE TO FILE SUR-REPLY**

---

Before the Court are: (1) AECOM Technical Services, Inc.'s ("ATS") Motion to Dismiss the Amended Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) ("Motion to Dismiss") (ECF No. 46); and (2) Flatiron | AECOM, LLC's ("Flatiron") Request for Leave to File a Sur-Reply and for Oral Argument ("Request for Sur-Reply") (ECF No. 55).  For the following reasons, the Motion to Dismiss is granted in part and denied in part, and the Request for Sur-Reply is denied as moot.

**I. BACKGROUND**

The following factual summary is drawn from Flatiron's Amended Counterclaim (ECF No. 37),[1] except where otherwise stated.  The Court assumes the allegations in the Amended Counterclaim are true for the purposes of deciding the Motion to Dismiss.

---

[1] Citations to (¶ __), without more, are references to the Amended Counterclaim.  (ECF No. 37.)

*See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In 2015, the Colorado Department of Transportation ("CDOT") sought design/build proposals from prospective bidders for a construction project known as C-470 Tolled Express Lanes Segment 1 Design-Build Project, Project Number: NHPP 4701-124 (the "Project"). (¶¶ 1, 6.) The Project involved approximately 12.5 miles of improvements along the C-470 corridor, including adding toll lanes, widening bridges, implementing drainage and roadway improvements, and installing new signs and roadside barriers, among other things. (¶ 9.)

On approximately November 9, 2015, the parties entered into a Contractor/Designer Teaming Agreement (the "Teaming Agreement"), in which they agreed to work together to assemble a design/build team and coordinate the submission of a proposal to CDOT in connection with the Project. (¶ 10; *see also* ECF No. 37-1.) The Teaming Agreement designated Flatiron as the "lead design/build contractor and proponent lead" and AECOM as the "lead designer." (¶ 11.) Under the Teaming Agreement, AECOM promised to provide the design and engineering services ("Pre-Award Services") required for the Project in order for Flatiron to submit a proposal to CDOT. (¶ 12.) AECOM promised to adhere to a specified standard of care set forth in the Teaming Agreement. (¶ 13 (detailing standard of care).) If Flatiron was awarded the Project, the parties agreed to negotiate a subcontract for design services for the Project. (¶ 14.)

AECOM allegedly failed to meet the standard of care set forth in the Teaming Agreement. (¶¶ 15–16 (explaining AECOM's specific failures).) Accordingly, AECOM's Pre-Award Services were "inconsistent with professional engineering principles," "were

2

not performed in accordance with the standard of care, skill, and diligence commensurate with that provided by other design professionals in the Pre-Award Services stage . . . ," "were not performed in accordance with any additional standards set forth in the [Request for Proposal]," and "were inadequate and insufficient for bidding the construction of the Project." (¶ 17.)  AECOM's failure to meet the standard of care in performing the Pre-Award Services was allegedly "wanton and reckless to the point of being grossly negligent . . . ." (¶ 18.)  Because Flatiron was unaware of AECOM's breach of the standard of care and misrepresentations, Flatiron used and reasonably relied on AECOM's Pre-Award Services to prepare the proposal for the Project.  (¶ 20.)

CDOT awarded Flatiron the Project on or about June 16, 2016.  (¶ 23.)  Pursuant to the Teaming Agreement, Flatiron and AECOM negotiated and executed a Standard Subcontract for Design Services (the "Subcontract") on or about May 23, 2016.  (¶ 24; ECF No. 37-2.)  In negotiating the Subcontract, Flatiron relied on AECOM's representations in the Teaming Agreement that it would negotiate in good faith and perform its Pre-Award Services in accordance with the standard of care.  (¶ 25.)  Flatiron "was induced into the Subcontract and certain of its risk-shifting terms by [AECOM's] material misrepresentations and concealments, which were a product of [AECOM's] failure to exercise due care and were made in connection with the performance of its Pre-Award Services . . . ." (¶ 26.)  Relying on these material misrepresentations, Flatiron agreed to included certain exculpatory language and provisions purporting to limit AECOM's liability for damages it caused Flatiron to incur. (¶ 27.)  According to Flatiron, but for these material representations, it would not have

agreed to include the exculpatory and limiting provisions in the Subcontract.[2]  (¶ 28.)

