**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2811-WJM-KLM

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

---

**ORDER DENYING FLATIRON | AECOM, LLC'S
MOTION FOR CONTINUANCE OF TRIAL DATE**

---

Before the Court is Defendant-Counterclaim Plaintiff Flatiron | AECOM, LLC's ("Flatiron") Motion for Continuance of Trial Date ("Motion"). (ECF No. 267.) Plaintiff-Counterclaim Defendant AECOM Technical Services, Inc. ("AECOM") filed a response in opposition.[1] (ECF No. 270.) For the following reasons, the Motion is denied.

## I. STANDARD OF REVIEW

The United States Court of Appeals for the Tenth Circuit has enunciated four primary factors that should be considered to determine if a continuance of trial is necessary. *See, e.g., Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1230 (10th Cir. 1999) (citing *United States v. West*, 828 F.2d 1468, 1469 (10th Cir. 1987) (listing factors)). Those factors are:

    (1) the diligence of the party requesting the continuance; (2)

---

[1] Because time is of the essence and because the issues raised by and inherent to the Motion are briefed adequately, the Court exercises its discretion under D.C.COLO.LCivR 7.1(d) to rule without the benefit of a reply by Flatiron.

> the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [and] (4) the need asserted for the continuance and the harm that [movant] might suffer as result of the district court's denial of the continuance.

*United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (quoting *West*, 828 F.2d at 1470).

## II. ANALYSIS

The Court has issued numerous orders in this case, and the parties are well-versed in the facts; therefore, the Court incorporates by reference the Material Facts section from its June 16, 2023 Order Granting AECOM's Amended Motion for Partial Summary Judgment. (ECF No. 252.)

On August 3, 2022, the Court conducted an in-person trial-setting status conference with the parties and set this case for a 19-day jury trial to begin on July 17, 2023. (ECF No. 234.) Due to scheduling conflicts in the Court's docket, on January 9, 2023, the Court *sua sponte* reset the case for an 18-day jury trial to commence on January 29, 2024, to conclude on February 23, 2024, with no trial on February 9, 2024 and February 19, 2024 (a federal holiday). (ECF No. 244.)

In the Motion, Flatiron requests a continuance of the trial to May 6, 2024, because its lead trial counsel, Doug Baldridge, left the practice of law on August 4, 2023, for a new career in business. (ECF No. 267 at 2.) On July 21, 2023, Baldridge moved to withdraw from this case. (ECF No. 260.) On July 24, 2023, the Court allowed Baldridge to withdraw. (ECF No. 262.) Flatiron argues that a limited continuance is necessary to permit it to hire new counsel and to permit him or her to learn the case and prepare for trial. (ECF No. 267 at 2.)

2

**A.     Diligence**

With respect to the first factor, Flatiron argues that it has been diligent in requesting this continuance because Baldridge filed his motion to withdraw on July 21, 2023, that motion was granted on July 24, 2023, and Flatiron filed this Motion on August 4, 2023.  (*Id.* at 4.)  Additionally, Flatiron contends that its diligence extends throughout the litigation generally, where it has not requested a prior continuance of trial, has requested minimal extensions on filings, and has otherwise worked to meet all deadlines.  (*Id.*)

Despite these arguments, the Court finds that the first factor weighs against granting a continuance.  AECOM highlights the fact that Baldridge did not mention that Flatiron would be moving to continue the trial in his motion to withdraw.  (ECF No. 270 at 6.)  It is possible—though in the Court's view, not probable—that Flatiron had not decided whether to move to continue the trial when Baldridge moved to withdraw from this case.  While the Court will not speculate as to whether Baldridge's omission was strategic or a mere oversight, the fact remains that the omission meant that United States Magistrate Judge Kristen L. Mix did not have all of the facts before her when she allowed Baldridge to withdraw.  (ECF No. 262.)  Given that this case is nearly four years old, and Baldridge was Flatiron's lead trial counsel, it is certainly possible that had she been aware of the circumstances now before the Court, Judge Mix would have at least explored the issue of a trial continuance with Flatiron, if not deny Baldridge's motion outright.  Therefore, the Court finds that the diligence factor weighs in favor of denying a continuance.

**B.     Likelihood a Continuance Would Accomplish Its Stated Goal**

Flatiron argues that three months is the minimum amount of time reasonably

3

necessary to hire new lead trial counsel with the requisite jury trial experience and for counsel to prepare adequately to try a significant, complex jury trial.  (ECF No. 267 at 4.)  For support, Flatiron emphasizes that this case involves an 18-day jury trial of "substantial" scope and complexity, which requires "significant preparation time."  (*Id.* at 5.)  Flatiron underscores that the amount of information in the case is "voluminous," with a 437-page exhibit list filed by AECOM encompassing 4,397 potential trial exhibits, and 21 will-call fact witnesses and 87 may-call witnesses.  (*Id.* citing ECF No. 218-1).)  In addition to preparing its defense, Flatiron also reminds the Court that it must present its counterclaims, for which it will call at least three fact witnesses and two expert witnesses.  (*Id.* at 6.)

The Court acknowledges the scope and complexity of this case.  However, Baldridge was but one of several highly experienced lawyers representing Flatiron.  AECOM asserts that the six months remaining before trial is "ample time for any new trial lawyer to get up to speed."  (ECF No. 270 at 7.)  And, if Baldridge is any indication, the Court highly doubts Flatiron will hire just "any lawyer" to lead its trial team.  The more likely scenario is that Flatiron will add another lawyer of exceptional quality to lead its trial team, and if not, will rely on the five other highly experienced lawyers who, according to AECOM, know the case "backward and forward," to mount its case.  (*Id.* at 8.)

Flatiron's current counsel have worked on this case for years, including two of Denver's most experienced construction law trial lawyers (Buck Beltzer and Bret Gunnell) and a similarly experienced trial lawyer (David Feinberg) from AmLaw 100 firm Venable LLP.  AECOM points out that these three lawyers boast extensive first-chair

4

trial experience.  (*Id.* at 3–4.)  Moreover, the two other lawyers on the case, Michael Zehner and Katherine Morrone, both have solid litigation resumés that include trial experience.  The Court is satisfied that these attorneys are well-equipped to proceed to trial even if Flatiron does not hire another lead trial lawyer to replace Baldridge.  And should Flatiron decide to add lawyers to its team, the Court is also certain that six months is ample time for them to get up to speed for a late-January 2024 trial.  Thus, the second factor also somewhat weighs against a continuance.

**C.     Inconvenience**

Flatiron argues in a conclusory manner that a continuance will not inconvenience AECOM and the witnesses; it does not explain why it thinks as much.  (ECF No. 267 at 6.)  With respect to the Court's inconvenience, it merely states that it is "hopeful" that the Court could find another nearly month-long space in its busy calendar to reschedule this 18-day trial.  (*Id.*)  Further, Flatiron notes that the parties have not yet filed their pretrial deliverables, such as proposed jury instructions, voir dire, verdict forms, statements of the case, motions *in limine*, Rule 702 motions, and deposition designations.  (*Id.*)  Flatiron also conveniently argues that if the Court grants its motion for leave to amend its counterclaims, a continuance would allow time for AECOM to conduct additional reasonable discovery.  (*Id.* at 6–7.)

The Court could not disagree with Flatiron's position more.  It will almost certainly inconvenience AECOM to have to reschedule dozens of witnesses for an 18-day trial.  AECOM contends that it will also suffer the anxiety, uncertainty, and waste of resources that would result from a continuance of at least three months.  (ECF No. 270 at 8.)  The only issue with which AECOM is unconcerned is the increased costs of litigation, which it is confident "will be borne by Flatiron under this Court's order regarding fee shifting."

5

(*Id.*)

And with respect to the inconvenience to the Court, Flatiron vastly underestimates the difficulty of continuing a trial of this magnitude. Its perfunctory arguments on this point underscore this reality. The undersigned has one of the busiest trial calendars in the District of Colorado and has reserved the existing dates for the last eight months. It would be enormously burdensome to find another multi-week opening in the Court's calendar—particularly given the priority the Court must give to criminal trials—to conduct this civil jury trial. This factor weighs against continuing this trial.

### D.   Prejudice to Movant

Flatiron argues that "losing lead trial counsel due to circumstances beyond [its] control and with insufficient time to permit new counsel to prepare for a significant jury trial militates in favor of a continuance, and that if [its] request is denied, it will be forced to go to trial with insufficient preparation." (ECF No. 267 at 7.) Flatiron reminds the Court that AECOM values its claims at nearly $6 million, while Flatiron values its counterclaims at over $263 million, and it will take significant time for new counsel to perform the "preparation work" and gain sufficient understanding of the witnesses' roles in the case, the voluminous information and documents, and the "specialized nature of the presentation to a jury over 18 days." (*Id.* at 8.)

The Court's analysis of this factor is inextricably intertwined with its observations regarding the second factor. If Baldridge was Flatiron's only lawyer, or if he had taken Flatiron's entire trial team with him to his new employment, or if Flatiron did not have five highly experienced attorneys with extensive first-chair trial experience—at least two in the specific area of construction law—on its team, the Court might consider a continuance. But that is not the current state of affairs. Even AECOM concedes that

6

Flatiron "has an impressive five-lawyer trial team who know this case inside-out, including three lawyers with extensive first-chair experience." (ECF No. 270 at 8.) And based on the experience of the undersigned as a judge and a lawyer who also litigated numerous trials when in private and government practice, the Court finds that six months is ample time for any new attorney Flatiron may add to its trial team to familiarize himself or herself with the facts, evidence, and witnesses without prejudicing Flatiron. As such, the fourth factor weighs against a continuance.

### III. CONCLUSION

Accordingly, Defendant-Counterclaim Plaintiff Flatiron | AECOM, LLC's Motion for Continuance of Trial Date (ECF No. 267) is DENIED.

Dated this 14th day of August, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge