IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

---

**ORDER DENYING FLATIRON | AECOM, LLC'S
MOTION FOR LEAVE TO AMEND THE PLEADINGS AND
MODIFY THE FINAL PRETRIAL ORDER AND
MOTION TO RECONSIDER**

---

    Before the Court are: (1) Defendant-Counterclaim Plaintiff Flatiron | AECOM, LLC's ("Flatiron") Motion for Leave to Amend the Pleadings and Modify the Final Pretrial Order ("Motion to Amend") (ECF No. 257) and (2) Flatiron's Motion to Reconsider (ECF No. 258) (together, "Motions").[1]  Both Motions are fully briefed.  (ECF Nos. 263–66.)

    The Court has issued numerous orders in this case, and the parties are well-versed in the facts; therefore, the Court incorporates by reference the Material Facts section from its June 16, 2023 Order Granting AECOM's Amended Motion for Partial Summary Judgment ("Second MSJ Order").  (ECF No. 252.)  For the following reasons, both Motions are denied.

---

[1] Plaintiff-Counterclaim Defendant AECOM Technical Services is referred to as "AECOM" or "ATS."

## I. STANDARDS OF REVIEW

**A.     Amending the Pleadings**

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleadings only with . . . the court's leave" which should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice . . . bad faith or dilatory move . . . or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Where a request to amend comes after the deadline to modify a scheduling order, courts consider whether there is "good cause" for the request.  *See D.R. Horton, Inc. v. Travelers Indem. Co. of Am.*, 281 F.R.D. 627, 630 (D. Colo. 2012); Fed. R. Civ. P. 16(b)(4).

After issuance of a Final Pretrial Order, leave to amend may be granted "to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  "[T]he evaluation of manifest injustice is within [the Court's] discretion, and . . . while '[o]nce formalized pretrial orders should not be changed lightly . . . total inflexibility is undesirable." *Scavetta v. King Soopers, Inc.*, 2013 U.S. Dist. LEXIS 83307, at *5 (D. Colo. June 13, 2013).  To guide its analysis of manifest injustice, a court considers the following factors, taken from *Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000): (i) the extent of prejudice and surprise to the nonmoving party; (ii) the ability of that party to cure any prejudice; (iii) disruption to the litigation by inclusion of the new issue; and (iv) bad faith by the party seeking to modify the order.  *Id.* at 1222 n.10.

**B.     Reconsideration**

While the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider

2

their interlocutory rulings before the entry of judgment.  *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claim or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment.").  Thus, a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied.  *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'"  *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)).  "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision."  *Id*. (internal quotation marks and alterations omitted).  Even under this lower standard, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence."  *Id*. (alterations incorporated); *see Sanchez v. Hartley*, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the defendants did not show "an intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice").  The Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order.  *Perkins v. Fed.*

3

*Fruit & Produce Co. Inc.*, 945 F. Supp. 2d 1225, 1232 (D. Colo. 2013).

## II. ANALYSIS

### A. Motion to Amend

Flatiron requests leave to file a Second Amended Counterclaim to assert two additional causes of action against AECOM for fraudulent concealment and fraudulent inducement and request exemplary damages. (ECF No. 257 at 2.) Flatiron explains that it has uncovered evidence showing:

> (i) ATS intentionally engineered its pre-bid drainage design in violation of the C-470 Project's engineering criteria and in breach of the Teaming Agreement ("Teaming Agreement"), (ii) ATS discovered the violation and breach before Flatiron signed its Prime Contract with CDOT or its design subcontract ("Subcontract") with ATS, (iii) ATS secretly adjusted its financial reserves, knowing Flatiron would later file a claim against ATS, (iv) ATS concealed and misrepresented its violation and breach during meetings with Flatiron and CDOT, (v) these misrepresentations induced Flatiron to submit a bid to CDOT based on ATS's faulty design and to sign ATS's Subcontract with its limitation of liability, and (vi) three days after Flatiron signed the Subcontract, ATS began to reveal to Flatiron evidence of its pre-bid violation and breach.

(*Id.*) Second, Flatiron argues that there has been a relevant change in the law because current Colorado case law states that fraud and other intentional torts are not barred by the economic loss doctrine. (*Id.* at 2–3.) Finally, Flatiron asserts that the Court's Second MSJ Order has foreclosed Flatiron from suing under the Teaming Agreement at all. (*Id.* at 3.)

The Court considers the *Koch* factors, as the Tenth Circuit directs. The Court observes that these four factors overlap to a degree, and therefore, the Court will merge its analysis as necessary.

4

      1.      <u>Extent of Prejudice and Surprise to the Nonmoving Party</u>

Flatiron argues that there will be no prejudice or surprise to AECOM because it has been defending against Flatiron's theory of bad faith misrepresentation since April 2020.  (ECF No. 257 at 12.)  The Court disagrees.  Flatiron argues that it only discovered the underlying facts supporting its fraud claims once it deposed Will Carrier on March 16, 2022.  (*Id.* at 6.)  However, the only explanation Flatiron makes for waiting until filing the Motion to Amend on July 12, 2023—nearly sixteen months later—is that AECOM's "concealments meant that the full story was not readily apparent until after post-discovery cohesion."  (*Id.* at 14.)  "Only then did the full details and nuance of ATS's fraud come to light."  (*Id.*)

The Court finds this explanation lacks credibility.  Flatiron argues that it has been searching for particular facts supporting an allegation of fraud that would satisfy Federal Rule of Civil Procedure 9(b) since at least April 2020.  (*Id.* at 12.)  But once Flatiron purportedly finally uncovered these long-awaited facts, it waited nearly sixteen months to request leave to amend its counterclaims because the full story was "not readily apparent"?  The Court simply does not buy it.  Only after the Court issued its Second MSJ Order, denying Flatiron the ability to sue under the Teaming Agreement's uncapped liability provision, did Flatiron suddenly realize it had at least two fraud claims available to it.  AECOM's surprise "to see a fraud claim suddenly appear after discovery has closed, the pretrial order entered, and the trial date set" is far more plausible than any argument that Flatiron makes that it only just discovered that it might bring fraud claims in this four-year-old case.

The Court also concludes there would be overwhelming prejudice to AECOM if Flatiron were permitted to allege fraud claims at this point in the litigation.  The

discovery cut-off in this case was April 2022.  (ECF No. 202.)  To the extent Flatiron knew (or should have known) that Mr. Carrier's deposition testimony might have thoroughly changed its litigation position, it should have moved to extend the discovery deadline and/or the deadline to amend the pleadings (which passed in April 2020 (ECF No. 33)) at that time.

Given the decision by Flatiron's counsel to proceed on its breach of contract theory alone, AECOM explains that it "spent the last four years preparing to try a five-week breach of contract case—not a fraud case—to a jury." (ECF No. 264 at 7.) AECOM did not inquire about alleged fraud in any of the at least 30 depositions taken, nor did it have its experts address fraudulent misrepresentation or concealment. (*Id.*) They did not do so because "fraud was not in play." (*Id.*) Had a theory of fraud been raised earlier, AECOM argues that it would have focused its discovery accordingly. (*Id.*)

The Court concludes that AECOM would suffer substantial prejudice if the Court permitted Flatiron to assert fraud-based counterclaims at this juncture without reopening discovery and allowing additional Rule 56 briefing; this the Court will not do. Accordingly, this factor weighs heavily in favor of denying the Motion to Amend.

2. <u>Ability of That Party to Cure Any Prejudice</u>

Discovery has closed.  Rule 56 orders have been issued.  There is no way for AECOM itself—absent Court intervention—to cure the prejudice it would incur if it had to defend against new fraud claims.  Thus, the only way to potentially cure any prejudice would be for the Court to return this case to square one—that is, the Court would have to vacate the trial date and reopen discovery and motion practice so that both parties could litigate this case as both a breach of contract *and* fraud case.  As the Court has just stated, it will not do so in light of the extreme undue delay by Flatiron in waiting

6

nearly sixteen months to raise its fraud theories.  Thus, this factor weighs in favor of denying the Motion to Amend.

   3.  <u>Disruption to the Litigation by Inclusion of the New Issue</u>

Given the foregoing discussion, this factor largely duplicates the first and second factors.  Thus, it, too, weighs heavily against granting the Motion to Amend.

   4.  <u>Bad Faith by Party Seeking to Modify the Order</u>

Flatiron argues that it has acted in good faith by seeking amendment promptly after the Court issued the Second MSJ Order, which Flatiron continues to argue "eliminated" its right to sue under the Teaming Agreement, and after discovery of facts that support fraud.  (ECF No. 257 at 13.)  In response, AECOM argues that Flatiron's fraud claims are futile and brought as two claims to avoid the Court's application of the fee-shifting provision in the Subcontract.  (ECF No. 264 at 9–15.)

By bringing the Motion to Amend now, it is clear that Flatiron seeks to avoid the Court's application of the Subcontract's liability cap and fee-shifting provision, as articulated in the Second MSJ Order.  While the Court does not wish to explicitly characterize Flatiron's Motion to Amend as brought in "bad faith," the late timing of such motion is certainly suspect and weighs against granting the Motion to Amend.

   5.  <u>Additional Considerations</u>

     a.  *Change in the Law*

Flatiron contends that a change in Colorado's application of the economic loss doctrine supports the amendment to add the proposed fraud claims.[2]  (ECF No. 257 at

---

[2] The parties are well-acquainted with the Court's previous Orders in this case, including the Court's Order granting in part and denying in part AECOM's motion to dismiss Flatiron's counterclaim.  (ECF No. 97.)  Thus, the Court need not reiterate the arguments and rulings therein.

7

15.)  In 2019, the Colorado Supreme Court indicated in a *dicta* footnote that the economic loss rule might not bar intentional post-contract torts like fraud.  *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1154 n.6 (Colo. 2019) ("[T]he economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens also to breach a contractual obligation").  Flatiron notes that in *McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Centers-Centerra, LLC*, 486 P.3d 439 (Colo. App. 2021), the Colorado Court of Appeals concluded "that in most instances the economic loss rule will not bar intentional tort claims."  *Id*. at 453.  Based on this case law, Flatiron now argues that the Court's ruling that there could not have been fraudulent inducement because the Teaming Agreement governed AECOM's conduct during Subcontract negotiations is now legally unsupportable.  (ECF No. 257 at 15–16.)

Even assuming without deciding that Flatiron's arguments about the state of the law are correct, the Court need not address them.  First, despite Flatiron's arguments, *Bermel* was decided a year before Flatiron filed its counterclaims,[3] and thus, to the extent it believed a fraud claim was plausible under the law and facts of this case, Flatiron could have pled accordingly under *Bermel* at the onset of this litigation.  However, it chose not to do so.  And, regardless of any purported change in the law, as the Court describes above, the prejudice to AECOM in allowing Flatiron to add fraud claims at this juncture of the litigation is too overwhelming for the Court to countenance.

---

[3] Although Flatiron does not cite *In re Bloom*, AECOM points out that in that decision, the Tenth Circuit *Erie*-predicted that the Colorado Supreme Court would hold that post-contract fraud is not barred by the economic loss rule, per the *Bermel* footnote.  2022 WL 2679049, at *2–4 (10th Cir. July 12, 2022).  But *Bloom* is a year old, undermining Flatiron's argument that there is a *recent* change in the law on the relevant issues.

      b.    *Recent Summary Judgment Order*

Flatiron also argues that the Court's Second MSJ Order eliminated its right to pursue claims for breach of contract based on pre-bid design work performed under the Teaming Agreement. (ECF No. 257 at 13–14.) The Court disagrees with Flatiron's interpretation. As the Court thoroughly explained, the definition of Design Services in the Subcontract includes work performed under the Teaming Agreement, and Flatiron's claim for breach of the Teaming Agreement remains cognizable as a claim for breach of the Subcontract.

      c.    *Futility of Fraud Claims*

The parties argue at great length whether the addition of fraud claims would be futile. (ECF No. 257 at 14–16; ECF No. 264 at 9–15.) Even assuming without deciding that Flatiron's fraud claims are not futile, as the Court explained above, the prejudice to AECOM in allowing Flatiron to add fraud claims at this juncture of the litigation is too overwhelming for the Court to abide.

      d.    *Exemplary Damages*

Given the Court's decision to deny the Motion to Amend, the Court also denies Flatiron's request for exemplary damages. *See Mortg. Fin., Inc. v. Podleski*, 942 P.2d 900, 903–05 (Colo. 1987) (exemplary damages not available for breach of contract claim).

**B.**    **Motion to Reconsider**

Flatiron argues that the Second MSJ Order must be reconsidered to avoid clear error for several reasons, including that the purportedly competing interpretations of the same contract language in the two orders on summary judgment render the contracts ambiguous as a matter of law; the Second MSJ Order renders Paragraphs 4 and 15 of

the Teaming Agreement meaningless; and AECOM breached the Teaming Agreement before it was terminated.  (ECF No. 258 at 1–10.)  Additionally, Flatiron argues that the Court must reconsider the Second MSJ Order to avoid manifest injustice so that AECOM is not shielded from liability for its own bad faith misrepresentations and omissions and so that it may not benefit from its own prior breach of the Teaming Agreement.  (*Id.* at 10–13.)  Finally, Flatiron argues that the fee-shifting clause's use of the term "claim" in the Subcontract is ambiguous, and the jury must determine its meaning.  (*Id.* at 14–15.)

The Court has already thoroughly and carefully considered these arguments and, for the reasons explained in the Second MSJ Order and in AECOM's well-reasoned response brief (ECF No. 263), again rejects them.

### III. CONCLUSION

Accordingly, Defendant-Counterclaim Plaintiff Flatiron | AECOM, LLC's Motion to Amend (ECF No. 257) and Motion to Reconsider (ECF No. 258) are DENIED.

Dated this 6th day of September, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge