

COLORADO
Department of Transportation
Division of Engineering,
Design and Construction

C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

May 7, 2018

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

RE:    Directive Letter and Order to Proceed – Segment 1/2 – Roadway, Drainage and Structure Changes to accommodate Douglas County's US-85 Improvements

Dear Dustin:

In accordance with Book 1, Section 13.1.1.2, and 13.2.1.5, this letter constitutes a Directive Letter and an Order to Proceed from CDOT to Flatiron|AECOM LLC (F|A) relative to roadway, drainage, and structure design changes and construction requirements at the C470 and US-85 interchange area. Based on a request from Douglas County and the opportunity to eliminate Work that would not be compatible with upcoming improvements that will be constructed as part of the US-85 project, CDOT is making the following design and construction changes to the Project.

CDOT, Douglas County, and F|A have met and discussed these changes and have agreed on the following changes to the C470 project. The attached Exhibit and associated location identifiers describes the general changes agreed to.

CDOT is Directing F|A to proceed with the following design and construction modifications associated with the C470/US-85 project described below and referenced in the attached Exhibit:

Location #1 -  At the EB off Ramp to US 85, end PCCP at Station 605+85. From Station 605+85 to Station 608+00, for approximately 215 feet, provide planned 36" Moisture Treated Subgrade, 10" ABC (Class 6), and 12.5" HMA.
Location #2 -  At the WB on Ramp to C470, end PCCP at Station 312+55. From Station 312+55 to Station 319+30.38, for approximately 675 feet, provide planned 36" Moisture Treated Subgrade, 10" ABC (Class 6), and 12.5" HMA.
Location #3 -  Noise Wall #2 Construct as Designed.
Location #4 -  (a) Shift Inlet IN-931S-1 a minimum 30 feet to the west to avoid pier impacts of the proposed new bridge structure.
(b) Adjust drainage Line 931N, adjust outfall to north side drainage channel as generally depicted in the Exhibit.
(c) Extend the C470 north side drainage channel, approximately 130 feet, past the proposed US 85 improvements as generally depicted in the Exhibit.
Location #5 -  Eliminate Soil Nail Wall E-06. Use of Type 7 CD guardrail with the ability to retain soil is acceptable, a 2:1 slope with slope paving, and a steeper slope of 1.3:1 at the existing abutment pinch point is acceptable.
Location #6 -  Adjust the location of the ITS pull box to facilitate US 85 tie-in.



FA0000304134

EXHIBIT 2

Additional design coordination meetings with Douglas County may be required to finalize design details and to coordinate construction activities.

This Work modifies the original scope of work, in accordance with Book 1, Section 13.2.1 please proceed with preparing a Request for Change Proposal (RCP).

If you have any questions or concerns about this Directive and Order to Proceed please contact Dave Poling.

Thank you,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director

Attachments:
#01- Drawing Markup with Noted Information (Dated-05/01/18)

FA0000304135

**EXHIBIT 2**



CO LO R A D O
**Department of Transportation**
Division of Engineering,
Design and Construction

C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

May 10, 2019

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

RE:     Invoice #32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns

Dear Dustin,

The purpose of this letter is to provide further notification of CDOT's concerns with F|A's ability to meet the Project Completion Deadlines in accordance with the terms of Change Order 018 and to provide specific comments related to the Invoice #32 Monthly Progress Schedule (PS) for Month ending March 2019.

As you are aware, discussions are being held between F|A and CDOT at the executive levels regarding concerns with execution of the schedule.  In the interest of moving the Project and invoicing forward during those discussions, the PS is being Accepted with Comments. However, all comments and concerns summarized in the shaded boxes below shall be responded to and satisfactorily addressed by F|A with the next Monthly Progress Schedule:

1)  Numerous activities in the Progress Schedule, including activities on the critical path, have not met or are not planned to meet the activity completion dates from the Approved February 6, 2019 Revised Baseline Schedule Revision 6-3 (RBS).

    a.  Book 2 Section 2.1.3.4.5 requires a Recovery Schedule if the Work is lagging the late start cost curve by 15 days in the aggregate. F|A's PS shows negative 14 days of float for the Notice of Project Completion Milestone. However, numerous activities identified on F|A's three critical paths from the RBS have fallen in excess of 15 days behind. (See **Attachment A** for a comparison of planned starts and finishes from the RBS and PS)

    b.  The PS indicates that 656 (71%) of the 920 remaining construction items (excluding items not included in the RBS) have finish dates 15 days or more later than the RBS, and only 12% of items have not slipped.

    c.  F|A made 290 logic modifications by changing the relationships between different activities in the March PS from the previous PS and the RBS. The durations of 206 activities in the latest PS were also modified, including reducing the duration of 39 activities which have negative float. Most of these logic changes have not been detailed in the PS per Book 2 Section 2.1.3.3 (1E) which requires a narrative per Activity code stating the reason for each logic change and the benefit to CDOT. Without this



**FA0000304313**

EXHIBIT 2

information it is not possible for CDOT to understand and agree with the reason for the logic change.

> *In consideration of the information provided above in items 1.a, 1.b, and 1.c, please explain why F|A believes the schedule can still be achieved given the number of activities that are more than 15 days behind.  For each Activity Code with a logic modification, please provide a reason for the change and the benefit to CDOT.*

2) Book 2 Section 2.1.3.1 requires, *"The Contract Schedules shall represent a practical plan to complete the Work within the Completion Deadlines and convey the intent in the manner of the prosecution and progress of the Work."*  Additionally Book 2 Section 2.1.3.1 states, *"The Contract Schedules shall represent the requirements of the Contract Documents and the Work shall be executed in the sequence and duration indicated in the Contract Schedules."*

   a. As demonstrated in the previous comments, F|A has not executed the work according to the sequence and durations in the RBS. It is CDOT's position that the March PS does not reflect the actual planned sequence of work and the Notice of Project Completion will likely be in excess of August 15, 2019, which would require F|A to prepare and submit a Recovery Schedule per Book 2 Section 2.1.3.4.5.

   b. As time is of the essence of the Contract per Book 1 Section 4.1, it is imperative that CDOT be provided a schedule which conveys the manner of the prosecution and progress of the Work and accurately reflects the actual projected Completion Deadlines.

   c. CDOT's position is that the delays shown in the PS compared to the RBS are solely F|A's delays, and per Book 1 Section 2.2 (12) F|A is obligated to mitigate delay to the Project. Reference Change Order 18 and CDOT's March 8, 2019 letter regarding compliance with the Importance of Prompt Delivery provisions in the Contract.

> *In consideration of the information provided above in items 2.a, 2.b, and 2.c, please provide an updated and achievable Monthly Progress Schedule that conveys the manner of the prosecution and progress of the Work and accurately reflects the actual projected Completion Deadlines. If F|A determines that the Work in the updated Monthly Progress Schedule is lagging the late start cost curve by 15 days in the aggregate, F|A shall prepare and submit a Recovery Schedule in accordance with Book 2 Section 2.1.3.4.5. If F|A determines they are unable to regain lost Schedule progress and meet the Project Completion Deadlines, F|A shall submit the actual/achievable schedule as a Monthly Progress Schedule at which point CDOT and F|A will discuss the next steps.*

3) CDOT does not have confidence in F|A's ability to meet the Project Completion Deadlines in accordance with the terms of Change Order 018. CDOT has repeatedly expressed concerns over F|A's ability to meet the schedule and F|A has done little to address CDOT's concerns.  Several items have contributed to CDOT's stance including the following:



**FA0000304314**

EXHIBIT 2

a. F|A has failed to meet the required Completion Deadlines per Book 1 Form P (as modified by Change Orders 10, 12, and 18).

b. F|A has struggled to meet schedule activity KPIs with most activities not being completed on time. CDOT has expressed concerns with the performance of the KPI's and overall schedule regularly in project leadership meetings, in executive leadership meetings, in comments to previous RBS and PS submittals, and in previous CDOT letters including the May 14, 2018 Key Performance Indicators letter.

c. In an effort to communicate schedule concerns, CDOT has been providing F|A charts and graphs with statistics and Project Completion Notice projections based upon historical production rates to date. See **Attachment B** for the most current PCCP charts and graphs which project the Project Completion Notice between December 20, 2019 and July 18, 2020

d. As of May 9, 2019, F|A has placed just under 58% of the total area of pavement on the project.  It took F|A over 18 months to place 58% of the pavement (3%/month).  To meet the Project Completion Notice Deadline, F|A will need to place 42% in less than 3 months (14%/month) See **Attachment B**.

e. CDOT has repeatedly noted its concerns with PCCP production, the associated traffic switches, and subgrade preparation.  F|A has yet to achieve monthly planned PCCP placement from KPI production curves and continues to push missed production quantities into the remaining months to Project Completion Notice. For example, at the March 7, 2019 Management Leadership meeting F|A handed out updated PCCP production curves that showed significantly different monthly PCCP production rates from the curves that were distributed at the December 6, 2018 Management Leadership meeting. Furthermore, CDOT records show that F|A place approximately 52,000 SY of PCCP in March 2019 and 33,500 SY of PCCP in April 2019, significantly less than what was projected in the March 7, 2019 PCCP production curves. See **Attachment C**.

f. Change Order 18, the settlement terms and revised Completion Deadline dates incorporated into the Contract, was executed roughly 4 months ago and the RBS was Approved roughly 3 months ago. CDOT is questioning whether F|A has provided or is prepared to provide enough resources to ensure the prompt completion as defined within the settlement terms.

> *In consideration of the information provided above in items 3.a to 3.f, please explain/demonstrate to CDOT why the next Schedule submittal is achievable, conveys the manner of the prosecution and progress of the Work, and accurately reflects the actual projected Completion Deadlines.  In addition, explain how F|A is planning to substantially increase production rates while maintaining safety and quality to achieve the Completion Deadlines.*

4) Refer to Aconex Document titled "RCSR – Monthly Progress Schedule – March 2019"  for additional comments that shall be addressed with the next Monthly Progress Schedule or Recovery Schedule.



FA0000304315

EXHIBIT 2

As documented herein, CDOT continues to have serious concerns with F|A's ability to plan and meet a schedule and to achieve the required Project Completion Deadlines in accordance with the terms of Change Order 018. As such, it is imperative that F|A confirm the accuracy of their schedule by providing a detailed response to the comments and concerns summarized in the shaded boxes above with the next Monthly Progress Schedule.

Thank you in advance for responding to and addressing CDOT's comments and concerns.  Please let me know if you have any questions regarding this matter.

Sincerely,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director

Attachments:
1)  Attachment A - Comparison of Planned Starts and Finishes from the Approved February 6, 2019 RBS 6-3 and PS for Month Ending March 2019 (5 Pages)
2)  Attachment B – May 9, 2019 PCCP Charts and Graphs with Project Completion Notice Projections (3 Pages)
3)  Attachment C – December 6, 2018 and March 7, 2019 F|A PCCP Production Curves (2 Pages)

CC:   Carrie DeJiacomo-Wiedner
      Richard Zamora



FA0000304316

EXHIBIT 2



| | C-470 TOLLED EXPRESS LANES SEGMENT 1 |
|---|---|
| | Project No. NHPP-4701-124 |
| | 18999 |

**COLORADO**
Department of Transportation
Division of Engineering,
Design and Construction

July 18, 2019

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

**Subject:**     June 21 Monthly Progress Schedule – CDOT Comments and Rejection
                 Notice of Breach Under the Contract

**Reference:**   12/26/2018: Executed Change Order CO-018
                 05/10/2019: CDOT Letter to F|A, Invoice #32 Monthly Progress Schedule Comments &
                 Project Completion Deadline Concerns
                 06/25/2019: June 21, 2019 Monthly Progress Schedule Submittal

Dear Dustin,

The intent of this letter is to provide CDOT's comments on and rejection of the June 21 Monthly Progress Schedule as well as provide the associated notice of breach under the Contract.

### JUNE 21 MONTHLY PROGRESS SCHEDULE – CDOT COMMENTS AND REJECTION

CDOT acknowledges receipt of Flatairon|AECOM's (F|A) Monthly Progress Schedule (MPS) titled "Monthly Progress Schedule – June 21, 2019" as provided to CDOT on June 26, 2019.  In CDOT's May 10, 2019 letter titled, "Invoice #32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns" CDOT requested, among other things, the following:

> "In consideration of the information provided above in items 2.a, 2.b, and 2.c, please provide an updated and achievable Monthly Progress Schedule that conveys the manner of the prosecution and progress of the Work and accurately reflects the actual projected Completion Deadlines. If F|A determines that the Work in the updated Monthly Progress Schedule is lagging the late start cost curve by 15 days in the aggregate, F|A shall prepare and submit a Recovery Schedule in accordance with Book 2 Section 2.1.3.4.5. If F|A determines they are unable to regain lost Schedule progress and meet the Project Completion Deadlines, F|A shall submit the actual/achievable schedule as a Monthly Progress Schedule at which point CDOT and F|A will discuss the next steps."

Although F|A does not specifically identify the subject MPS as being in response to CDOT's May 10, 2019 letter, CDOT assumes that F|A has determined they are unable to regain lost schedule progress and meet the Project Completion Deadlines, and is providing this schedule as an actual/achievable schedule. CDOT's assumption that F|A is submitting what F|A believes to be an actual/achievable schedule is based, in part, on the following information:



FA0000304370

**EXHIBIT 2**

| F|A Monthly Progress Schedule | Schedule Data Date | Project Completion Notice by Contractor Finish Date | Delay from Required Date of 8/1/2019 |
|---|---|---|---|
| Invoice #32 | 3/31/2019 | 8/15/2019 | -14 Days * |
| June 21 | 6/21/2019 | 11/14/2019 | -105 Days ** |

\* 15 Days is the trigger for a Recovery Schedule
\*\* On June 21, 2019 F|A notified CDOT they were 105 Days behind schedule and are, therefore, unable to meet the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion. Also note the abrupt 91 Day change between the two schedules that occurred over an 82 Day period.

CDOT cannot Accept the MPS and has not reviewed this submittal in detail for conformance to the Contract Requirements for schedules in Book 2 Section 2 for the following primary reasons:

1) The schedule is based upon F|A's false assumptions that CDOT agrees with F|A's position on various issues further described below.

2) The schedule provided does not meet the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion as required by the Contract, as modified by Change Order 18.

3) F|A has not addressed the comments provided in CDOT's May 10, 2019 letter.

Although CDOT has not performed a detailed review of the provided schedule, CDOT has the following general comments related to this schedule:

1) The Project Completion Deadlines do not comply with the Contract. The August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion have not been modified by any Change Order or any agreements between CDOT and F|A other than Change Order 18. The Project Completion Deadlines and terms of the Contract as modified by Change Order 18 remain in full force and effect.

2) Mainline Completion (Activity MILE1050) is not a Project Completion Deadline in the Contract. As such, per Book 2 Section 2.1.3.3.1B no activities shall be constrained to it. F|A's sole decision to include this activity has not been provided as a result of any agreement with CDOT and any associated delays are the sole responsibility of F|A.

3) Per the July 12, 2019 DRB meeting, F|A informed the DRB and CDOT that the MPS is the fastest schedule to the Project Completion Deadlines and the sequencing of the Work was not altered by F|A's decision to focus on achieving the September 29, 2019 "MILE1050" Activity in advance of the required Project Completion Deadlines.

4) There will be no relief from Liquidated Damages or Project Completion Payment reductions for providing CDOT the ability to collect, receive and retain user fees in accordance with the tenth requirement that was added under Book 1 Section 20.1.1 via Change Order 18. The requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion, as modified by Change Order 18, shall be met in their



EXHIBIT 2

entirety. F|A's sole decision to focus on toll collection is not supported by any agreement with CDOT and any associated delays are the sole responsibility of F|A.

5) There has been no agreement between F|A and CDOT regarding items of Work that need to be completed to provide CDOT the ability to collect, receive and retain user fees in accordance with the tenth requirement that was added under Book 1 Section 20.1.1 via Change Order 18.

6) There has been no agreement between F|A and CDOT regarding extension of any Work (other than Punch List items) beyond the required August 1, 2019 Project Completion Notice by Contractor other than what was agreed upon with execution of Change Order 18.

7) CDOT does not agree with F|A's position that weather is the cause of delays to the Critical Path or that F|A's weather days analysis meets the requirements for time extensions per Book 1 Section 13.3.1.2. CDOT is in the process of providing a formal response to F|A's letter, "CDOT-091 – Response to Invoice #32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns".

8) The scope related to Noise Wall 4 (NW 4) is still included in the MPS. CDOT provided a Directive to F|A on May 28, 2019 to remove NW 4 and its extensions from the scope of F|A's Work.  CDOT is within its rights to remove scope from the Work on the Project and F|A is to follow the obligations of the Contract and remove this scope from the schedule. CDOT does not agree with F|A's position that removal of Noise Wall 4 from the Contract impacts the schedule or was improper, in bad faith, and in breach of the Contract and Change Order 18. CDOT is in the process of providing a formal response to F|A's letter, "CDOT-092 – Response to Noise Wall 4 Directive – Modifications to the Work".

9) The Contract and Change Order 18 clearly define Work and Punch List and identifies their specific relationships to the Project Completion Deadlines. The MPS extends Work beyond August 1, 2019 that does not meet the Contract definition of Punch List.  F|A has recently provided a response on July 10, 2019 (CDOT-093 Project Completion) to CDOT's letters provided to F|A on March 8, 2019 and May 30, 2019.  CDOT does not agree with F|A's response and is in the process of providing a formal response to F|A's letter.

10) F|A includes discussion in the narrative regarding the inclusion of Change Orders into the MPS and receiving "Notice to Proceed" for certain PCO's. The provisions of Change Order 18 related to "Exhibit 1" remain in full force and effect.

11) Per Book 1 Section 13.4.2.3 any delay analysis shall be based on analysis utilizing the most recent Approved Revised Baseline Schedule (RBS) - the MPS or any other schedule besides the RBS shall not be utilized for any delay analysis.

12) As previously noted, CDOT did not perform a detailed review of the schedule due to the magnitude of Contract issues noted above.  CDOT is therefore not Accepting any portion of the submitted MPS and will not be providing detailed comments.  Lack of comments for any particular element of the MPS and associated narrative do not constitute any agreement, Approval, or Acceptance by CDOT – the MPS is rejected in its entirety.



FA0000304372

EXHIBIT 2

## NOTICE OF BREACH UNDER THE CONTRACT

F|A agreed, via the Contract, to deliver its Work in accordance with the Contract schedule.  See Book 1 Section 4.4.  F|A is failing to do so.  CDOT has relied upon statements made by F|A concerning its ability to timely complete the Project with the revised Project Completion Deadlines outlined in Change Order 18.  It is clear F|A, through no fault of CDOT, will not achieve the Project Completion Deadlines agreed to via Change Order 18.

Accordingly, consider this notice that F|A is in breach of the Contract.  The notice of breach derive from a variety of provisions, but primarily concerning: (1) F|A's inability to complete the Project by the contractually-imposed Project Completion Deadlines; (2) F|A's newfound claims and declaration of breach surrounding CDOT's de-scoping of Noise Wall 4 (F|A Letter CDOT-092) and a supposed weather impact to the Project (F|A Letter CDOT-091); (3) F|A's misrepresentations concerning Project Completion Deadlines and alleged delays; (4) F|A's failure to provide timely notices of delay; and (5) breaches of the implied warranties of good faith and fair dealing.  Specific provisions of breach likely include Book 1 Section 2.2, subsections "1", "9", and "12"; Book 1 Sections 2.3.3; 2.3.6; 2.4.2; 2.5; 3.2; 4.3.3; 4.4; 4.5; 5.1; 5.4; 5.6.1; 11.1.1; 11.1.2; 11.3; 13.

CDOT reserves the right to make additional declarations of breach. Per the Project Completion Deadline dates provided by F|A on June 26, 2019 with the MPS, CDOT believes F|A cannot feasibly complete construction by its contractually-obligated Project Completion Deadlines, therefore, please treat this letter as formal notice of breach.  F|A has the right to cure under the provisions of the Contract. Please note, CDOT's stance is that the requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion, as modified by Change Order 18, shall be met in their entirety.  If F|A fails to achieve any of the requirements, the applicable Liquidated Damages and Project Completion Payment reductions will apply until such time as all requirements are achieved.

## FUTURE SCHEDULE & INVOICE SUBMITTALS

CDOT expects that F|A will continue to work diligently on the Project to achieve the contractually defined Project Completion Deadlines as soon as possible.  F|A shall also continue to submit their actual/achievable schedule as a Monthly Progress Schedule for each Monthly Invoice to facilitate future invoice payments for Work completed, provided all other invoice requirements are met. This is a Project First approach to invoice payments with the goal of keeping the Project moving forward. CDOT will not provide Approval of the associated Monthly Invoice for payment if F|A's corresponding actual/achievable Monthly Progress Schedule is not submitted.  CDOT reserves the right to cease further invoice payments in accordance with Book 2 Section 2.1.2.3, subsection 3, as well as any and all other rights it has under the Contract.

## DELIVERY OF FUTURE DELAY NOTICES

CDOT is concerned that it has received two new claims for delay in the past few weeks.  CDOT believes these came with little or no notice – and, in any event, were insufficient under the Contract and were inadequate for informing CDOT of the cause and amount of delay, among other issues.  If there are any other delay claims, regardless of their cause, please submit those to CDOT in a notice



7852 S. Elati · Littleton, CO  80120 · (303) 347-050

Page 4 of 6

**FA0000304373**

EXHIBIT 2

that satisfies Section 13.3.2.1.1 of the Contract.  Please follow all notice provisions in the Contract. CDOT makes no statement that it will accept or agree to such claims, but it has a right to learn of any such claims immediately.  CDOT retains the position that all claims for additional monies or time are waived if not submitted pursuant to a timely and contractually-satisfactory notice.

## ADVISEMENT TO RETAIN ALL RECORDS

CDOT hereby directs you to preserve all records and correspondence relating to this Project, whether created or prepared by you or some third party.  These records will be relevant to any litigation.  To the extent F|A have document retention or destruction policies that automatically destroy records, CDOT directs that they be terminated until such time as the Project is complete and all disputes concerning the Project have been fully and finally resolved.

## CONCLUSION

In summary, CDOT is rejecting F|A's June 21 MPS based on the following primary reasons (not all-inclusive):

1) F|A falsely assumes that CDOT agrees with any delays due to weather.

2) Noise Wall 4 base scope is still included in the schedule.

3) F|A falsely assumes that CDOT agrees with extending and redefining the Project Completion Notice by Contractor and Affidavit of Final Completion Deadlines based on Items 1 and 2 above.

CDOT is putting F|A on notice of breach under the Contract that derive from a variety of provisions, but primarily concerning:

1) F|A's inability to complete the Project by the contractually-imposed Project Completion Deadlines.

2) F|A's newfound claims and declaration of breach surrounding CDOT's de-scoping of Noise Wall 4 (F|A Letter CDOT-092) and a supposed weather impact to the Project (F|A Letter CDOT-091).

3) F|A's misrepresentations concerning Project Completion Deadlines and alleged delays.

4) F|A's failure to provide timely notices of delay.

5) Breaches of the implied warranties of good faith and fair dealing.

Again, CDOT's stance remains that the requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion, as modified by Change Order 18, shall be met in their entirety.  If F|A fails to achieve any of the requirements, the applicable Liquidated Damages and Project Completion Payment reductions will apply until such time as all requirements are achieved.



7852 S. Elati · Littleton, CO  80120 · (303) 347-050

**FA0000304374**

**EXHIBIT 2**

Please let me know if you have any questions or concerns regarding this matter.

Sincerely,

Mike Keleman, P.E.

C-470 Tolled Express Lane Project Director

CC:     Carrie DeJiacomo-Wiedner
        Richard Zamora



FA0000304375

**EXHIBIT 2**



C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

August 1, 2019

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

**Subject:**   Response to F|A Letter CDOT-092: CDOT Directive Removing Noise Wall 4 ("NW 4") from the Project

**Reference:**   **12/26/2018:** Change Order 18 – Dispute 01 Settlement
**03/08/2019:** CDOT Letter to F|A, Importance of Prompt Delivery of Potential Change Order Notices
**04/04/2019:** F|A Letter CDOT-080, Noise Wall 4 and 5 Extension Directives
**04/10/2019:** CDOT Letter to F|A, F|A Letter CDOT-080 Noise Wall 4 and 5 Extension Directives – CDOT Response
**04/23/2019:** F|A Change Request Proposal for the Extension of Noise Walls NW4 and NW5
**05/10/2019:** CDOT Letter to F|A, CDOT Response to Noise Wall 4 Request for Contract Time Extension
**05/13/2019:** F|A Letter CDOT-084, CDOT Request for Change Proposal for the Extensions of Noise Walls 4 and 5
**05/20/2019:** CDOT Letter to F|A, Initial Response to F|A Letter CDOT-084PCO 082/083 (Noise Wall 4 & 5 Extension)
**05/28/2019:** CDOT letter to F|A, Noise Wall 4 Directive – Modifications to the Work
**05/30/2019:** CDOT letter to F|A, Final Noise Wall Directive – Modifications to the Work for Interim Condition
**05/30/2019:** CDOT Response to F|A's 04/23/2019 Change Request Proposal for the Extension of Noise Walls NW4 and NW5, Aconex Mail Number CDOT-TRN-008739
**06/26/2019:** F|A Letter CDOT-092, CDOT Directive Removing Noise Wall 4 ("NW 4") from the Project
**07/18/2019:** CDOT Letter to F|A, June 21 Monthly Progress Schedule – CDOT Comments and Rejection / Notice of Breach Under the Contract

Dear Dustin,

<u>NOTE</u>: *Reference CDOT's July 18, 2019 letter (June 21 Monthly Progress Schedule – CDOT Comments and Rejection / Notice of Breach Under the Contract) for additional information.*

This letter is in response to 'F|A Letter CDOT-092 CDOT Directive Removing Noise Wall 4 ("NW 4") from the Project' received by CDOT on June 26, 2019.  F|A identifies Letter CDOT-092 as a response to CDOT's May 28, 2019 Directive Letter regarding modifications to the Work for Noise Wall 4.



FA0000304385

EXHIBIT 2

CDOT's position regarding deletions and modifications to the Scope of Work for Noise Wall 4 remains as previously documented in the CDOT May 28, 2019 and May 30, 2019 Directive and Order to Proceed letters.  As previously noted, F|A's request for a time extension is not in accordance with the Contract Requirements and will not be Approved by CDOT.  CDOT offers the following response to certain items included with F|A's CDOT-092 Letter to further support its position:

1) The following information demonstrates F|A's failure to provide notification of delay in accordance with the Contract. CDOT views this failure to provide notice as a waiver of F|A's claim for increased time and the associated cost. CDOT cannot and will not consider relief without proper notice.

| Event/Description | Date | Delay from 8/1/2019 Project Completion Notice by Contractor |
|---|---|---|
| Change Order 18 Execution * | 12/26/2018 | 0 Days |
| F|A Letter CDOT-080 | 4/5/2019 | • 100 days after execution of Change Order 18<br>• F|A notification that CDOT review durations are not being timely and that this delay <u>may prevent</u>** F|A from meeting the August 1st completion date.<br>• F|A requested CDOT expedite reviews to mitigate any further delay. |
| CDOT Acceptance of Noise Wall 4 Technical Amendments and NDC Plans | 4/11/2019 | • 6 days after F|A letter CDOT-080, which indicated a possible delay *** |
| F|A Change Request Proposal | 4/23/2019 | • 18 days after F|A Letter CDOT-080, which indicated a possible delay.<br>• F|A requests a 77-Day Time Extension****, with the Noise Wall 4 Cast-In-Place portion driving the critical path to a completion date of 10/17/2019. |

* Change Order 18 emphasizes the importance of timely delay notifications and completion of the Project on time. In addition, CDOT's letter to F|A dated March 8, 2019, stressed the importance of prompt notification for potential delays to resolve issues and ensure project completion deadlines are met and noted that verbal communication, tracking logs, schedule narratives, or any other form of communication would not serve as a substitute for providing the required notices.

** Until this notification, 100 days following execution of Change Order 18, F|A had not informed CDOT of any delay related to Noise Wall 4.

*** 6 days following F|A's notification of a possible delay and request for expedited reviews, CDOT was able to provide Acceptance of the Technical Reports and Plans for Noise Wall 4.

**** F|A's communication to CDOT regarding delay went from a <u>possible delay</u> on 4/5/2019 to a <u>77-Day delay</u> on 4/23/19, <u>over a period of 18 Days</u>.

2) Within Letter CDOT-092, F|A falsely states that CDOT did not abide by its Noise Analysis and



FA0000304386

EXHIBIT 2

Abatement Guidelines and the FHWA regulations regarding noise abatement.  F|A includes various examples of CDOT actions (most of which pre-date Change Order 18) in an attempt to validate these statements. CDOT disagrees and maintains its position that CDOT adhered to the Noise Analysis and Abatement Guidelines and the FHWA regulations regarding noise abatement. Furthermore, F|A's position is heavily based upon potential impacts, required actions, and events that occurred, and F|A had knowledge of, prior to execution of the December 26, 2018 Change Order 18 settlement.

3) Within Letter CDOT-092, F|A indicates that they were not allowed to advance construction of any portion of Noise Wall 4 throughout the duration of the actions and events discussed in the above comment and that even constructing the Base Configuration portion of Noise Wall 4 now extends beyond August 1, 2019. F|A did not provide CDOT the required notifications for such alleged delays and had knowledge of the potential impacts, required actions, and events prior to execution of the December 26, 2018 Change Order 18 settlement.

4) Within Letter CDOT-092, F|A states the following: *"De-scoping to avoid a delay CDOT created by delaying the NW4 design approval is an improper termination for convenience, evidences bad faith and a breach of our contract, including Change Order 18, particularly given CDOT's stated intent to have another contractor build NW4 as part of a separate project, since the Project cannot be completed without NW4."*

   a. CDOT is within its rights under the Contract to reduce Work (i.e., to "de-scope").

   b. To the extent CDOT's removal of the Noise Wall 4 work constitutes a "termination for convenience" – as F|A has questionably alleged – such partial termination/de-scoping is well within CDOT's contractual rights.

   c. CDOT was disappointed to see F|A's declaration of breach – particularly a declaration that CDOT has acted in bad faith under the Contract.  F|A did not  identify the specific provisions in the Contract for which F|A is claiming a breach or the precise provisions in the Contract F|A is relying upon to assert that CDOT was acting in bad faith with termination for convenience (to the extent this de-scoping of Noise Wall 4 even constitutes a "termination for convenience").  If F|A's position remains that CDOT is in breach of the Contract, F|A shall provide the required written notice in accordance with Book 1 Section 16.4 and include the specific provisions in the Contract for which F|A is claiming a breach and for which F|A is relying upon to assert that CDOT was acting in bad faith

5) Regarding F|A's allegation that de-scoping work necessitates additional time and damages, CDOT finds this strains credulity.  CDOT specifically elected to de-scope upon learning that completion of this work would result in F|A claiming additional time. CDOT reduced the amount of Work required to be completed by F|A to achieve the Project Completion Deadlines and therefore no time extension is justified by the Contract.

6) Within Letter CDOT-092, F|A indicates that the Base Configuration of Noise Wall 4 is still part of the Contract and cannot legally be removed or deferred and that completion of the wall is still required to achieve Project Completion regardless of who constructs the wall.  F|A also requests that CDOT provide an accurate schedule for construction of Noise Wall 4 by another contractor so it can be incorporated into the Project baseline.  CDOT is completely within its rights to remove Noise Wall 4 from the Contract and such modification to the Work shall be reflected in F|A's schedule. CDOT is not required to and will not provide F|A a schedule for

7852 S. Elati · Littleton, CO  80120 · (303) 347-0504

Page 3 of 4



EXHIBIT 2

completion of the wall under separate contract as this information is irrelevant to F|A's obligations to complete the Project on time.

7)  Within Letter CDOT-092, F|A implies that CDOT is somehow in violation of the EA (Environmental Assessment).  CDOT's EA commitments will be fulfilled, all mitigation requirements for noise will be met, and CDOT has concurrence from FHWA regarding this matter.

8)  A Directive and Order to Proceed was issued to F|A on May 30, 2019 (Final Noise Wall 4 Directive – Modifications to the Work for Interim Condition) for incorporation of final design and construction changes related to modifications of the Scope of Work for Noise Wall 4. Within this Directive and Order to Proceed CDOT requests a revised Change order form reflecting a reduction in Contract Price for the Noise Wall 4 Scope of Work deletions and modifications as well as informing F|A to continue to proceed with the Work as Directed to achieve the current Project Completion Deadlines. F|A was and is contractually obligated to follow the Directive and Order to Proceed for design and construction changes related to modifications of the Scope of Work for Noise Wall 4 immediately upon receipt on May 30, 2019.  F|A shall incorporate the changes into the next Monthly Progress Schedule as previously requested to accurately reflect the Work. CDOT has not yet received a revised Change Order form from F|A as requested.

CDOT is within its rights to remove scope from the Work on the Project and F|A is to follow the obligations of the Contract and remove this scope from the schedule. CDOT does not agree with F|A's position that removal of Noise Wall 4 from the Contract impacts the schedule or was improper, in bad faith, and in breach of the Contract and Change Order 18. CDOT's stance remains that the requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion, as modified by Change Order 18, shall be met in their entirety.  If F|A fails to achieve any of the requirements, the applicable Liquidated Damages and Project Completion Payment reductions will apply until such time as all requirements are achieved.

Please let me know if you have any questions regarding this response.

Sincerely,

Mike Keleman, P.E.

C-470 Tolled Express Lane Project Director

CC:    Carrie DeJiacomo-Wiedner
       Richard Zamora



FA0000304388

**EXHIBIT 2**



C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

August 2, 2019

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

**Subject:**     Events of Default – Formal Notice of Default

**Reference:**   **12/26/2018:** Executed Change Order CO-018
**05/10/2019:** CDOT Letter to F|A, Invoice #32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns
**06/25/2019:** June 21, 2019 Monthly Progress Schedule Submittal
**07/18/2019:** CDOT Letter to F|A, June 21 Monthly Progress Schedule – CDOT Comments and Rejection / Notice of Breach Under the Contract
**08/01/2019:** CDOT Letter to F|A, Liquidated Damages – Failure to Achieve Project Completion Notice by Contractor Deadline

Dear Dustin,

CDOT placed F|A on notice of breach under the Contract on July 18, 2019.  CDOT received F|A's response via F|A Letter CDOT-096 on August 1, 2019 and will respond separately. F|A's response does not alter CDOT's position regarding the notice of breach, or on any of the other issues referenced within Letter CDOT-096.

The intent of this letter is to inform Flatiron|AECOM (F|A) that CDOT is placing F|A in Default under the Contract per the provisions in Book 1 Section 16.0 - Default.  As per CDOT's July 18, 2019 and August 1, 2019 letters referenced above, through no fault of CDOT, F|A has not achieved the required August 1, 2019 Project Completion Notice by Contractor.  Therefore, it is highly probable that F|A will not achieve the required October 1, 2019 Affidavit of Final Completion. Accordingly, please consider this notice that F|A is in Default under the Contract.

CDOT's basis for declaring an Event of Default relies upon the occurrence of the following events/conditions as per Book 1 Section 16.1.1 – Events of Default.  For clarity, the specific event/condition from Book 1 Section 16.1.1 is listed here in bold italicized text with general supporting information for CDOT's determination listed below.

***Book 1 Section 16.1.1(2) – The Contractor fails to perform the Work with sufficient resources to ensure the prompt completion thereof; (i.e. the Contractor fails to execute remedial action in accordance with the Quality Management Plan and Book 2, Section 3.0).***

FA0000304414

EXHIBIT 2

1) F|A has failed to perform the Work with sufficient resources to ensure the prompt completion thereof as evidenced by F|A's failure to meet the required Completion Deadlines per Book 1 Form P (as modified by Change Orders 10, 12 and 18).  This is further evidenced by the fact that as of August 1, 2019 approximately 24% (262,000 Square Yards) of the required permanent concrete paving had not been placed and numerous other critical Work activities remain uncompleted.

2) Reference CDOT's August 1, 2019 Letter regarding F|A's recent failure to achieve the required Project Completion Notice by Contractor Deadline.

3) Contract Requirements related to this Event of Default include, but are not limited to, Book 1, Sections 2.2(1), 2.2(12), 2.3.6, 4.3.3, and 4.4.

***Book 1 Section 16.1.1(3) – The Contractor fails to perform the Work in accordance with the Contract Documents, refuses to remove and replace rejected materials or Nonconforming or unacceptable Work, or fails to remove and replace workers as directed by CDOT under Section 7.10.***

1) F|A has failed to deliver the Work in accordance with Contract Schedules as required by the Contract Documents, including but not limited to, Book 1 Section 4.4 and Book 2 Section 2.1.3.1. This is evidenced by F|A's failure to meet the required Completion Deadlines per Book 1 Form P (as modified by Change Orders 10, 12 and 18).

***Book 1 Section 16.1.1(6) – The Contractor breaches any other agreement, representation or warranty contained in the Contract Documents, or the Contractor fails to perform any other obligation under the Contract Documents, including EEO and DBE requirements.***

1) F|A has failed to meet the general Obligations of Contractor regarding construction of the Project in accordance with the Contract Schedule to achieve Completion Deadlines and mitigation of delays as per Book 1 Sections 2.2(1) and 2.2(12). This is evidenced by F|A's failure to meet the required Completion Deadlines per Book 1 Form P (as modified by Change Orders 10, 12 and 18).

2) F|A has failed to provide timely notice of delay in accordance with the Contract, as further emphasized with Change Order 18 and CDOT's letter to F|A date March 8, 2019. CDOT's March 8, 2019 letter stressed the importance of prompt notification for potential delays to resolve issues and ensure project completion deadlines are met and noted that verbal communication, tracking logs, schedule narratives, or any other form of communication would not serve as a substitute for providing the required notices. Examples of F|A's failure to provide timely notice of delay include, but are not limited to, the following:

   a. <u>Noise Wall 4</u>:
      • F|A's communication to CDOT regarding delay went from a possible delay on 4/5/2019 to a 77-Day delay on 4/23/2019, over a period of 18 days.
      • Until F|A's initial notification of potential delay to CDOT on 4/5/2019, 100 days following execution of Change Order 18, F|A had not informed CDOT of any delay related to Noise Wall 4.



**FA0000304415**

**EXHIBIT 2**

   b. <u>Weather</u>:
- On 6/25/2019 F|A submitted a 103 Day time extension request due to adverse weather conditions.
- This request was submitted to CDOT 37 days before the required Project Completion Notice by Contractor date of 8/1/2019 and was F|A's first notification of alleged weather delays to CDOT.
- This request reflected an abrupt change from F|A's 3/31/2019 Invoice #32 monthly progress schedule, which indicated a Project Completion Notice by Contractor date of 8/15/2019.
- At the 5/14/2019 DRB meeting, 42 Days before submitting the 103 Day time extension request due to adverse weather conditions, F|A management indicated they could still meet Project Completion Notice by Contractor by 8/1/2019.

***Book 1 Section 16.1.1(13) – Any representation or warranty made by the Contractor in the Contract Documents or in any certificate, schedule, instrument or other document delivered pursuant to the Contract Documents shall have been false or materially misleading when made.***

1) F|A provided false and materially misleading representation including Project Completion Deadlines, F|A's alleged delays, and untimely notices. CDOT repeatedly provided comments and expressed concerns regarding F|A's ability to achieve the required Project Completion Deadlines. F|A failed to adequately address CDOT's comments and concerns and continually misrepresented in the Contract Schedules that they were able to meet the required Project Completion Deadlines. This is evidenced most recently by CDOT's 5/10/2019 (Invoice 32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns) and 7/18/2019 (June 21 Monthly Progress Schedule – CDOT Comments and Rejection – Notice of Breach Under the Contract) letters as well as F|A's failure to meet the required Completion Deadlines per Book 1 Form P (as modified by Change Orders 10, 12 and 18).

CDOT reserves the right to make additional declarations of Default. The provision in Book 1 Section 16.0 regarding Default include certain liabilities and responsibilities of the Contractor and Surety. Therefore, CDOT will provide a copy of this notice to the Surety listed below:

     Liberty Mutual Insurance Company
     2815 Forbs Avenue, Suite 102, Hoffman Estates, IL 60192
     Gretchen Eck, Surety Claims Counsel

CDOT has ongoing concerns with F|A's apparent inability to accurately develop and execute a project schedule for timely completion of this Project and insists that a meeting with F|A and the Surety be scheduled at CDOT's offices located at 2829 West Howard Place Denver, CO  80204 as soon as possible.  Specifically, CDOT is seeking assurance regarding the schedule for completing the Project and performance of the Work to achieve that schedule.  In addition, CDOT would like to discuss various items of importance for future performance of the Work. Please provide available dates and times for the meeting by Wednesday, August 7.



**FA0000304416**

EXHIBIT 2

In conclusion, CDOT is placing F|A in Default of Contract for the reasons noted herein and generally summarized below:

1) F|A has failed to perform the Work with sufficient resources to ensure the prompt completion thereof as evidenced by F|A's failure to meet the required Completion Deadlines.

2) F|A has failed to deliver the Work in accordance with Contract Schedules.

3) F|A has failed to mitigate delay and construct the Project in accordance with the Contract Schedule to achieve Completion Deadlines.

4) F|A has failed to provide CDOT timely notice of delay.

5) F|A provided false and materially misleading representation to CDOT for Project Completion Deadlines and F|A's alleged delays.

6) Breaches of the implied warranties of good faith and fair dealing related to the above reasons.

CDOT's stance remains that the requirements for the Project Completion Notice by Contractor and Affidavit of Final Completion Deadlines, as modified by Change Order 18, shall be met in their entirety.  F|A's failure to achieve any of the requirements by the required completion dates will result in CDOT applying the associated Liquidated Damages and Project Completion Payment reductions until such time as all requirements are achieved.

Please let me know if you have any questions or concerns regarding this matter.

Sincerely,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director

CC:     Joshua Laipply
        Carrie DeJiacomo-Wiedner
        Richard Zamora
        Gretchen Eck, Surety Claims Counsel, Liberty Mutual Insurance Company



EXHIBIT 2

 **COLORADO**
Department of Transportation
Division of Engineering,
Design and Construction

C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

October 1, 2019

Dustin Williams, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

**Subject:**     Liquidated Damages - Failure to Achieve Affidavit of Final Completion Deadline

**Reference:**     **12/26/2018:** Executed Change Order CO-018
                   **08/01/2019:** CDOT Letter to F|A, Liquidated Damages - Failure to Achieve Project Completion Notice by Contractor Deadline

Dear Dustin,

The intent of this letter is to inform you that F|A has not yet met the requirements to achieve Project Completion Notice by Contractor and has now failed to achieve the requirements for the October 1, 2019 Affidavit of Final Completion Deadline, as modified by Change Order 18 (shown in part below for reference):

> 6.  **Affidavit of Final Completion Payment to Contractor and Liquidated Damages for Contractor's Failure to Meet Affidavit of Final Completion Deadline.** The Deadline for Affidavit of Final Completion, as detailed in Section 20.1.3 of the Design-Build Contract, shall be October 1, 2019. Payment of **two million six hundred thousand dollars ($2,600,000.00)** as an increase to the Contract Price of the Design-Build Contract shall be made by CDOT to Contractor upon achieving the Deadline for Affidavit of Final Completion by October 1, 2019 (as such date may be hereafter extended after the date of the execution of the Change Order or Directive Letter in accordance with the Design-Build Contract. Contractor will not be entitled to any portion of this payment unless it meets the October 1, 2019, deadline. Aside from the extension of the deadline for Affidavit of Final Completion stated herein, nothing in this paragraph shall alter the Liquidated Damages provided by the Design-Build Contract, including, specifically, Book 1, Section 17.1.1.1, subpart 3.

As addressed with previous correspondence from CDOT to F|A, CDOT's stance remains that the requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion Deadline, as modified by Change Order 18, shall be met in their entirety and the applicable Liquidated Damages and Project Completion Payment reductions will apply until such time as all requirements are achieved.

As stated, F|A has not yet met the requirements to achieve Project Completion Notice by Contractor and has now failed to meet the requirements to achieve Affidavit of Final Completion, as evidenced by the attached project photo documentation taken today, October 1, 2019 (**Attachment 1**). Therefore, $51,000.00 in Liquidated Damages will be assessed per Calendar Day starting October 2, 1019 and until all Contract requirements for Project Completion Notice by Contractor are achieved. Simultaneously, the $156,250.00 Reduction in Payment will continue to be assessed per Calendar Day through October 4, 2019 at which point



CONFIDENTIAL

**EXHIBIT 2**

FA0000620297

the $10,000,000.00 payment will be depleted.  Reference CDOT's August 1, 2019 letter regarding Liquidated Damages - Failure to Achieve Affidavit of Final Completion Deadline for additional information.

When F|A has met the requirements to achieve Project Completion Notice by Contractor, as confirmed by CDOT in writing, the Liquidated Damages will be reduced to $13,000.00 per Calendar Day and will continue to be assessed until all Contract requirements for Affidavit of Final Completion are achieved.  As per Change Order 18, paragraph 6, F|A is not entitled to any portion of the $2,600,000.00 payment due to its failure to meet the October 1, 2019 Affidavit of Final Completion Deadline.

CDOT looks forward to working with F|A to achieve all the Contract requirements for Project Completion Notice by Contractor and Affidavit of Final Completion while maintaining a focus on Safety and Quality of the Work.  Please let me know if you have any questions or wish to discuss this matter further.

Sincerely,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director

Attachment(s):  Attachment 1 - Project Photo Documentation, October 1, 2019 (17 Pages)


Cc:     Carrie DeJiacomo Wiedner
        Richard Zamora
        Sam Barker, Liberty Mutual
        Douglas Dearie, Liberty Mutual



CONFIDENTIAL

**EXHIBIT 2**

FA0000620298



C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

August 19, 2020

Mr. Douglas Dearie, Vice President
Construction Services
Liberty Mutual Surety
1001 Fourth Ave. – Suite 1700
Seattle, WA 98154

**Subject:**   Surety Notification – Obligations to Complete the Project
C470 Tolled Express Lanes Segment 1 - Project No. NHPP-4701-124 (18999)


Dear Mr. Dearie:

As the Surety's representatives know, the Principal [F|A] was issued a Notice of Breach Under the Contract on July 18, 2019 and was subsequently placed in Default on August 2, 2019.  The primary reasons for placing F|A in Default under the Contract were related to concerns with the development and execution of F|A's Schedule, including failure to achieve the August 1, 2019 Project Completion Notice by Contractor Deadline. After placing F|A in Default, CDOT worked to establish certain expectations and required commitments from F|A and the Surety and has maintained open communication with F|A and the Surety by way of meetings and Project correspondence.

As of this date, F|A has not yet achieved the August 1, 2019 Project Completion Notice by Contractor Deadline and is now revealing it will abandon portions of the Work altogether – conduct clearly triggering the Surety's obligations to remedy the default as required under the Performance Bond. This letter serves as a formal notice with certain demands to the Surety regarding such obligations.

The following items, previously communicated to the Surety and F|A, are important to consider as the Surety evaluates and responds to this notice:

➢ Change Order 18 (Dispute 01 Settlement) was executed by F|A and CDOT on December 26, 2018. This Change Order was not unilateral – F|A willingly agreed to and specifically negotiated the terms, including the established Project Completion Deadlines of August 1, 2019 and October 1, 2019.

➢ CDOT has fulfilled all its obligations related to Change Order 18 including payment of $13.4M to F|A upon execution of the Change Order and an additional $4M upon CDOT's Approval of the Revised Baseline Schedule incorporating the revised Project Completion Deadlines of August 1, 2019 and October 1, 2019.

➢ CDOT has not agreed to any modifications to the Project Completion Deadlines, except those included with and agreed to through execution of Change Order 18.  As of this writing, those Deadlines have not been met.



FA0003722838

EXHIBIT 2

➢ CDOT's stance remains that the requirements for the August 1, 2019 Project Completion Notice by Contractor and October 1, 2019 Affidavit of Final Completion, as modified by Change Order 18, shall be met in their entirety.

➢ The Formal Notice of Default and subsequent correspondence related to CDOT's expectations and required commitments remain in full force and effect.

The following deficiencies and conduct taken by F|A suggests to CDOT that F|A does not intend to finish the remaining Work needed to achieve the Project Completion Deadlines and clearly triggers the Surety's obligations under the Performance Bond:

➢ F|A is refusing to remove and replace Nonconforming Work associated with Noise Walls 1 and 7. This is an additional event/condition for declaration of Default per Book 1 Section 16.1.1(3). CDOT has significant long-term durability, structural, and architectural concerns with the wall panels.  Nonconformance reports were issued on December 4, 2019 and September 20, 2019 for Noise Walls 1 and 7, respectively. Correspondence to date indicates F|A has no intention of performing an acceptable remedy as contractually required. On July 31, 2020 CDOT requested F|A to formally respond on or before August 5, 2020 with F|A's position and planned course of action to correct and address the identified Nonconforming Work – F|A has been nonresponsive.

➢ As of August 19, 2020, the Project is still not complete in accordance with the terms of the Contract. On April 1, 2020 F|A submitted a Project Completion Notice by Contractor without satisfying any of the Book 1 Section 20.1 prerequisites, as modified by Change Order 18.  On August 6, 2020, F|A submitted both its Affidavit of Final Completion and Application for Final Payment, again without satisfying any of the Book 1 Section 20.1 prerequisites, as modified by Change Order 18. These false and materially misleading representations for achieving the Completion Deadlines lacked serious consideration, given that the required prerequisites had not been met. In fact, Work, Punch List, and non-conformances remain outstanding and the Construction Quality Manager has not been able to provide the required certification, among many other incomplete items required under the Contract Documents.

➢ It appears as though F|A is engaging in bad faith behavior, given the entirely inaccurate Project Completion notices, coupled with the fact that it is nowhere close to being eligible for Final Payment.  This is further supported by the following behavior:

    o F|A is submitting notices for Project Completion as noted above while continuing to document remaining Work, Punch List, and outstanding non-conformances through lane closure reports, daily traffic control notifications, daily dispatches, hold points, look-ahead schedules, and general deliverables and correspondence.

    o F|A has begun to unilaterally close Punch List items without ICQC concurrence and without complying with the general requirements in the Approved CQMP.

    o Progress on addressing known outstanding Work and Punch list has slowed. F|A has demobilized personnel and equipment from the field office and project yards and



FA0003722839

EXHIBIT 2

reduced its workforce to a level that may be indicative of an approach that neglects to complete remaining Work, Punch List, and maintenance. In fact, CDOT has had to use their resources to clean and sweep the roadway from debris for the protection of the travelling public.

- o F|A continues attempts to initiate the Warranty Period for elements of the Project prior to satisfying the full prerequisite requirements in the Contract.

- o F|A has shown increasing resistance to provide weekly look ahead schedules and to meet with CDOT and ICQC regarding construction/quality.  F|A recently directed ICQC to cancel the remaining construction/quality meetings.

- o F|A continues to provide false claims of CDOT-Caused Delays in an attempt to shift responsibility to CDOT. For example, F|A continues to indicate entitlement to relief for alleged impacts related to the de-scoping of Noise Wall 4.  CDOT reduced the amount of Work required to be completed by F|A to achieve the Project Completion Deadlines.  The wall is currently being completed under separate contract.

- o F|A provided false and materially misleading representation with the recently submitted Final As-Built Schedule submittal. CDOT will copy the Surety on the response to F|A regarding this submittal.

The Contract and Performance Bond provided ensures that in an event of Default, both F|A and Surety are jointly and severally liable to CDOT for completion of the Project and any damages specifically provided for under the Contract Documents, including Liquidated Damages. In addition, the Performance Bond requires the Surety to remedy the default including its obligation to complete the Project. Because F|A has failed to promptly and faithfully perform its obligations under the Contract Documents and is now revealing it will abandon portions of the Work altogether, CDOT demands that the Surety perform its obligations under the Performance Bond. If it is the Surety's position that CDOT (as Obligee) is in material default, please respond within fifteen (15) days. Otherwise, CDOT expects the Surety to "promptly...[c]omplete the Project."

Upon review of this letter, please contact me with any questions or concerns and to schedule a meeting for further discussion. CDOT looks forward to your response and assurance that the Surety's obligations to deliver a completed Project to the taxpayers of Colorado in accordance with the executed Contract will be fulfilled.

Sincerely,

Mike Keleman, PE
C-470 Tolled Express Lanes Project Director

CC:   Sam Barker - Liberty Mutual
      Rob Richardson – F|A
      Steve Harrelson – CDOT
      Paul Jesaitis – CDOT
      Carrie DeJiacomo-Wiedner - CDOT



FA0003722840

EXHIBIT 2



C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

August 21, 2020

Rob Richardson, Project Manager
Flatiron | AECOM, LLC
7852 S Elati Street
Littleton, CO 80120

Subject:        CDOT Rejection of F|A As-Built Schedule

Dear Rob,

CDOT is in receipt of F|A's Final As-Built Schedule transmitted for CDOT Acceptance on August 6, 2020. The schedule is in violation of multiple Contract requirements and is rejected in its entirety. F|A has persistently submitted schedules which fail to address CDOT comments from previous schedule submittals, violate Contract requirements, and expand and compound previous rejected schedules. Notably, CDOT has not Accepted a Monthly Progress Schedule since F|A's March 2019 Monthly Progress Schedule.  That schedule was Accepted with comments and the major concerns with it were addressed with CDOT's May 10, 2019 letter (Invoice #32 Monthly Progress Schedule Comments & Project Completion Deadline Concerns). It is obvious and of huge concern to CDOT, that F|A's narrative, its creation of new Milestones not supported by the Contract, and modification of Contract Milestones, that F|A has no intention of submitting a schedule that meets the Contract. Additionally, F|A did not include a certification from their Engineer and scheduler certifying that the As-Built Schedule is a true reflection of way in which the Work was executed at the time of Final Acceptance. Until CDOT receives a schedule which reflects the Contract, CDOT will not perform a complete review of the submitted schedule for adherence to the Contract Requirements outlined in Book 2 Section 2.1.3.

F|A SCHEDULE NARRATIVE "MILESTONES"

F|A's schedule narrative included a section on "Milestones." Although a complete logic and detailed analysis of the submitted schedule will not be completed due to F|A's failure to adhere to the Contract requirements related to schedule submissions, CDOT wishes to clarify its positions regarding F|A's statements. The italicized language below represents each statement F|A included in their narrative followed by CDOT's position.

*F|A Statement: "F|A achieved Project Completion (MILE1020) on April 1, 2020."*

CDOT's Position: F|A did not achieve Project Completion on April 1, 2020 and has not met this requirement as of the date of this letter.  CDOT's position remains unchanged from CDOT's April 7, 2020 letter (CDOT Response to Project Completion Notice by Contractor Letters) which outlines the Contract requirements that must be met to achieve the Project Completion Notice by Contractor Deadline.

*F|A Statements: "CDOT has not completed Final Acceptance Testing (FAT) activity MILE1010. Accordingly, F|A removed progress from this activity and assigned a completion date of August 17, 2020, per CDOT's public advertisement." and "As currently defined, F|A is unable to achieve Project*



FA0003723371

EXHIBIT 2

*Completion absent CDOT's achievement of FAT, notwithstanding that F|A has completed the Work. Accordingly, the As-Built Schedule includes a new activity "Project Completion (including FAT)" (MILE1030) which provides for CDOT's independent completion of FAT following Project Completion."*

**CDOT's Position:** CDOT's position remains unchanged from that previously documented in letters to F|A on April 30, 2020 (CDOT Response to F|A Letter CDOT-174 – Portable VMB Toll Opening Phase) and June 19, 2020 (CDOT Response to F|A Letter CDOT-180). Any activities related to CDOT's efforts necessary to begin tolling on the Express Lanes has in no way affected the scope of Work necessary to be completed for F|A under their obligations for Project Completion in Book 1 Section 20.1. F|A has not identified any Work which was affected by CDOT's date to begin tolling.

*F|A Statement: "F|A submitted its Affidavit of Final Completion to CDOT on August 6, 2020. Activity MILE 1040 was progressed accordingly."*

**CDOT's Position:** CDOT's position regarding F|A's Affidavit of Final Completion is as documented in CDOT's August 7, 2020 letter (CDOT Response to F|A Letters CDOT-183 and CDOT-184). F|A has not achieved either Notice of Project Completion nor Affidavit of Project Completion and CDOT has not, and will not provide Notice of Final Acceptance until the requirements of Book 1 Section 20.1 as modified by Change Order 18 are met in their entirety.

*F|A Statement: "Final Acceptance (MILE1050) is a CDOT action with an undefined duration in the Contract. The As-Built Schedule reflects CDOT's completion of MILE1050 concurrent with FAT (MILE1030)."*

**CDOT's Position:** As noted above, CDOT will not provide Notice of Project Acceptance until the requirements of Book 1 Section 20.1 are met. Furthermore, any actions by CDOT to initiate tolling have no contractual tie or bearing on Notice of Final Acceptance. F|A's arbitrary tie between MILE1050 and MILE1030 is not accurate and the implication that CDOT Accepted the project upon the start of tolling is not supported by the Contract.

*F|A Statement: "Substantial Landscape Completion (CLS1060), Landscape Establishment (CLS070) and Landscape Warranty (CLS1080) are shown on an independent schedule sequence. The As-Built Schedule constrains Landscape Establishment (CLS070) to commence in the Spring, 2021, as defined in Section 17, Landscaping, Book 2 of the Contract."*

**CDOT's Position:** The landscape establishment period starting point is dependent upon Project Final Acceptance and the Notice of Landscape Substantial Completion, per Book 2 Section 17.2.9.3, and CDOT has not issued either. Presuming CDOT does issue Project Final Acceptance and Notice of Landscape Substantial Completion prior to Spring 2021, the first day of spring is March 20, 2021 not March 1, 2021 as F|A indicates. At this point the earliest the Landscape Establishment Period can begin is March 20, 2021.

*F|A Statement: "CDOT is currently constructing Noise Wall 4 (NW4) by and through its separate contractors. Per CDOT's direction, F|A removed the construction activities for NW4 from the As-Built Schedule. However, as F|A has explained in prior correspondence (including, but not limited to, F|A letter CDOT-092 dated June 26, 2019) NW4 remains an element of Project Completion. F|A expressly reserves all rights with respect to adverse impacts and delays to F|A's performance of the work resulting from NW4's delayed completion."*

**CDOT's Position:** CDOT's position remains unchanged from that previously documented in CDOT's August 1, 2019 letter (Response to F|A Letter CDOT-092: CDOT Directive Removing Noise Wall 4 ("NW4") from the Project). As identified in that letter and previous correspondence, the construction of Noise Wall 4 is no longer in the scope of work for F|A and therefore has no bearing on F|A's ability to



**EXHIBIT 2**

FA0003723372

achieve any of the Project Completion requirements. At no point following CDOT's letter has F|A identified any impacts to their schedule resulting from CDOT's separate NW 4 project.

**F|A SCHEDULE NARRATIVE "CHANGE ORDERS"**

CDOT has the following comments related to the portion of F|A's schedule narrative related to Change Orders.

CDOT notes that Change Order 18 as it is shown in F|A's table is not an accurate reflection of the amount earned by F|A.  For information regarding the final value of Change Order 18, refer to CDOT's letters provided on August 2, 2019 (Liquidated Damages for Failure to Meet Deadline to Achieve Prerequisites for E-470 Integration – Response to F|A Letters CDOT-082 and CDOT-085), August 1,2019 (Liquidated Damages – Failure to Achieve Project Completion Notice by Contractor Deadline), and October, 1, 2019 (Liquidated Damages – Failure to Achieve Affidavit of Final Completion Deadline).

As an additional note regarding Change Orders, CDOT will be issuing a Unilateral Change Order to reflect the Noise Wall 4 reduction of scope from F|A's Work. This reduction is not accounted for in the table of Change Orders.

**CONCLUSION**

For the reasons noted above CDOT rejects F|A's proposed As-Built Schedule in its entirety.

F|A was issued a Notice of Breach Under the Contract on July 18, 2019 and was subsequently placed in Default on August 2, 2019.  The primary reasons for placing F|A in Default under the Contract were related to concerns with the development and execution of F|A's Schedule, including failure to achieve the August 1, 2019 Project Completion Notice by Contractor Deadline. CDOT maintains that F|A has not met the Contractual Requirements for Project Completion and CDOT shall continue to enforce the provisions of the Contract applicable to Project Acceptance until all provisions of Book 1 Section 20.1 are met in their entirety.

Please let me know if you have any questions regarding this matter.

Sincerely,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director


CC:    Carrie DeJiacomo-Wiedner
       Sam Barker, Liberty Mutual
       Douglas Dearie, Liberty Mutual



**FA0003723373**

EXHIBIT 2



**C O L O R A D O**
**Department of Transportation**
Region 1

C-470 TOLLED EXPRESS LANES SEGMENT 1
Project No. NHPP-4701-124
18999

June 22, 2022

**VIA ELECTRONIC AND U.S. CERTIFIED MAIL**

Mr. Billy Shaddox, PE
Project Manager
Flatiron | AECOM, LLC
385 Interlocken Crescent, Ste 900
Broomfield, CO 80021
bshaddox@flatironcorp.com

**Subject:**   Response to F|A Letter CDOT-204 – CDOT Response to Contractor's Affidavit of Final Completion
Notice of Breach Under the Contract

**Reference:**   **12/26/2018:** Change Order CO-018 – Dispute 01 Change Order & Settlement
**03/08/2019:** Importance of Prompt Delivery of Potential Change Order Notices
**07/18/2019:** Notice of Breach Under the Contract
**08/02/2019:** Formal Default Notice
**08/17/2020:** Project Warranty Period
**11/19/2020:** Project Completion Notice with Exceptions
**03/18/2022:** F|A Letter CDOT-202 – Contractor's Affidavit of Final Completion; Attachments
**04/29/2022:** CDOT Response to F|A Letter CDOT-202
**05/06/2022:** F|A Letter CDOT-203 – CDOT Response to Contractor's Affidavit of Final Completion
**05/12/2022:** CDOT Response to F|A Letter CDOT-203
**05/20/2022:** F|A Letter CDOT-204 – CDOT Response to Contractor's Affidavit of Final Completion

Dear Billy,

The intent of this letter is to provide Flatiron|AECOM (F|A) with notice of breach under the Contract in response to F|A's most recent letter (CDOT-204) related to Contractor's Affidavit of Final Completion.

**NOTICE OF BREACH UNDER THE CONTRACT**

F|A agreed, via the Contract, to provide CDOT with an executed sworn Affidavit of Final Completion in accordance with Section 20.1.3.1. See Book 1, Section 20.1.3 and 20.1.3.1. Further, under the Contract, F|A agreed that if F|A is unable to provide CDOT with the Affidavit of Final Completion in

ATS02026960

**EXHIBIT 2**

the form set forth in Section 20.1.3.1, that outstanding matters set forth in an attached list shall describe the outstanding matters in such detail as may be requested by CDOT.

F|A, through no fault of CDOT, has failed to reasonably comply with CDOT's instructions to submit an Affidavit of Final Completion in compliance with the Book 1, Section 20.1.3 and 20.1.3.1 Contract Requirements as set forth in CDOT's April 29, 2022 and May 12, 2022 letters referenced above and incorporated herein by this reference.

On March 18, 2022, F|A submitted its Affidavit of Final Completion via Letter CDOT-202, including F|A's List of Exceptions. In response, via CDOT's April 29, 2022 letter, CDOT cited to pertinent portions of the Contract, requested that F|A comply with the Contract, and that F|A provide CDOT with a revised and compliant Affidavit of Final Completion by Friday May 13, 2022. By F|A Letter CDOT-203, F|A responded that "F|A will not submit an updated Affidavit of Final Completion to CDOT by Friday May 13, 2022, as requested [. . .]".

In CDOT's May 12, 2022 letter, the contents of which are referenced and incorporated herein, CDOT reiterated its instruction that F|A comply with the Contract Requirements required for achieving Affidavit of Final Completion. As set forth in Book 1, Section 20.1.3.1, F|A failed again to comply with CDOT's request that F|A provide a revised Affidavit of Completion, including response to CDOT's comments on F|A's List of Exceptions, a status report and further information, and any other alleged outstanding claims, matters, or issues related to the Project alleged by F|A, including verification that each has progressed in Compliance with the Contract Requirements. As provided for in Book 1, Section 20.1.3.1, CDOT, at its discretion, will continue to request updated status reports on outstanding matters in an effort to understand how F|A is diligently and in good faith contesting these matters by appropriate legal proceedings.

On May 20, 2022, F|A replied to CDOT's May 12, 2022 letter via F|A letter CDOT-204 stating that "Regarding CDOT's request for further details on F|A's List of Exceptions 1 – 3, Flatiron continues to perform analysis on issues related to the project. F|A will work to provide such a detailed reply at a later date." With this letter F|A again failed to reasonably comply with CDOT's instructions to submit an Affidavit of Final Completion in compliance with the Book 1, Section 20.1.3 and 20.1.3.1 Contract Requirements.

Accordingly, consider this letter as formal notice that F|A is in breach of the Contract. This notice of breach derives from a variety of provisions, but primarily concerning: (1) F|A's failure to reasonably comply with the instructions of CDOT consistent with the Contract as set forth in Book 1, Section 20.1.3 and 20.1.3.1 related to advancing documentation for outstanding matters for achieving Affidavit of Final Completion; (2) F|A's failure to perform Contract obligation(s); (3) breaches of the implied warranties of good faith and fair dealing. Specific provisions of breach likely include Book 1, Sections 13.0; 13.3.2; 13.3.2.1; 13.3.2.1.1; 13.3.2.1.2; 13.3.2.1.4; 13.3.2.2; 13.3.2.3; 16.0; 16.1.1; 20.0; 20.1.3; 20.1.3.1; Book 2, Sections 3.10.6; Book 2, Subsection 105.22(b) of Book 2 Section 20 – Revision of Section 105 - Disputes and Claims for Contract Adjustments (Initial Dispute Resolution Process); and Change Order 18 (Dispute 01 Settlement).

CDOT reserves the right to make additional declarations of breach. F|A has the right to cure under the provisions of the Contract. Please note, with this formal notice, CDOT's continues to encourage F|A to progress toward Affidavit of Final Completion and ultimately Final Acceptance, while maintaining a focus on Safety and Quality of the Work under the Contract. To reiterate CDOT's

ATS02026961

EXHIBIT 2

position, only those outstanding matters which have progressed in compliance with the Contract Requirements will be considered by CDOT.

CDOT is providing a copy of this notice of breach under the Contract to the Surety listed below:

Liberty Mutual Insurance Company
2815 Forbs Avenue, Suite 102, Hoffman Estates, IL 60192
Gretchen Eck, Surety Claims Counsel
Gretchen.Eck@libertymutual.com

**ADVISEMENT TO RETAIN ALL RECORDS**

CDOT hereby directs you to preserve all records and correspondence relating to this Project, whether created or prepared by you or some third party. These records will be relevant to any litigation. To the extent F|A have document retention or destruction policies that automatically destroy records, CDOT directs that they be terminated until such time as the Project is complete and all disputes concerning the Project have been fully and finally resolved.

**CONCLUSION**

CDOT is putting F|A on formal notice of breach under the Contract that derive from a variety of Contract provisions, but primarily concerning:

1) F|A's failure to reasonably comply with the instructions of CDOT consistent with the Contract as set forth in Book 1, Section 20.1.3 and 20.1.3.1 related to advancing documentation for outstanding matters for achieving Affidavit of Final Completion;

2) F|A's failure to perform Contract obligation(s);

3) Breaches of the implied warranties of good faith and fair dealing.

Please let me know if you have any questions or concerns regarding this matter.

Sincerely,

Mike Keleman, P.E.
C-470 Tolled Express Lane Project Director

CC:   Steven Harelson, CDOT Chief Engineer
      Jessica Myklebust, CDOT Region 1 Transportation Director
      Gretchen Eck, Surety Claims Counsel, Liberty Mutual Insurance Company (Electronic and U.S. Certified Mail)
      Sam Barker, Paul Schraf – Liberty Mutual (Electronic Mail Only)

ATS02026962

EXHIBIT 2