IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff / Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant / Counterclaim Plaintiff.

---

**FLATIRON | AECOM, LLC'S MOTION *IN LIMINE***

---

Flatiron | AECOM, LLC ("Flatiron") respectfully moves *in limine* to exclude four categories of evidence and/or testimony, which Flatiron expects AECOM Technical Services, Inc. ("ATS") to rely upon at trial: (i) the Special Request for Equitable Adjustment ("SREA") (ECF 176); (ii) the liability limitation (the "LOL Clause") in the parties' design subcontract (the "Subcontract"); (iii) disputes between Flatiron and other subcontractors on the C-470 Project; and (iv) duplicative, cumulative testimony from ATS's five testifying experts.

**Certificate of Conferral.**  Pursuant to D.C.COLO.LCivR 7.1(a) and WJM Revised Practice Standard III(G)(3), counsel for Flatiron conferred with counsel for ATS concerning the substance of this Motion.  ATS opposes the relief sought.  Relatedly, Flatiron respectfully alerts the Court to ATS's failure to cull its witness list, as well as ATS's "excessive number of exhibits which have no realistic likelihood of being introduced at trial."  *See* ECF 276.  As of the date of this Motion, ATS's proposed list still contains 57 witnesses and over 1,000 exhibits.  If ATS does not soon comply with the Court's September 7, 2023, Order (*id.*) encouraging the parties to "streamline" their materials "to the greatest extent possible," Flatiron may need to seek additional guidance and relief.  *Id.*[1]

## ARGUMENT

### I. EXCLUSION OF THE SREA

Flatiron seeks to exclude evidence of the SREA at trial.  Flatiron submitted the SREA to CDOT during compromise negotiations in September 2020.  Now, three of ATS's expert witnesses intend to opine that the SREA reveals a scheme by Flatiron to "double-dip" damages from both

---

[1] Flatiron has repeatedly asked ATS to narrow its witness and exhibit lists. The current trial calendar cannot accommodate ATS's witness list. Moreover, Flatiron has proposed to resolve ATS's affirmative claims such that they need not be tried at all. Despite repeated attempts to reach resolution on this issue (which will substantially impact and narrow pretrial efforts), ATS has not substantively responded to date.

1

ATS and CDOT, and that it reflects Flatiron's propensity to blame others for its own project shortcomings. The SREA is inadmissible because it is: (A) irrelevant; (B) a protected settlement communication; (C) improper propensity evidence; and (D) unfairly prejudicial.

### A. The SREA is Irrelevant under Rule 401

The SREA is not probative of any fact related to this dispute. ATS's experts intend to rely on the SREA to support their misplaced accusations that Flatiron is attempting "double recovery" from both CDOT and ATS.[2] **Exhibit 1** (Hall Supplemental Report) at 7; ECF 291-1 at 19. This strategy fails for the following reasons.

First, the SREA has no relevance for this purpose because seeking damages from multiple responsible parties does not constitute "double recovery." *Cantu Servs. v. Worley*, No. CIV-12-129-R, 2020 U.S. Dist. LEXIS 192659, at *6 (W.D. Okla. Oct. 19, 2020) ("[W]hile a plaintiff is precluded from double recovery, a plaintiff is not precluded from pursuing *judgment* for the same damage from multiple defendants.") (emphasis in original). It would only be double recovery if Flatiron sought damages from ATS that it had already *recovered* from CDOT, or vice versa. *Taylor Morrison of Colo., Inc. v. Terracon Consultants, Inc.*, 410 P.3d 767, 773 (Colo. App. 2017) ("[A] plaintiff may not receive double recovery for the same losses arising from the same injury."). Flatiron has not recovered from either CDOT or ATS—so double recovery has not and will not occur.

Second, it is undisputed that Flatiron ***withdrew*** the SREA from CDOT's consideration more

---

[2] ATS complains about Flatiron's attempts in the SREA to persuade CDOT to release Flatiron from liquidated damages CDOT assessed and to pay Flatiron bonus payments to which Flatiron believes it is entitled. To date, CDOT has refused. ATS is responsible for CDOT assessing these liquidated damages and refusing to pay Flatiron's bonus, so Flatiron seeks these same amounts from ATS as pass-through damages. If Flatiron succeeded to persuade CDOT on these points, Flatiron would remove these damages from the amounts that it seeks from ATS.

2

than a year ago. The SREA has been replaced with an updated, more accurate statement of Flatiron's claim and positions called the "Close-Out REA." The Close-Out REA, which Flatiron submitted to CDOT on June 24, 2022 (and produced to ATS in July 2022), is Flatiron's *current* claim for $64 million in damages against CDOT. *See* **Exhibit 2**, 43d Supplemental Disclosure (transmitting Close-Out REA to ATS).[3]

In sum, even if the SREA was an accurate representation of Flatiron's current damages against CDOT (it is not), it is not relevant for the purpose for which ATS intends to use the SREA—*i.e.*, to show the jury Flatiron seeks an improper double recovery.

### B. The SREA is a Statement Made During Compromise Negotiations Under Rule 408

The SREA is also inadmissible under Rule 408, which excludes "statement[s] made during compromise negotiations about the claim" that are offered "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a)(2). Flatiron prepared and submitted the SREA for the purpose of initiating dispute resolution negotiations with CDOT, including mediation, regarding the C-470 Project. *See* ECF 195 at 2 (referring to the SREA as "a document provided by [Flatiron] to [CDOT] . . . for purposes of participating in a 'potential dispute resolution process' relating to the Project . . . .") (Mix, Mag. J.). Flatiron has consistently maintained the SREA is inadmissible under Fed. R. Evid. 408. *See generally* ECF 176 (SREA header states on every page that it is "For Settlement Purposes Only" and subject to "Colo. R. Evid. 408/FRE 408.").

---

[3] ATS was well aware when its experts drafted their reports that the SREA would soon become obsolete. In prior briefing before Judge Mix on this issue, Flatiron informed that it "'intend[ed] to prepare and submit a formal REA . . . after project completion,' which will 'supersede the now-obsolete information contained in the [SREA].'" ECF 174 at 10. Judge Mix ultimately permitted ATS's experts to consider the SREA because, at that time, Flatiron could not guarantee that the "forthcoming REA would "be available prior to the completion of expert reports." ECF 195 at 6. She warned, however, that ATS would have to make "an informed decision about whether to use it to prepare expert reports or not"—especially given Flatiron "[h]aving raised the issue of the potential obsolescence of the SREA." *Id.*

3

Flatiron anticipates that ATS will offer the same two arguments it has made in previous briefing as to why Rule 408 should not apply to the SREA, neither of which has merit. First, ATS has claimed the SREA cannot be a settlement communication because it predated any mediation. ECF 172 at 9. But a settlement communication can happen at any time; it need not be accepted or part of an existing mediation. Settlement negotiations must begin somewhere. Rule 408 exists to encourage settlement communications, regardless of whether settlement efforts ultimately succeed. *See* Fed. R. Evid. 408, advisory comm. note.

Second, ATS has argued Rule 408 can only apply to exclude the SREA in a trial "between Flatiron and CDOT, not in this matter between Flatiron and ATS." ECF 172 at 9 (emphasis in original). ATS claimed the "Tenth Circuit has . . . noted that Rule 408 does not bar introduction of evidence that involves 'a different claim than the one at issue in the current trial.'" *Id.* (quoting *Broadcort Cap. Corp. v. Summa Med. Corp.,* 972 F.2d 1183, 1194 (10th Cir. 1992)). But this precedent is inapplicable. In fact, "the Tenth Circuit has adopted a broad reading of Rule 408, holding that the Rule applies to evidence of settlement negotiations as long as the settlement concerns 'related cases.'" *Liberty Mut. Fire Ins. v. Michael Baker Int'l, Inc.*, No. 2:19-cv-00881-JNP-DAO, 2023 U.S. Dist. LEXIS 44876, at *16 (D. Utah Mar. 14, 2023) (citing *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987)). In *Bradbury*, the Tenth Circuit held that Rule 408 applied to "claims that arose out of different events and transactions" because those claims "arose in the course of the same large scale uranium exploration project . . . and [were] similar enough to the claim sued upon in this case to be relevant." *Bradbury*, 815 F.2d at 1363. Here, ATS itself has argued that SREA relates to the "**same**" dispute over the "**same**" events on the "**same**" project. ECF 172 at 1-2 (emphasis in original). Based on its own characterization of the SREA, ATS cannot credibly dispute that Rule 408 applies.

4

Further, ATS admits it intends to use the SREA precisely for the purpose forbidden by Rule 408 —to try to "disprove the validity or amount" of Flatiron's claim in ***this*** case. Fed. R. Evid. 408(a). In its recently-filed Rule 702 Responses, ATS argued the SREA is relevant to "undermine[] the credibility of Flatiron's position that ATS alone is responsible for the $263 million of damages Flatiron seeks to recover from ATS." ECF 296 at 4; *see also* ECF 297 at 5 (arguing the SREA "completely undermines the credibility of Flatiron's claim against ATS").[4] Rule 408 squarely prohibits the use of a settlement communication for such purposes. Fed. R. Civ. P. 408(a).

### C. The SREA May Not Be Used as Character or Propensity Evidence under Rule 404

Under Rule 404, "[e]vidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). ATS seeks to use the SREA as improper propensity evidence. ECF 296 at 4 (arguing the SREA is relevant because it "goes to Flatiron's credibility and good faith"); ECF 297 at 4-5 (same); ECF 297-2 at 11 (arguing that Flatiron's SREA arguments demonstrate Flatiron's purported proclivity to "shift[] blame [from itself] and s[eek] compensation from [others] instead, *consistent with its previous behavior on the Project*."). It is improper to (wrongly) characterize the SREA as an example of Flatiron's irresponsible character, and then use it as evidence that Flatiron must also be acting irresponsibly in this dispute as well. For this reason, too, the SREA is inadmissible.

---

[4] Relatedly, in an example of duplicative opinions among ATS's experts, ATS's damages expert David Hall opines the SREA is proof that Flatiron's "claims against ATS are flawed, overstated and unreasonable." Ex. 1 at 7. Wayne Kalayjian, ATS's design standard of care expert, echoes that argument. ECF 296-2 at 7 (arguing the SREA "undermines the credibility of [Flatiron's] claim against ATS."). And ATS's construction standard of care expert Mark Buchanan opines that Flatiron's weather-related claims to CDOT in the SREA show how Flatiron refuses to "own up to its [own] failure[s]"—calling into question the validity of Flatiron's claims against ATS in this case. ECF 297-2 at 11.

5

### D. The SREA Will Cause Unfair Prejudice and Jury Confusion under Rule 403

Evidence is "unfairly prejudicial" if it has "'an undue tendency to suggest decision on an improper basis.'" *U.S. v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008); *see also U.S. v. Adams*, 375 F.3d 108, 111 (1st Cir. 2004). As described above, ATS admits it wants to use the SREA to portray Flatiron as a dishonest actor who never takes responsibility for anything and who is also seeking a windfall through a "double-recovery." *See, e.g.*, ECF 297-2 at 11 ("Rather than own up to its failure . . . [Flatiron] shifted blame"); ECF 296-2 at 7 ("Flatiron now seeks to recover dollars from . . . the American taxpayer."). In addition to such prejudice, the SREA will also cause jury confusion and waste trial time. Flatiron will be forced to conduct a trial-within-a-trial regarding the SREA, its origins, its replacement, its accuracy, and the status of any Flatiron dispute with CDOT. These digressions have no probative value to this case. *Cf. U.S. v. Velarde*, No. 98-391, 2006 U.S. Dist. LEXIS 114611, at *13-14 (D. N.M. Apr. 12, 2006) ("[A]lleged collateral matters . . . are remote to the issues in this case and would . . . involve the type of 'trial within a trial' that the Court in its discretion may avoid in the interest of avoiding unnecessary excursion, misleading the jury, [and] juror confusion").

## II.   EXCLUSION OF EVIDENCE OR TESTIMONY REGARDING THE LOL CLAUSE

Flatiron seeks to exclude evidence regarding the LOL Clause. ECF 37-2 at 6 ¶ 1. The application of the LOL Clause is a legal issue for the Court and thus, is irrelevant to the questions the jury must decide. *See, e.g.*, *Caradigm United States LLC v. Pruitthealth, Inc.*, No. 1:15-cv-2504, 2018 U.S. Dist. LEXIS 244393, at *23 (N.D. Ga. May 16, 2018) (granting motion to exclude because "determining what damages are covered by [the liability limitation clause] is a matter of contract interpretation, and therefore, a matter of law. . . that is inappropriate to put to the jury."). And given the Court's prior rulings, the LOL Clause is not currently a disputed issue at trial and is thus not relevant to either party's claim or defense. *See, e.g.*, *Onderko v. L.M. Gen. Ins. Co.*,

6

567 F. Supp. 3d 495, 503 (M.D. Pa. 2021) ("contractual terms or limitations . . . are not relevant because they are not disputed in this case."). The LOL Clause has no tendency to make ATS's breach or the amount of damages Flatiron suffered on the C-470 Project more or less probable. *Id.*; Fed. R. Evid. 401(a). Nor does it have any bearing on the actual amount of damages Flatiron suffered on the C-470 Project.

Instead, the application of the LOL Clause only impacts Flatiron's potential recovery post-verdict. This Court has already interpreted and determined the applicability of the LOL Clause. ECF 252 at 15-18. At trial, Flatiron intends to present evidence of the full amount of its damages to the jury. If Flatiron prevails and the jury returns a verdict in excess of the LOL Clause, the Court will simply apply the LOL Clause post-verdict (unless the Court determines it should not do so). *See Terracon*, 410 P.3d at 772 ("[A] court must first apply [any] setoff against the jury verdict to ascertain the allowable amount of recovery, and then apply any contractual limitation against this reduced amount.").

Further, evidence and argument about the LOL Clause would only cause jury confusion and prejudice by suggesting to the jury the LOL Clause limits the amount of damages the jury can *award*—as opposed to the amount of damages Flatiron can *recover*. *See Onderko*, 567 F. Supp. 3d at 502 (liability limit could give "'the jury an anchor number that has no bearing on [actual] damages.'"). The jury should not be invited or permitted to speculate about why the LOL Clause was included, or to assume the LOL Clause reflects the range of damages the parties anticipated on the Project. Instead, the jury must consider and determine the full extent of the damages ATS actually *caused* by its breach. Then, "[o]nce a verdict has been rendered . . . the Court can mold the verdict appropriately to reflect the limits of" the LOL Clause on the jury's damages award. *Id.* at 503 (citation omitted). The Court should therefore bar ATS from relying on the LOL Clause at

trial and should redact the LOL Clause from the parties' contracts to avoid references to it at trial. Flatiron attaches copies of both agreements, redacting the information it seeks to exclude, as **Exhibits 3 and 4**.

### III. EXCLUSION OF "DISPUTES" WITH FLATIRON SUBCONTRACTORS

In furtherance of its strategy to portray Flatiron as generally dishonest to the jury, Flatiron also expects ATS to introduce evidence relating to separate disputes between Flatiron and some of its subcontractors on the C-470 Project. According to ATS's still-lengthy proposed witness list, ATS intends to call six (6) representatives from various subcontractors, specific witnesses from which ATS still has not yet identified,[5] about so-called "disputes" with Flatiron. **Exhibit 5**, ATS 11/28/2023 Witness List. ATS also lists an additional fifteen (15) subcontractors on its "may call" witness list. *Id.*

This evidence is both irrelevant and prejudicial. *See, e.g.*, *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1334 (D. Colo. 2020) (Evidence of other disputes "would have little probative value in this case, where the issues concern whether defendants acted wrongfully with regards to *this* affiliation and whether *these* plaintiffs suffered damages.") (emphasis in original). "Evidence of prior lawsuits is generally inadmissible against a defendant" except for impeachment purposes. *SEC v. Goldstone*, No. CIV 12-0257, 2016 U.S. Dist. LEXIS 75299, at *38 (D. N.M. June 9, 2016). This is especially true where, as here, those other disputes have no "tendency to make a fact [in this case] more or less probable" and are "of [no] consequence" to Flatiron's dispute with ATS. Fed. R. Evid. 401. Any disagreements Flatiron may have had with the Subcontractors are unrelated to the project impacts and disruptions caused

---

[5] Those subcontractors are: Castle Rock Construction Company ("CRCC"), Martin Marietta Materials, Dynalectric Colorado, Geocal Inc., American Sign and Barricade Co., and P&H Equipment, Inc.

8

by ATS. Instead, these were standard, small-scale disagreements that routinely arise on large construction projects.[6]

Even if such evidence was somehow relevant, allowing ATS to introduce it will force Flatiron to conduct ancillary "mini-trials" with regard to each Subcontractor disagreement to explain why it was minor, justified, and irrelevant. The Court has discretion to avoid such distractions. *U.S. v. Talamante*, 981 F.2d 1153, 1156 at n.5 (10th Cir. 1992) (court retains discretion under Rule 403 to exclude evidence which "could [lead] to collateral mini trials"). "[C]learly the dangers of unnecessarily misleading the jury, confusing the issues, and unduly delaying the trial will substantially outweigh whatever marginal probative value [such evidence] might be thought to possess." *Belcher v. Kelly*, No. 19-cv-03367, 2020 U.S. Dist. LEXIS 248419, *5 (D. Colo. Dec. 18, 2020). "This is truly an instance where the sideshow would threaten to overwhelm the circus." *Id.*

Once again, ATS's only purpose in eliciting testimony regarding these unrelated and inconsequential Subcontractor disagreements is to use it as character evidence—i.e., to persuade the jury that Flatiron is generally quarrelsome and difficult. Rule 404 precludes the use of evidence for this purpose. Fed. R. Evid. 404(b)(1).

## IV.    ATS MUST ELIMINATE DUPLICATIVE AND CUMULATIVE TESTIMONY AMONG ITS TESTIFYING EXPERTS

Rule 403 and case law from this Court prohibit ATS from calling multiple experts who each testify to the same topic. Fed. R. Evid. 403 (Court may exclude relevant evidence to prevent

---

[6] Nearly all of these "disagreements" were resolved directly at the project level with no court involvement. *See, e.g.*, **Exhibit 6**, Richardson 30(b)(6) Dep. at 107:3-8 ("A. Yeah we had . . . [n]ormal project type of disagreements about interpreting the contract drawings and specifications and how the work should be performed."); *id.* at 156:9-13 ("I recall discussions, meetings . . . . We had disagreements, and we worked them out . . . ."). The only exceptions were the disputes with CRCC, Geocal Inc., and SEMA Precast—all of which have been settled and/or resolved.

9

"undue delay, wasting time, or needlessly presenting cumulative evidence"); *Stricklin v. Bordelon*, No. 19-cv-1242, 2021 U.S. Dist. LEXIS 108705, *8-9 (D. Colo. June 10, 2021) (Martinez, J.) (granting motion *in limine* to exclude duplicative testimony from three experts on the standard of care); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1173 (D. Colo. 2006); *see also Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 324 (10th Cir. 1989) (excluding rebuttal witnesses who would have testified similarly to testimony already offered by other experts on direct and cross-examination).

ATS's experts offer duplicative testimony on at least 23 substantive issues, which are described in the attached **Exhibit 7**. *See also* **Exhibit 13** (Buchanan Rebuttal Report); **Exhibit 14** (Buchanan Supp. Report); **Exhibit 15** (Kalayjian Rebuttal Report); 291-2 (Kalayjian Supp. Report); Ex. 1 (Hall Supp Rebuttal); **Exhibit 8** (Kalayjian Deposition at 25:8-18); **Exhibit 9** (Webb Rebuttal); **Exhibit 10** (Hall Rebuttal); **Exhibit 11** (Kelly Rebuttal); **Exhibit 12** (Kelly Supp. Rebuttal).  Flatiron has raised the issue of ATS's duplicative testimony in its meet and confer conference with ATS.  To date, ATS has refused to eliminate this duplicative testimony and has refused to identify which of ATS's experts will address each topic identified in Exhibit 7.  Accordingly, Flatiron requests that the Court order ATS to restrict its trial presentation to one expert for each topic in Exhibit 7 that is not otherwise excluded from evidence by Flatiron's motions *in limine* or Daubert motions.

## CONCLUSION

WHEREFORE, for the reasons stated herein, Flatiron respectfully asks the Court to grant this Motion *in Limine*, and to exclude the four categories of evidence discussed above.

Dated: December 1, 2023

By:
 /s/ *Buck Beltzer*
Buck Beltzer, #37804
Bret Gunnell, #24579
Michael Zehner, #51312
**Beltzer Bangert & Gunnell LLP**
5420 S. Quebec St.
Suite 103
Greenwood Village, CO 80111
(720) 576-7225
buck@bbglaw.com
bret@bbglaw.com
mzehner@bbglaw.com

Michael C. Davis
David L. Feinberg
Justin B. Nemeroff
**Venable LLP**
600 Massachusetts Ave. NW
Washington, DC 20001
(202) 344-4000
mcdavis@venable.com
dlfeinberg@venable.com
jbnemeroff@venable.com

ATTORNEYS FOR FLATIRON | AECOM, LLC

11

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.

*/s/Rhonda Rudolph*
Rhonda Rudolph
