IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

## ORDER DENYING AECOM'S FEDERAL RULE OF EVIDENCE 702 MOTIONS

Before the Court is Plaintiff AECOM Technical Services, Inc.'s ("AECOM" or "ATS") Motion to Exclude the Expert Testimony of Dr. Kenneth J. O'Connell Pursuant to F.R.E. 702 ("O'Connell Motion). (ECF No. 292.) Defendant Flatiron | AECOM, LLC filed a response (ECF No. 294), and AECOM filed a reply (ECF No. 299).

Also before the Court is AECOM's Motion to Exclude the Expert Testimony of James Melvin Torres Pursuant to F.R.E. 702 ("Torres Motion"). (ECF No. 293.) Flatiron filed a response in opposition (ECF No. 295), and AECOM filed a reply (ECF No. 298).

Neither party requested an evidentiary hearing on either motion, and the Court finds it does not need one to resolve them. For the following reasons, the O'Connell Motion is denied, and the Torres Motion is denied.

### I. LEGAL STANDARDS

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005).

Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (as amended on Dec. 1, 2023). They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Further, Rule 402 provides that irrelevant evidence is not admissible.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II. ANALYSIS

### A.   Kenneth O'Connell

AECOM requests the exclusion of expert opinion testimony of Flatiron's standard of care expert, Dr. Kenneth O'Connell. AECOM asks the Court to exclude certain

opinions of O'Connell, who opines that AECOM's performance of Pre-Award Design services included 72 violations of the standard of care ("VSCs"), which he describes as "significant deviations" between AECOM's preliminary Pre-Award Design and the final released for construction ("RFC") Design that Flatiron constructed, resulting in "significant scope growth, quantity increases, schedule impacts, and costs increases on the Project." (ECF No. 292 at 1.) Specifically, AECOM seeks to exclude Opinions 3–8 in O'Connell's initial report because they will be unhelpful to the jury and are based on a flawed methodology. (*Id.*)

      1.    <u>Unhelpful to the Jury</u>

AECOM argues that O'Connell offers only a bare list of 72 VSCs without calculating or opining what (if any) scope growth, quantity increases, schedule impacts, cost increases or damages were caused by any of these VSCs. (*Id.*) According to AECOM, O'Connell deliberately did not determine damages on a VSC-by-VSC basis (or at all, since he left that to Flatiron's damages expert, James Melvin Torres, who purportedly did not do so either), O'Connell's opinion is irrelevant and will be of no help to a jury in determining the damages caused by the VSCs. (*Id.* at 7.)

In response, Flatiron argues that in a case like this one, where the contracts at issue required AECOM "to conform to all applicable professional engineering principles generally accepted in Colorado for substantially similar projects (*i.e.*, the standard of care), expert testimony to establish that standard of care and ATS's failure to comply with it is essential to the jury's understanding of the case." (ECF No. 294 at 4 (citing *Raup v. Vail Summit Resorts, Inc.*, 233 F. Supp. 3d 934, 941 (D. Colo. 2017) ("[W]hen the standard of care is outside the common knowledge and experience of ordinary persons," expert witness testimony is needed)).) Further, Flatiron disputes the

3

proposition that its expert must quantify the damage caused by each individual VSC, particularly where, as here, the VSCs were "intertwined and overlapping." (*Id.* at 4–5.)

Having considered the parties' arguments, the Court concludes that AECOM's objections to O'Connell's testimony go to their weight and not their admissibility. As Flatiron argues, O'Connell is a standard of care expert, not a damages expert, and therefore, his opinions will help the jury understand the issue of liability. Under Colorado law, "the plaintiff in a breach of contract action . . . must . . . provide the factfinder with a reasonable basis for calculating actual damages in accordance with the relevant measure. . . . However, proof of damages with mathematical certainty is not required." *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 477 (Colo. App. 2003) (internal citations omitted). Accordingly, the Court denies this portion of the O'Connell Motion.

2. Methodology

Next, AECOM argues that O'Connell employs a flawed methodology that treats every change between the Pre-Award Design and RFC Design as a VSC, while completely failing to consider other factors. (ECF No. 292 at 1.) AECOM objects to O'Connell's failure to consider what it calls other "confounding factors," such as "how, during the pursuit phase, Flatiron directed [AECOM] not to update its preliminary drainage designs to match a complete road remodel," "Flatiron executives' last-minute decision to make aggressive reductions to Flatiron's bid to keep it below CDOT's 'upset limit' (the maximum amount CDOT would accept) and to underbid Flatiron's competitors," or "Flatiron's own April 2020 hindsight assessment of its own errors in its bid that led to millions of dollars in increased costs." (*Id.* at 8–10.) According to AECOM, "O'Connell acknowledged the existence and potential impact of these and

4

other confounding factors in his deposition testimony, but he made no effort in his causation analysis to determine whether such confounding factors caused some or all of the observed scope growth and quantity increases, unless the scope growth or quantity increases were documented in an executed change order." (*Id.* at 10.)  Thus, AECOM argues that O'Connell's methodology is unreliable and will not assist the jury.

Flatiron responds that O'Connell did not automatically assume that all VSCs were attributable to AECOM's breaches.  Specifically, Flatiron points to O'Connell's deposition testimony stating that he "did not, in fact, automatically assume that all design changes were due to ATS's VSCs." (ECF No. 294 at 7 (citing ECF No. 292-4 at 166:20–24 ("It is not the fact that there's a difference that gives rise to the VSC.  What gives rise to the VSC is the reason for why there are differences and specific things that occurred in the design.").  Further, Flatiron disputes that O'Connell did not consider other confounding factors and argues that several of the issues AECOM identifies are in fact disputed issues of material fact or are irrelevant. (*Id.* at 8.)  Importantly, Flatiron emphasizes that its expert is "not obligated to adopt ATS's assumptions or its subjective theory of the case in formulating his opinions." (*Id.*)

The Court agrees with Flatiron.  While O'Connell's opinions may lack accuracy in AECOM's view, such purported weaknesses in his opinions are for AECOM to attack on cross examination.  As Flatiron argues, and the Court concludes, "the bulk of ATS's criticisms are directed toward Dr. O'Connell's data and assumptions—not his methodology." (ECF No. 294 at 9.)  Therefore, "they go to the weight of his opinions, rather than their admissibility." (*Id.* (citing *Straughen v. BHS, Inc.*, 2023 U.S. Dist. LEXIS 84049, at *38–39 (D. Colo. May 12, 2023) ("Plaintiffs' criticisms suggest

challenges to [the expert's] data and/or assumptions, but do not address his methodology, and thus go the weight, rather than the admissibility, of [his] opinions.")).) Therefore, the Court denies this portion of the O'Connell Motion.

### B.     James Melvin Torres

Torres is Flatiron's damages expert.  (ECF No. 293 at 1.)  AECOM seeks to exclude Torres's Opinions 1 and 2, which address AECOM's alleged VSCs, and Opinion 6, which calculates damages based on what AECOM describes as the Total Cost Method.  (*Id.*)

Torres states that Flatiron expended approximately $502.5 million on the Project by January 2021—a Project Flatiron told CDOT it could build for $204 million ($237.5 million with change orders).  (*Id.* at 6.)  Flatiron's cost overrun (the difference between the $237.5 million contract value and Flatiron's claimed $502.5 million total expenditure) is $265 million.  (*Id.*)  Flatiron's $263,512,812 damages claim against AECOM is 99.4% of its $265 million cost overrun.  (*Id.*)  Torres's $263.5 million damage calculation in Opinion 6 attributes nearly 100% of Flatiron's $265 million in claimed cost overruns to AECOM's alleged design errors.  (*Id.*)

AECOM argues that the Court should exclude Torres's testimony because he uses the Total Cost Method to calculate damages, which AECOM argues violates Colorado law.  (*Id.* at 6.)  AECOM explains that under the Total Cost Method, damages are "assumed to be the difference between the total costs incurred by the contractor to complete a project, and its bid amount."  (*Id.* (citing *Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002)).)  However, according to AECOM the Total Cost Method is "highly disfavored because it ignores causation and instead assumes 'that every penny of the plaintiff's costs are prima facie reasonable, that the bid was

accurately and reasonably computed, and that the plaintiff is not responsible for any increases in cost.'" (*Id.* at 6–7 (citing *Neal & Co. v. U.S.*, 36 Fed. Cl. 600, 638 (1996)).) For support, AECOM relies on *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 479 (Colo. App. 2003), which AECOM argues stands for the proposition that Colorado has "flatly reject[ed]" the Total Cost Method in favor of requiring proof of causation. (ECF No. 293 at 7.)

AECOM acknowledges that Torres claims to have used a slightly different method, namely the Modified Total Cost Method, which AECOM asserts "is a version of the Total Cost Method which similarly assumes the defendant is generally responsible for all cost overruns, but modifies them by 'subtracting such things as bid errors, unreasonable costs, and costs' that are not the responsibility of the [plaintiff]." (*Id.* at 7 (citation omitted).) Regardless of Torres's chosen nomenclature, AECOM argues that the Modified Total Cost Method "also violates Colorado law because it similarly dispenses with causation and presumes that the designer is responsible for all cost overruns—save for the amount the expert attributes to the contractor." (*Id.* at 3.) And in any event, AECOM argues that Torres *really* employs a Total Cost Method, which is simply "disguised as a Modified Total Cost Claim methodology." (ECF No. 298 at 1; *see also* (ECF No. 293 at 4 (arguing that Torres's Modified Total Cost Claim Methodology is "really an unmodified Total Cost Method claim").) AECOM also argues that Torres's methodology is unreliable. (*Id.* at 9.)

Flatiron responds that as an initial matter, Torres did not use the Total Cost Method, and AECOM only *thinks* that he did because Flatiron contends that AECOM relies on faulty calculations. (ECF No. 295 at 4.) Flatiron emphasizes that AECOM

7

"ignores that Flatiron did not attribute to ATS over $120 million in costs it incurred on the C-470 Project." (*Id.* at 5.) Moreover, Flatiron disputes AECOM's assertion that Colorado courts have rejected the Total Cost Method, pointing out that *City of Westminster* "stands for the proposition that there should be a basis for differentiating between costs attributable to the defendant, and costs for which the defendant was not legally or contractually liable." (*Id.* at 6 (citing *City of Westminster*, 100 P.3d at 478).) Further, Flatiron explains the reasons for which Torres's opinions are reliable.

Upon due consideration, the Court will permit Torres to offer his damages opinions based on the Modified Total Cost Method at trial. First, the Court concludes that by moving to exclude these damages opinions, AECOM has come as close as possible to running afoul of WJM Revised Practice Standard III.H.1, which provides, in part:

> In my experience, many Rule 702 motions are veiled dispositive motions, in the sense that the moving party seeks to exclude expert evidence and thereby leave the opposing party without evidence necessary to prove an element of its claim or defense. In most circumstances, such a tactic contradicts the strong preference for deciding cases on their merits. Moreover, the vast majority of purported Rule 702 arguments go to weight and not admissibility.

Such is the case here. Were the Court to exclude Torres's opinions, Flatiron would be unable to prove up the damages element of its breach of contract claim at trial. Despite these circumstances, the Court has determined that it will allow Torres's testimony and need not order additional expert discovery so that Flatiron might supplement Torres's opinions.

Second, the Court disagrees with AECOM's reading of *City of Westminster* and

its contention that the Court must follow it.[1]  It is true that the state court acknowledged that recovery under a total cost theory is "disfavored" and has "generally been rejected unless a basis appears for even an educated guess as to the increased costs suffered by plaintiffs due to that particular breach or breaches by the defendant as distinguished from those causes from which defendant is contractually exempt from responding in damages."  *City of Westminster*, 100 P.3d at 478 (internal quotation marks and alterations omitted).  The court explained that "[s]ome jurisdictions employ a four-part test under which the trial court must initially determine whether total cost is an appropriate measure of damages: (1) proving actual losses directly is impractical; (2) the bid is reasonable; (3) actual costs are reasonable; and (4) the injured party was not responsible for the added costs."  *Id.*  Further, the court stated that it "found no Colorado case discussing this total cost theory," and ultimately, the court stated that in its view, "the fourth element—that the injured party is not responsible for added costs—is consistent with the general rule that uncertainty in the amount of damages does not preclude recovery, but '[u]ncertainty as to the cause from which they proceed' supports rejection of a damage claim as "too remote, or conjectural or speculative."  *Id.*

Given the foregoing, the Court agrees that a total cost method approach for

---

[1] AECOM states that *City of Westminster* provides "controlling state law in this *Erie* context."  (ECF No. 293 at 8 (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000) ("[T]his court must follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise.")).)  However, the Tenth Circuit has also stated: "Although we are not bound by a lower state court decision, 'decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not binding precedent under state law.'"  *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003) (citation omitted).

Notwithstanding *Koch* and *Clark*, the Court finds *City of Westminster* does not stand for the bright-line proposition that the total cost method has been definitively rejected in Colorado, and therefore concludes that it is not compelled to follow that case.

calculating breach of contract damages is disfavored, and it is certainly possible that the Colorado Supreme Court might in the future reject it.  However, this legal dispute is arguably much ado about nothing, as the Court agrees that Torres did not in fact employ a total cost method, but instead used a modified total cost method damages calculation approach.

As to the reliability of Torres's Modified Total Cost Method, the Court notes that Flatiron cited several cases in which courts have allowed such a method to be used to compute damages.  (*See* ECF No. 295 at 6 (citing cases).)  Additionally, Torres testified that:

> [W]e did a detailed review of cost overruns on this project to determine where the losses occurred by cost category, and then within a cost category, cost code by cost code. And then as we identified those cost overruns, then we determined what were the potential causes of those cost overruns.
>
> And we reviewed project records, contemporaneous records, other job cost accounting information, invoices, subcontractor pay-ups, time and equipment reports, everything that we could get our hands on at the discrete level, to understand what that cost growth was attributable to.
>
> Then we took that information to the project team and then had them assist us to understand what the cost growth in their perspective was attributable to.  And . . . then I was able to determine what I felt was a conservative approach to—to calculating the damages by cost category and by cost code.

(*Id.* at 7 (citing ECF No. 295-1, Torres Dep. at 133:14-134:11).)  Torres also stated in his expert report:

> **Modified Total Cost Method** – Given the Project-wide impacts and disruption, in some instances it was most

> reasonable to calculate the impact of ATS's VSCs by aggregating total recorded costs for impacted work activities and/or categories, comparing these costs to F|A's anticipated costs at bid to quantify cost growth, and then modifying this cost growth to account for any costs that are the responsibility of parties other than ATS (*e.g.*, CDOT or F|A itself).

(ECF No. 293-1 at 116.)  Accordingly, it appears as though Torres did not wholesale attribute damages to AECOM but factored in costs that were other parties' responsibility.

The Court finds that AECOM's challenges to Torres's anticipated testimony are best suited to cross examination.  Accordingly, the Court denies the Torres Motion.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. The O'Connell Motion (ECF No. 292) is DENIED; and

2. The Torres Motion (ECF No. 293) is DENIED.

Dated this 2nd day of January, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge