IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

 Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

 Defendant-Counterclaim Plaintiff.

**ORDER GRANTING IN PART AND DENYING IN PART FLATIRON'S FEDERAL RULE OF EVIDENCE 702 MOTIONS**

 Before the Court is Defendant Flatiron | AECOM, LLC's ("Flatiron") Motion to Exclude the Expert Testimony of Mark Buchanan ("Buchanan Motion"). (ECF No. 290.) Plaintiff AECOM Technical Services, Inc. ("AECOM") filed a response in opposition (ECF No. 297), and Flatiron filed a reply (ECF No. 303). Also before the Court is Flatiron's Motion to Exclude Testimony of Wayne Kalayjian ("Kalayjian Motion"). (ECF No. 291.) AECOM filed a response in opposition (ECF No. 296), and Flatiron filed a reply (ECF No. 302).

 Neither party requested an evidentiary hearing on either motion, and the Court finds it does not need one to resolve them. For the following reasons, the Buchanan Motion is granted in part and denied in part, and the Kalayjian Motion is granted in part and denied in part.

### I. CONFERRAL REQUIREMENT AND ORDER TO SHOW CAUSE

 Before the Court addresses the merits of the Motions, it is compelled to

emphasize the parties' utter failure to engage in *meaningful* conferral.  *See Hoelzel v. First Select Corp.,* 214 F.R.D. 634 (D. Colo. 2003).  D.C.COLO.LCivR 7.1 requires the following:

> Before filing a motion, counsel for the moving party or an unrepresented party shall confer or make reasonable, good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter.  The moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty.

Simply including a Certificate of Conferral without truly attempting to resolve disputes that are not actually in dispute is an extreme waste of judicial resources.  While the Court is here specifically referencing the parties' conferral failure in regard to the Motions, it must be noted this is but the latest iteration of a pattern of such conduct.

To be clear, the Court takes issue with the fact that the parties' state that they conferred and could not reach a resolution, Flatiron moved to exclude certain testimony, and then AECOM responded that it was not even attempting to introduce such testimony—rendering those portions of the motions moot.  This is precisely why the District of Colorado's Local Rules require *good faith* conferral.  In its reply briefs, Flatiron recognizes this problem with respect to certain arguments, which the Court appreciates. (ECF No. 302 at 2; ECF No. 303 at 5.)

Accordingly, the Court will order AECOM to show cause as to why it should not be ordered to pay Flatiron's attorneys' fees and costs reasonably incurred with respect to those portions of its Rule 702 motions which were rendered moot by AECOM's tardy concessions that it did not intend to introduce such evidence at trial.

Both parties have wasted scarce judicial resources and should such conduct

2

continue, the Court will consider imposing sanctions *sua sponte*. Without a doubt, should either party file a motion for attorneys' fees at a later stage of this litigation, the Court expects the parties to explicitly exclude fees and costs for time spent briefing Rule 702 issues that they need never have briefed at all.

## II. LEGAL STANDARDS

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (as amended on Dec. 1, 2023). They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Federal Rule of Evidence 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise, including the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Further, Rule 402 provides that irrelevant evidence is not admissible.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## III. ANALYSIS

**A.     Mark Buchanan**

AECOM retained Buchanan as a rebuttal expert to assess whether Flatiron acted in conformity with the construction industry standard of care for experienced design-build heavy and civil contractors typical of projects like the project at issue, Flatiron's C-470 design-build highway project for the Colorado Department of Transportation ("CDOT") (the "Project").  (ECF No. 297 at 1.)  Flatiron argues that the Court should preclude Buchanan from offering certain testimony at trial.  (ECF No. 290.)  The Court addresses each argument below.

1.     <u>Factual Narrative</u>

Flatiron argues that Buchanan intends to "recite a lengthy narrative of disputed and cherry-picked facts to the jury" because "[h]e spends nearly 125 pages of his 163-page report providing an inaccurate factual recounting of the entire case—including his (and [AECOM's]) view of what the contracts say and what happened on the C470 Project."  (ECF No. 290 at 3.)

In response, AECOM states that it "has no intention of calling Mr. Buchanan to merely recite facts at trial or read a narrative of the case into the record."  (ECF No. 297 at 8.)  Instead, AECOM explains that Buchanan was retained to offer testimony "that Flatiron violated the construction industry standard of care for experienced design-build heavy and civil contractors typical of projects like the Project at issue, which opinions

were informed by facts supported in the case record as well as Mr. Buchanan's own expertise." (*Id.* at 8–9.)

The Court finds Senior U.S. District Judge Christine M. Arguello's opinion in *Turnkey Solutions Corp. v. Hewlett Packard Enterprise Co.*, 2018 WL 571877, at *3 (D. Colo. Jan. 26, 2018) highly persuasive and will follow its reasoning. As in this case, the party proffering the challenged expert in *Turnkey* stated that it did not intend to have its expert simply regurgitate facts, read a narrative of the case into the record, or otherwise recite facts under the guise of expert opinion. *Id.* Accordingly, the court accepted that concession and declined to exclude the proposed testimony. *Id.* However, the court cautioned that an expert "may not simply rehash otherwise admissible evidence about which he has no personal knowledge, and must do more than simply constructing a factual narrative based upon record evidence or addressing lay matters which a jury is capable of understanding and deciding without the expert's help." *Id.* (quoting *Wells v. Allergan, Inc.*, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) (internal quotation marks and alterations omitted)).

Accordingly, the Court will hold AECOM to its representation that Buchanan will not simply recite or rehash facts, and denies this portion of the Buchanan Motion as moot. The Court expects AECOM to instruct Buchanan to follow the parameters set forth in *Turnkey*.

2.  State of Mind

Flatiron argues that Buchanan must be precluded from "improperly speculating about the knowledge or intent of [its] representatives." (ECF No. 290 at 6.) In its response, AECOM states that it "does not intend to elicit opinion testimony regarding Flatiron's state of mind from Mr. Buchanan at trial, rendering this argument moot." (ECF

5

No. 297 at 10.)  However, AECOM argues that Buchanan should still be permitted to testify about facts from which the jury may infer Flatiron's intent.  (*Id.*)

Based on AECOM's representations in its response, the Court denies this portion of the Buchanan Motion as moot.  The Court will hold AECOM to its representation that it will not elicit testimony regarding Flatiron's state of mind.  However, the Court agrees with AECOM that Buchanan may testify about facts from which the jury could infer intent, as such testimony is proper expert testimony.  *McCullon v. Parry*, 2021 WL 4947237, at *4 (D. Colo. June 23, 2021) (citing *Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *8 (D. Colo. Mar. 25, 2020) (experts "cannot testify as to motive, intent, or state of mind, but ... can testify to facts from which the jury can then infer motive, intent, or state of mind.")).

3.      Legal Opinions

Flatiron asks that the Court preclude Buchanan from offering legal opinions, including opinions regarding the correct interpretation and application of the Teaming Agreement and Subcontract.  (ECF No. 290 at 7.)  In response, AECOM agrees that Buchanan will "not explain the law, nor does he intend to provide a legal opinion in his testimony."  (ECF No. 297 at 9.)  Instead, AECOM explains that Buchanan will testify "about his interpretations of the parties' agreements from a contractor's point of view."  (*Id.*)

Based on AECOM's representations in its response, the Court denies the portion of the Buchanan Motion requesting that the Court preclude Buchanan from offering legal opinions as moot.  However, to the extent AECOM still believes Buchanan can offer interpretations of the contracts in this case from a contractor's point of view, the Court grants that portion of the Buchanan Motion, as "contract interpretation is not a

6

proper subject for expert testimony." *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1267 (D. Colo. 2022); *see also Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, 2022 WL 973079, at *14 (D. Utah Mar. 31, 2022) ("the court will not entertain expert testimony that usurps the court's responsibility of interpreting the contract"). Buchanan is precluded from offering interpretations of the contracts in this case from a contractor's point of view.

      4.     <u>Opinions in Supplemental Rebuttal Report</u>

Flatiron argues that Buchanan should be prohibited from testifying to any of the opinions set forth in his Supplemental Rebuttal because they are irrelevant under Rule 402 and improper under Rule 404. (ECF No. 290 at 8.) Specifically, Flatiron argues that in the Supplemental Rebuttal, Buchanan examines a document titled "Special Request for Equitable Adjustment" ("SREA") that Flatiron submitted to CDOT in a separate dispute regarding the C470 Project. (*Id.*) According to Flatiron, Buchanan analyzes Flatiron's claim therein regarding weather impacts on the C470 Project and concludes that "the winter of 2019 was not as intense as [Flatiron]" described in the SREA, and that Flatiron would not have experienced any impacts if it "had carried sufficient weather impact days in its calendar . . . ." (*Id.*) Flatiron argues that Buchanan "does not (and cannot) explain . . . why his opinions on Flatiron's weather related claims to CDOT are relevant to the dispute in this case between Flatiron and [AECOM]." (*Id.*)

Flatiron contends that this evidence is irrelevant under Rule 401 because the "validity or accuracy of Flatiron's weather-related claim to CDOT has no connection—and is of zero consequence—to [AECOM's] duty to comply with the standard of care and the terms of the Subcontract in performing its design work." (*Id.* at 9.) Additionally, Flatiron characterizes Buchanan's testimony and use of the SREA as improper

7

character evidence under Rule 404(b).  (*Id.*)  Flatiron cites no case law applying Rule 404(b) to corporations.[1]  (*See* ECF Nos. 290, 303.)  Flatiron also argues in its reply that the SREA is a protected settlement communication.[2]  (ECF No. 303 at 2.)

In its response, AECOM explains that the SREA is relevant because while Flatiron argues it spent approximately $502 million on the Project when it bid approximately $204 million to build it, Flatiron has ascribed responsibility for large portions of the cost overruns to multiple parties.  (ECF No. 297 at 4.)  AECOM states that the SREA is Flatiron's claim against CDOT for $92 million of cost overruns primarily due to bad weather.  (*Id.*)  AECOM explains that while the SREA to CDOT was pending, Flatiron filed a claim for $263 million worth of damages against AECOM, claiming the

---

[1] Given Flatiron's failure to cite authority supporting the application of Rule 404(b) in this context, the Court will not exclude the evidence on this basis and will address this argument no further.  *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir.1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990)) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'"); *see also United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived).

[2] Flatiron cites to its Federal Rule of Evidence 408 arguments in its Motion *in Limine*. (ECF No. 303 at 2 (citing ECF No. 301 at 2–6).)  The Court routinely disregards parties' arguments which rely on incorporating arguments made in other briefs by reference and looks unfavorably upon Flatiron for doing so now.

"This Court . . . is not required to comb through [Flatiron's] filings to find matters to support [its] position."  *LNV Corp. v. Hook*, 2014 WL 4213586, at *3 (D. Colo. Aug. 26, 2014), *aff'd*, 638 F. App'x 667 (10th Cir. 2015) (citing *Milton v. Daniels*, 521 F. App'x 664, 668 (10th Cir. 2013)).  The Tenth Circuit has observed that "incorporation by reference is a sorry briefing technique and it seldom (if ever) will be an adequate means to convey an argument to a court." *Id.* (quoting *Milton*, 521 F. App'x at 668); *see also In re Antrobus*, 563 F.3d 1092, 1097 (10th Cir. 2009) ("[W]e have disapproved of parties adopting their previous filings in lieu of fully setting forth their argument before this court.")).

At this late juncture of the litigation, however, the Court will not strike this portion of Flatiron's argument and has reviewed the arguments in the parties' motion *in limine* briefs as they relate to the issues presented in the instant Motions.  The Court will, however, reserve its analysis and ruling on the parties' respective Rule 408 arguments for its forthcoming order addressing the parties' motions *in limine*.

damages it sustained were due to AECOM's breach of the standard of care—without mentioning the impacts of bad weather or the claim against CDOT.  (*Id.*)

Accordingly, in AECOM's view, Buchanan's opinions regarding the SREA are relevant because the SREA and its revision[3] "confirm that Flatiron is seeking a partial double recovery from both [AECOM] and CDOT of the same alleged monetary damages for the same alleged Project delays and same alleged Project costs."  (*Id.*) Moreover, AECOM argues that Flatiron's attempt to seek damages from multiple parties for its cost overruns "goes to Flatiron's credibility and good faith, and also completely undermines the credibility of Flatiron's claim against [AECOM]," making such evidence relevant under Rule 401.  (*Id.* at 4–5.)  AECOM also asserts that Buchanan's opinions that Flatiron's allegations of weather-related impacts are overstated and that Flatiron did not meet the construction industry standard of care in its scheduling for weather delays are also relevant.  (*Id.* at 5.)

Having carefully considered the parties' arguments, the Court concludes that Buchanan may offer his opinions with respect to the SREA at trial.  The Court agrees with AECOM that the fact that Flatiron filed a claim with CDOT for $92 million in cost overruns on the Project while simultaneously suing AECOM for $263 million worth of damages on the Project is relevant to AECOM's defense.  Moreover, AECOM has explained that as its standard of care expert, Buchanan should be allowed to offer opinions concerning whether "Flatiron's allegations of weather-related impacts are

---

[3] In Flatiron's Motion *in Limine*, it explains that the SREA has "been replaced with an updated, more accurate statement of Flatiron's claim and positions called the 'Close-Out REA.'" (ECF No. 301 at 4.)  According to Flatiron, "[t]he Close-Out REA, which [it] submitted to CDOT on June 24, 2022 (and produced to [AECOM] in July 2022), is Flatiron's current claim for $64 million in damages against CDOT."  (*Id.*)

overstated and that Flatiron did not meet the construction industry standard of care in its scheduling for weather delays." (ECF No. 297 at 5.) The Court agrees with this proposition as well.

In this case, where AECOM's purported violation of the standard of care provision in the contracts at issue is so critical, AECOM will be allowed to present evidence from which the jury might conclude that, in whole or in part, it was Flatiron's breach of the standard of care and not AECOM's, that led (or at least greatly contributed) to the vast cost overruns. Accordingly, the Court finds that Buchanan's expert testimony does not violate Rules 401 or 402 and denies this portion of the Buchanan Motion.

**B.    Wayne Kalayjian**

AECOM retained Kalayjian as a rebuttal expert to assess and rebut the alleged breaches in the engineering standard of care by AECOM claimed by Flatiron's standard of care expert, Dr. Kenneth J. O'Connell. (ECF No. 296 at 1.) Flatiron argues that the Court should preclude Kalayjian from offering certain testimony at trial. (ECF No. 291.) The Court addresses each argument below.

    1.    <u>Opinions that Flatiron Submitted False Claims or Made False Financial Representations</u>[4]

Flatiron states that in Opinions 10 and 11 of his Initial Rebuttal and in his entire Supplemental Rebuttal, Kalayjian opines that Flatiron filed "False Claims" in violation of Federal and State law and that Flatiron "knowingly" violated its financial reporting obligations. (ECF No. 291 at 3–4.) Flatiron argues that these opinions are irrelevant

---

[4] The parties quite nearly inextricably conflated their arguments concerning Kalayjian's Opinions 10 and 11. Therefore, the Court first explains these arguments and then makes separate rulings in subsections (1)(a) and (1)(b) for each of Kalayjian's opinions.

under Rules 401 and 402 because whether Flatiron filed false claims or fraudulent disclosures to various third parties—which it disputes it did—has no bearing on the issues in this case, namely, whether AECOM violated its standard of care and whether Flatiron must pay AECOM the amount it seeks.  (*Id.* at 4.)  Additionally, Flatiron argues that these opinions are inadmissible under Rule 403 because they will irreparably prejudice Flatiron by leaving the jury with the impression that Flatiron is a "bad actor."  (*Id.*)

In response, AECOM states that Kalayjian's opinions regarding Flatiron having made false claims to CDOT are supported by ample evidence in the record.  (ECF No. 296 at 3.)  Specifically, AECOM points to a July 2019 notice in which CDOT placed Flatiron on "'notice of breach,' stating that Flatiron had provided false and materially misleading representation including Project Completion deadlines, [Flatiron's] alleged delays, and untimely notices. . . ."  (*Id.* (citing ECF No. 296-1).)  Additionally, AECOM identifies an August 2020 document in which CDOT informed Flatiron's insurance company, Liberty Mutual Surety, that the Project was "'still not complete in accordance with the terms of the Contract,' making Flatiron's request to CDOT for final payment a 'false and materially misleading representation[] for achieving the Completion Deadlines . . . given that the required prerequisites had not been met . . . .'"  (*Id.* (citing ECF No. 296-1).)

AECOM also identifies evidence in the record whereby CDOT has asserted that Flatiron engaged in "bad faith behavior, given the entirely inaccurate Project Completion notices, coupled with the fact that it is nowhere close to being eligible for Final Payment," "continu[ing] to provide false claims of CDOT-Caused Delays in an attempt to

11

shift responsibility to CDOT," and of "provid[ing] false and materially misleading representation with the . . . submitted Final As-Built Schedule submittal." (*Id.* (citing ECF No. 296-1).)  Further, AECOM cites the SREA as evidence of Flatiron's attempt to seek double recovery from AECOM and CDOT for the same alleged delays and project costs.  (*Id.* (citing ECF Nos. 296-1–296-3).)

AECOM explains that Kalayjian's opinions on these issues are relevant "because they tend to show that Flatiron—not [AECOM]—is to blame for the Project losses it has incurred and seeks to recover as damages from [AECOM], and that there were other factors that led to Flatiron's damages." (*Id.* at 4.)  According to AECOM, "[t]he fact that Flatiron blames multiple parties for its Project delays and cost overruns, including [AECOM] and CDOT, and seeks simultaneous overlapping recoveries from these parties based on very inconsistent claims, is relevant because it goes to Flatiron's credibility and good faith, and completely undermines the credibility of Flatiron's position that [AECOM] alone is responsible for the $263 million of damages Flatiron seeks to recover from [AECOM]." (*Id.*)

With respect to Kalayjian's opinions regarding Flatiron's alleged violations of its financial reporting obligations to its corporate parent, AECOM states that Kalayjian will not testify to these opinions at trial.  (*Id.*)  However, AECOM argues that Kalayjian should be permitted to testify regarding the accounting errors he observed in Flatiron's financial reports because they are relevant and supported by the record.  (*Id.*)  AECOM asserts that these opinions, which "identify egregious flaws in Flatiron's financial reports," go to Flatiron's credibility and are relevant to demonstrate that "the damages claimed by Flatiron against [AECOM] cannot be trusted due to Flatiron's poor

12

accounting practices."  (*Id.* at 5.)  AECOM explains that Kalayjian is qualified to offer such opinions because he has "substantial experience in forensically analyzing construction industry claims and ensuring the integrity of claims."  (*Id.* at 6.)

The Court has reviewed Kalayjian's Opinions 10 and 11 and has carefully considered the parties' arguments on this issue.  The Court makes the following rulings.

   a. *Opinion 10*

The Court first addresses Opinion 10, which concerns evidence of purported "false claims."  Notwithstanding that Opinion 10 may be relevant, the Court nonetheless concludes that Kalayjian's opinions and the manner in which he construes the communications between CDOT and Flatiron as "false claims" fail the Rule 403 balancing test.  The Court does not necessarily agree with Flatiron's position that whether it filed "false claims or fraudulent disclosures to various third parties . . . has no bearing on the issues in this case," but the Court *does* agree with Flatiron that these opinions by Kalayjian would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and the prospect of misleading the jury.  (ECF No. 291 at 4.)

The Court is particularly persuaded by Flatiron's point that "no government authority has even suggested that Flatiron may be investigated for—much less charged with—any kind of wrongdoing."  (*Id.*)  While AECOM explains that Kalayjian will not offer testimony "regarding whether Flatiron's false claims to CDOT violate the federal or state False Claims Act," this apparent concession is truly of no moment.  Any mention of the phrase "false claims" would, in the Court's view, be a bright red flag to a jury—and to introduce evidence of such purported "false claims" through an expert witness would certainly cause unfair prejudice to Flatiron.

13

Accordingly, the Court grants this portion of the Kalayjian Motion and precludes him from offering Opinion 10 at trial. However, to the extent Flatiron seeks to preclude Kalayjian from offering testimony that concern his understanding of material factual matters, or matters which would be required to properly afford the jury the factual context for his opinions, the Court denies this portion of the Kalayjian Motion.

        b.    *Opinion 11*

Next, the Court addresses Opinion 11, which concerns evidence of purported violations of Flatiron's financial reporting obligations. In the Court's view, this is an even clearer call than Opinion 10. The introduction of evidence through an expert witness of Flatiron's purported reporting violations or accounting errors is perhaps only marginally relevant—if at all—and any probative value is outweighed by the danger of unfair prejudice, confusion of the issues and misleading of the jury in violation of Rule 403. Therefore, the Court grants this portion of the Kalayjian Motion and excludes Opinion 11.

      2.    <u>Legal Opinions</u>

Flatiron points out that Kalayjian is not a lawyer and may not offer legal opinions; thus, Flatiron asks that Court to exclude his opinions regarding what constitutes a false claim and preclude him from instructing the jury on the legal ramifications or penalties of purported financial reporting violations. (ECF No. 291 at 5–6.)

In response, AECOM argues that Flatiron's request is moot because Kalayjian "will not offer opinion testimony at trial regarding how Flatiron's false claims to CDOT violate the federal or state False Claims Acts, or regarding Flatiron's violation of its financial disclosure obligations or its failure to accurately report the financial status of the Project to its parent company." (ECF No. 296 at 7.) Therefore, AECOM claims that

14

Flatiron's argument as to whether Mr. Kalayjian's testimony regarding the False Claims Acts or Flatiron's financial disclosure obligations should be excluded on this basis is moot." (*Id.*)

Given the Court's decision to preclude Kalayjian from offering, in material part, Opinions 10 and 11, the Court denies this portion of the Kalayjian Motion as moot.

3. State of Mind

The parties' arguments on this issue mirror their arguments in connection with the Buchanan Motion. To wit, Flatiron requests that the Court exclude Kalayjian's opinions or speculation regarding Flatiron's intent or state of mind. (ECF No. 291 at 7–8.) In its response, AECOM states that it "does not intend to elicit opinion testimony regarding Flatiron's state of mind from Mr. Kalayjian at trial, rendering this argument moot." (ECF NO. 296 at 7.)

Based on AECOM's representations in its response, the Court denies this portion of the Kalayjian Motion as moot. The Court will hold AECOM to its representation that it will not elicit testimony regarding Flatiron's state of mind. However, the Court agrees with AECOM that Kalayjian may testify about facts from which the jury could infer intent, as such testimony is proper expert testimony. *McCullon v. Parry*, 2021 WL 4947237, at *4 (D. Colo. June 23, 2021) (citing *Pinon Sun Condo. Ass'n v. Atain Specialty Ins. Co.*, 2020 WL 1452166, at *8 (D. Colo. Mar. 25, 2020) (experts "cannot testify as to motive, intent, or state of mind, but ... can testify to facts from which the jury can then infer motive, intent, or state of mind.")).

4. Factual Narrative

Like the preceding section, the parties' arguments on this issue mirror their arguments in connection with the Buchanan Motion. Again, Flatiron asks the Court to

15

preclude Kalayjian from offering testimony which is really "narration of disputed facts as truth." (ECF No. 291 at 10.)

In its response, AECOM states that it "has no intention of calling Mr. Kalayjian to merely recite facts at trial or read a narrative of the case into the record. Rather, [AECOM] intends to call Mr. Kalayjian to offer expert testimony regarding alleged breaches in the engineering standard of care by [AECOM], which opinions were informed by facts supported in the case record as well as Mr. Kalayjian's own expertise." (ECF No. 296 at 10.)

Accordingly, relying on AECOM's representation that Kalayjian will not simply recite or regurgitate facts, the Court denies this portion of the Kalayjian Motion as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. The Buchanan Motion (ECF No. 290) is GRANTED IN PART AND DENIED IN PART as set forth above;

2. The Kalayjian Motion (ECF No. 291) is GRANTED IN PART AND DENIED IN PART as set forth above; and

3. By **January 24, 2024**, AECOM is ORDERED TO SHOW CAUSE as to why it should not be ordered to pay Flatiron's attorneys' fees and costs reasonably incurred with respect to those portions of the Rule 702 motions which were rendered moot by AECOM's tardy concessions that it did not intend to introduce such evidence at trial. Should Flatiron choose to do so, it shall have until **February 7, 2024** to reply to AECOM's response to the Order to Show Cause.

Dated this 3rd day of January, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge