IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

---

**ORDER DENYING IN PART AND DEFERRING RULING IN PART
AECOM'S MOTION *IN LIMINE*** 

---

Before the Court is AECOM Technical Services' ("AECOM") Motion *in Limine* ("AECOM's MIL") (ECF No. 300) and Defendant Flatiron AECOM, LLC's ("Flatiron") response (ECF No. 311). For the following reasons, the Court denies in part and defers ruling in part AECOM's MIL.

## I. LEGAL STANDARD

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is

generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

## II. ANALYSIS

### A.   Damages Recoverable by Flatiron

AECOM requests that the Court exclude all evidence, testimony, argument, and references by Flatiron that Flatiron is entitled to damages in excess of the Subcontract's liability cap. (ECF No. 300 at 3.) AECOM argues that excluding such evidence will "streamline the case and ensure Flatiron does not confuse the jury, waste this Court's and the jury's time, or prejudice [AECOM] with irrelevant evidence about damages the Court has determined are not available to Flatiron." (*Id.* at 3–4.)

Alternatively, if the Court allows Flatiron to present damages in excess of the Subcontract's liability cap, AECOM contends that "the Court should instruct the jury as to (i) the existence of the limitation of liability provision in the Subcontract, and (ii) the Court's ruling that Flatiron's recovery is capped per the Subcontract's enforceable liability limitation." (*Id.* at 5.) AECOM also requests that the Court limit Flatiron's evidence of damages in the following ways: (1) prohibit Flatiron from presenting "any schedule-related or delay damages in excess of the liability cap because of the Subcontract's express provision that [AECOM's] 'liability for delay (including but not limited to LDs) shall be limited to 20% of the Total Design Fee in the aggregate which shall be included as part of the overall limitation of liability'" (ECF No. 1-1 at 6, ¶ 2), and (2) "Flatiron's evidence of damages should include a limitation that Flatiron is contractually precluded from recovering consequential damages." (ECF No. 300 at 5.)

2

Flatiron responds that the Court should deny this portion of AECOM's MIL because "the proper procedure is for the jury to decide Flatiron's entitlement to damages and the quantum thereof; and for the Court to subsequently decide the extent to which the jury's verdict must be reduced in accordance with the liability cap (or as a result of set-off)." (ECF No. 311 at 2.)  Critically, Flatiron points out that it cannot be expected to recognize the precise moment during the trial when it has proven damages equal to the liability cap and can proceed no further.  (*Id.* at 3.)

The Court finds that AECOM's request is overbroad and overreaching.  Further, as Flatiron points out, it would be unreasonable and unworkable for Flatiron to determine the precise moment at which it has presented damages evidence up to but not exceeding the liability cap during this 18-day trial.  The Court agrees with Flatiron that the proper approach it should take on this matter, in the event the jury returns a verdict in Flatiron's favor in excess of the liability cap, is to allow the parties to brief the issue of a possible damages award reduction by way of an appropriate post-trial motion.  Such briefing should, of course, keep in mind the Court's finding in its Order Granting AECOM's Amended Motion for Partial Summary Judgment (ECF No. 252) that the Subcontract's liability cap applies.  Accordingly, the Court denies this portion of AECOM's MIL.

B.  **Flatiron's Dismissed and Disallowed Claims**

AECOM asks the Court to exclude all evidence, testimony, argument, and references by Flatiron regarding the claims and theories that this Court has already dismissed and/or disallowed, including: (i) negligent misrepresentation claim (dismissed in ECF No. 97), (ii) willful and wanton breach theory (rejected in ECF No. 169), (iii) breach of the Teaming Agreement (dismissed in ECF No. 252), and (iv) fraudulent

inducement and fraudulent concealment theories (rejected in ECF No. 275).  (ECF No. 300 at 5–6.)  Because these claims and theories have been either dismissed or disallowed, AECOM argues that they are irrelevant under Rule 401; inadmissible under Rule 402; and prejudicial to AECOM, wasteful of the Court's and the jury's time, and potentially confusing to the jury under Rule 403.  (*Id.* at 6.)  Further, AECOM requests that the Court preclude Flatiron from introducing evidence and questioning witnesses about AECOM's intent and mental state during its performance under the Teaming Agreement and the Subcontract because AECOM argues that, at bottom, Flatiron is trying a breach of contract and not a fraud case.  (*Id.*)

Flatiron responds that much of this evidence is "highly relevant to Flatiron's breach of contract claim and is therefore admissible at trial."  (ECF No. 311 at 4.)  Moreover, "evidence relevant to show [AECOM] breached the Teaming Agreement— *e.g*., evidence of negligence, bad faith negotiation of the Subcontract, concealment, misrepresentations, and willful or wanton breach—is also relevant to show [AECOM] breached the Subcontract."  (*Id.* at 4 n.3.)

The Court concludes that this portion of AECOM's MIL is entirely too broad and unworkable, and for these reasons it will be denied.  In the Court's view, it would be nearly impossible to separate the facts exclusively related to the dismissed or disallowed claims from the claims remaining in this case.  Moreover, the "relief" AECOM truly seeks here—to limit the case to a pure breach of contract action—it will receive in the form of the Court's Final Jury Instructions and Verdict Form, which will reflect only those claims remaining in the case.  Thus, the Court denies this portion of AECOM's MIL.

4

### C.  CDOT Communications to Flatiron

AECOM requests this Court to rule in advance of trial that three categories of formal notice letters written by CDOT to Flatiron under their prime contract (the "Contract"), (ECF No. 300-1), have legal effect independent of the truth of any statements contained in them and are therefore not hearsay and are admissible.  (ECF No. 300 at 7 (citing *Cagle v. James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010) ("First, the contract was not excludable as hearsay.  It constituted an act of legal significance between Norris and her attorneys, not a 'statement' offered for its truth."); *see also Echo Acceptance Corp. v. Household Retail Servs.*, 267 F.3d 1068, 1087 (10th Cir. 2001) ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.")).)

The three categories are: (1) Directive Letters; (2) Notice Letters; and (3) Default Letters.  (*Id.*)  According to AECOM, "the letters at issue are not only admissible evidence of non-hearsay legal acts, but they are relevant evidence of Project design changes directed by CDOT (not caused by [AECOM]), Project schedule content changes directed by CDOT, and contract breach notices and pending disputes between CDOT and Flatiron over the same delay days and costs at issue in this case."  (*Id.*)  Additionally, AECOM argues that the letters meet the business records exception under Rule 803(6) because they were prepared in the normal course of CDOT's business to ensure the Project was completed on schedule and on budget.  (*Id.* at 9.)  Therefore, AECOM also contends the Court could admit the letters as admissible hearsay under the business records exception.

As an initial matter, Flatiron explains that AECOM failed to meaningfully confer

5

with Flatiron with respect to this portion of AECOM's MIL and asks the Court to deny it out of hand pursuant to WJM Revised Practice Standard ("RPS") III(G)(1) (requiring motions *in limine* to "attach[] the relevant portions of any exhibit" upon which a party seeks a ruling) and WJM RPS III(G)(3) (requiring "good-faith efforts to confer").[1]  (ECF No. 311 at 5.)

Even if the Court addresses the merits of this portion of AECOM's MIL, Flatiron argues the Court should deny it for three reasons.  (ECF No. 311 at 5.)  First, Flatiron points out that assuming *arguendo* that parts of the letters at issue have independent legal significance, AECOM did not redact the remainder of the letters that contain pure hearsay.  (*Id.* (citing *Amos v. W.L. Plastics, Inc*., 2010 U.S. Dist. LEXIS 3572, at *6 (D. Utah Jan. 19, 2010) (parties must redact hearsay statements from proposed exhibits)).)  Second, Flatiron disputes that the business records exception to the hearsay rule applies because the letters were sent in anticipation of litigation and therefore fall outside this exception.  (*Id.* (citing *Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co*., 71 F.3d 335, 342 (10th Cir. 1995) ("[O]ne who prepares a document in anticipation of litigation is not acting in the regular course of business."))).)  Flatiron points to litigation hold notices scattered throughout the letters.  Finally, Flatiron argues that several of the letters are irrelevant.  (*Id.* at 5–6.)

Having thoroughly considered the parties' arguments, the Court reserves ruling on this portion of AECOM's MIL until it can address these evidentiary issues in the

---

[1] The Court's patience with the parties' failure to properly confer under the District of Colorado Local Rules grows exceedingly thin.  As the Court has admonished the parties previously, given their history of failing to meaningfully confer with each other prior to filing motions, the Court will not hereafter hesitate to impose sanctions *sua sponte* if it deems such action necessary.

6

context of the other evidence (both testimonial and documentary) that has been received at trial.  AECOM would be well-served, and the likelihood that the CDOT communications would be allowed into evidence would be significantly increased, were it to include in its final set of exhibits substantially redacted versions of the subject letters, versions which meaningfully address the evidentiary concerns raised by Flatiron.

**D.     Flatiron's Damages Evidence**

AECOM requests that the Court prevent Flatiron from attempting to present damages evidence through any source other than its designated damages expert, James Melvin Torres.  (ECF No. 300 at 9.)  Flatiron responds that this portion of AECOM's MIL "has no basis in fact or law."  (ECF No. 311 at 6.)  Specifically, Flatiron states that it provided AECOM with a comprehensive list of documents to support its initial damages estimate and then provided Torres's damages analysis.  (*Id.*)

The Court has considered this portion of AECOM's MIL and considers it, once again, overly broad and overreaching.  This is so particularly given that the Court cannot possibly anticipate all of the ways in which appropriate and relevant damages evidence may come in at trial.  Moreover, the Court agrees with Flatiron that it is aware of no authority in this Circuit which exclusively limits evidence of a party's damages to the evidence of such damages introduced through its damages expert.  Therefore, the Court denies this portion of AECOM's Motion without prejudice to AECOM raising an appropriate objection(s) at trial.

## III. CONCLUSION

For the reasons explained above, the Court ORDERS that AECOM's MIL (ECF No. 300) is denied in part and deferred in part, as set forth above.

7

Dated this 8th day of January, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge