IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

## ORDER DENYING FLATIRON'S MOTION *IN LIMINE*

Before the Court is Defendant Flatiron AECOM, LLC's ("Flatiron") Motion in Limine ("Flatiron MIL") (ECF No. 301) and AECOM's response (ECF No. 313). For the following reasons, Flatiron's MIL is denied.

## I. LEGAL STANDARD

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially

outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

## II. ANALYSIS

### A.     Special Request for Equitable Adjustment ("SREA")

Flatiron requests that the Court exclude evidence of the SREA because it is: (1) irrelevant; (2) a protected settlement communication; (3) improper propensity evidence; and (4) unfairly prejudicial. (ECF No. 301 at 2–3.) According to Flatiron, it submitted the SREA to the Colorado Department of Transportation ("CDOT") during compromise negotiations in September 2020, and AECOM intends to use the SREA to reveal Flatiron's scheme to "double-dip" damages from AECOM and CDOT and show Flatiron's propensity to blame others for its own Project shortcomings. (*Id.*) Flatiron points out that it has withdrawn the SREA and replaced it with an "updated, more accurate statement of Flatiron's claims and positions called the 'Close-Out REA.'" (*Id.* at 4.)

The Court has already ruled in its Order Granting in Part and Denying in Part Flatiron's Federal Rule of Evidence 702 Motions ("Flatiron 702 Order") that AECOM's expert witness Mark Buchanan may offer his opinions with respect to the SREA at trial. (ECF No. 344 at 9.) In that Order, the Court addressed whether the SREA was relevant and/or prejudicial but reserved its analysis of whether the SREA is a protected settlement communication for this Order. (*Id.* at 8 n.2.) The Court also noted in that Order that Flatiron failed to cite any case law supporting the application of Federal Rule of Evidence 404(b) in this context and declined to analyze that issue any further. (*Id.* at 8.) For the following reasons, the Court denies this portion of Flatiron's MIL.

2

    1.    <u>Relevance</u>

First, the Court concludes that like Buchanan's expert testimony with respect to the SREA, the SREA itself is not irrelevant.  The Court reiterates its statement from the Flatiron 702 Order that "[i]n this case, where AECOM's purported violation of the standard of care provision in the contracts at issue is so critical, AECOM will be allowed to present evidence from which the jury might conclude that, in whole or in part, it was Flatiron's breach of the standard of care and not AECOM's, that led (or at least greatly contributed) to the vast cost overruns." (ECF No. 344 at 10.)  The Court agrees with AECOM that, while Flatiron has withdrawn the SREA and replaced it with the Close-Out REA, the SREA remains relevant to AECOM's argument that "Flatiron, almost one year into litigating its $263.5 million claim with [AECOM], was still pursuing CDOT for almost $92 million of Flatiron's $265 million in total Project losses." (ECF No. 313 at 2.)  Additionally, the Court finds that the SREA is relevant to AECOM's arguments concerning the credibility of Flatiron's damages expert's opinions attributing over 99% of the cost overruns to AECOM.  (*Id.*)  Finally, the Court notes that earlier in this litigation, retired United States Magistrate Judge Kristen L. Mix determined that the SREA was discoverable because it was relevant, lending weight to AECOM's position.  (*Id.* (citing ECF Nos. 172, 195).)

    2.    <u>Settlement Communication</u>

Next, the Court finds that the SREA is not a settlement communication protected by Federal Rule of Evidence 408.  The Tenth Circuit has found that "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated . . . though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408

3

. . . ." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (internal citations omitted). Moreover, the Tenth Circuit has concluded that "[i]n any event, Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove liability for or invalidity of the claim or its amount." *Id.* (internal quotation marks omitted).

Earlier in this litigation, Judge Mix ruled that the SREA is not a mediation communication and was thus not protected from disclosure by the Colorado Dispute Resolution Act ("CDRA"), C.R.S. § 13-22-307, *et seq.* (ECF No. 195.) Although her analysis addressed the CDRA, not Rule 408, the Court finds her analysis highly persuasive for the purposes of this Order. Judge Mix points out in her Order that "there was no 'mediations services proceeding' between [Flatiron] and CDOT," "neither the steps [to engage in mediation] nor the mediation process were completed," and "no actual mediation occurred." (*Id.* at 4.) Ultimately, Judge Mix concluded:

> Because the parties failed to progress beyond two of the three steps outlined for mediation, failed to select a mutually agreeable mediator, failed to engage in mediation, and because there is no evidence that CDOT complied with a condition to entry into mediation which was imposed by Defendant, the Court cannot conclude that they entered into the "agreement" required by CDRA. According to the plain language of the Act, the lack of an agreement to mediate means the parties' communications are not protected.

(*Id.* at 5.) Prudently, Judge Mix denied Flatiron's request that AECOM be forbidden from using the SREA at trial without prejudice and deferred the final determination on that request to the undersigned. (*Id.*) In sum, the Court finds Judge Mix's Order well-reasoned and her analysis of the SREA relevant here.

Of course, there are numerous other reasons militating in favor of the Court's

4

finding that the SREA is not protected by Rule 408.  Although the Project at issue in the SREA is the same one at issue in this case, the claim being litigated in connection with the SREA was fundamentally different.  The SREA concerns Flatiron's pursuit of CDOT for almost $92 million of Flatiron's losses on the Project, whereas this case involves a breach of contract claim against AECOM for breaching the applicable standard of care with respect to its actions on the Project.

Additionally, the Court finds that AECOM's explanation that the SREA "will not be offered to prove or disprove the validity or amount of a disputed claim" takes the evidence outside the parameters of Rule 408.  Specifically, AECOM explains that "the SREA is evidence supporting one of [its] key defenses in this case: that there are other plausible theories of causation for Flatiron's damages" and will "show Flatiron's 'double-dipping' attempt to recover damages from both CDOT and [AECOM] to attack the credibility of Flatiron's damages expert."  (ECF No. 313 at 3.)  These are permissible uses of such evidence, and Rule 408 does not bar the use of the SREA.

3. Propensity Evidence

Third, Flatiron argues that the SREA is barred by Rule 404(b) because AECOM wishes to use it as improper propensity evidence.  Yet again, Flatiron fails to cite any case law applying Rule 404(b) in this context.  (*See* ECF No. 344 at 8.)  Regardless, as the Court has found above and noted in the Flatiron 702 Order, AECOM does not intend to use the SREA as character evidence, but to show that Flatiron has attempted to recover damages from both CDOT and AECOM.  Accordingly, the Court finds that the SREA is not barred by Rule 404(b).

4. Unfair Prejudice

Finally, the Court finds Flatiron's arguments that the SREA will cause unfair

5

prejudice and jury confusion under Rule 403 are without merit.  (ECF No. 301 at 7.) Flatiron argues that AECOM wants to use the SREA to show Flatiron is a "dishonest actor who never takes responsibility for anything and who is also seeking a windfall through a 'double-recovery.'"  (*Id.* (citing ECF No. 297-2 at 11 ("Rather than own up to its failure . . . [Flatiron] shifted blame"); ECF No. 296-2 at 7 ("Flatiron now seeks to recover dollars from . . . the American taxpayer.")).)  Additionally, Flatiron argues that the SREA will cause jury confusion, waste trial time, and force Flatiron to "conduct a trial-within-a-trial regarding the SREA, its origins, its replacement, its accuracy, and the status of any Flatiron dispute with CDOT."  (*Id.*)

The Court finds that Flatiron's arguments do not constitute unfair prejudice within the meaning of Rule 403.  However, while the Court understands that both parties will have to present the SREA in such a manner that the jury understands its relevance and the arguments on both sides, the Court cautions *both* parties to refrain from making the SREA and Flatiron's dispute with CDOT a time-consuming sideshow.  The Court will not hesitate to move the testimony along if it determines that the parties needlessly linger on this issue.  Therefore, AECOM may introduce the SREA at trial, and the Court denies this portion of Flatiron's MIL.

**B.     Limitation of Liability ("LOL") Clause**

Flatiron seeks to exclude evidence regarding the LOL clause in the Subcontract. (ECF No. 301 at 7.)  Flatiron contends that the application of the LOL clause is a legal issue for the Court and is thus irrelevant to the questions the jury must decide.  (*Id.*) Flatiron asserts that evidence about the LOL clause could cause jury confusion and prejudice by suggesting to the jury that the LOL clause limits the amount of damages that the jury can award, as opposed to the amount of damages Flatiron can recover.

6

(*Id.* at 8.)  Moreover, given the Court's ruling that the LOL clause applies, Flatiron argues that it is not a disputed issue at trial and is irrelevant on that basis as well.  (*Id.* at 7.)  Flatiron intends to present evidence of the full amount of its damages to the jury, and if the jury returns a verdict in excess of the liability cap, Flatiron explains that the Court will apply the cap post-verdict.  (*Id.* at 8.)

AECOM responds that there is a "fundamental reason" to deny Flatiron's request, namely that "Colorado follows the general rule that allows the recovery of foreseeable damages for breach of contract."  (ECF No. 313 at 5 (quoting *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 838 (10th Cir. 2016) (citing *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 871 (Colo. 2002) (grounding foreseeability requirement in value of allowing parties to allocate risk through contract)).)  AECOM argues that "the parties allocated risk through the LOL clause, making the Subcontract's liability cap an essential part of their bargain and thereby limiting the range of foreseeable damages."  (*Id.*)

The Court concludes that the LOL clause is relevant to AECOM's presentation of its case and will not exclude it at trial.  Thus, this portion of Flatiron's MIL is denied.  Nonetheless, the Court agrees that the jury must clearly understand that the LOL clause does not limit the amount of damages it can award.  Therefore, the parties are directed to confer and make every reasonable effort to submit an agreed-upon limiting instruction addressing the LOL clause by **January 17, 2024**.  If the parties are unable to agree, they may submit separate proposed limiting instructions by that date.  The proposed limiting instruction should describe, in as neutral terms as possible, why the Court is allowing the jury to be made aware of the existence of the LOL clause, all the while

7

stressing that the document does not limit the amount of damages, if any, the jury may award to either party if it concludes that the facts and the law support such an award.

**C.      Disputes With Flatiron Subcontractors**

Flatiron requests that the Court exclude evidence relating to separate disputes between Flatiron and some of its subcontractors on the Project.  (ECF No. 301 at 9.)  According to AECOM's prior proposed witness list, it intended to call six representatives from various subcontractors about so-called "disputes" with Flatiron.[1]  (*Id.*)  AECOM also listed an additional fifteen subcontractors on its "may call" witness list.[2]  (*Id.*)

Flatiron argues that such evidence is irrelevant and prejudicial because it has no tendency to make a fact in the case more or less probable and is of no consequence to Flatiron's dispute with AECOM; rather, Flatiron describes these disputes as "standard, small-scale disagreements that routinely arise on large construction projects."  (*Id.* at 9–10.)  In fact, Flatiron states that "[n]early all of these 'disagreements' were resolved directly at the project level with no court involvement."  (*Id.* at 10 n.6.)  Flatiron further explains that the "only exceptions were the disputes with CRCC, Geocal Inc., and SEMA Precast—all of which have been settled and/or resolved."  (*Id.*)

Flatiron also points to case law from district courts in the Tenth Circuit which it asserts stand for the proposition that evidence of prior lawsuits is generally inadmissible against a defendant except for impeachment purposes.  (*Id.* at 9 (citing, *e.g., SEC v.*

---

[1] Flatiron states that the subcontractors are: Castle Rock Construction Company ("CRCC"), Martin Marietta Materials, Dynalectric Colorado, Geocal Inc., American Sign and Barricade Co., and P&H Equipment, Inc. (ECF No. 301 at 9 n.5.)

[2] The Court notes that both parties have filed amended witness lists (ECF Nos. 351, 352) since the filing of Flatiron's MIL and AECOM's response.  Therefore, these numbers will likely change as the parties narrow their witness lists for trial, but for the purposes of this Order, the Court recites the numbers from the briefs on Flatiron's MIL.

8

*Goldstone*, 2016 WL 3654279, at *9 (D.N.M. June 9, 2016)).)

Further, should the Court allow such evidence, Flatiron argues that it will "force Flatiron to conduct ancillary 'mini-trials' with regard to each Subcontractor disagreement to explain why it was minor, justified, and irrelevant." (*Id.* at 10.) Flatiron also argues Rule 404(b) precludes the use of such evidence because its purpose is to malign Flatiron's character as "generally quarrelsome and difficult." (*Id.*)

In response, AECOM argues that the subcontractor evidence is "highly relevant" and outweighs any potential unfair prejudice to Flatiron. (ECF No. 313 at 6.) Specifically, AECOM explains that Torres has opined that Flatiron lost approximately $265 million on the Project, with approximately $263.5 million attributable to AECOM's design errors. (*Id.*) Accordingly, the other subcontractors could be liable for at most $1.5 million of Flatiron's alleged cost overruns, but AECOM emphasizes that Flatiron sued the other subcontractors for "far more than this." (*Id.*) Further, AECOM argues that the subcontractor evidence is relevant to its causation defense, as Flatiron sent notice and default letters to its paving contractors that state they are a primary cause of delays and failures on the Project. (*Id.*) AECOM contests Flatiron's position that introducing this evidence would lead to "mini-trials," as the jury will not need to resolve the disputes with the subcontractors "to appreciate the probative value of Flatiron's tactical decision to ascribe far more damages than it incurred to everyone else on the Project, and blame them for the Project delays and failures." (*Id.*)

Having considered both parties' arguments, the Court denies this portion of the Flatiron MIL. The prior lawsuits in *Goldstone*, which Flatiron relies on to argue that prior lawsuits should be excluded as inadmissible evidence, concerned lawsuits *against* the

9

defendant, whereas here, AECOM seeks to introduce evidence of lawsuits brought *by* the defendant against its subcontracts.  *Goldstone*, 2016 WL 3654279, at *9 (allowing SEC to present evidence of claims brought against Defendants Goldstone or Simmons in other litigation in order to impeach their testimony if they open the door).  Therefore, the value of *Goldstone* to the Court in reaching a decision—which is also not binding authority—is minimal.

Instead, the Court finds other case law, such as *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 705 F. Supp. 2d 1265, 1271 (D.N.M. 2010), more persuasive.  In *Guidance Endodontics*, the court addressed whether the existence of prior similar disputes in which the defendants potentially engaged in anti-competitive conduct was admissible.  *Id.*  The court analyzed the prior similar disputes brought by the defendants under Rule 404(b) and found that the evidence was admissible because it went to the defendants' collective state of mind and was offered for a proper, non-propensity purpose.  *Id.*

Here, the Court concludes that the evidence of Flatiron's disputes with various subcontractors is admissible because rather than constituting improper propensity evidence, it is relevant to show that although Flatiron has alleged that AECOM is responsible for nearly all of the Project's cost overruns, Flatiron has also had disputes with several subcontractors who worked on the Project.  (ECF No. 313 at 6.)  AECOM's argument that Flatiron sued the other subcontractors for far more than the $1.5 million difference in overruns it otherwise wholly attributes to AECOM is persuasive; evidence of the disputes with other subcontractors are relevant to AECOM's defense that Flatiron has "overreach[ed]" in its causation and subsequent damages analysis.  (*Id.*)

Additionally, the Court notes that it is Flatiron which points out that many of the disputes were "disagreements" that were "resolved directly at the project level with no court involvement," thereby undermining any argument that they are inadmissible because they are prior lawsuits.  (*Id.* at 10 n.6.)

Moreover, although Flatiron argues that the evidence is prejudicial, it offers no reasons for why the probative value of this evidence is outweighed by the unfair prejudice to Flatiron under Rule 403.  (ECF No. 301 at 9–10.)  In fact, Flatiron points out that the disputes with subcontractors were "standard, small-scale disagreements that routinely arise on large construction projects," undermining its argument that introduction of such evidence is unfairly prejudicial in violation of Rule 403.  (*Id.* at 10.)  Accordingly, the Court denies this portion of Flatiron's MIL.

However, the Court will hold *both* parties to AECOM's representation that the introduction of evidence of Flatiron's disputes with subcontractors will not result in numerous mini-trials.  (ECF No. 313 at 6.)  The Court has already allocated a large number of days from its trial calendar to this litigation and it **will not** permit the parties to confuse the jury with immaterial and irrelevant side issues related to this type of evidence.  Both sides are directed to limit their witness examinations and introduction of exhibits on topics which might reasonably be expected to lead to such satellite disputes to an absolute minimum.

D.     **Duplicative and Cumulative Testimony of AECOM's Expert Witnesses**

Flatiron requests that the Court preclude AECOM from offering duplicative testimony on at least 23 substantive issues.  (ECF No. 301 at 11.)  Flatiron states that it has raised the issue of duplicative testimony with AECOM, but to date, AECOM has "refused to eliminate this duplicative testimony[.]"  (*Id.*)  In its response, AECOM states

11

that it does not intend to offer duplicative or cumulative expert testimony at trial. (ECF No. 313 at 6.)

At trial the Court will aggressively police attempts by *either* party to introduce duplicative, unnecessary, or cumulative testimony or exhibits. These efforts will include, but by no means will be limited to, the Court holding AECOM to its representation that it will not offer duplicative or cumulative expert testimony at trial. For these reasons this portion of Flatiron's MIL is denied as moot.

### III. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1. Flatiron's MIL (ECF No. 301) is DENIED, as set forth above; and

2. The parties are DIRECTED to submit a joint proposed limiting instruction concerning the LOL clause by **January 17, 2024**. If the parties are unable to agree, they may submit separate proposed limiting instructions by that date.

Dated this 9th day of January, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge