IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

---

**ORDER DENYING AECOM'S MOTION *IN LIMINE* REGARDING REFERENCES TO THE TEAMING AGREEMENT'S STANDARD OF CARE PROVISION**

---

Before the Court is Plaintiff AECOM Technical Services, Inc.'s ("AECOM") Motion *in Limine* Regarding References to the Teaming Agreement's ("TA") Standard of Care ("SOC") Provision ("Second MIL"). (ECF No. 356.) Defendant Flatiron AECOM, LLC's ("Flatiron") responded in opposition. (ECF No. 360.)

Based on the Court's numerous prior Orders, the Court presumes that the parties are familiar with the facts and procedural history leading to the filing of the Second MIL and does not repeat them here. For the following reasons, the Second MIL is denied.

## I. LEGAL STANDARD

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

## II. ANALYSIS

In the Second MIL, AECOM seeks to preclude Flatiron from "referencing or making any arguments based on the superseded Teaming Agreement's standard of care provision." (ECF No. 356 at 2.) AECOM argues that the TA's SOC provision has been superseded by the Subcontract's parallel provision, plus additional disclaimers in the Subcontract such as Section 1.5, the merger clause, and the Order of Precedence clause. (*Id.* at 3–6.) For the following reasons, the Court finds that AECOM's arguments are not persuasive.

**A.     Standard of Care Provisions**

As Flatiron points out, AECOM undisputedly performed two types of design services during two different phases of the C-470 highway construction project ("Project"). (ECF No. 360 at 2.) First, AECOM provided Pre-Award Services to create a preliminary design that would allow Flatiron to estimate project quantities for cost and scheduling purposes. (*Id.*) The TA SOC established the SOC for the Pre-Award Services, which were part of the bidding phase of the Project. (ECF No. 37-1 at 3 ¶ 5.) Second, after Flatiron won the bid for the Project, it hired AECOM to perform Post-Award Services, which were governed by a different SOC, outlined in Section 1.9 of the

Subcontract.  (ECF No. 37-3 at 18–19.)  Flatiron's theory of the case is that the TA SOC applies; AECOM's pre-award work was not adequate and sufficient for Flatiron to bid on the Project, and thus Flatiron submitted a bid based on "a horrifically flawed pre-bid design concept"; Flatiron only discovered AECOM's purported errors after CDOT awarded Flatiron the Project and the parties signed the Subcontract; and thus, Flatiron incurred vast cost overruns due to the "mis-priced and mis-scheduled bid."  (ECF No. 360 at 3.)

The Court has thoroughly considered both parties' arguments, and upon review of these separate SOCs, the Court finds that not only are these provisions not inconsistent, but that they are compatible under the myriad terms of the TA and Subcontract.

The Court finds it helpful to review the specific terms of the two SOC provisions. First, the TA SOC provides:

> The Pre-Award Services shall be consistent with all professional engineering principles generally accepted as standards of the industry in the state or province where the Project is located and shall be performed in accordance with the standard of care, skill and diligence commensurate with that provided by other design professionals at the Pre-Award Services stage for projects of similar size, type and complexity, in accordance with any additional standards set forth in the RFP, and *shall be adequate and sufficient for bidding the construction of the Project* as described in the RFP Documents.

(ECF No. 37-1 at 3 ¶ 5 (emphasis added).)

Second, the Subcontract SOC provides:

> [A]ll Design Services performed pursuant to the Contract Documents shall conform to all professional engineering principles generally accepted as standards of the industry in the state or province where the Project is located for projects

3

> of similar size, type and complexity *shall be sufficient for construction of the Project* and shall conform to all standards relating to design contained in the Contract Documents (the "Standard of Care").

(ECF No. 37-3 at 18 Section 1.9.1 (emphasis added).)

As Flatiron cogently explains, both provisions "generally require [AECOM] to perform design work commensurate with accepted engineering principles and skill, but the contracts recognize that the level of care, skill[,] and diligence are clearly *different* during the two phases of the project." (ECF No. 360 at 4 (emphasis in original).) The TA SOC requires AECOM's Pre-Award Services to be sufficient for bidding purposes, while the Subcontract SOC requires AECOM's Post-Award Services to be sufficient for construction purposes. The relevant SOC depends on the type of services AECOM was providing at the applicable phase of the Project.

Like Flatiron, the Court concludes that it "would make no sense—logically, legally, or otherwise—for the parties to agree to hold ATS to a standard of care specifically for bidding the project and, then change the governing standard of care *after* the bid work was complete." (ECF No. 360 at 2 (emphasis in original).) Additionally, "it makes even less sense that the parties would retroactively change the standard of care governing ATS's bid work to a standard specifically for post-award design work." (*Id.*) In other words, the Court finds that it could not have been the intention of the parties, in the course of drafting and entering into the Subcontract, to adopt a different SOC to retroactively apply to Pre-Award Services which had already been completed, work performed in conformity with, and an eye towards, a separate SOC specifically targeted to the very distinct (and now completed) Pre-Award Services work.

Accordingly, the Court concludes that the TA SOC remains relevant in this case

4

under Federal Rule of Evidence 401 and rejects AECOM's arguments to the contrary. (*See* ECF No. 356 at 7.)

AECOM's reliance on Section 1.5 of the Subcontract changes nothing. Section 1.5 provides: "Except to the extent directly caused by a breach of the Standard of Care, Designer is not responsible for and has no liability for quantity variances, and Contractor will not seek reimbursement from Designer for costs arising out of or related to such variances." (ECF No. 37-3 at 17 § 1.5.) This section references and relies on the Subcontract's SOC, but contrary to AECOM's argument, this language does not mean that the TA SOC did not survive or was superseded by the Subcontract's SOC. The Court agrees with Flatiron's characterization of AECOM's interpretation as a "massive overreach" because Section 1.5 merely provides that any quantity variances caused by a violation of the Subcontract SOC may lead to AECOM's liability. (ECF No. 360 at 5.)

Relatedly, AECOM argues that Section 1.5 "disclaims reliance on the pre-bid Proposal design and limits Flatiron's attacks on AECOM's pre-bid design work to quantity variations that stem from a breach of the Subcontract's standard of care." (ECF No. 356 at 3.) But, considering that the two SOCs are not inconsistent, Section 1.5 does not somehow change the fact that the TA SOC applies to AECOM's Pre-Award Services. And, as the Court explains below, the specific language agreed upon by the parties in the Subcontract's merger clause and Order of Precedence clause supports this conclusion.

B.  **Consistency With Prior Rulings**

AECOM argues that "[t]he Court should apply the same supersession analysis from its second summary judgment order (ECF [No.] 252) to rule that Flatiron may not reference the Teaming Agreement's standard of care provision." (ECF No. 356 at 3.)

5

However, the Court disagrees with AECOM's proposition that the supersession analysis the Court employed in its prior Order necessarily compels the conclusion that the TA SOC is superseded by the Subcontract SOC.

The Subcontract's merger clause provides:

> 16.10 Entire Agreement. This Agreement (together with any exhibits and documents incorporated herein by reference and *any terms of a Teaming Agreement between the Parties regarding the Project not inconsistent with this Subcontract*), represent the entire agreement between Designer and Contractor and supersedes all prior negotiations, representations and agreements regarding the Project, whether written or oral and cannot be amended except with the written approval of all Parties.

(ECF No. 37-3 at 33 ¶ 16.10 (emphasis added).)

In the Order of Precedence provision, the Subcontract states:

> **Order of Precedence**. *In the event of a conflict between the Teaming Agreement and this Subcontract*, this Subcontract shall prevail, except with respect to the calculation of pre-bid compensation in which case the Teaming Agreement shall prevail. Section 16.10 is amended by adding the following sentence to the end of the section: "In the case of a conflict between the terms of this Subcontract and the Design/Build Agreement and any incorporated document, the terms of this Subcontract shall take precedence."

(ECF No. 37-2 at 7 ¶ 7 (emphasis added).)

Although the Subcontract unhelpfully does not explicitly provide for the survival of the TA SOC, both the merger and Order of Precedence clauses in the Subcontract provide for the survival of TA terms that do not conflict with or are "not inconsistent with" Subcontract terms. Such is the case with the two SOC provisions. The Court has already concluded that the TA and Subcontract SOCs are not inconsistent, and therefore, under the merger clause and Order of Precedence clauses, the TA SOC still

6

applies to AECOM's Pre-Award Services.

The Court agrees with Flatiron that it has never ruled in this action that the TA has no relevance to issues appropriately to be considered by the jury. Too, the Court has never found that violating a surviving provision of the TA could not provide grounds to seek relief under the Subcontract. This necessarily follows from the fact that the Court *has* held the Subcontract to have been merged with the TA. (ECF No. 360 at 3.) This is also wholly consistent with the Court's previous determination that actionable violations of the TA could only be pursued as an alleged breach of the liability-capped Subcontract, and not for breach of the uncapped TA.

Accordingly, the Court finds that the TA SOC applies to AECOM's Pre-Award Services on the Project. Therefore, the Second MIL is denied. Flatiron may introduce evidence of the TA SOC at trial.

### III. CONCLUSION

For the reasons explained above, the Court ORDERS that AECOM's Motion *in Limine* Regarding References to the Teaming Agreement's Standard of Care Provision (ECF No. 356) is DENIED.

Dated this 23rd day of January, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge