**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant-Counterclaim Plaintiff.

---

**ORDER DENYING THE JOINT VENTURE'S CONSTRUED RULE 50 MOTIONS**

---

The Court presided over an 18-day jury trial which began on January 29, 2024. On February 17, 2024, at the close of Plaintiff AECOM Technical Service, Inc.'s ("ATS") case-in-chief, Defendant Flatiron AECOM, LLC ("Joint Venture" or "JV") moved for judgment as a matter of law on ATS's breach of contract claim pursuant to Federal Rule of Civil Procedure 50(a).  (ECF No. 423 at 8.)  The Court took the motion under advisement.

On March 8, 2024, after resting its own case, the JV renewed its Rule 50(a) motion and additionally moved for judgment as a matter of law under Rule 50(a) on ATS's affirmative defense of failure to mitigate damages.  (ECF No. 446 at 110–13.)  The Court took the motions under advisement and submitted the action to the jury, subject to the motions.  (ECF No. 446 at 131.)

On February 23, 2024, the jury returned a verdict in favor of ATS on its breach of

1

contract claim, as well as on the Joint Venture's counterclaim.  (ECF No. 441.)  Given this verdict, the Court construes the Rule 50(a) motions as renewed motions for judgment as a matter of law under Rule 50(b).  For the reasons below, both motions are denied.

## I. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  Stated another way, "[a] directed verdict is justified only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion."  *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993).  In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party.  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict.  *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Grp.*, 180 F.3d 1143, 1147–48 (10th Cir. 1999).  In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

## II. ANALYSIS

### A.    ATS's Breach of Contract Claim

The JV argues that ATS has failed to satisfy two conditions precedent set forth in

2

Section 2.5 of the Subcontract for its breach of contract claim: (1) the condition precedent that every potential change order ("PCO")[1] must receive written authorization from the Design Change Control Board ("DCCB"); and (2) that every PCO must be outside the scope of work described in the Subcontract.  (ECF No. 446 at 113.)

Section 2.5 of the Subcontract provides:

> 2.5 <u>Design Change Control Board</u>. The Parties agree on the establishment of a Design Change Control Board described on **Attachment 1**.  *Contractor shall not be obligated to make any payments to Designer for work performed which is outside the work scope described herein ("change") or ("changes"), unless Designer has obtained the written authorization to perform the work for which the compensation is sought from the Design Change Control Board; provided, however Contractor may approve changes resulting in cost decreases or cost increases less than $50,000 so long as such approval is in writing executed by the Contractor's project manager.*  When the Design Change Control Board authorizes change work it shall obtain a mutual agreement with the Designer on a cost for the work it authorizes and an adjustment in the Designer's schedule. Contractor shall not have to pay more than the amount specified by the Design Change Control Board for the change work authorized without further action by the Design Change Control Board, subject also to the dispute resolution process.  The Design Change Control Board shall authorize payments for Contractor directed changes and for changes which Owner acknowledges are its responsibility.  Payment shall be made when the work is performed for such Contractor directed changes and for changes which Owner acknowledges are its responsibility.  For changes which the Parties believe are the Owner's responsibility but which the Owner has not acknowledged as its responsibility, payment shall be made when payment is received from Owner which may not occur (if it occurs at all) until after a determination that there was an Owner directed change by the dispute resolution procedures contained in the Design/Build Contract.  Designer specifically agrees to accept the risk that

---

[1] At times, the parties refer to PCOs as "proposed" change orders.  The Court sees the terms "proposed" and "potential" as interchangeable, and their alternate use does not affect the outcome of this Order.

3

changes which the Parties believe to be Owner directed and which are approved for payment by the Design Change Control Board at Designer's request may not be found to be Owner's responsibility in the dispute resolution procedures and therefore not paid for by the Owner, provided that such changes are sufficiently itemized by the Contractor and adjudicated by the Owner separate from other changes.  For work approved by the Design Change Control Board and identified as the Contractor's responsibility, Contractor shall pay Designer for such changes as Additional Design Services.  Designer's invoices to Contractor for the costs of its subcontractors who perform work approved by the Design Change Control Board shall be compensated as Additional Design Services.  Such costs of Designer's subcontractors shall not be further marked up by Designer.  For work approved by the Design Change Control Board and identified as the Owner's responsibility, Contractor shall pay Designer on the same basis as Contractor is permitted to bill Owner for the services Designer performs under the terms of the Design/Build Contract and such payment shall be subject to Sections 2.6 and 2.7.

(ECF No. 37-3 at 21–22 (italics added).)

First, the Joint Venture argues that there is no evidence in the record that ATS satisfied the condition precedent that it obtained written authorization from the DCCB to perform the work for which it seeks compensation.  (ECF No. 423 at 9; ECF No. 446 at 113.)  Further, the JV argues that ATS never presented evidence that it was "somehow thwarted from working toward forming the DCCB or that the JV somehow frustrated that process."  (ECF No. 446 at 115–18.)  To the contrary, the JV argues that summary exhibit P366[2] demonstrates that all of the PCOs were submitted to the JV before the lawsuit was filed on October 2, 2019, over four months before ATS filed suit, and there is no dispute that the DCCB was in effect at that time.  (ECF No. 446 at 118.)  However,

_____

[2] This exhibit is ATS's Rule 1006 Summary of Unpaid Potential Change Orders.  (Pl. Ex. P366.)

4

according to the JV, ATS had not submitted those PCOs to the DCCB.  (ECF No. 446 at 118–19; ECF No. 452 at 6.)

Second, the JV argues that there is no evidence in the record that the relevant PCOs are outside the base scope of the Subcontract.  (ECF No. 423 at 9; ECF No. 446 at 120.)  The JV acknowledges that some PCOs have an explanation for why the work was outside the scope of the Subcontract, but with respect to at least 14 of the 18 PCOs, there is no explanation that the work is outside the scope of the Subcontract.  (ECF No. 446 at 119–20 (listing PCOs lacking evidence that they are outside the scope of the Subcontract).)

In response, ATS argues that the JV waived its ability to enforce the conditions precedent at various points in this case.  First, ATS points out that Jason Brada[3] testified that the DCCB was not formed by either party until sometime late in the process[4]—sometime late in 2018 (ECF No. 446 at 127)—and at some point, the JV stopped that process, and Mr. Brada was directed by Eric Taylor, his direct report, to stop the process and let it play out in litigation.  (ECF No. 423 at 11; ECF No. 452 at 10, 14.)  Accordingly, ATS argues that the JV waived the first condition precedent.  (ECF No. 423 at 12.)

Additionally, ATS contends that the JV took at least one of the PCOs, D-030-

---

[3] Mr. Brada testified via video deposition on behalf of the JV as a Rule 30(b)(6) witness. Because he testified via video deposition, his testimony does not appear in the official transcript. The Court independently obtained a transcript of Mr. Brada's testimony played for the jury at trial from ATS and directed the Clerk of Court to file it on the docket for clarity of the record. (ECF Nos. 451, 452.)

[4] Mr. Brada testified that the DCCB had not been formed at least as of August 11, 2017, but it does not appear as though he testified specifically as to the date on which the DCCB was formed.  (ECF No. 452 at 8–9.)

B3B, to the Colorado Department of Transportation ("CDOT") and argued that the JV was entitled to payment on it, and as a result, the JV waived the condition precedent requirement that the DCCB approve the PCOs.  (ECF No. 446 at 124, 128; *see* Pl. Ex. P366 at 8.)  ATS highlights Mr. Brada's testimony that CDOT paid the JV in part for the work, but the JV withheld payment from ATS to create an offset for ATS's alleged contractual breaches.  (ECF No. 446 at 124–25; ECF No. 452 at 11, 13–14.)  ATS also emphasizes that the PCOs of less than $50,000 did not require approval by the DCCB under the Subcontract because under Section 2.5, the JV was able to approve changes resulting in cost decreases or increases of less than $50,000 without DCCB approval; accordingly, those PCOs never went through the DCCB because ATS states that they "were never supposed to go through [it]."  (ECF No. 423 at 13.)

Having considered the parties' arguments, the Court denies the JV's Rule 50(b) argument on the basis that it waived its right to enforce Section 2.5 of the Subcontract. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *McGill v. DIA Airport Parking, LLC*, 395 P.3d 1153, 1156 (Colo. App. Nov. 17, 2016) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  The Court agrees with ATS that the JV cannot bring a PCO worth $579,291.30 (PCO D-030-B3B) to CDOT at least six months before the DCCB was formed, receive at least some payment from CDOT, withhold at least some of that payment from ATS as an offset of alleged violations of the standard of care in the parties' contracts, and then argue that ATS was nevertheless required to fulfill its obligations to go through the DCCB approval process.

Additionally, the parties agree that formation of the DCCB required *both* parties' participation.  (ECF No. 423 at 11.)  However, Mr. Brada testified that the JV "shel[ved]

6

consideration of ATS's PCOs" in favor of letting it "get resolved through litigation."  (ECF No. 452 at 10.)  This testimony further supports ATS's contention that the JV waived its right to enforce Section 2.5.

The Court also considered the JV's argument that some PCOs did not specifically explain the reasons for which they fell outside the Subcontract's scope. While it may be true that some PCOs did not provide such an explanation, the Court concludes that it cannot enter judgment as a matter of law on the entirety of ATS's claim based on the thin reed of this argument.  Given Mr. Brada's testimony, combined with the totality of the evidence in this 18-day trial, including without limitation the parties' course of conduct in preparing PCOs and submitting them for payment, the Court concludes that the jury had a "legally sufficient evidentiary basis to find for [ATS]" on its breach of contract claim.  Fed. R. Civ. P. 50(a).  Accordingly, the Court denies the JV's construed Rule 50(b) motion with respect to ATS's breach of the contract claim.

**B.     ATS's Affirmative Defense of Failure to Mitigate Damages**

The JV moved for judgment as a matter of law with respect to ATS's affirmative defense of failure to mitigate damages.  (ECF No. 446 at 122.)  The jury returned a verdict in favor of ATS on the JV's breach of contract counterclaim and awarded no damages to the JV.  (ECF No. 441.)  Given the jury's verdict in ATS's favor, the Court denies the JV's construed Rule 50(b) motion with respect to ATS's affirmative defense of failure to mitigate damages as moot.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1.      The Joint Venture's construed Rule 50(b) motion on ATS's breach of

contract claim is DENIED, as set forth above;

2.      The Joint Venture's construed Rule 50(b) motion on ATS's affirmative

defense on failure to mitigate damages is DENIED AS MOOT, as set forth above; and

3.      The Court anticipates entering final judgment on the jury's verdict on April

2, 2024.

Dated this 28th day of March, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge