IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

## ORDER GRANTING FLATIRON'S MOTION FOR LIMITED DISCOVERY OF ATS'S ATTORNEYS' FEES AND LITIGATION COSTS

    Before the Court is Defendant-Counterclaim Plaintiff Flatiron AECOM, LLC's ("JV" or "Flatiron") Motion for Limited Discovery of Plaintiff-Counterclaim Defendant AECOM Technical Services, Inc.'s ("ATS") Attorneys' Fees and Litigation Costs ("Discovery Motion") (ECF No. 482.)  ATS responded in opposition (ECF No. 484), and the JV filed a reply (ECF No. 185).

    In ATS's Motion for Attorneys' Fees Incurred from Outset of Litigation Through Conclusion of Trial, ATS requests that the Court award it fees in the amount of $9,580,515.  (ECF No. 457 at 12.)  In ATS's Revised Motion for Litigation Costs Incurred From Outset of Litigation Through Conclusion of Trial, it requests that the Court award it costs in the amount of $7,688,271.  (ECF No. 468 at 15.)  Rather than filing a response to these motions, the JV moved for an extension of time to do so, which was

1

granted. (ECF No. 476.) Before the JV's June 28, 2024 deadline to respond, the JV filed the Discovery Motion. (ECF No. 482.)

In the Discovery Motion, the JV explains that ATS informed the JV that it is "not seeking attorneys' fees or disbursements for its affirmative breach of contract claim but, instead, is only seeking attorneys' fees and litigation costs for its defense of the JV's claim." (*Id.* at 1–2.) To that end, ATS purportedly separated bills for its affirmative claim. (*Id.* at 2.) However, the JV states that it "knows that not all work related to ATS's Affirmative Claim has been properly segregated." (*Id.*) Certain examples offered for support include:

- Legal fees incurred prior to the JV filing its counterclaim on October 16, 2019, which cannot possibly be associated (in the JV's view) with ATS's defense against the JV's counterclaim that did not exist at the time;

- Legal fees incurred during preparation of and the first week of trial when ATS litigated its Affirmative Claim. This amount cannot be associated with ATS's defense against the JV's counterclaim because the JV had not yet put on its case-in-chief until the second week of trial;

- Legal fees associated with the depositions of Michael Keleman, Stephen Harelson, Rob Richardson, Dustin Williams, Nick Polce, Matthew Barnes, and Jason Brada—all of whom were deposed by ATS's attorneys on topics related to ATS's Affirmative Claim and thus, cannot be associated with ATS's defense against the JV's counterclaim;

- Litigation costs associated with ATS's Expert David Hall's affirmative expert report on damages for ATS's Affirmative Claim. This amount cannot be

2

associated with ATS's defense to the JV's counterclaim because this reflects Hall's work on his affirmative report and opinions related to ATS's Affirmative Claim; and

- Block billing used throughout the litigation.

(*Id.* at 3–5.)

Given these and other alleged failures to separate work related to the affirmative claim from the counterclaim, the JV argues that if ATS is not ordered to provide the relevant documentation, the JV will be unable to compare fees and costs and assess whether it agrees or opposes ATS's fees and costs as reasonable. Given the foregoing, the JV requests that the Court: require ATS to produce all withheld documentation for attorneys' fees and litigation costs incurred in connection with its affirmative claim; require ATS to segregate its block billing time entries from the date the JV filed its counterclaim (October 16, 2019) through February 29, 2024, on or before June 21, 2024, to accurately and comprehensively distinguish between fees and costs associated with litigating its Affirmative Claim and defending against the JV's counterclaim; and require ATS to provide an affidavit from its counsel that all time related to its Affirmative Claim has been removed from what it is seeking from the JV. (*Id.* at 5–6.)

In response, ATS argues that the JV's Discovery Motion, if granted, will essentially "result in a second major litigation" and transform this Court into "green-eyeshade accountants." (ECF No. 484 at 1 (citations omitted).) ATS contends that although it did not seek fees on its affirmative claim because it "made the decision to be a gracious victor," it "could have under the language of the Subcontract's fee-shifting

3

provision." (*Id.* at 2, 5.)  Under these circumstances, ATS now encourages the Court to award any affirmative fees and costs that may be in ATS's requests and "reject the premise of Flatiron's argument for discovery into the affirmative versus defensive allocation, since ATS is indeed entitled to both." (*Id.* at 2, 8.)  ATS further characterizes the Discovery Motion as "burdensome" and "time-consuming."

ATS addresses the JV's examples of the failure to separate the affirmative claim from the counterclaim in its fees and costs.  First, ATS argues that it knew the JV would be filing its own breach of contract claim at some point after ATS filed its complaint, and so ATS's initial legal work focused on the JV's much larger counterclaim.  Next, ATS contends that the first week of trial, while on paper dedicated to its affirmative claim, was used "strategically, to frame the overall dispute by educating the jury about the design-build process, why designs naturally evolve, and why material and quantity increases do not necessarily establish a defective design.  Nearly all of ATS's preparation and first week case-in-chief was therefore defensive." (*Id.* at 9.)  Third, ATS explains that various deponents' testimony focused on the counterclaim, though they might have also known something about the JV's failure to pay ATS.  (*Id.* at 9–10.)  Fourth, ATS addresses damages expert David Hall's work and argues that while it is true that a "small amount of [Hall's work] could be allocated to the affirmative matter, it is also properly allocated to the defensive matter under the *best defense is a good offense* authority . . . , and per the better interpretation of Subcontract's fee and cost shifting provision." (*Id.* at 10 (emphasis in original).)  Finally, ATS contests that it block-billed as egregiously as the JV contends and argues that nevertheless,

> whatever the merits or problems surrounding block-billing, they cannot be meaningfully addressed through Flatron's requested discovery. Asking ATS's counsel to recreate billing entries from years ago would be burdensome, time-consuming, and pointless, since counsel could only make a post hoc allocation. Plus, many of the attorneys whose time entries Flatiron might quibble with are no longer involved in this matter, may be at other firms, or no longer practicing law. Subpoenaing lawyers from other law firms to provide post hoc (and meaningless) refinements to their time narratives written years ago would be the epitome of an improper and unwarranted "second major litigation."

(*Id.* at 11.)

Finally, ATS goes on the offensive and argues that if the Court grants the JV's Discovery Motion, "it should require Flatiron to produce its own fees and costs for comparison," specifying that "(The invoices are not necessary—just the total tallies)" to aid the Court in comparing the parties' fees and costs as a way to measure their reasonableness. (*Id.* at 11–12 (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998)).) Additionally, if the Court grants the Discovery Motion, ATS asks that the Court require the JV to pre-pay or pre-bond the estimated fees and costs that ATS will incur in complying with the Order; ATS estimates that the amount will be approximately $346,000 based on its average monthly burn rate through the course of this litigation. (*Id.* at 13.)

The Court has thoroughly considered both parties' positions and agrees that discovery will help answer how much, if anything, should be deducted from ATS's petitions. (ECF No. 485 at 2.) While the Court has no desire to prolong this already lengthy litigation, the Court will hold ATS to its prior representations to the JV that it does not seek fees and costs on its affirmative claim. Moreover, the Court takes a dim

view of ATS's eleventh-hour approach of now arguing that the Court should award it all of its fees and costs on the affirmative claim *and* the counterclaim, despite its original representations to the Court and the JV to the contrary.

For these reasons, the Court concludes that the discovery the JV seeks is reasonably limited in scope, and that it is entitled to this information so that it may make informed, specific objections to the attorney fees and costs sought by ATS. The very *significant* amount of fees and costs sought here also supports such a conclusion.

Accordingly, the Court ORDERS as follows:

1. The JV's Motion for Limited Discovery of ATS's Attorneys' Fees and Litigation Costs (ECF No. 482) is GRANTED;

2. The briefing deadlines set in the Order issued on May 29, 2024 (ECF No. 476) are VACATED and RESET as follows;

3. ATS's deadline to respond fully and in good faith to the JV's discovery requests is **July 22, 2024**;

4. The JV's deadline to file its responses to ATS's Motion for Attorneys' Fees (ECF No. 457) and ATS's Revised Motion for Litigation Costs (ECF No. 468) is **August 12, 2024**;

5. ATS's deadline to file its replies to the JV's responses is **August 26, 2024**; and

6. ATS's request that the JV be ordered to post an additional bond and produce its own fees and costs as a means for comparison is DENIED for lack of good cause shown. The Court will in due course evaluate ATS's fees and costs requests and

6

the JV's forthcoming objections on their merits and determine an appropriate award.

Dated this 21st day of June, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge