IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

    Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

    Defendant-Counterclaim Plaintiff.

---

### ORDER AMENDING FINAL JUDGMENT

---

Before the Court are: (1) Defendant-Counterclaim Plaintiff Flatiron AECOM, LLC's ("JV" or "Flatiron") Motion to Amend Final Judgment to Apply Correct Interest Rates and Remove Imposition of Penalty Interest ("JV's Motion") (ECF No. 462); and (2) Plaintiff-Counterclaim Defendant AECOM Technical Services, Inc.'s ("ATS") Motion to Alter and Amend the Judgment to Add Prejudgment Interest and Address Post-judgment Interest ("ATS's Motion") (ECF No. 463). Both Motions are fully briefed. (ECF Nos. 471, 472, 480, 481.) For the following reasons, the JV's Motion is granted, and ATS's Motion is granted in part and denied in part.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment on timely motion by a party. "Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately

1

following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks and alterations omitted).  The Tenth Circuit recognizes that "the Court may amend the judgment in its discretion to correct clear error, including a misapprehension of the controlling law, or to prevent manifest injustice." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017).

## II. ANALYSIS

On April 2, 2024, the Court entered Final Judgment in this case.  (ECF No. 454.)  In relevant part, the Final Judgment reflected that ATS would recover: $5,259,105 from the JV; penalty interest to be paid at the rate of 15% pursuant to Colorado Revised Statutes § 24-91-103(2); prejudgment interest to be calculated pursuant to C.R.S. § 13-21-101(1); and post-judgment interest to be calculated pursuant to C.R.S. §§ 13-21-101(3) and (4).  In the Motions, the parties challenge the awards of interest to ATS and request that the Court amend the Final Judgment.

**A.     Prejudgment Interest**

The Court awarded prejudgment interest pursuant to the statutory rate of 9% *per annum*, compounded annually, as set forth in C.R.S. § 13-21-101. The parties agree that this statutory rate does not apply here because that rate only applies to "actions brought to recover damages for personal injuries." § 13-21-101(1).  The parties agree that for a contract case with purely economic damages such as this one the proper statute is C.R.S. § 5-12-102, which imposes prejudgment interest at 8% *per annum*. *See, e.g., USAA v. Parker*, 200 P.3d 350, 357 (Colo. 2009) (C.R.S. § 5–12–102 controls prejudgment interest in all cases except damages for personal injuries and where the parties have otherwise agreed to a rate of interest); *United Int'l Holdings, Inc. v. Wharf*

2

*(Holdings) Ltd.*, 210 F.3d 1207, 1233–34 (10th Cir. 2000) ("[O]ne who is damaged by a breach of contract is entitled to recover prejudgment interest of eight percent annually from the time of the breach".), *aff'd*, 532 U.S. 588 (2001); *In re Parker Excavating, Inc.*, 2011 WL 5974666, at *6 (Bankr. D. Colo. Nov. 28, 2011) (applying 8% prejudgment interest pursuant to Section 5-12-102 for subcontractor payments owed due to change order requests).

Given the parties' agreement, the Court grants those portions of the JV's Motion (ECF No. 462 at 3–4) and ATS's Motion (ECF No. 463 at 8–9) requesting amendment of the amount of prejudgment interest that the JV owes ATS. Accordingly, the Court amends the prejudgment interest rate from 9% to 8% *per annum* pursuant to C.R.S. § 5-12-102. The proper amount of prejudgment interest that will be awarded to ATS is $2,460,099.

**B.    Penalty Interest**

    1.    <u>Prompt Payment Statute</u>

Colorado's prompt payment statute provides:

> Whenever a contractor receives payment pursuant to this section, the contractor shall make payments to each of his subcontractors of any amounts actually received which were included in the contractor's request for payment to the public entity for such subcontracts . . . within seven calendar days of receipt of payment from the public entity . . . If the contractor fails to make timely payments to the subcontractor as required by this section, the contractor shall pay the subcontractor interest as specified by contract or at the rate of fifteen percent *per annum* whichever is higher, on the amount of the payment which was not made in a timely manner. The interest shall accrue for the period from the required payment date to the date on which payment is made.

C.R.S. § 24-91-103(2).

The statute defines "subcontractor" as "any person, company, firm, or corporation which is a party to a contract with a contractor to construct, erect, alter, install, or repair any highway, . . . and which, in connection therewith, furnishes and performs on-site labor with or without furnishing materials."  § 24-91-102(4).

2. <u>Analysis</u>

The JV argues that the judgment must be further amended because the Court incorrectly awarded penalty interest as though ATS were a "subcontractor."  (ECF No. 462 at 2–3.)  According to the JV, ATS does not qualify as such under C.R.S. § 24-91-103(2), as no designer like ATS has ever been recognized as a "subcontractor" under this statute.  The JV argues that ATS did not perform any on-site labor; rather, ATS designed the work that others performed on-site.  And, even if ATS could qualify as a "subcontractor," the JV asserts that this interest rate could only apply to the sums that the public entity Colorado Department of Transportation ("CDOT") actually paid to the JV for which ATS was owed payment—which is a fraction of the total damages award.  Accordingly, the JV requests that the Court amend the judgment and remove the imposition of penalty interest under C.R.S. § 24-91-103(2).

ATS disagrees with the foregoing, arguing that it is a subcontractor under the penalty interest statute and that the JV's receipt of payment from CDOT triggered its obligation to pay ATS for all remaining amounts owed under the Subcontract.  (ECF No. 472 at 6–13.)

a. *Whether ATS Qualifies as a Subcontractor*

Despite the JV's contention that ATS does not qualify as a subcontractor under the statute, the Court concludes that sufficient evidence exists in the record to

4

determine that ATS is a subcontractor entitled to penalty interest.  ATS performed work for the JV under the Design Subcontract.  (ECF Nos. 37-1, 37-2.)  As ATS points out, it is a "corporation" that was party to a "contract" (the Design Subcontract) with a "contractor" (the JV) to "alter" a "highway" (the 12-mile portion of C-470).  (ECF No. 472 at 6.)  The main dispute hinges on whether ATS performed on-site labor.

ATS reminds the Court that "one of the reasons that ATS's design necessarily evolved the way it did was because the initial pre-bid design was based on high-level surveying which Flatiron was required to supplement with more detailed surveying—a process called 'potholing'."  (ECF No. 472 at 6–7 (citing 1/29/2024 trial transcript at 189:2-190:11 (Mindy Steckmest testimony regarding how Flatiron's delay in performing required potholing delayed the final drainage design); 1/30/2024 trial transcript at 262:14-24 (same); 2/1/2024 trial transcript at 659:17- 660:15 (Will Carrier testimony regarding potholing)).)  ATS cites portions of Will Carrier's trial testimony referring to times when ATS "started getting out there and getting some of the potholes, we found out through a field visit that this actually connects . . . to this manhole right around here." (ECF No. 419 at 188–89.)  Such testimony—*de minimis* though it may be— demonstrates that ATS performed on-site labor when it visited the C-470 Project ("Project") site to alter the drainage design to reconcile potholing information with the information collected by visiting the site.  (ECF No. 472 at 7.)

Additionally, ATS cites numerous trial exhibits referring to field work and field visits.  (*Id.* at 7–8 (citing admitted trial exhibit P-190 at 1 (ATS's proposed change order ("PCO") #D030-B2 for I-25 Interchange redesign, seeking payment for "the design and associated field work" for Alternative 12); admitted trial exhibit P-192 at 1 (ATS's PCO

5

#D030-A for I-25 Interchange redesign, seeking payment for "the design and associated field work" for Alternative 10); admitted trial exhibit P-194 at 1 (ATS's PCO #D030-B3A for I-25 Interchange redesign, seeking payment for "the design and associated field work" to complete Alternative 12); 2/16/2024 trial transcript at 2900:24-2901:15 (testimony of ATS's standard of care expert Wayne Kalayjian describing all the types of documents he reviewed, including documents relating to ATS's field visits).

The JV replies that Carrier's testimony "says nothing about any work ATS actually did at the site," and in fact, all his testimony shows is that "ATS found out through a field visit that the water supply connects to a certain manhole." (ECF No. 480 at 6 (internal quotations and alteration omitted).) According to the JV, Carrier's testimony fails to describe what work ATS did, who attended the visit, when the visit occurred, or any other detail that suggests anything beyond the notion that ATS, once, went to the job site and saw the work being performed by others. (*Id.*)

The JV also criticizes ATS's citation to the three PCOs that refer to "field work," arguing that the language in the exhibits does not describe the field work conducted by ATS nor states whether it was ATS or another party that performed the associated field work (*Id.* at 7.) And the JV underscores that Wayne Kalayjian's testimony offers no information on the subject of field visits other than stating that he reviewed documents which included "field visits." (*Id.*) As such, the JV asserts that "the record is bereft of any evidence of work done by ATS on-site" and that ATS could have made a record of its on-site labor during trial—knowing it had requested penalty interest in its Complaint. (*Id.*)

The Court considers this question a close call. However, based on the evidence

ATS identifies, the Court concludes that it performed some on-site labor such that it qualifies as a subcontractor under the prompt payment law.  The statute does not require a certain number of times, or a minimum extent or scope, of on-site labor which must be performed by a subcontractor.  It does not require a particular type of description or accounting of the manner of the on-site work done.  Nor does the statute require that the subcontractor perform "construction" work, as the JV suggests.  (ECF No. 471 at 5.)

All the statute requires is that the subcontractor performed on-site labor in connection with its contract to alter a highway.  The Court will not read into the statute more requirements than were placed there by the legislature.  While perhaps the JV is correct that the Colorado legislature did not intend for an entity like ATS to fall within the parameters of the prompt payment statute, that is for the legislature, not this Court, to decide.  Based on the language of the statute and the—admittedly scant—evidence highlighted by ATS, the Court concludes that ATS is a subcontractor under the prompt payment statute.

      b.    *Whether to Apply Penalty Interest*

The prompt payment statute provides that "the contractor shall make payments to each of his subcontractors of any amounts actually received;" "[t]he contractor shall make such payments within seven calendar days of receipt of payment from the public entity;" and "interest shall accrue for the period from the required payment date to the date on which payment is made."  C.R.S. § 24-91-103(2).

The JV argues that ATS is not entitled to any penalty interest.  But to the extent ATS is entitled to any penalty interest, the JV argues that ATS is only entitled to interest

on those sums that the JV requested and CDOT paid to the JV for ATS's work and that interest begins to run seven days after the date CDOT paid the JV such funds.  (ECF No. 462 at 6.)  Specifically, the JV states that the only evidence in the record that supports ATS's claims for penalty interest is Jason Brada's testimony that the JV received payment from CDOT for PCOs D-030-A, D-030-B2, and D-030-B3B.  (*Id.* (citing ECF No. 452 at 29 (36:19-37:8)).)  However, the JV states that neither Brada nor any other witness or evidence established when CDOT paid the JV for any passed-through PCOs, including the three listed above.  (*Id.*)  Thus, the JV argues that ATS has failed to present sufficient evidence that it is entitled to penalty interest *even if* ATS qualifies as a subcontractor.  (*Id.* at 6–7.)

ATS takes the position that the JV was paid the $204 million contract price it bid for the Project, and the statutory trigger for the JV's obligation to pay ATS—its subcontractor—is when the JV receives payment.  (ECF No. 472 at 11.)  According to ATS, the JV's receipt of payment for the Project triggered its obligation to pay its subcontractors for all amounts that the JV owed them under their subcontracts.  (*Id.*)  However, ATS explains that "[a]s Flatiron has not disclosed when CDOT made this payment to Flatiron," "ATS has calculated penalty interest based on the date each amount was due and owing under the Subcontract."  (*Id.*)

Specifically, ATS's damages expert, Trey Hoefer of Alvarez & Marsal Disputes & Investigations, LLC, calculated 15% simple interest on each of the change order amounts that constitute the jury's verdict, starting from the date each amount was due and owing under the Subcontract: 90 days after the PCO date for all PCOs not related to the I-25 interchange; 10 days after the execution date of Change Order 18

(December 17, 2018) for PCOs related to the I-25 interchange; and 90 days after ATS's last pay application dated February 26, 2021 for any remaining unpaid subcontract balance.  (ECF No. 463 at 5; ECF No. 463-1.)

Here, the question is whether ATS presented sufficient evidence at trial to entitle it to such interest.  The Court concludes that it did not.  As the JV emphasizes, the statute requires timely payment only of those sums that the JV requested and that CDOT paid to the JV for ATS's work.  C.R.S. § 24-91-103(2).  Any applicable interest begins to accrue seven days after the date CDOT paid the JV such funds.  *Id.*

Therefore, in order to be entitled to an award of penalty interest, at trial ATS must have established by a preponderance of the evidence both (1) that the JV was paid by CDOT for some or all of the at-issue PCOs and (2) the timing of such payment.

The JV concedes that the evidence at trial confirmed that three of ATS's 27 PCOs comprising its damages award were submitted by the JV and paid by CDOT either in full or in part: PCOs D-030-A, D-030-B2, and D-030-B3B, constituting unpaid change orders in the amount of $1,367,410.34.  (ECF No. 471 at 9.)  Nevertheless, the JV argues, and the Court agrees, that ATS did not establish the *timing* of CDOT's payments to the JV.  (*Id.* at 10.)  The JV explains that

> [w]hile the jury determined that the JV must pay ATS for certain design work pursuant to change orders,[] that does not mean, and the jury did not find, that the JV submitted any of the change orders in question to CDOT (pursuant to the parties' agreed upon contractual mechanism) and then CDOT paid these change orders, triggering this heightened "penalty" interest.  Again, payment coming due under the Design Subcontract is not the same as being entitled to penalty interest under the statute.

(*Id.*)  Moreover, the JV underscores that ATS did not establish the timing of CDOT's

9

payments to the JV and instead relied on Hoefer's declaration and instructed him to assume payment dates. (*Id.*) Without this evidence in the record, the Court cannot determine the date on which penalty interest began to accrue and therefore cannot properly calculate penalty interest under the statute.

As both parties are aware, precious few cases cite the prompt payment statute, much less analyze it. However, in *New Design Construction Company v. Hamon Contractors, Inc.*, the Colorado Court of Appeals touched on the issue. *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1184 (Colo. App. 2008). There, the court explained that the trial court erred in calculating penalty interest from the date certain projects were completed. *Id*. Instead, the court clarified that the contractor was required to pay the subcontractor "within seven days of actually receiving each installment payment from CDOT" and remanded the case with instructions for the trial court to recalculate penalty interest. *Id.*

Based on *New Design*, which the Court finds highly persuasive, and, of course, the clear language of the statute, the Court cannot overlook the fact that ATS failed to elicit evidence at trial that would clarify if and when CDOT paid the JV for each PCO. Were the Court to do so it would necessarily result in an improper penalty interest calculation, and almost certainly constitute reversible error. As the JV rightly emphasizes, "[p]roof of payment by CDOT to the JV of the change orders at issue (except for the three change orders noted above) and the date of those payments are simply not in the trial record." (ECF No. 471 at 11.)

Given the foregoing, the Court finds that the JV has met its burden under Rule 59(e) to demonstrate that amendment of the judgment is in these circumstances

required. Accordingly, the Court grants that portion of the JV's Motion which requests that the Court amend the judgment to remove the award of penalty interest (ECF No. 462 at 7), and denies that portion of ATS's Motion which requests that the Court alter and amend its judgment to award penalty interest in the amount of $3,916,790 (ECF No. 463 at 12). The Court amends the judgment to remove all penalty interest awarded to ATS.

C.     Post-judgment Interest[1]

The parties also agree that the Court should amend its final judgment to reflect that post-judgment interest is governed by 28 U.S.C. § 1961, instead of the Colorado personal injury interest statute, *see* C.R.S. §§ 13-21-101(3) and (4), which does not apply. *See, e.g., Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1146 (10th Cir. 2008); *Moose Agricultural LLC v. Layn USA Inc.*, 639 F. Supp. 3d 1150, 1152 (D. Colo. 2022).

Section 1961(a) provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment." 28 U.S.C. § 1961. Section 1961(b) provides that the amount derived from the calculation above "shall be compounded annually."

Given the parties' agreement, the Court grants those portions of the JV's Motion (ECF No. 462 at 7) and ATS's Motion (ECF No. 463 at 12) requesting amendment of

---

[1] The JV argues that if the Court applies penalty interest, it should run in place of post-judgment interest. (ECF No. 480 at 9.) Because the Court has concluded that it cannot apply penalty interest on this record, the parties' dispute about penalty and post-judgment interest is moot and the Court addresses it no further.

the amount of post-judgment interest that the JV owes ATS. Accordingly, the Court amends the judgment to reflect that post-judgment interest is governed by 28 U.S.C. § 1961. However, it is not possible to calculate in advance a *per diem* amount of post-judgment interest under this statute; rather, a judgment creditor calculates this post-judgment interest in the course of collection and determining satisfaction of the judgment.

### D.     Whether to Conduct an Evidentiary Hearing

The Court has considered whether it should conduct an evidentiary hearing on the issues presented in the parties' Motions and, in its discretion, determines that it will not do so. As an initial matter, ATS only mentioned an evidentiary hearing in the context of whether it qualifies as a subcontractor under the prompt payment statute. (ECF No. 463 at 4 n.1.) A hearing on this issue is unnecessary, given the Court's findings above, *see supra*, Part II.B.2.a.

Relatedly, the Court *sua sponte* considered whether to conduct an evidentiary hearing on the unanswered questions concerning penalty interest. The Court has presided over this case since its inception in October 2019 and is of the view that both parties have benefitted from exceptional legal representation throughout the litigation. Nevertheless, in the Court's view, all signs point to a conclusion that ATS's counsel simply overlooked the fact that ATS had pled a request for penalty interest under the statute in its Complaint (ECF No. 1). As a consequence ATS failed to present the requisite evidence at trial needed to meet the statutory requirements, and by doing failed to provide the Court with the factual data it needed to properly calculate the amount of penalty interest to which ATS might be entitled.

As the JV points out, Rule 59(e) is silent on whether a court must afford the movant a further hearing.  (ECF No. 471 at 5 n.2 (citing *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1094–95 (10th Cir. 2001) (holding district court did not abuse its discretion when it decided a motion under Rule 59(e) without granting an evidentiary hearing)).)  Tenth Circuit case law shows that a trial court's decision to reopen the record is typically discretionary.  *See O'Toole v. Northrop Grumman Corp.*, 364 F. App'x 472, 478 (10th Cir. 2010) (the district court did not abuse its discretion in refusing to consider Mr. O'Toole's new evidence and in denying his request for a supplemental hearing); *see also Mason v. Okla. Tpk. Auth.*, 182 F.3d 1212, 1215 (10th Cir. 1999) (concluding district court did not abuse its discretion in rejecting defendant's attempt to augment the evidentiary record on remand); *Otero v. Mesa County Valley Sch. Dist. No. 51*, 628 F.2d 1271, 1272 (10th Cir. 1980) (holding that district court did not err in refusing to reopen case and receive additional evidence when the Tenth Circuit did not remand with directions to do so).

Here, the Court concludes that ATS pled a request for penalty interest under the statute and knew—or at least should have known—that it would need to present sufficient supporting evidence at trial to establish its entitlement to same by a preponderance of the evidence.  The Court notes in this regard that evidence of CDOT's payments to the JV for various PCOs directly relates to the work ATS performed and was part of ATS's breach of contract claim.

In its discretion, the Court concludes that ATS had a chance to present evidence supporting its request for penalty interest at trial and failed to adequately do so.  Reopening the evidentiary record in a case that was tried to a jury *after* the jury has

issued its verdict in no small thing in American jurisprudence. It is a step that would almost most certainly raise important Seventh Amendment issues. The Court will not here engage in such an undertaking. The Court perceives no fundamental miscarriage of justice to hold ATS to the evidence it adduced at trial, and no more. ATS will not receive a second bite at the apple on the issue of penalty interest.

### III. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. The JV's Motion (ECF No. 462) is GRANTED as set forth above;

2. ATS's Motion (ECF No. 463) is GRANTED IN PART and DENIED IN PART as set forth above; and

3. The Court will enter an Amended Final Judgment that will reflect:

    a. Prejudgment interest at 8% pursuant to C.R.S. § 5-12-102(1)(b) in the amount of $2,460,099;

    b. Post-judgment interest at the federal rate pursuant to 28 U.S.C. § 1961, beginning on April 3, 2024; and

    c. No penalty interest will be awarded pursuant to C.R.S. § 24-91-103(2).

Dated this 15th day of August, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge