IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff / Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant / Counterclaim Plaintiff.

---

**FLATIRON | AECOM, LLC'S OPPOSITION TO
AECOM TECHNICAL SERVICES, INC.'S MOTION FOR ATTORNEYS' FEES**

---

ATS seeks $9,281,895.25 in attorneys' fees. ECF 491 at 13. While ATS claims its fees are reasonable and proper, its documents tell a different story. It is now clear that, after the Court's Summary Judgment Order entitled ATS to seek fees for its defensive work, ATS nearly <u>doubled</u> its hourly rates only in its defensive matter, to which it then billed nearly <u>all</u> its time.[1] In the affirmative matter file, ATS kept its rates largely the same for the duration of the litigation and used that matter only sparingly. In other words, ATS attorneys who billed to both the affirmative and defensive matters on the same day charged a *much* higher rate for defensive work than for affirmative work, because ATS knew that the JV would have to foot the higher bill. ATS tried to conceal this.  It used "effective rates" in its expert's declaration to obfuscate the rate increases.  It

---

[1] Counsel for ATS repeatedly taunted the JV that "the meter is running," and chided that it would continue to run its fee tally. *See* **Exhibit 1** at 3 ("[W]e again note that ATS's work on such matters is on Flatiron's dime."); *id.* at 15 ("We remind you that Flatiron has already incurred ATS's fees for developing the above explanation, and will pay ATS's fees incurred in presenting the above analysis in its reply."); *id.* at 22 ("[T]he meter is still running.") (quoted text highlighted in Ex. 1).

also steadfastly refused to produce its affirmative matter bills so that they could not be compared to the defensive matter bills. But the truth has now come out.

ATS's Motion should be denied in its entirety or, at the very least, in substantial part. ATS must not be rewarded for secretly doubling its rates in preparation for its fee petition. Additionally, ATS failed to comply with the local rules and did not provide required documentation for 19 timekeepers. ATS also seeks fees that it admitted it was not entitled to recover, including fees related to the state case, responding to the JV's Rule 702 Motions and the Court's Show Cause Order, and affirmative claim fees that the Court ordered it to remove.

ATS's Motion should also be denied in its entirety or in substantial part because the lion's share of ATS's fees and costs were paid by insurance purchased by the JV. As a condition of the project, the JV purchased a $10 million project specific insurance policy that ATS overbilled and exhausted due to its predatory rate increases.

Finally, ATS's fees are unreasonable for other reasons, described below. Even if the Court declines to deny ATS's petition entirely, the Court should not hesitate to reduce ATS's fee award for the reasons argued below.  ATS will not be hurt.  ATS is seeking payment of *all* fees and costs incurred, including those already reimbursed by the $10 million policy. The Court should award ATS **nothing** or, at the most, **$3,431,429.07**. *See* **Exhibit 9** (chart summarizing the JV's arguments for appropriate reductions).

## **LEGAL STANDARD**

A fee award must be reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). It is the movant's burden to prove "the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986). The Court is "accorded wide

2

latitude" to make deductions. *Id.*; *Murphy v. Schaible, Russo & Co., L.L.P.*, 2024 WL 1215615, *3 (D. Colo. Mar. 21, 2024) (Martinez, J.). "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (internal quotations omitted). Where documentation is inadequate, the Court may reduce the award. *Id.*; *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) ("The trial judge is not obligated to accept the fee applicant's billing judgment uncritically."). Additionally, where it is not possible to determine the reasonability of each item in a fee request, a global reduction is appropriate. *See Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 387–88 (Colo. 1994) (en banc).

## **ARGUMENT**

The Court should deny ATS's petition because ATS unreasonably increased its hourly rates after Summary Judgment. The Court should also deny ATS's petition because it removed only a fraction of its affirmative fees in violation of the Court's Order, as demonstrated by ATS's flawed methodology that minimizes that work, such as ATS's use of a "proxy" to approximate affirmative fees and by ATS's neglect to remove any amounts for "common issue" time that constituted work that was both affirmative and defensive in nature. If the Court declines to fully deny the motion, it should reduce ATS's fee request for five reasons:

- ATS should not profit from its unreasonable rate increases. The Court should subtract **$946,799.92** from ATS's petition as a result.

- ATS also failed to provide information on 19 timekeepers in violation of the Court's Local Rules and common law precedent. The Court should subtract **$1,580,817.79**.

- ATS also seeks fees to which it is not entitled and told the Court it was not seeking, such as fees related to the state litigation and opposing the JV's Rule 702 motions.

3

> The Court should subtract **$55,538.50** to account for these issues. ATS's failures to accurately remove affirmative fees from its petition counsel a **31.7% reduction**.

- A global **25% reduction** is warranted to remedy poor billing judgment, such as top-heavy case staffing and billing for administrative time.

- The JV paid for the insurance policy ATS abused.

For these reasons, and those explained in the Declaration of Expert Steven A. Tasher, ATS's fee petition should be denied, or its award should be reduced to **$3,431,429.07**.

**I.**    **The Court Should Award ATS No Fees Because of its Outrageous Billing Practices.**

The Court should deny ATS's fee petition outright because ATS unreasonably increased its defensive matter rates when it learned the JV would be responsible for paying those fees and because it failed to follow the Court's Order on removing its affirmative claim fees.

Originally, ATS's attorneys charged ATS the same rates for affirmative and defensive work. But after Summary Judgment, ATS's billing rates for *only* the defensive matter increased substantially. In comparing ATS's rates from late 2022 to January 2024, Mr. Gurr's rate increased by **96%**, Mr. Lewis' rate increased by **126.72%**, Mr. McDonnell's rate increased by **103.08%**, and Ms. Schneider's rate increased by **78.38%**.  Tasher Decl. ¶ 43. These increases are wildly out of line with the market and unreasonable. *Id.* ¶¶ 43–51.

Courts have a responsibility to guard against "moral hazard," or "the tendency [by a prevailing party] to take additional risks (or run up extra costs) if someone else pays the tab." *Medcom Holding Co. v. Baxter Travenol Lab'ys*, 200 F.3d 518, 521 (7th Cir. 1999). The Court must ask whether the claimed fees are those "that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves[.]" *Id.*; Tasher Decl. ¶¶ 38–41. Here, that answer is clearly no. The majority of ATS's fee increases followed the Court's June 2023

summary judgment ruling. ATS's counsel has not been shy in reminding the JV of this ruling. *See, e.g.*, ECF 482-3 at 4 ("Flatiron knew this day of reckoning would come since the Court ruled a year ago that Flatiron has to pay ATS's fees and costs…<u>the meter is still running</u>.") (emphasis added); *see also* Ex. 1 at 3 ("<u>[W]e again note that ATS's work on such matters is on Flatiron's dime</u>…My current rate is in our fee motion.") (emphasis added). Counsel's constant reminder that "the meter is running" is indicative of ATS's cavalier approach to billing post-summary judgment: run the defensive matter fees up because the JV must pay the tab. To confirm that counsel would not otherwise charge its client these rates, the Court need only look at the rates charged by ATS in its affirmative claim matter, which hardly increased. Tasher Decl. ¶ 45. After summary judgment, where timekeepers billed to both matters on the same day, the rates charged for the defensive matter were much high than in the affirmative matter. *Id.* ¶¶ 45–47. This is unconscionable.

ATS fought producing its affirmative invoices to conceal that the rates for both its matters were once the same, then, following summary judgment, ATS substantially increased the defensive matter rates, well above the affirmative rates, which remained largely the same. ATS's expert also attempted to hide the rate increase by using an "effective rate" for many of the attorneys that worked on the defensive matter and not showing actual rates charged monthly. *Id.* ¶ 52. A closer look at the "effective rates" proves their absurdity; the method results in more junior associates new to the matter billing at a rate higher than nearly every attorney to ever work on the matter because their work occurred only post rate hike. *Id.*

Where a fee request is outrageously excessive, a court should deny the petition in full. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 402–03 (3d Cir. 2018); *United States v. $114,700.00 in U.S. Currency*, 2020 WL 5076762, at *5 (D. Colo. Aug. 26, 2020) (noting the

Tenth Circuit "suggested" an outrageously excessive fee petition may be set aside, then setting aside outrageous time spent preparing motion for fees). The total sought by ATS is excessive because, based on rate increases alone, ATS incurred an additional $1 million in defensive fees once it learned the JV would be responsible. Tasher Decl. ¶¶ 47–49. ATS's rate changes did not occur through typical yearly changes but are the direct result of learning the JV would owe defensive fees. This is precisely the type of moral hazard the Court must guard against.

Further, ATS failed to comply with the Court's Order to "accurately and comprehensively distinguish between fees and costs associated with litigating its Affirmative Claim and defending against the JV's counterclaim." ECF 486 at 3. Instead of comprehensively identifying affirmative claim fees, ATS counted the total trial transcript pages that it somehow determined related to the affirmative claim, compared that to the total trial transcript pages, and applied a general discount to some entries using that page-ratio. It used a similar method for fees related to Mindy Steckmest, Jason Brada, and David Hall. ECF 491 at 11. Mr. Lewis also removed some affirmative time entries based on his "recollection." *Id.* at 7. ATS's half-hearted effort fails for at least two reasons.

First, the Court did not order ATS to *approximate* affirmative claim fees based on transcript pages; it ordered a comprehensive removal of improper fees. ATS asked for more time to undertake this process, but did not do so. Its failure to review each entry and determine whether those fees are recoverable means it also failed its burden of proving "the reasonableness of each dollar, each hour, above zero." *Mares*, 801 F.2d at 1210; *see also Payan v. Nash Finch Co.*, 310 P.3d 212, 220 (Colo. App. 2012) (rejecting assertion that 3.7% of fees were spent on unsuccessful claims because plaintiff lacked substantiation).

6

Second, the page-ratio proxy is neither comprehensive nor accurate. As described in Section II(C)(3) *infra*, ATS's methodology does not accurately measure the affirmative claim fees. ATS also did not apply this slapdash method consistently. For example, ATS claims to have reduced by 11% all the time it spent with affirmative expert David Hall. ECF 491 at 11. But even within the same invoice pages ATS removed some entries, but not others with nearly identical descriptions. *See* **Exhibit 2** (Examples of Affirmative Claim Time Entries Not Removed); **Exhibit 10** (ATS hand-marked reductions to invoices). Likewise, ATS claimed to remove all affirmative claim work, but failed to remove entries facially dedicated to the affirmative claim. *Id*. ATS also entirely ignored numerous "common-issue" topics that necessarily relate to both claims, such as legal research, document review, client calls and litigation strategy sessions. Tasher Decl. ¶¶ 75–79; **Exhibit 3** (Examples of Common-Issue Time Entries Not Removed). Further, Mr. Lewis' "recollection" of time he did not bill as long as six years ago can hardly be considered accurate.

ATS's failure to comprehensively remove affirmative claim fees is of added importance because we now know that ATS billed next to nothing to its affirmative matter. ATS billed **<u>zero</u>** hours to the affirmative matter between: Oct. 2020–June 2021; Sept. 2021–Nov. 2021; and March 2022–July 2023. **Exhibit 4**. Since August 2023, ATS billed only **<u>28</u>** total entries to the affirmative matter. *Id.* at 70–92. By comparison, in October 2023 alone ATS billed **<u>239</u>** entries to the defensive matter. ECF 457-2 at 736–52. ATS failed to properly segregate its efforts in real-time (which it should have, as it had two matters opened for that purpose) to inflate its claim against the JV. Given that ATS only used a rough proxy for *some* categories of fees, but not others, it cannot claim to have removed all affirmative time. The Court must not reward ATS for its inflation of its total fees sought and its failure to comply, and should instead deny ATS's petition.

**II.      If the Court Awards Some Fees, It Should Reduce the Fee Award in Substantial Part.**

If the Court declines to deny ATS's fee petition, it should still substantially reduce the fee award for four main reasons. First, ATS cannot recover the fees it incurred after unreasonably doubling its rates. Second, ATS did not submit proper documentation for 19 of its timekeepers in violation of the local rules. Third, ATS still seeks fees which it told the Court it was not seeking. Fourth, ATS displayed a lack of billing judgment, making a significant reduction appropriate.

**A.      *ATS Cannot Recover for Excessive Fee Escalations.***

ATS's fees should be reduced because it massively increased its rates in the defensive matter after it learned the JV would owe those fees. As explained in Section I *supra*, ATS's fee petition is excessive because, had ATS raised its fees at rate its own expert suggested was reasonable (and as it did in the affirmative matter), its total fees sought would be $1 million lower. Tasher Decl. ¶¶ 43–51. To account for ATS's excessive rate increases, a reduction of at least **$946,799.92**[2] is warranted. *Id.* ¶ 49; **Tasher Decl. Exhibit C.**

**B.      *ATS Cannot Recover Fees of Timekeepers for Which it Provided No Information.***

ATS claims it supplied the Court with a list of all timekeepers. ECF 457 at 5. It did not. Local Rule 54.3 and common law require ATS to "include … for each person for whom fees are claimed [] a summary of relevant qualifications and experience." D.C. Colo. L. Civ. R. 54.3; *see Murphy*, 2024 WL 1215615, at *3 (claimant must provide evidence of what the market commands for those with "reasonably comparable skill, experience, and reputation"). Mr. Gurr's affidavit

---

[2] This is the difference between what ATS actually charged in January and February 2024 and what ATS should have charged if it applied its early 2023 rates to those hours. The resulting total is reduced by 3.8%, which ATS applied to its own bills (ECF 491) to avoid double-counting fees.

provided biographies of ATS's "principal" attorneys and paralegal but failed to provide any information for 19 other timekeepers.[3] ECF 457-1. ATS's expert only addressed the hourly rates for two of the 19 but made no mention of their qualifications or experience. ECF 457-4 at 4. For the remaining 17, no information was provided. To remedy ATS's noncompliance, the Court should deny ATS the fees incurred by the 19 timekeepers, which totals **$1,580,817.79**.[4] **Exhibit 5**.

### C.  *ATS is Not Legally Entitled to Certain Fees.*

#### 1.  ATS is Not Entitled to Fees for the State Lawsuit.

ATS represented to the Court it was not seeking fees related to the parties' state court case. ECF 457 at 10 n.6. Again, this representation is untrue. The JV identified 108.4 hours totaling $59,059.00 in state case fees, $16,325.50 of which ATS agreed to remove. Ex. 1 at 16. But ATS continues to pursue the rest, which relate to ATS's anti-suit injunction. ATS may only recover fees incurred in defense of the JV's claim in this case. *See Santacruz v. Standley and Assocs. LLC*, 2011 WL 3366428, at *3 (D. Colo. Aug. 4, 2011) (plaintiff may not recover fees from defending against state court suit between the same parties). By ATS's own admission, it filed the anti-suit injunction to "enjoin [the JV], including its majority member and manager [Flatiron], from further

---

[3] The 19 timekeepers include: Cynthia Lowery-Graber, Nick Griebel, K.R. Barrett, Nick Bedo, Henry Bolz, Mark Dawson, Phillip Guttilla, M.J. Hofmann, Mary C. Igou, Dan Levy, Jenn Pearce, L.S. Perlov, Teresa Romero, Stephen Rynerson, L.C. Schneider, John H. Scott, Elise Seale, Robert Tuchman, and Robyn S. Mills.

[4] ATS may claim it can remedy these failures in its reply. Not so. ATS waived its right to seek these fees due to its non-compliance with the local rules and case law. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998); *see also Martinson v. Karmaceuticals LLC*, 2020 Colo. Dist. LEXIS 2100, at *2 (Colo. Dist. Ct. July 16, 2020) (citing *Keller Cattle Co. v. Allison*, 55 P.3d 257, at 261–62 (Colo. App. 2002)) ("Arguments raised or evidence presented for the first time in a reply … are untimely raised and cannot be the basis upon which a motion is granted.").

9

prosecuting the . . . **state court action**." ECF 304 at 1 (emphasis added). ATS argued that the JV

and Flatiron's *state court* complaint was an attempt to evade the limitation of liability, so this Court

should stop the *state court* action from proceeding while the federal trial took place. ATS admits

one of its goals "was to stay to the state court action until after the federal trial was completed."

Ex. 1 at 15. Even if ATS succeeded, this case would have proceeded exactly as before, with a trial

on both parties' claims and with the state action delayed until after trial. *See Santacruz*, 2011 WL

3366428 at *3 (declining fees and noting "[t]he state suit was separate from this case and Plaintiff's

success in defending against the state law suit had no bearing on this action."). These fees properly

relate to the state court action. The Court should deduct at least **$38,239.00**[5] in fees. **Exhibit 6**.

        2.      <u>ATS is Not Entitled to Fees for Opposing the JV's Rule 702 Motions and Corresponding Show Cause Order.</u>

ATS represented it took "care to remove" fees incurred responding to the JV's Rule 702

motions. ECF 457 at 11. But the JV identified 55.2 hours ATS spent responding to the Rule 702

motions and the Show Cause Order. The JV then informed ATS, but ATS never removed this time.

Ex. 1 at 13. ATS waived its right to seek these fees. Waiver is the intentional relinquishment or

abandonment of a known right. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070,

1077 (10th Cir. 2009). ATS's waiver is explicit: it told the Court it was not seeking recovery of

these fees. Just as the Court took a "dim view" of ATS seeking affirmative claim fees after

representing it would not, the Court should hold ATS to its representation here. ECF 486 at 5–6.

Seeking these fees also contradicts a Court order. The Court expected "the parties to explicitly

---

[5] This total excludes fees from the timekeepers ATS failed to document, *see* Section II(b), *supra*. If the Court declines to exclude that time, the fees removed here should be revised to $42,733.50.

exclude fees and costs for time spent briefing Rule 702 issues that they need never have briefed at all." ECF 344 at 3. ATS failed to heed this directive. ATS cannot be rewarded for its lack of compliance and ignorance of the Court's Order by receiving its fees. Thus, at least **$17,299.50** should be deducted from ATS's petition. **Exhibit 7**.[6]

### 3.     ATS Is Not Entitled to Fees for Its Affirmative Claims.

ATS failed to "accurately and comprehensively" remove all affirmative claim time it improperly seeks per the Court's order, after ATS misrepresented its decision to seek these fees. *See* Section I, *supra*. If an outright denial is not granted, reducing ATS's fee petition to account for affirmative claim time is warranted because of multiple flaws in ATS's methodology.

First, estimating affirmative claim time is not what the Court ordered. ATS declined to go line-by-line and remove all affirmative claim fees, which it should have done in the first place. Instead, ATS used a half-hearted proxy to capture some (but not all) improper fees. This also means ATS failed to meet its burden of proving "the reasonableness of each dollar, each hour, above zero." *Mares*, 801 F.2d at 1210. Second, the number of trial transcript pages ATS determined were affirmative says nothing about what fees were incurred pursuing the affirmative claim throughout the years leading up to the trial. Tasher Decl. ¶¶ 75, 79–80. For example, while ATS asserts its affirmative claim took only 3.8% of trial, it had at least six attorneys and a paralegal billing all day during this time, making the fees incurred grossly disproportionate to the minimal time ATS claims to have spent. *Id.* ¶¶ 79(d), 83. There is no way to know what percentage of time ATS spent on its claim in trial prep or otherwise since it failed to do what the Court ordered.

---

[6] This total excludes fees from the timekeepers ATS failed to document, *see* Section II(b), *supra*. If the Court declines to exclude that time, the fees removed here should be revised to $32,873.50.

Third, ATS ignores the reality of what was tried and why. Pre-trial, the JV sought to concede liability on ATS's claim at the full amount sought subject only to set-off. The Court agreed ATS's insistence on trying these claims "border[ed] on the absurd." ECF 377 at 2. But ATS insisted on using the first week of trial to present its affirmative claim instead of saving time and fees. ATS acknowledged that trying its affirmative claim was a "massive effort" and took "extraordinary time and effort." ECF 369 at 5, 7. While ATS now attempts to retroactively claim the first week of trial was dedicated to defending against the JV, that is not what it told the Court. *See* ECF 485 at 2, ECF 485-1 (highlighting contrary ATS representations). ATS could have called "defensive" witnesses during its rebuttal or during the JV's claim (if cross-designated). But ATS *chose* to make several witnesses (many not cross-designated) part of its affirmative claim. *See* ECF 380 (only four ATS affirmative witnesses cross designated). ATS forced a week of trial, plus instructions and arguments, on its affirmative claim, received exactly what the JV agreed to pre-trial, and now *also* seeks the fees it forced both sides to incur. This should not be permitted.

ATS also inconsistently applied its flawed methodology. It appears ATS did not thoroughly review its invoices, as it missed numerous entries that facially relate to the affirmative claim, many with verbatim descriptions to entries excluded elsewhere (even on the same page). *See* Ex. 2. Further, ATS ignored that it used other depositions in its case-in-chief (McMillan, Hamblin, Richardson), and ATS declined to remove large swaths of "common-issue" time necessarily both affirmative and defensive, including time such as document review, strategy meetings and client

calls, discovery requests and responses, and more.[7] Tasher Decl. ¶¶ 75–84; *see also* Ex. 3. If the Court will not deny ATS's motion in full, a percentage-based reduction to ATS's entire fee request is appropriate because ATS failed to delineate what common-issue time was allocated to which matter, and that common-issue time spanned the entire litigation. *Id.* ¶ 85; *see McGrath v. Cent. Masonry Corp.*, 2010 WL 11549416, at *7 (D. Colo. Feb. 26, 2010) (applying 15% reduction accounting for non-awardable time where time entries did not delineate between claims).

Using the trial hours ATS invoiced during its case-in-chief as a percentage of all trial hours invoiced, a **31.7% reduction** is more appropriate and more accurately captures the work ATS put into its affirmative claim. Tasher Decl. ¶ 83. After removing the fee totals suggested above, the Court should further reduce ATS's fees by at least 31.7% resulting in a deduction of **$2,123,500.28**.

### D.    *A Twenty-Five Percent (25%) Global Reduction is Appropriate.*

At least a **25% global reduction** of the remaining fees is appropriate to remedy ATS's poor billing judgment. *Id.* ¶ 74. This includes the top-heavy case team staffing; replete instances of redacted, duplicative, or non-legal time entries; block billing that ATS failed to separate; and more. *Id.* ¶¶ 62–74. A global reduction is appropriate to remedy poor billing judgment. *Degrado v. Jefferson Pilot Fin. Ins. Co.*, 2009 WL 1973501, at *10 (D. Colo. July 6, 2009) (applying global

---

[7] ATS claims to have removed some common-issue time related to specific categories. ECF 491 at 12. ATS also failed to consistently remove time entries from these categories. *See* **Exhibit 8** (examples of time from ATS selected categories which ATS failed to remove).

25% discount); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 2012 WL 967699, at *4 (D. Colo. Mar. 20, 2012) (50% discount to approximate duplication of efforts).

The Court need not review every line across ATS's 861-page invoices (amended by hand-markings, *see* Ex. 10) to determine the reasonability of every hour. *See Degrado*, 2009 WL 1973501, at *10 (applying global 25% discount "where it would be virtually impossible" to review everything in "massive case file" to identify duplicative and excessive time). But even a facial review of ATS's invoices show a conspicuous and frequent lack of billing judgment. For example, ATS's bills were exceptionally top heavy that resulted in inflated fees. Typically, more junior attorneys are delegated tasks to ensure cost-effective representation. Tasher Decl. ¶¶ 63–64. Shareholders and of-counsel account for **69%** of the total fees ATS generated, while in the average ATS invoice shareholders and of-counsel accounted for **73%** of fees. *Id.* ¶ 65; **Tasher Decl. Exhibits F–G**. The top-heavy nature of ATS's team increased its fees by at least 12–15%. Tasher Decl. ¶ 69. Global reductions are also appropriate where top-heavy staffing inflated fees. *Xtreme Coil Drilling v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013) (10% reduction to fees of Laurin Quiat, ATS's expert, for "partner-heavy staffing").

ATS presented no evidence of any efforts to exclude unreasonable, duplicative, or administrative time. *See Jane L.,* 61 F.3d at 1510 (requiring use of good faith effort to remove "excessive, redundant, or otherwise unnecessary" fees). But excessive time is abundant. For example, multiple attorneys billed to attend the same deposition (ECF 457-2 at 364–65 (Burns); 452–53 (Williams)); billed for non-legal work including preparing monthly bills, monthly updates, and attending workshops (*id.* at 4, 598, 675, 688, 699, 747); billed to bring attorneys up to speed (Tasher Decl. ¶ 72); billed for ancillary timekeepers (*id.* at ¶ 70); ATS seeks fees spent in losing

14

efforts (*id.* at ¶ 71); and ATS seeks fees for wholly redacted entries (ECF 457-2 at 35, 194, 320, 486, 546, 640). ATS was also required by the Court to separate block billed time entries. ECF 486 at 3. ATS's effort was half-hearted at best, and it failed to break-out these entries. *See, e.g*, Ex. 10 at 710, 768, 814, 817, 819. The JV requests at least a **25% global reduction** to the remaining fees, resulting in no less than a **$1,143,809.69** reduction.

### III.    The JV Already Paid for ATS's Insurance-Covered Fees.

The Court should consider that ATS has already been reimbursed for approximately $10 million through insurance payments—insurance the JV paid for. The Court should deny the Motion. Even if the Court declines to deny ATS's Motion outright, it should not hesitate to reduce the award because ATS seeks fees and costs already reimbursed by insurance. Any recovery of costs and fees above $10 million will effectively pay ATS twice. That outcome is not justified.

### HEARING REQUEST

The JV requests an evidentiary hearing to probe the evidence and to question ATS's expert.

### CONCLUSION

The Court should deny ATS's Motion. If it declines, it should reduce ATS's fee request by at least the following: (1) subtract **$946,799.92** in fees incurred from ATS's unreasonable rate hike, (2) subtract **$1,580,817.79** in fees incurred by timekeepers ATS failed to document, (3) subtract **$38,239.00** in state case fees and **$17,299.50** in fees opposing Rule 702 motions, (4) apply a **31.7%** reduction to the new subtotal for affirmative claim time, and (5) apply a **25%** reduction to the new subtotal for poor billing judgment. This results in an award of **$3,431,429.07**. Ex. 9.

Dated: August 23, 2024

By:

*/s/ David Feinberg*
Michael C. Davis
David L. Feinberg
**Venable LLP**
600 Massachusetts Ave. NW
Washington, DC 20001
(202) 344-4000
mcdavis@venable.com
dlfeinberg@venable.com

Buck Beltzer, #37804
Bret Gunnell, #24579
**Beltzer Bangert & Gunnell LLP**
5420 S. Quebec St.
Suite 103
Greenwood Village, CO 80111
(720) 576-7225
buck@bbglaw.com
bret@bbglaw.com

ATTORNEYS FOR FLATIRON | AECOM, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, a true and correct copy of the foregoing was filed

with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.


*/s/David Feinberg*