**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

        Plaintiff/Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

        Defendant/Counterclaim Plaintiff.

---

### ATS'S MOTION FOR ATTORNEYS' FEES INCURRED POST-TRIAL

---

Pursuant to this Court's 6/16/2023 partial summary judgment order (ECF 252 at 22-25) and 8/15/2024 amended final judgment (ECF 493), F.R.C.P. 54(d)(2) and D.C.Colo.LCivR 54.3, ATS moves for an award of the attorneys' fees that it has reasonably and necessarily incurred in litigating the post-trial portion of this action. As required by Tenth Circuit law and local rule, ATS submits its actual fees incurred in post-trial litigation from March 1, 2024 to July 31, 2024, excluding those fees incurred litigating interest on the verdict relating to ATS's own claims against Flatiron and not recoverable (*see* ECF 486 at 5-6); plus an estimate of the amount it anticipates incurring to complete the post-trial litigation from August 1, 2024 to the presumptive conclusion of briefing on this motion on October 3, 2024 (unless the Court orders a fee hearing, in which case ATS will increase its estimate accordingly).

The fees that ATS may incur in defending its judgment on appeal will be addressed by the Tenth Circuit under its Rule 39.2.

1

ATS seeks **$749,941**, consisting of $528,760 in defensive fees incurred from March 1 through July 31, and $221,181 in estimated fees that ATS will incur from August 1 through the conclusion of post-trial litigation.  *See* **Exhibit 1**, Cohen declaration with fee spreadsheet.

For reference, ATS incurred $72,928 in fees litigating the Rule 59(e) cross-motions to address prejudgment, postjudgment and penalty interest.  *Id.* ATS does not seek this amount.  ATS also incurred post-trial costs of $1,287, but ATS will not file a motion to recover this amount.

## I.    BASIS FOR FEE REQUEST

The Design Subcontract's fee-shifting provision states:

> If the Party submitting the claim prevails on more than half of the claims it makes, then each party shall pay its own costs of such litigation. <u>If the Party submitting the claim to litigation prevails on less than half of the claims it makes, then the Party submitting the claim to litigation shall pay both Parties' costs of **such litigation**, including reasonable attorneys' fees</u>.

ECF No. 37-2 at 7 ¶ 5; quoted at ECF 252 at 22 (emphasis added).  Per this provision's plain language and controlling authority, "such litigation" means the entire litigation, including post-trial motions practice and appeals.  *Id.*; *Infant Swimming Rsch., Inc. v. Shidler*, 505 F.Supp.2d 790, 797-99 (D.Colo. 2007) (applying contractual fee-shifting provision to all phases of litigation: pre-trial, trial, post-trial, appeals and remands from the Tenth Circuit to refine fee recovery).  *See also Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir.1988) ("It is obviously fair to grant a fee for time spent litigating the fee issue, at least if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary."), quoting *Prandini v. National Tea Co.*, 585 F.2d 47, 54 n.8 (3d Cir. 1978).

## II.    REVIEW OF POST-TRIAL LITIGATION

ATS briefly reviews the post-trial litigation, with an emphasis on details that are particularly relevant for this Court's post-trial fee analysis.

Following the jury's verdict in late February 2024, the parties discussed settling up on the amount of fees and costs, rather than incur the substantial expense of litigating them through post-trial motions.  To advance those settlement discussions, ATS undertook to assemble, review and redact for privilege the roughly $17 million of fees and costs it had incurred through six years of intense litigation, and produced fee and cost spreadsheets for Flatiron's review and settlement analysis.  However, Flatiron then declined to negotiate and settle and instead opted to litigate almost every aspect of ATS's fees and costs.

ATS therefore prepared and filed its initial motions for the roughly $17 million of fees and costs incurred over six years, from the inception through the conclusion of trial. ECF 456 (710-page cost motion), 457 (1,455-page fee motion).  ATS submitted all of its costs through its cost motion to the Court, because federally cognizable costs are a small subset of the broader range of costs cognizable under Colorado law, and the Subcontract applies Colorado law.

The Court then directed ATS to file a bill of costs along with a revised motion for costs.  ECF 461.  ATS therefore undertook to separate out those costs which were cognizable under federal law to submit in a bill of costs, ECF 470; and ATS prepared and filed a revised motion for costs.  ECF 468.

After further conferral over the bill of costs, the only disputed item was ATS's $66,342 vendor invoice for printing trial exhibits, which contained exhibits that might merit allocation between the ATS's claims and Flatiron's claims.   ATS proposed, and

3

Flatiron agreed to, a proportional 2% reduction (based on the relative sizes of the parties' claims) as a sensible way to account for the affirmative versus defensive exhibit pages.[1]  Flatiron then stipulated to the bill of costs.  ECF 473, 474.

Both parties filed Rule 59(e) motions to address prejudgment, postjudgment and penalty interest.  ECF 462, 463, 471, 472, 480, 481, 492.  (Because interest on the verdict relates to ATS's $5.3 million breach of contract claim against Flatiron, ATS does not seek the $72,927.50 of fees it incurred for this portion of the post-trial litigation.)

Before filing its responses to ATS's fee and cost motions, Flatiron observed that some of the fees and costs sought were allocable to ATS's $5.3 million claim against Flatiron.[2]  The parties conferred over the issue, with ATS again suggesting (per the example of the success conferral over the trial exhibit invoice in the bill of costs) that the parties negotiate and agree to a reasonable estimation of any inadvertently misallocated fees and costs, rather than requiring ATS to incur substantial post-trial fees to comb through its $17 million fee and cost requests to discreetly identify any potentially misallocated time and costs.

---

[1] The parties could have obtained a precise allocation by counting the number of pages of affirmative versus defensive trial exhibits, but it would have cost far more to obtain such an accurate allocation than Flatiron could have saved through the process. The economically rational approach was to apply an agreed-upon percentage reduction. So far, Flatiron has taken this approach only for the $66,342 trial exhibit invoice. Flatiron has chosen to litigate all other costs and fees, including litigating over the affirmative versus defensive allocation.

[2] For example, ATS's attorneys billed their trial time to the defensive matter number for fees incurred defending against Flatiron's $260 million counterclaim, rather than attempting to estimate the small amount of trial time spent proving up ATS's $5 million affirmative claim (which Flatiron did not dispute on the merits) and bill that portion of the trial time to the affirmative matter.

Flatiron declined to negotiate over an estimated allocation.  It sought discovery into how ATS had allocated its fees and costs as between its claims against Flatiron and Flatiron's claims against ATS, and an order requiring ATS to produce its affirmative matter invoices; identify and remove affirmative time from block-billed entries; and provide declaration from counsel that all affirmative fees and cost have been removed from its fee and cost requests.   ECF 482 at 5-6.  The Court granted this motion.  ECF 483.  ATS then spent about seven weeks of intense and comprehensive review and analysis to identify and remove all the fees and costs that, over the course of six years of litigation, were inadvertently billed to the matter number for Flatiron's claim against ATS rather than the matter number for ATS's claims against Flatiron.  ECF 490, 491 (detailed declarations explaining ATS's review, identification and determination of affirmative fees and costs, and resulting adjustments to its fee and cost requests).[3]

On August 15, 2024, the Court ruled on the Rule 59(e) motions and entered an amended final judgment.  ECF 492, 493.  The parties stipulated and the Court ordered that the appeal deadline for the merits judgment would be delayed under Rule 58(e) so all appeals could commence at the same time.  ECF 494, 495.

On August 23, 2024, Flatiron filed its opposition to ATS's fee and cost motions. Flatiron's response on fees is over a thousand pages, and asks the Court to deny ATS's $9.3 million fee request entirely or reduce it to at most $3.4 million.  ECF 496.  Flatiron's response on costs is 92 pages, and asks the Court to deny ATS's $7.6 million cost

---

[3] The net result of the review and reallocation process was the identification and removal of about $100,000 from ATS's $7.7 million cost request (ECF 490 at 7); and removal of about $300,000 from ATS's $9.6 million fee request (ECF 491 at 13).  As it happens, these thoroughly documented reductions amount to about 2% of ATS's initial fee and cost requests.

request entirely, or reduce it to at most $2.6 million.  ECF 497.  Flatiron requests an evidentiary hearing in both responses.

The foreseeable remaining post-trial work is:

- ATS's reply in support of its fee motion;
- ATS's reply in support of its cost motion;
- Flatiron's response to this motion for post-trial fees;
- ATS's reply in support of its motion for post-trial fees.

Absent extensions or other detours, this briefing should conclude by October 3, 2024.

ATS contemplates that the Court will consider all three motions (principal fee motion, principal cost motion, and post-trial fee motion) and enter a single judgment for all fees and costs.  Then Flatiron can start the appellate process, as it deems appropriate.

ATS opposes Flatiron's requests for evidentiary hearing(s), for the reasons ATS will set out its replies in support of its principal fee and cost motions.  If the Court grants a hearing, or if there should be other extensions or other detours in the remaining post-trial process, ATS will seek appropriate adjustments to this post-trial fee request.

## III.    LEGAL STANDARDS FOR POST-TRIAL FEES

ATS has already filed a motion for its fees incurred from the 2018 inception of this matter through the end of trial (end of February 2024).  ECF 457.  ATS incorporates that motion by reference.  ATS will not repeat the general standards for fee recovery developed there, lodestar analysis, etc., but will focus here on the specific considerations that apply to recovery of post-trial fees.

The Court's amended final judgment (ECF 493) triggered the 14-day deadline under Rule 54(d)(2) for ATS to seek its post-trial fees and costs.  *U.S. Surgical Corp. v. Orris, Inc.*, 47 F.Supp.2d 1270, 1271 (D.Kan. 1999) (fee motion may be filed within 14

days of entry of amended judgment that resolves a rule 59(e) motion), *aff'd*, 230 F.3d
1382 (Fed.Cir. 2000). The Tenth Circuit has held that fees may be requested only in
this short Rule 54(d)(2) window. *See Quigley v. Rosenthal*, 427 F.3d 1232, 1236–37
(10th Cir. 2005) (denying request for fees where claimant did not request them within 14
days of the entry of an amended judgment).

Post-trial litigation is not complete. ATS's principal fee and cost motions are still
being briefed, and that briefing should conclude by September 9, 2024. ECF 489. The
briefing on this motion for post-trial fees and costs should conclude, absent extensions,
by October 3, 2024. (ATS is not seeking its post-trial costs.) In this situation, Rule
54(d)(2)(B) directs a party seeking fees to make a "fair estimate" of the further fees that
will be incurred in the remaining post-trial litigation. F.R.C.P. 54(d)(2)(B)(iii) (fee motion
"must state the amount sought **or provide a fair estimate** of it") (emphasis added);
*King v. Midland Credit Mgmt., Inc.*, 549 F.App'x 791, 793-94 (10th Cir. 2013) (discussing
how a party claiming fees for post-trial fee motions that are still being briefed should
make an estimate of remaining fees that will be incurred). *See also Johnson v. Leading
Edge Recovery Sols., L.L.C.,* No. 12-CV-03103-CMA-CBS, 2013 WL 5313255, at *1 (D.
Colo. Sept. 23, 2013); *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 676 (9th Cir.
2017) (citing unpublished opinions in *King* and *Johnson* in its published opinion
addressing estimation of fees); *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington,
D.C. v. Rustam Guiv Found.*, 245 F.Supp.3d 742, 749-54 (E.D.Va. 2017) (extensive
discussion of requirement that parties estimate their remaining fees and costs in this
situation).

To make this estimate, ATS has calculated the average daily fee expenditure
during this post-trial phase, at the end of the fee spreadsheet attached to **Exhibit 1**,
Cohen declaration. ATS divided the $528,760 fees incurred from March 1 through July

31 (which excludes fees on interest-related briefing) by the 153 days in that period, resulting in an average post-trial fee expenditure of $3,456 per day.  Applying this average post-trial fee *per diem* to the 64 days from August 1 through the presumptive October 3 conclusion of post-trial briefing yields and estimated $221,181 in further fees not documented on the **Exhibit 1** fee spreadsheet, leading to the total $749,941 request for post-trial fees.

If there are extensions or detours (like a fee hearing), ATS will request additional estimated fees as warranted.[4]

The Tenth Circuit handles appellate fees and costs per Tenth Circuit Rule 39.2. Accordingly, absent a remand from the Tenth Circuit, this should be ATS's last fee motion filed in this Court for this action.

Pursuant to Local Rule 54.3, ATS's post-trial fee motion is accompanied by a declaration from Ben Cohen (who has taken a leading role in the post-trial motions practice) re-reviewing the team's qualifications, and attaching a spreadsheet of post-trial fees incurred to date, plus the calculation of the estimated amount of fees that will be incurred to complete the post-trial litigation.

## IV.    ARGUMENT

Again, ATS incorporates by reference the lodestar and related analysis in its principal fee motion, ECF 457, and addresses here the arguments specific to recovery of post-trial fees.

---

[4] While the Court can award the final portion of post-trial fees based on the claimant's "fair estimate," *e.g. King*, *supra*, at least one court has held that a court can also choose to treat the "fair estimate" as a marker, and permit the claimant to return to court prove up the precise amount of fees incurred once the amount is known.  *Gatzke v. City of W. Bend, Wisconsin*, 639 F.Supp.3d 820, 828 (E.D.Wis. 2022).  Rather than take this approach ATS requests that the Court use ATS's fair estimate to award all post-trial fees.

## A.    Flatiron has chosen to litigate fees and costs through post-trial motions.

ATS has tried to avoid a lengthy and drawn-out post-trial process, and all of the fees that process generates (and ATS justifiably applies for through this motion). It is Flatiron that has chosen not to negotiate and settle up on the fees and costs, but rather to litigate most aspects of ATS's fees and costs – despite the contractual fee-shifting provision and the Court's June 2023 summary judgment order and despite knowing that ATS would seek to recover its fees for this post-trial litigation from Flatiron.

Following the jury's verdict, ATS conferred with Flatiron to see if it would negotiate and settle up on fees, costs and interest, rather than litigate these items. Flatiron initially expressed interest, so ATS prepared and shared spreadsheets of its fees and costs and its interest calculations for Flatiron's review outside of the court process.

At that juncture, paying ATS's fees and costs would have saved Flatiron its own post-trial fees and costs to litigate ATS's requests, plus ATS's. The economically rational thing for Flatiron to do was negotiate for a discount and settle the amount of fees and costs.[5] ATS invited counteroffers, and regularly reminded Flatiron in various conferrals that it makes no economic sense to litigate any disputed matters where the costs of litigation – for both sides – might exceed the savings obtained by litigating.

Flatiron stipulated to a proportional reduction to the bill of costs (estimating the portion of the $66,342 trial exhibit invoice that was allocable to affirmative exhibits, rather than counting pages). Flatiron has chosen to litigate all other aspects of ATS's

---

[5] Settling up on the amount of fees and costs would not impair Flatiron's ability to appeal the underlying merits judgment or the Court's fee-and-cost shifting analysis. ECF 252 at 22-25. The parties could stipulate to the amount of a fee and cost judgment that could be bonded and contingent on the Tenth Circuit's affirmance the Court's fee-and-cost shifting analysis.

fee and cost requests.  That is why post-trial litigation has lasted six months so far, and will go another two months at least.

Of course, it is Flatiron's right to choose to litigate rather than take the economically rational course of estimating reductions and negotiating a settlement on fees and costs.[6]  But having chosen the litigious course, Flatiron should not be excused from its legal obligation to pay the post-trial fees ATS had to incur proving up and defending its principal and post-trial fees and costs.  *Glass*, *supra*.

**B.    ATS's work performed in responding to Flatiron's discovery and allocation requests supports ATS's defensive fee claim, and was properly written to the defensive matter.**

A substantial portion of ATS's post-trial fees were incurred responding to Flatiron's request that ATS produce fees and costs ATS incurred in pursuing its claim against Flatiron, and comb through the entire six years of principal litigation (inception through trial) to identify and remove any fees and costs that should have been recorded in the affirmative matter but were inadvertently recorded in the defensive matter.  ATS anticipates that Flatiron will argue that the cost of this exercise work should be written to the affirmative matter and not be recoverable from Flatiron.  That argument lacks merit. The review and correction of ATS's defensive fees was undertaken entirely to refine and reduce ATS's request for defensive fees, and is therefore recoverable under the plain language of the Subcontract's fee-shifting provision.

To briefly review, by 2018 ATS knew that Flatiron would be filing a large claim against ATS for its Project cost overruns.  ATS secured this federal forum and position as plaintiff by filing its $5.3 million claim for unpaid design work first.  Flatiron then filed

---

[6] Flatiron may have reasons for maintaining active litigation over its C-470 cost overruns for as long as possible.  ATS conjectures that Flatiron is trying to amortize its losses over multiple years.

its counterclaim, which its damages expert eventually quantified at $263.5 million.  As reflected by the trial testimony and evidence, the vast majority of ATS's legal work was incurred in defending against Flatiron's counterclaim.  *See, e.g.,* ECF 491 (Adam Lewis declaration regarding the amount of ATS's fees removed from its defensive claim, esp. ¶¶ 33-39 determining that about 3.8% of trial time was devoted to ATS's affirmative claim).

As Flatiron prepared its response to ATS's $9.7 million fee motion, Flatiron noticed that the fee motion, which sought fees incurred in defending against Flatiron's $263 million counterclaim, included some time entries that appeared related to the matter set up for prosecuting ATS's $5.3 million affirmative claim.  Likewise as to costs. The Court granted Flatiron's request that ATS produce its affirmative matter fees and costs for comparison purposes, allocate block billed-time (going back to 2018) to quantify and remove affirmative time, and do whatever else was required to remove all affirmative fees and costs from ATS's fee and cost requests.  ECF 486.  ATS spent about seven intense weeks on this difficult project, as detailed in the declarations of Mr. Lewis regarding fees (ECF 491) and Mr. Cohen regarding costs (ECF 490).  The net result of this comprehensive review and reallocation process was the identification and removal of about $100,000 ATS's $7.7 million cost request (ECF 490 at 7); and removal of about $300,000 from ATS's $9.6 million fee request (ECF 491 at 13).

That seven weeks of work is post-trial litigation that was undertaken at Flatiron's request.  It was undertaken entirely to refine and advance ATS's claim for fees and costs incurred in defending against Flatiron's $263.5 million counterclaim.  The fees ATS incurred in this work fall within the plain language of the Subcontract's fee-shifting provision, which shifts fees for the entire litigation.  This post-trial work did nothing to

11

advance ATS's prosecution of its affirmative claim for recovery of $5.3 million.[7]  This post-trial allocation work is therefore recoverable.

Flatiron was aware that it would be responsible for ATS's post-trial fees incurred complying with its discovery request.  In conferral, ATS again reminded Flatiron how the economically rational approach to this situation is to make a reasonable estimation of the allocation and adjustment, rather than burn fees to get a precise amount.  ATS's fees from June 11 (when Flatiron filed its fee discovery and reallocation motion) to July 29 (when ATS filed the declarations regarding identification and removal of fee and cost reductions) are $183,695: that is the amount ATS spent combing through six years of fees and costs to identify and remove all affirmative fees and costs.  See **Exhibit 1**, Cohen declaration, and analysis at end of post-trial fee spreadsheet. The net result of the work was to remove $298,620 in fees and $95,138 in costs, for a total of $393,758. ECF 490 and 491.  Flatiron thus caused ATS to incur $183,695 in post-trial fees (plus Flatiron incurred its own fees) to realize a $393,758 reduction in ATS's principal fee and cost requests.  That is presumably a net gain for Flatiron.  But this $393,758 reduction of ATS's principal fee and cost requests did not come free.  It cost ATS $183,695 in fees to determine that its principal fee and cost request should be reduced by $393,758.

---

[7] The Subcontract's fee-shifting provision does not prohibit ATS from recovering its affirmative fees.  The provision shifts fees for the "litigation," which includes fees incurred for both the affirmative and defensive claims.  To avoid a predictable dispute over this issue and in an effort to advance settlement discussions, ATS represented to Flatiron that it would not seek affirmative fees.  Then once the issue of allocation was joined, the Court decided to "hold ATS to its prior representations to the JV that it does not seek fees and costs on its affirmative claim."  ECF 486 at 5-6.  If ATS could have foreseen how Flatiron would use the allocation issue to prolong this matter, it would have sought both affirmative and defensive fees, per the plain language of the Subcontract, just to simplify and shorten the post-trial litigation.  *No good deed . . . .*

Flatiron knew the meter was running.  The trip was worth it, but now it's time to pay the fare.[8]

**C.      ATS's estimation of remaining post-trial fees is fair and reasonable.**

While there is authority directing a party to make a "fair estimate" of remaining fees that it anticipates recovering through the conclusion of post-trial fee briefing, *e.g. King*, *supra*, ATS has not located any authority addressing how that fair estimate should be calculated.

Here, two methods of estimation are apparent: (1) ATS could attempt to estimate the specific number of hours that each of its attorneys will spend responding to Flatiron's challenges to the principal fee and cost motions, and replying on this motion; or (2) ATS can determine the average post-trial "burn rate" and apply that to the anticipated remaining time to conclude post-trial litigation.  Both approaches appear reasonable.  ATS has chosen the latter for simplicity, to avoid the costs of making the more complex estimation, and to provide the more conservative estimate.

ATS's principal fee and cost motions seek about $17 million – an amount well justified for six years of intense litigation culminating in a four-week jury trial to successfully defend against a $263.5 million counterclaim (and likely smaller than Flatiron's parallel spend with two different firms, including an out-of-state firm, and more attorneys).  Flatiron's responses to ATS's principal fee and cost motions argue that ATS should recover nothing, or at most $6 million total.  ECF 496 and 497.  The amount at stake is significant.  Flatiron's responses also attempt to spin an abjectly false narrative

---

[8] Flatiron could have achieved roughly the same result at no cost by agreeing to a 2% proportional reduction, like it did on the trial exhibit allocation in the bill of costs; and it might have done better yet by bargaining for a higher percentage.  This piece of post-trial litigation is thus an excellent example of why negotiating and settling up, rather than litigating with the meter running, is the economically rational course.

in which ATS's counsel immediately raised their rates following the fee-shifting ruling and then "taunted" Flatiron about it.  *E.g.* ECF 496 at 1, n.1.  ATS's replies will entail substantial go-forward work to set the record straight.

Under these circumstances, ATS believes the best approach to estimation is the simpler (albeit likely less remunerative) approach of multiplying the remaining days that post-trial motions will be briefed by the average daily fee spend during the post-trial portion of this litigation.  This approach uses the post-trial portion of the litigation as its basis (versus, *e.g.*, the higher burn rate during trial or trial preparation).  The average takes into account the highs and the lows: times when the whole team is working around the clock to prepare the fee and cost motions or reply to Flatiron's arguments that ATS should recover nothing, versus times when the team awaits Flatiron's next filing.

Per the rows at the bottom of the fee spreadsheet attached to Mr. Cohen's declaration (**Exhibit 1**), ATS calculated the average daily fee spend for the post-trial portion of this litigation as the $528,760 amount spent from March 1 to July 31 (which excludes the roughly $73,000 incurred for the Rule 59(e) motions, which addressed interest on the verdict), divided by the 153 days in this period.  That is an average of $3,456 per day.  ATS then applied that daily average to the remaining 64 days from August 1 to October 3, 2024, which is when the last post-trial brief should be filed per Local Rule 7.1 (absent extensions).  That results in a "fair estimate" of $221,181 for the fees that ATS will incur from August 1 to October 3.

Unless the Court allows a hearing on fees and/or costs.  In that event ATS will request additional fees as warranted by the anticipated duration and nature of the hearing, likely at the conclusion of the hearing.  *See Gatzke*, 639 F.Supp.3d at 828 ("fair

estimate" of fees can include a marker for anticipated fees that will become concrete in the future); fn 4, *supra*.

<h2 style="text-align:center">V.    CONCLUSION</h2>

Flatiron knew the meter was running when it chose to litigate rather than settle up on fees and costs.  The result is this motion for $749,941 in post-trial fees that ATS has reasonably incurred in the post-trial phase of this litigation from March 1 through July 31, and fairly estimates it will incur through the conclusion of its work in this post-trial phase when it files its reply brief in support of this motion, presumably on October 3, 2024.

Respectfully submitted this 29th day of August, 2024.

<div style="margin-left:50%">

*s/ Bennett L. Cohen*
Stephen D. Gurr, sgurr@polsinelli.com
M. Adam Lewis, adam.lewis@polsinelli.com
William R. Meyer, wmeyer@polsinelli.com
Carter McDonnell, cmcdonnell@polsinelli.com
Bennett L. Cohen, bcohen@polsinelli.com
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Phone: (303) 572-9300
*Attorneys for Plaintiff/Counterclaim Defendant*
*AECOM Technical Services, Inc.*

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 29, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel in this action, including:

Buck Beltzer, *et al.*
Beltzer Bangert & Gunnell LLP
5420 South Quebec Street, Suite 103
Greenwood Village, CO 80111
buck@bbglaw.com

David Feinberg, *et al.*
Venable LLP
600 Massachusetts Ave. NW
Washington, DC 20001
dlfeinberg@venable.com

*s/ Bennett L. Cohen*