**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

        Plaintiff/Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

        Defendant/Counterclaim Plaintiff.

**ATS'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES INCURRED
FROM OUTSET OF LITIGATION THROUGH CONCLUSION OF TRIAL**

ATS replies to Flatiron's opposition (ECF 496) to ATS's motion for attorney fees incurred from 2018 inception through the end of the trial (ECF 457), as reduced by its affirmative-versus-defensive allocation analysis (ECF 491, withdrawing $298,620) to $9,281,895.

## I.    SUMMARY

Flatiron frames its fee response with a seemingly compelling but **abjectly false narrative**: that upon obtaining a right to fee-shifting for defensive fees in June 2023, ATS immediately doubled its rates for the defensive matter because Flatiron would have to pay whatever ATS charged, and then "taunted" Flatiron about it.

The truth, as detailed in the attached declaration from Adam Lewis, is:

- At the 2018 outset of this matter, counsel for ATS agreed to a substantial discount to the standard rates charged by Bryan Cave Leighton Paisner;

- Counsel held these low rates and exempted them from Bryan Cave's regular rate increases;

- When counsel moved to Polsinelli (which has higher standards rates) in April 2021, counsel agreed to maintain the same rates from Bryan Cave;

- From April 2021 through December of 2023, counsel's rates did not increase to the level of Polsinelli's standard rates, but maintained their deep discounts relative to standard rates;

- **Counsel's rates did not increase in response to the Court's June 2023 fee-shifting ruling**;

- Rather, because Polsinelli was losing too much money from these profoundly discounted rates, ATS agreed to pay Polsinelli's standard rates starting January 2024, for the final month of trial preparation and trial.

*See* **Exhibit 1**, Lewis declaration.  Flatiron's false narrative deliberately obscures how its fee liability is millions lower than it should have been due to six years of heavily discounted fees. ATS is also confident that Flatiron's parallel legal spend is *far* higher, which is no doubt why Flatiron does not challenge even the 2024 rates as being too high.

Flatiron also knows that its narrative is false.  ATS's invoices, attached to its April 2024 fee motion, show the one large rate increase (bringing its deeply discounted rates up to standard rates) occurred on January 1, 2024 – the month before trial, and not directly after the Court's June 2023 fee-shifting ruling.  *See* ECF 457-2 at 799 (December 2023 invoice showing discounted rates,

like all prior bills) and at 853 (January and February 2024 invoice showing standard rates).

ATS stands by its thorough and accurate identification and re-allocation of affirmative matter fees that were inadvertently billed to the defensive matter. Flatiron's proposed *pro rata* allocation approach (which would assign up to 40% of the fees to a small, undisputed matter that took less than 2% of the overall litigation effort) is utterly inappropriate here.

The omission of some timekeeper bios from ATS's motion is not prejudicial, and has now been cured. The antisuit injunction motion was properly billed to this action, where the motion had to be filed. ATS made appropriate fee deductions per the Court's comments in its FRE 702 order. Counsel exercised sound billing judgment, per this Court's observation that both sides benefited from exceptional representation. And ATS must recover fees on behalf of its subrogated project specific professional liability (PSPL) insurer – there will be no double recovery.

## II.    ARGUMENT

ATS addresses Flatiron's arguments *seriatim*.

**A.    ATS agreed to a substantial rate increase – from deeply discounted to standard market rates – in 2024.**

Flatiron leads its response with its description of ATS's supposedly "outrageous billing practices." ECF 496 at 4 (heading). The story Flatiron purports to assemble from ATS's invoices and further discovery is designed to have visceral appeal, if it were true. It is not.

Flatiron argues that counsel's rates went up sharply between "late 2022 and January 2024." *Id*. Flatiron carefully chooses this 14-month time frame because it encompasses the Court's June 2023 fee-shifting ruling (ECF 252 at 22-25), so Flatiron can argue that ATS's counsel's rates nearly doubled, purportedly in response to the Court's fee-shifting ruling because ATS knew that Flatiron would be paying the bill. *Id.* at 4-7. The only accurate aspect of this narrative is that ATS did approve a substantial rate increase. But not because of the fee-shifting ruling – the rate increase occurred because counsel had been working from the inception at profoundly discounted rates, and that economic arrangement simply could not continue through trial.

2

Adam Lewis provides a full and accurate discussion of the rates in his attached declaration, **Exhibit 1**.  Mr. Lewis has managed this litigation from its inception in 2018, when he was an associate at Bryan Cave working with Steven Gurr.  *Id.* ¶¶ 3-6.

As discussed in prior briefing, ATS expected its defense costs for Flatiron's anticipated claim, including legal fees, would be covered in part by insurance.  Insurers are accustomed to using lawyers who accept low rates in exchange for steady work.  ATS and its insurers therefore bargained for, and counsel accepted, a substantial discount from Bryan Cave's standard hourly rates: $408 for Mr. Lewis, $425 for Ms. Lowery-Graber, and $500 for Mr. Gurr.  Despite Bryan Cave's routine annual rate increases, these discounted rates were not raised during the three years this case was at Bryan Cave.  *Id.* ¶¶ 7-8.

When a file moves with attorneys to a firm with a higher rate structure, it is common to adjust rates gradually rather than immediately with the transfer.  When Mr. Lewis, Ms. Lowery-Graber and Mr. Gurr moved their construction litigation practice to Polsinelli in April 2021, they agreed to initially maintain the rates from Bryan Cave as a courtesy.  Bryan Cave and Polsinelli are both national firms ranked in the AmLaw 100, but Polsinelli is ranked higher, is known for its expertise in more complex and expensive practice areas, and generally has higher market rates.  Since the rates were already discounted for Bryan Cave, they were more deeply discounted from Polsinelli's standard rates.  *Id.* ¶¶ 9-11.

Mr. Lewis's declaration attaches a spreadsheet showing the difference between each lawyer's discounted rate for this highway construction lawsuit, and that lawyer's standard rate for other matters, from the time this matter moved to Polsinelli in April 2021 through the beginning of 2024, when ATS began paying standard rates.  *Id.* ¶ 7, Exhibit A.  Consider Mr. Lewis's rate as an example.  He started at Polsinelli in April 2021 as a shareholder with a standard rate of $625, while still billing this matter at his prior discounted Bryan Cave rate of $408 (itself in place since 2018).  Mr. Gurr's standard rate when he started at Polsinelli in April 2021 was $725, but he kept

3

billing this matter at his discounted Bryan Cave rate of $500.  *Id.* ¶¶ 7-14.

Polsinelli attorneys who joined the team also profoundly discounted their standard rates to match.  For example, Mr. Cohen, who had practiced for nearly 28 years in 2021 and taken a merits case to the U.S. Supreme Court, had his then-standard rate of $600 cut to $440.  *Id.* ¶ 15.

When this Court issued its fee shifting order in June 2023, these rates did not suddenly jump up, as Flatiron falsely implies.  Rather, between April 2021 and December 2023 Polsinelli's standard rates increased regularly, but the rates for this matter per a different schedule as agreed to by ATS and its insurers.  As a result, by the end of 2023 the rate discounts that Polsinelli was giving to ATS were still generally similar to the discounts in place when the case came to the firm in April 2021.  For example, at the end of 2023 Mr. Lewis billed $580 even though his standard rate was $835; Mr. Gurr billed $630 while his standard rate was $900.  *Id.* ¶¶ 16-17.

In December 2023, months after the Court's June 2023 summary judgment and fee-shifting ruling, ATS again asked Flatiron to return to mediation and settle this matter, given that its "best day in court" was now negative due to the liability cap plus the fee and cost-shifting, and informed Flatiron that the PSPL policy was now exhausted.  Flatiron refused to mediate or otherwise discuss settlement.  Flatiron made it apparent that it intended to go to trial in hopes of obtaining a large verdict (which it knew would be capped post-trial), and then try to reverse this Court's rulings on application of the liability caps and fee-shifting on appeal.  *Id.* ¶¶ 18-19, Exhibit B.

Accordingly, in late 2023 ATS's counsel had to start the intensive process of preparing for a four-week jury trial, possibly followed by post-trial litigation regarding the application of the liability caps, followed by an appeal that Flatiron made clear it planned to pursue.  *Id.* ¶ 20.

At this point, counsel and ATS discussed the financial impact of the deep discounts on the trial team, the intensity of the pre-trial and trial schedule that precluded counsel from working on other matters, and the years of expected go-forward litigation. ATS agreed to start paying Polsinelli's standard rates for 2024, starting January 1, 2024.  *Id.* ¶ 21.  *That* is the reason for and

4

timing of the one big rate increase – not the Court's six-month-old fee shifting ruling.  Flatiron knows this perfectly well.  *See* ECF 457-2 at 799 and 853 (invoices showing discounted rates in December 2023, and then standard rates starting January 2024).  Flatiron's false narrative that ATS doubled its fees in response to the Court's fee shifting ruling is a ham-handed attempt to mislead the Court.

Flatiron's argument that ATS's expert Mr. Quiat tried to "hide the rate increase by using an 'effective rate' for many of the attorneys," ECF at 5, holds no water.  The actual rates of every attorney are listed on the 860 pages of invoices attached to the fee motion.  ECF 457-2.

As a result, what Flatiron characterizes as a sudden fee increase following the Court's fee-shifting ruling) was actually more than five years of profoundly discounted rates, to ATS's (and now derivatively Flatiron's) benefit, followed by an increase to standard rates starting 2024.  **Notably, Flatiron does not challenge the 2024 rates (which are likely substantially below those of its own D.C.-based counsel) as unreasonable.**

The application of the rate increase to only the defensive matter and not the affirmative matter was an inadvertent miscommunication error.  *Id.* ¶ 22.  By January 2024, Flatiron had conceded ATS's affirmative claim (per its efforts to confess judgment on it), such that counsel focused and billed near entirely on defending against the $263.5 million counterclaim.  Work on and billing to the affirmative matter had dwindled to a near stop.  When counsel asked Polsinelli's billing department to begin applying standard rates in effect in 2024, the billing department interpreted that request as applying to the "C-470 Express Lanes Design-Build" matter, which is how the defensive matter was named in the billing department's system.  With the minimal time being billed to the affirmative matter, the issue was not promptly noticed.  In short, this was an oversight, not an intentional decision.  *Id.* ¶¶ 23-24.[1]

---

[1] Additionally, the Court's June 2023 order, ECF 252, did not rule that fee-shifting applied only to the defensive matter and not the affirmative matter.  That issue had not been joined – further negating Flatiron's efforts to spin this the oversight as some kind of nefarious

This oversight was also trivial. ATS's affirmative claim was small (2% of Flatiron's counterclaim), simple and straightforward (just add up unpaid PCOs), and *undisputed* – Flatiron stated that it would not dispute the claim and tried to confess judgment on it, *see* ECF 335, 365, 377; and then formally admitted in its opening argument that it did not dispute the claim. *See* 1/29/2024 trial transcript at 145:14-17. ATS's counsel did not bill time to the affirmative matter during trial at all, which is addressed in Polsinelli's analysis that 3.8% of the trial was devoted to the affirmative claim. ECF 491. And ATS billed only **$12,787** in January 2024, at the prior low rates. **Exhibit 1 ¶¶** 26-27. If Polsinelli had applied its standard rates to both matters, as intended, that January 2024 bill for the affirmative matter would have been $20,215. *Id.*[2] So what Flatiron tries to spin as an intentional and outrageous billing strategy is simply an oversight resulting in ATS being charged $7,428 less than it should have been, **with no impact on Flatiron's fee liability**. In the context of $9.3 million in fees at issue here, *de minimis non curat lex.*

ATS also attaches as **Exhibit 2** a short supplemental report from its fee expert, Laurin Quiat, which focuses on and rebuts Flatiron's false narrative surrounding rates.

**B.    ATS's allocation of affirmative fees is accurate and comprehensive.**

Flatiron argues that ATS failed to comply with the Court's order to identify and remove all affirmative matter time in the defensive matter invoices that ATS attached to its April 2024 fee motion. ECF 496 at 6-7. ATS stands by its methodology for identifying affirmative matter fees. ECF 491 (Lewis declaration, describing methodology and calculating reduction). The re-allocation work was extraordinarily thorough and accurate, and deliberately resolved all

---

strategy. ATS did not even consider whether to apply for affirmative matter fees until it had to file its fee motion in April 2024, over two months after the trial. That's when ATS decided not to seek affirmative fees, primarily to avoid a dispute over whether they are recoverable under the Subcontract's unique language. **Exhibit 1 ¶** 25. Again, *no good deed . . .*

[2] Only Mr. Lewis and Mr. McDonnell worked on the affirmative matter in January 2024, mostly preparing Eric Sibson to give direct testimony on the $5.3 million affirmative claim. ATS did not call Mr. Sibson following Flatiron's representation to the jury, electing to instead focus on defending against Flatiron's $263.5 million counterclaim.

uncertainties in favor of Flatiron. *Id.* ATS spent five intense weeks and hundreds of hours of attorney and paralegal time to identify and remove $298,620 in affirmative fees and $95,138 in affirmative costs from its principal fee and cost motions. *See* ECF 490, 491, and 498 at 12 (motion for post-trial fees). ATS fully complied with the Court's order to "accurately and comprehensively distinguish" between the affirmative and defensive claim fees, and remove all affirmative fees from its fee request against Flatiron, ECF 486 at 3; and went above and beyond to get as close to "auditing perfection" as possible. *Cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Flatiron offers no alternative analysis, let alone better analysis. Just meritless arguments that the reallocation supposedly *must* be too small because it only reallocated $298,620.15 of fees. ECF 496 at 6, and 11-13. Flatiron argues that **$2,123,500** in fees should be allocated to the small and undisputed affirmative claim based on its fee expert Steven Tasher's argument that a 40% *pro rata* allocation would be more "accurate and reliable" than the detailed analysis that ATS undertook to determine the precise amount of time spent on the affirmative matter at trial, and in trial preparation. ECF 496-11 (Tasher declaration) at 42-48.

ATS did not spend $2,123,500 to prove up its relatively small, simple and *undisputed* affirmative claim. The typical "common issue" analysis doesn't apply here because proving up ATS's affirmative claim also furthered its defense to Flatiron's $263.5 million counterclaim – *e.g.* proving the drainage pond change orders showed how ATS's design work did not cause all of Flatiron's claimed cost overruns. ATS thoroughly debunks these and other aspects of Flatiron's baseless allocation arguments in its contemporaneously-filed reply on costs, pages 1-4 and 8-9.

**C.    ATS's failure to attach bios of timekeepers beyond its trial team is a harmless error that does not warrant a fee reduction.**

Flatiron notes that Local Rule 54.3 requires a fee motion to include a summary of relevant qualifications and experience (*i.e.* a bio) for each person for whom fees are claimed. ECF 496 at 8-9. ATS's fee motion attached bios of the entire trial team to Mr. Gurr's declaration, ECF 457-1

7

at 23-40; but ATS did not attach a bio of every other person who appears on the six years of invoices, from two firms. ECF 457-2. Flatiron identifies 19 names, and tallies $1,580,818 in fees which Flatiron argues should be denied due to the failure to include these 19 additional bios in ATS's initial fee motion. ECF 496 at 9.

All but a few of the attorneys and paralegals in this group of 19 timekeepers have bios that were and are available on the websites of Polsinelli and Bryan Cave, and can be readily located online. *See*, *e.g.*, https://www.bclplaw.com/en-US/people/stephen-d-rynerson.html; **Exhibit 3**, Bennett Cohen declaration attaching the additional bios, and discussing the experience and qualifications of a few paralegals whose bios are not available.

The omission of this easily located material from the April 2024 fee motion was inadvertent and did not deprive the Court of any meaningful information. And its inclusion in this reply does not prejudice Flatiron. *Compare* ECF 496 at 9 n.4 (citing cases disapproving of presenting new evidence or argument in a reply brief). Flatiron could have looked up website bios of the omitted timekeepers to argue that these timekeepers were not qualified to work on this matter and bill their time. Flatiron makes no such argument because it is not warranted – this matter was appropriately staffed by Bryan Cave and then Polsinelli, and with fewer lawyers than Flatiron used.

In sum, Flatiron has not challenged anyone's qualifications or experience, despite the opportunity; and ATS has cured its oversight. The circumstances warrant allowing ATS to cure this technical oversight. *See*, *e.g.*, *Big O Tires, LLC v. C&S Tires, Inc.*, 2017 WL 2263079, at *3 (D.Colo. 5/24/2017) (allowing party to supplement its fee motion to satisfy Local Rule 54.3). No deduction is warranted, let alone the $1,580,818 deduction Flatiron requests. *See* ECF 492 at 12 ("The Court has presided over this case since its inception in October 2019 and is of the view that both parties have benefitted from exceptional legal representation throughout the litigation.").

**D.    Fees for the antisuit injunction motion were properly billed in the federal action.**

In conferrals, Flatiron identified $59,059 in fees that it claimed should have been billed to

the state court lawsuit.  ECF 496 at 9, 496-1 at 13-20 (conferral emails).  ATS acknowledged that $16,326 of state lawsuit fees had been inadvertently billed to the federal matter and agreed to deduct this amount from this fee request.  ECF 496-1 at 13.  ATS also explained why the remaining $37,368 related to the antisuit injunction was properly billed to the federal matter:

- the motion could only be filed in this federal action, since it asked <u>this</u> Court to enjoin Flatiron's prosecution of parallel (and precluded) litigation in another forum, to prevent inconsistent judgments;

- the state lawsuit is a transparent and impermissible collateral attack on this Court's summary judgment ruling (now part of a final judgment) enforcing the Subcontract's liability caps;

- the motion successfully prioritized the federal jury trial over initial dispositive motions practice in the state court lawsuit; and

- if the state court does not dismiss Flatiron's precluded lawsuit (ATS has five dispositive motions pending), ATS may need to re-raise its antisuit injunction request with this Court, which this Court would be justified in granting.  *Jackson v. Carter Oil Co.,* 179 F.2d 524, 526 (10th Cir. 1950) (enjoining party's "attempt to relitigate matters already determined in the Federal Court.").

*See* ECF 496-1 at 13-15 (conferral emails detailing these arguments).

This analysis is sound.  Flatiron offers only *Santacruz v. Standley*, 2011 WL 3366428, at *3 (D.Colo. 8/4/2011) for the proposition that "plaintiff may not recover fees from defending against state court suit between the same parties."  ECF 496 at 9.  This authority supports ATS. The $16,326 of state lawsuit fees that ATS readily agreed to remove is what *Santacruz* addresses – not the $37,368 in antisuit injunction motion fees.

**E.    ATS properly removed the appropriate fees from its FRE 702 responses.**

Flatiron argues that ATS did not adequately remove fees that it incurred responding the Flatiron's FRE 702 motions in light of the Court's now-discharged show-cause order.  ECF 496 at 10-11 (seeking a $17,300 reduction).  The Court's show-cause order did not suggest that it would not award any fees incurred in responding to Flatiron's Rule 702 motions (which the Court denied in substantial part, leading to ATS's effective and useful presentation of expert testimony at trial to rebut Flatiron's experts).  Rather, the Court indicated that ATS should exclude those fees

9

incurred on issues where the Court believed that ATS's conferral was inadequate.  *See* ECF 344 at 1-3.  ATS made appropriate exclusions to the fees in response to the Court's order.  *See* **Exhibit 4**, Carter McDonnell declaration, explaining Rule 702 fee deductions.  Flatiron's argument ignores these appropriate reductions, and baselessly argues that ATS should have removed all of its fees incurred in successfully responding to Flatiron's Rule 702 motion and protecting its experts.

### F.    Counsel exercised sound billing judgment.

Flatiron argues that the Court should apply a 25% global reduction of at least $1,143,810 due to ATS's "poor billing judgment."  ATS's fee expert Laurin Quiat addresses this arbitrary and baseless argument in his rebuttal report.  **Exhibit 2** at 5-6.  *See also* ECF 492 at 12 (Court's comment that both sides received "exceptional representation" through the litigation); *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker").

### G.    ATS's insurers are subrogated to ATS's fee and cost recovery.

Finally, Flatiron argues that because Flatiron paid the premium for a $10 million project-specific professional liability (PSPL) insurance policy, ATS has already been reimbursed for its fees, and further implies that denying ATS's motions will be harmless. ECF 496 at 15, 2 ("ATS will not be hurt.").  But the PSPL carrier's rights of subrogation and reimbursement require ATS to collect all that it can from Flatiron.  Subrogation thus prevents any double recovery.  *E.g. DeHerrera v. Am. Fam. Mut. Ins. Co.*, 219 P.3d 346, 350 (Colo.App. 2009).

### III.    CONCLUSION

The Court presided over the full litigation and trial and has ample post-trial briefing.  **The Court should deny Flatiron's hearing request**, award ATS $9,281,895 in fees incurred from the outset through trial (ECF 457, 491), plus $7,593,133 in costs (ECF 468, 490 and contemporaneous reply on costs); and then award ATS's post-trial fees of $749,941 (ECF 498); and be done with this matter.

Respectfully submitted this 9th day of September, 2024.

s/ Bennett L. Cohen
Stephen D. Gurr, sgurr@polsinelli.com
M. Adam Lewis, adam.lewis@polsinelli.com
William R. Meyer, wmeyer@polsinelli.com
Carter McDonnell, cmcdonnell@polsinelli.com
Bennett L. Cohen, bcohen@polsinelli.com
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Phone: (303) 572-9300
*Attorneys for Plaintiff/Counterclaim Defendant*
*AECOM Technical Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send notification to all counsel in this action, including:

Buck Beltzer, *et al.*
Beltzer Bangert & Gunnell LLP
5420 South Quebec Street, Suite 103
Greenwood Village, CO 80111
buck@bbglaw.com

David Feinberg, *et al.*
Venable LLP
600 Massachusetts Ave. NW
Washington, DC 20001
dlfeinberg@venable.com

s/ Bennett L. Cohen

11