In addition, in performing its post-award design services, AECOM failed to meet the standard of care set forth in the Subcontract.  (¶¶ 33–34 (explaining AECOM's failures to meet the standard of care).)  This failure was "wanton and reckless to the point of being grossly negligent."  (¶ 36.)

On April 9, 2020, Flatiron filed the Amended Counterclaim, alleging counterclaims for: (1) breach of the Teaming Agreement; (2) negligent misrepresentation; (3) and breach of the design Subcontract.  (ECF No. 37.)  Flatiron requests damages in connection with its breach of contract claims (¶¶ 46–47; 66–67) and equitable relief in the form of a "declaration that the exculpatory and limiting language in the Subcontract is unenforceable on grounds of public policy" in connection with its negligent misrepresentation claim (¶ 60).  The Court has diversity jurisdiction under 28 U.S.C. § 1332.  (¶ 2.)

On May 13, 2020, AECOM filed the Motion to Dismiss, requesting that the Court dismiss the Amended Counterclaim with prejudice.  (ECF No. 46.)  On June 24, 2020, Flatiron filed the Request for Sur-Reply.  (ECF No. 55.)  Both motions are ripe for

---

[2] The Teaming Agreement provides that "the following terms and conditions . . . shall be made part of and included in the Subcontract to be negotiated by the Parties: . . . (i) Overall limitation of liability capped at 100% of the final design portion of the agreed-upon Subcontract amount . . . (ii) Subcap on schedule-related damages of 20% of the final design portion of the agreed-upon Subcontract amount.  Other than breach of standard of care, no quantity liability . . . [and] (iii) Mutual Waiver of Consequential Damages."  (ECF No. 37-1 at 8 § 20.)

The Subcontract includes the following liability limitations: (1) "Designer's aggregate liability to Contractor for any damages, claims, costs, or expenses arising under the Subcontract, whether in contract, tort or otherwise, shall be limited to 100% of the . . .Total Design Fee"; (2) schedule related damages were "limited to 20% of the Total Design Fee in the aggregate which shall be included as part of the overall limitation of liability"; and (3) "[i]n no event shall any Party be liable to the others for any indirect, incidental, special or consequential damages . . . whether arising in contract, tort (including negligence) or pursuant to other legal theory . . ."  (ECF No. 37-2 at 5 ¶¶ 1–2, at 7–8 ¶¶ 12, 16.11.)

4

review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v.*

5

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

#### A.     AECOM's Motion to Dismiss

##### 1.     Negligent Misrepresentation (Claim 2)

"[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). "To survive a motion to dismiss based on the economic loss rule, [a party] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016). To determine whether contract or tort law is the source of the duty allegedly breached, courts consider: "(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs in any way from the contractual duty." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004).

In the Motion to Dismiss, AECOM does not argue that Flatiron has failed to sufficiently allege its negligent misrepresentation counterclaim. Instead, AECOM argues that the counterclaim is barred by the economic loss rule. (ECF No. 46 at 7–9.) Specifically, AECOM argues that the breach of the duty of care alleged in the negligent misrepresentation counterclaim arises out of a contractual duty of care provided for in

6

the Teaming Agreement and not out of an independent duty of care under tort law.

(ECF No. 46 at 8.)  The Teaming Agreement provides:

> Designer agrees to provide the design and engineering services (the "Pre-Award Services") required for the project . . . in accordance with the standard of care, skill, and diligence commensurate with that provided by other design professionals at the Pre-Award Services stage for projects of similar size, type, and complexity . . .

(*Id.* (citing ¶ 50 and ECF No. 37-1 § 5).)  Given this contractual provision, AECOM contends that Flatiron "fails to identify any independent tort duty that is not memorialized in the parties' contracts," and thus the negligent misrepresentation counterclaim is barred by the economic loss rule.  (*Id.*)

In response, Flatiron argues that its negligent misrepresentation counterclaim is premised on AECOM's "material misrepresentations that [AECOM] had complied with the Teaming Agreement's standard of care," which is "distinct from [AECOM's] contractual duty to comply with the standard of care itself."  (ECF No. 48 at 6 (citing ¶¶ 16(a)–(d), 50).)  The independent tort duty Flatiron identifies is the "common law duty to refrain from making material misrepresentations," which Flatiron contends AECOM violated "when [it] negligently omitted information regarding its failure to meet the standard of care during contract negotiations with Flatiron."  (*Id.* at 8 (citing ¶ 50)); *see Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 73 (Colo. 1991) ("claims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct"); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 294 (Colo. App. 2009), *as modified on denial of reh'g* (June 11, 2009) ("there is a common law duty to refrain from deliberate concealment or misrepresentation of material facts").  Thus, Flatiron logically separates its allegations

7

that AECOM failed to meet the standard of care in the Teaming Agreement from its allegations that AECOM misrepresented that its work met the standard of care, when in fact, it fell short of doing so.  (ECF No. 48 at 7.)  It is these "separate and distinct" misrepresentations that allegedly induced Flatiron into agreeing to the Subcontract and its risk-shifting terms which limited AECOM's liability.  (*Id.*)  As a result, Flatiron argues it has identified an independent duty of care arising not out of the contract but in tort, and thus the Court should find the counterclaim is not barred by the economic loss rule.

Despite Flatiron's attempt to distinguish an independent tort duty from the contractual duty imposed by the Teaming Agreement, the Court finds its argument unavailing.  First, while the negligent misrepresentation counterclaim seeks declaratory relief and not damages, as AECOM argues, this is a "distinction without a material difference."  (ECF No. 54 at 3.)  In its response, Flatiron states that AECOM's "violations caused Flatiron 'more than $195,000,000 in damages—almost ***twenty-times*** the' damages limitation AECOM induced Flatiron by its negligent misrepresentation to include in the Subcontract.[3]  (ECF No. 48 at 4 (emphasis in original).)  Thus, the purpose of the declaratory relief sought—which if granted, would find the exculpatory and limiting language in the Subcontract unenforceable on public policy grounds—is to recover monetary losses in excess of the Subcontract's $10 million liability limitation.  (*See* ECF No. 54 at 3.)  As such, characterizing the request for relief as "only equitable" (ECF No. 48 at 5) is somewhat disingenuous.

Second, to be sure, there is a common law duty in negligence to refrain from making misrepresentations.  *See Hamon*, 229 P.3d at 294.  But while this duty exists,

---

[3] In the Motion to Dismiss, AECOM notes that Flatiron filed a $195 million supplemental disclosure of damages.  (ECF No. 46 at 3 (citing ECF No. 25 at 2).)

8

the Court finds it does not, in the circumstances present here, differ from the contractual duties the parties had already previously agreed to in the Teaming Agreement.

Here, the parties already had the Teaming Agreement—setting forth the standard of care—in place, which provided that "[i]n the event Flatiron was awarded the Project, the parties agreed 'to negotiate in good faith a subcontract . . . for design services to be provided for the Project . . . .'"  (¶ 14.)  Flatiron further alleges that "[i]n performing its Pre-Award Services, [AECOM] failed to meet the standard of care set forth in the Teaming Agreement."  (¶ 15.)

The Court agrees with AECOM's argument that any obligation on its part to refrain from making misrepresentations regarding whether it had met the standard of care set forth in the Teaming Agreement "stems from the express terms of the Teaming Agreement."  (ECF No. 46 at 8 (citing ECF No. 37-1 § 5).)  Essentially, any duty to refrain from making material misrepresentations was part and parcel of the Teaming Agreement and was established by the parties' ongoing course of dealing in performing the Teaming Agreement and later negotiating the Subcontract.  While "in some instances, '*pre*-contractual fraudulent inducement *might* be considered independent of the contract—and hence not barred by the economic loss rule,'" here, the parties already had a contract in place in the Teaming Agreement.  *See Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, 2014 WL 6461350, at *3 (D. Colo. Nov. 18, 2014) (emphasis in original) (negligent misrepresentation claims predicated on the nonperformance of a promise or contractual obligation barred by economic loss rule). On these facts, it is clear that at the time in question no precontractual negotiations were taking place between the parties, and perforce no precontractual fraudulent

9

inducement was possible. *See id.* It is that contractual obligation which bound AECOM, and not an independent tort duty. Therefore, the Court will dismiss Flatiron's negligent misrepresentation counterclaim with prejudice, as it is barred by the economic loss rule.

2. <u>Breach of Teaming Agreement (Claim 1)</u>

AECOM does not argue that Flatiron has failed to sufficiently allege its breach of the Teaming Agreement claim. (*See* ECF No. 46 at 11–13.) Instead, AECOM argues that the claim fails because the Teaming Agreement was extinguished and substituted with the Subcontract. (ECF No. 46 at 11–13; ECF No. 54 at 6–9.) For support, AECOM points to the merger clause in the Subcontract, which provides:

> 16.10 <u>Entire Agreement</u>. This Agreement (together with any exhibits and documents incorporated herein by reference and any terms of a Teaming Agreement between the Parties regarding the Project not inconsistent with this Subcontract), represent the entire agreement between Designer and Contractor and supersedes all prior negotiations, representations and agreements regarding the Project, whether written or oral and cannot be amended except with the written approval of all Parties.

(ECF No. 37-3 at 33.) The Subcontract was entered into on May 23, 2016, and according to AECOM, at that point the Subcontract superseded the Teaming Agreement in the nature of a novation. (ECF No. 46 at 11 (citing ECF No. 37 ¶ 24 and ECF No. 37-2).) AECOM asserts that the merger clause establishes that the Subcontract "terminated, superseded, and expressly subsumed all work under the Teaming Agreement," which now prohibits Flatiron from bringing a claim for breach of the Teaming Agreement. (ECF No. 46 at 11.)

In response, Flatiron points out that AECOM does not dispute the sufficiency of its allegations, instead relying on a novation argument that is inappropriate at this stage

10

of the litigation.  (ECF No. 48 at 10.)  Further, Flatiron contends that the merger clause is ambiguous and requires interpretation by the factfinder.  (*Id.* at 10–14.)

Under Colorado law, "[t]he extinguishment of an old contract by the substitution of a new contract or obligation is an original promise known as a novation." *Haan v. Traylor*, 79 P.3d 114, 116 (Colo. App. 2003).  There are four requisites for a contract of novation: "a previous valid obligation, an agreement between the parties to abide by the new contract, a valid new contract, and the extinguishment of the old obligation by the substitution of the new one."  *Id.*  The intention to accomplish a novation need not be expressed in the agreement, but may be inferred from the facts, circumstances, and conduct of the parties.  *Id.*

"Whether there has been a novation is ordinarily a question of fact, and proof of a novation may be established by evidence of an express understanding to this effect or by circumstances showing such assent."  *Id.* (citing *Moffat Cnty. State Bank v. Told*, 800 P.2d 1320 (Colo. 1990); *Phoenix Power Partners, L.P. v. Colo. Pub. Utils. Comm'n*, 952 P.2d 359 (Colo. 1998); *H & K Automotive Supply Co. v. Moore & Co.*, 657 P.2d 986 (Colo. App. 1982) (determination whether the termination of a contract was intended to operate as a complete cancellation involves questions of fact)).

Indeed, the undersigned has relied upon this principle in at least one previous case.  *See Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, 2016 WL 8609397, at *9 and n.15 (D. Colo. Sept. 9, 2016) (noting in summary judgment order that "[h]owever, in Colorado, '[w]hether there has been a novation is ordinarily a question of fact, and proof of a novation may be established by evidence of an express understanding to this effect or by circumstances showing such assent'" (quoting *Haan*,

11

79 P.3d at 116)); *see also* 30 Williston on Contracts § 76:43 (4th ed., May 2016 update) ("Whether there has been a novation is ordinarily a question of fact . . . the burden of proof is on the one claiming a novation").

In light of this authority, the Court finds that the question of whether the Subcontract supersedes the Teaming Agreement is a question of fact that is inappropriate for consideration at this dismissal on the pleadings stage.[4] AECOM's motion to dismiss the counterclaim for breach of the Teaming Agreement will be denied.

3. <u>Whether Federal Rule of Civil Procedure 9(b) Applies</u>

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

AECOM argues that all of Flatiron's counterclaims fail to meet the heightened specificity standard required by Rule 9(b). (ECF No. 46 at 13–15.) For support, AECOM points to various allegations in the Amended Counterclaim that it argues "vaguely allege conduct akin to fraud." (*Id.* at 14 (citing ¶¶ 19, 20, 21, 26, 27, 49, 50, 51).)

The question of whether Rule 9(b) applies to negligent misrepresentation claims has split the judges of the District of Colorado. *See Lynch v. Olympus Am., Inc.*, 2019 WL 2372841, at *4 (D. Colo. June 5, 2019) (*comparing Conrad v. The Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1183 (D. Colo. 2009) ("Thus, a claim for negligent misrepresentation should not be governed by the pleading standard set forth in Rule 9(b).") *and Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 843 F.

---

[4] Because the Court finds dismissal inappropriate on this basis, it need not address Flatiron's argument that the merger clause is ambiguous.

Supp. 2d 1171, 1177 (D. Colo. 2012) ("Rule 9(b) does not apply to the negligent misrepresentation claim before me. The crux of the claim . . . rings not of fraud but negligence."), *with Gunningham v. Standard Fire Ins. Co.*, 2008 WL 4377451, at *2 (D. Colo. 2008) ("I conclude that the particularity requirement is applicable to the negligent misrepresentation claim. In this context, negligence is a type of mistake and Rule 9(b) concerns allegations of fraud or mistake.")). "Any claim—including claims for breach of contract and negligent misrepresentation—may be subject to Rule 9(b)'s heightened pleading standard if the claim is 'grounded in fraud.'" *Hardy v. Flood*, 2018 WL 1035085, at *3 (D. Colo. Feb. 23, 2018). Neither party has identified any binding Tenth Circuit authority on the issue.

In the Court's view, the better line of reasoning causes it to conclude that Rule 9(b) does not apply to the counterclaims. While Flatiron alleges that AECOM's failure to meet certain standards of care was "wanton and reckless to the point of being grossly negligent" (*see, e.g.*, ¶¶ 18, 36, 58, 59), there are no allegations anywhere in the counterclaims that AECOM acted willfully. These counterclaims ring not of fraud, but of negligence, and are therefore governed by Federal Rule of Civil Procedure 8(a). Moreover, Flatiron has not alleged any separate counterclaims of fraud, mistake, or the like, parallel to its other counterclaims. This further convinces the Court that "the general tenor of the [Amended Counterclaim] weighs against applying Rule 9(b)." *Denver Health*, 843 F. Supp. 2d at 1177. Accordingly, AECOM's request that the Court dismiss the Amended Counterclaim under Rule 9(b) will be denied.

## B.     Flatiron's Request for Leave to File a Sur-Reply and for Oral Argument

Given the foregoing, the Court does not require a sur-reply or oral argument to decide the Motion to Dismiss. Accordingly, the Court will deny Flatiron's Request for

13

Sur-Reply (ECF No. 55) as moot.

## IV. CONCLUSION

1. AECOM Technical Services, Inc.'s Motion to Dismiss the Amended Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) (ECF No. 46) is GRANTED in part and DENIED in part as follows:

   a. Flatiron's negligent misrepresentation counterclaim (¶¶ 48–60) is DISMISSED with prejudice;

   b. AECOM's Motion to Dismiss Flatiron's breach of the Teaming Agreement (¶¶ 41–47) and breach of the Design Subcontract (¶¶ 61–67) counterclaims is DENIED; and

2. Flatiron | AECOM, LLC's Request for Leave to File a Sur-Reply and for Oral Argument (ECF No. 55) is DENIED AS MOOT.

Dated this 23rd day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge