## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff / Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant / Counterclaim Plaintiff.

---

## FLATIRON | AECOM, LLC'S OPPOSITION TO
## ATS'S MOTION FOR ATTORNEYS' FEES INCURRED POST-TRIAL

---

ATS filed a motion for post-trial attorneys' fees ("Second Fee Motion")[1] on August 29, 2024, seeking $749,941: $528,760 in fees incurred and $221,181 in estimated future fees. ECF 498. ATS first sought pre-trial fees (ECF 457) ("First Fee Motion") and pre-trial costs (ECF 456) ("Rejected Cost Motion") on April 16, 2024. The Court struck ATS's Rejected Cost Motion and ordered ATS to re-file (ECF 461), which it did on May 9, 2024 ("Amended Cost Motion").

ATS repeats an unfortunate pattern of behavior throughout its fees and cost briefing: misrepresenting the fees it seeks, then claiming its misrepresentation was "inadvertent" when it gets caught, all while charging the JV for the extra work incurred. ATS represented it was not seeking affirmative fees, and in its reply supporting its First Motion (the "Reply"), claimed any

---

[1] ATS failed to confer with the JV prior to filing the Second Fee Motion, and as such does not certify compliance with D.C.COLO.LCivR 7.1(a) as required by the Local Rules. This is not the first time ATS failed to confer with the JV prior to filing a motion. *See* ECF 306 (moving to strike ATS motion for antisuit injunction due to a failure to confer). The Court should strike ATS's motion given its failure to comply with the Local Rules once again.

inclusion of affirmative fees was "inadvertent." But ATS's invoices reveal the truth. Polsinelli deliberately spent time to "incorporate . . . attorney fees billed to [the] Affirmative Claim . . . **for the purpose of adding Affirmative Claim fees to motion.**" ECF 498-2 at 17 (emphasis added). In fact, nearly *half* of the fees sought in the Second Fee Motion are ATS's actions to shuffle affirmative fees—which should never be billed to the JV—in and out of ATS's defensive matter. ATS has no authority, legal or otherwise, that supports the proposition that the JV must pay ATS's lawyers to fix their errors in their filings.

Moreover, the fees that ATS seeks are unreasonable. Polsinelli unreasonably increased its rates over a 14-month stretch (during which ATS secured its fee-shifting right). Tasher Supp. Decl. ¶ 12. In its papers filed with this Court, Polsinelli claimed—or at least strongly implied—that ATS had agreed to a belated rate hike. But again the invoices reveal the truth. ATS's invoices reveal that **ATS has not paid Polsinelli a penny of its hiked rates**. Instead, ATS has racked up a $2.6 million bill that has gone unpaid for more than seven months. When a client is presented a bill and pays it, that payment is evidence of the bill's reasonableness. Exactly the opposite is also true.

ATS's Second Fee Motion should be denied for several reasons. *First*, ATS entirely fails to satisfy its burden of proving the reasonableness of each dollar billed because it does not even claim its post-trial fees are reasonable. *Second*, ATS's Second Fee Motion is based on the radically increased rates that its expert does not opine are reasonable and that ATS has never paid. *Third*, ATS still intentionally seeks affirmative claim fees the Court already determined it cannot recover. *Fourth*, ATS improperly seeks an award for fees incurred correcting ATS's "inadvertent" mistakes and errors. The JV should not be responsible for paying for the correction of ATS's errors. *Fifth*, ATS's post-trial fees reflect unreasonably top-heavy administration of work. *Sixth*, estimates of

2

future fees alone are not sufficient for a fee award; instead ATS must later prove up its estimate with time entries for the fees actually incurred. The Court should deny ATS's estimate and require it to prove up its incurred fees. Should the Court decide to award ATS some of its estimate nonetheless, the Court should reduce ATS's estimate because it is based on a per diem of ATS's post-trial fees and thus, is inflated and unreasonable for the same reasons that ATS's post-trial fees are inflated and unreasonable. Even if the Court declines to deny the Second Fee Motion outright, these same billing infirmities by ATS grossly inflated its total fees incurred, and so warrant a substantial reduction. Thus, the Court should award **nothing or, at the most, $144,415.81**. **Exhibit 9** (chart of JV proposed reductions).

## LEGAL STANDARD

The JV incorporates by reference the standard outlined in its Opposition to the First Fee Motion ("the Opposition"). ECF 496 at 2–3.

## ARGUMENT

### I.     The Court Should Deny ATS's Second Fee Motion Outright.

The Court should deny ATS's Second Fee Motion outright for several reasons.

*First*, ATS failed to meet its burden of proving "the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[2] In its Second Fee Motion, ATS does not even

---

[2] ATS spends most of its motion lambasting the JV's decision not to settle. This point is entirely irrelevant. There is no law that requires the JV to accept a settlement proposal, and not settling does not somehow make the JV responsible for ATS's fees incurred nor change the legal standard for a fee award. The JV identified serious and pervasive deficiencies with ATS's fee and cost motions and is entitled to litigate them. As the Court previously noted, a party cannot have a settlement imposed on them. *See* ECF 377 at 2.

*attempt* to meet this burden. *Nowhere* in its filing (notably lacking an expert declaration) does ATS prove that its requested fees are reasonable. ATS failed to satisfy its burden of proof, and its motion should be denied. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995); *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

**Second**, ATS continues to apply the unreasonably increased rates it applied only in the defensive matter (and not in the affirmative matter) after securing its fee-shifting right. *See* Tasher Supp. Decl. ¶¶ 12–18. ATS tries to explain why its rates increased (ECF 500 at 2); however, neither ATS nor its expert argue that the increased rates are *reasonable*, regardless of *why* they were increased. Tasher Supp. Decl. ¶ 13. The increased rates are in stark contrast to the market rate analysis proffered by ATS's expert, who only justifies the pre-increase rates as reasonable pursuant to the Denver market. *Id.* The increased rates are also in stark contrast to the rates that Polsinelli charged ATS for the affirmative matter. *Compare* **Exhibit 1** at 57 ($630 hourly rate charged by Mr. Gurr in affirmative matter in May 2024), *with id.* at 31 ($980 hourly rate charged by Mr. Gurr in defensive matter in the same month).

Moreover, ATS's actions speak louder than any of its words. ATS's invoices, which ATS initially refused to provide to the JV, reveal that *ATS has not paid a penny of the increased rates and has racked up a roughly **$2.6 million** bill that has gone unpaid for more than seven months*. *See* Ex. 1 at 50; Tasher Supp. Decl. ¶ 14; Tasher Supp. Decl. Ex. A. That ATS never paid any invoices containing the increased rates proves that the hourly rate increase was unreasonable and the fees as a whole are unreasonable. Tasher Supp. Decl. ¶ 14; ECF 496-11 ¶¶ 37–48; *see also Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) ("[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them.").

4

***Third***, ATS once again improperly seeks affirmative claim fees that cannot be recovered. ATS first represented that it did not seek any affirmative claim fees or costs. *See* ECF 482-1 at 1. That was false. After being ordered by the Court to remove its affirmative claim fees, ATS removed roughly $300,000 in affirmative claim fees and $95,000 in costs. ECF 490 at 2, ECF 491 at 13. ATS claims that its inclusion of those affirmative claim fees was "inadvertent[]." ECF 498 at 5. It was not. In ATS's Second Fee Motion, there are multiple time entries revealing that ATS deliberately billed the JV for "[r]eview, analy[sis], and **incorporat[ion] into master fees and costs tracking spreadsheet attorney fees billed to Affirmative Claim . . . for the purpose of adding Affirmative Claim fees to motion.**" ECF 498-2 at 15, 17 (emphasis added).

Moreover, ATS continues to seek affirmative claim fees here. Included in ATS's Second Fee Motion are not only fees that are affirmative in nature, but actual time entries marked with the billing number from Polsinelli's affirmative matter. *See* **Exhibit 2** (affirmative claim time entries). These affirmative claim fees were included in the bills presented to the JV *after* ATS argued it "inadvertently" sought them and *after* ATS claimed that all affirmative claim fees had been removed.

***Fourth***, ATS's estimated future fees are also unreasonable. An estimate alone is not sufficient for a fee award, instead a prevailing party's estimate must later be supported by documentation to prove up its estimate with time entries for the fees actually incurred. *See* FED. R. CIV. P. 54(d)(2)(B)(iii) advisory committee's note to 1993 amendment (requiring a prevailing party to support its estimated fees with "evidentiary material bearing on th[ose] fees[,] [which] must of course be submitted in due course"); *Aircraft Holds. Sols., LLC v. Learjet, Inc.*, 2023 WL 5311486, at *3 (N.D. Tex. Aug. 17, 2023) (denying future fee request, "which [is] based on

estimates rather than on time that [plaintiff] has shown was actually expended;" fee request should be re-filed later with actual time expended). Even if the Court were to disagree, however, ATS's estimate is calculated based on a per diem of ATS's post-trial fees incurred. *See* ECF 498 at 8; Tasher Supp. Decl. ¶ 34. That estimate is infected with the same deficiencies as ATS's post-trial fees, including (i) time spent correcting ATS's "inadvertent" mistakes and errors, (ii) unreasonable rate increases after obtaining entitlement to fee-shifting right, (iii) top-heavy administration of work, and a (iv) lack of billing judgment. *See* Tasher Supp. Decl. ¶¶ 34–40. Moreover, there is no reason to think the extensive error correction that occurred in the past, and on which the per diem is based, will be repeated in the future, unless ATS is aware of even more errors it must fix.

*Fifth*, ATS is not entitled to fees incurred from litigating its fees and costs motions ("fees on fees"). All ATS asserts is that the Subcontract "plain[ly]" allows for post-trial fees. ECF 498 at 2. Although fees on fees can be allowed under *statutory* fee entitlement, fees on fees are not typically awarded under *contractual* provisions unless the clause specifies for such fees. *See, e.g.*, *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1266 (2d Cir. 1987) ("[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves."). Particularly where, as here, a fee-shifting provision so broadly states the prevailing party is entitled to recover its fees and expenses in "such litigation," it does not include fees on fees. *See Shwer v. Muench*, 2017 Colo. Dist. LEXIS 232, at *13 (Colo. Dist. Ct. Nov. 2, 2017) (declining fees on fees because "the legal work associated with [defendant] becoming the prevailing party stopped" when "the merits of the case were fully decided"). Even assuming ATS *is* entitled to fees on fees under to the Subcontract, ATS's request should be denied if the Court finds ATS's First Fee Motion and/or Revised Cost Motion unreasonable, in whole or

6

in part. *See, e.g.*, *Cummins v. Campbell*, 44 F.3d 847, 855 (10th Cir. 1994) (fees on fees may be awarded only where "the fee petitioner is successful and his claim as to a reasonable fee is vindicated").

**II.      If the Court Awards Some Fees, It Should Reduce the Fee Award for Fees Incurred in Substantial Part.**

If the Court declines to deny the Second Fee Motion, it should still substantially reduce the award for four main reasons. First, ATS may not recover fees incurred by its excessive and unreasonable rate hikes. Second, ATS is not legally entitled to certain fees including those incurred because of ATS's own errors, fees pursuing the state lawsuit, and fees related to ATS's affirmative claim. Third, ATS's fees sought are inflated by unreasonably top-heavy work administration. Fourth, a global reduction is appropriate to remedy ATS's lack of billing judgment.[3]

**A.      *ATS Cannot Recover for Excessive Fee Escalations.***

ATS cannot recover the excessive fees it incurred due to its unjustified and unreasonable rate hikes once it learned the JV would be responsible to pay its attorneys' fees. As explained in Section I, *supra* and in the Opposition, ATS secretly raised its rates beyond what its own expert determined were reasonable for the Denver market. ECF 496 at 8. Nothing in the Reply or the Second Fee Motion justifies this unreasonable increase. Raising rates by multiple hundreds of dollars in one month is unreasonable. Tasher Supp. Decl. ¶ 12. Also, while ATS cited its client's agreement to the rate increase (but offered no actual evidence of this from ATS), that alleged "agreement" is of no meaning **because ATS has not paid a single penny of the fees incurred**

---

[3] The JV separately addresses a reduction to ATS's estimate of future fees. *See* § III, *infra*.

under the increased rates. *Id.* ¶¶ 5, 7.[4] And ATS only raised its rates in the defensive but not the

affirmative matter—the latter of which ATS cannot bill to the JV. While ATS claims this

discrepancy between the king-sized defensive matter rates and the lower affirmative matter rates

was "inadvertent" and "an oversight," it defies belief that ATS recognized the issue for the first

time *when the JV raised the point in an opposition brief challenging those fees*. *Id.* ¶¶ 12–18. After

all, those bills were subject to hundreds of hours of review as part of ATS's First Fee Motion.

ATS's fees increased by **$192,466.50** from its rate hike. *Id.* This amounts to **36.4%** of the fees

ATS incurred. To remedy this issue, the Court should reduce ATS's request by at least **36.4%.**

    **B.**    ***ATS is Not Legally Entitled to Certain Fees.[5]***

    1.  <u>ATS is Not Entitled to Fees on Fees Incurred as Result of Its Own Errors.</u>

ATS seeks substantial fees on fees incurred correcting its own errors, which include those

fees incurred to re-draft and file the Revised Cost Motion and to remove the improperly sought

affirmative claim time from the First Fee Motion. But attorneys' fees billed to correct errors are

not compensable. *SKIBO, Inc. v. Shelter Mut. Ins. Co.*, 2022 WL 22864988, at *3 (D. Colo. Sept.

30, 2022) (reducing fee petition to account for hours correcting errors or working to remedy failure

to meet deadlines and comply with practice standards); *Savant Homes, Inc. v. Collins*, 2016 WL

11697063, at *2 (D. Colo. Nov. 16, 2016) ("Plaintiff is not required to pay for Defendants'

mistakes."); *Clawson v. Mountain Coal Co., L.L.C.*, 2007 WL 4225578, at *12 (D. Colo. Nov. 28,

2007) (excluding fees incurred correcting errors that non-movant neither caused nor had the ability

---

[4] As explained in the Tasher Supp. Decl., the one payment towards the rate-hiked totals is the result of a reimbursement, not a payment to Polsinelli by its client. Tasher Supp. Decl. ¶ 14(b) & n.28.
[5] The JV alerted ATS to the presence of improper fees. The JV asked ATS to identify fees that may have been improperly added to the motion. ATS declined to respond. **Exhibit 3** at 1–2.

to prevent and noting that "the Court has some doubt that a reasonable attorney would ever charge his client for fees expended to correct errors resulting from counsel's own miscalculations"). Charging fees at a high hourly rate, performing flawed work, and then charging to fix it amounts to double dipping, which is not permitted. Tasher Supp. Decl. ¶¶ 19–26(c).

The JV should not be responsible to pay ATS for fees that should never have been incurred in the first place. For example, the Court struck the Rejected Cost Motion because ATS chose to "lump[] all of its costs request into the Costs Motion." ECF 461. Instead of simply re-filing a corrected motion, ATS started the process of reviewing its costs and drafting a motion entirely from scratch, incurring **$62,193.00** in fees. **Exhibit 4** (fees incurred preparing Revised Cost Motion). This was unreasonable. Before filing the Rejected Cost Motion, ATS had already spent significant time reviewing and sorting its costs incurred. The JV is not responsible to pay ATS for its failure to file its motion correctly the first time. *See SKIBO, Inc.*, 2022 WL 22864988, at *3; *Savant Homes, Inc.*, 2016 WL 11697063, at *2; *Clawson*, 2007 WL 4225578, at *12.

The Court also ordered ATS to remove affirmative claim time from its First Fee Motion. ECF 486. ATS then undertook what it called an "extraordinarily thorough" review over "five intense weeks and hundreds of hours" to remove affirmative fees from its petition. ECF 500 at 6–7. In the process, ATS incurred **$142,628.00** in fees and now attempts to pass those fees on to the JV. **Exhibit 5** (fees incurred removing affirmative claim time). That is unreasonable. ATS incurred these fees only because of its admitted failure to properly segregate its affirmative claim time. ATS should have performed this work in real time, but ATS did not do so. Accordingly, this corrective work should be done on ATS's dime, not the JV's. *See SKIBO, Inc.*, 2022 WL 22864988, at *3; *Savant Homes, Inc.*, 2016 WL 11697063, at *2; *Clawson*, 2007 WL 4225578, at *12.

9

2.   <u>ATS is Not Entitled to Fees for Its Affirmative Claims.</u>

In its Second Fee Motion, ATS contends that it does not seek affirmative claim time. It contends that there is only one instance of affirmative claim work—Rule 59 briefing—which ATS claims it removed. ECF 498 at 2. But again the bills reveal the truth. ATS still seeks **$29,368.50** in affirmative claim fees, representing three categories of affirmative claim time. Ex. 2.

First, ATS did not remove all time spent briefing the Rule 59(e) motions as it claims. ATS's invoices show many time entries related to the parties' briefing on interest totals. *See, e.g.*, ECF 498-2 at 24 ("Analyze communications with client regarding comments and interest calculations and confer regarding the same."); *see also* Ex. 2.

Second, ATS seeks payment for time related to its research and strategy on collecting a judgment. Collecting a judgment can only relate to the judgment on ATS's affirmative claim. *See, e.g.,* ECF 498-2 at 27 ("Researched Texas judgment collections procedures and prepared short memorandum regarding same."); *see also* Ex. 2.

Third, ATS also seeks payment for time billed to the Affirmative Claim matter number and then exported over to the defensive matter. ATS's affirmative matter number, 112027-687088, appears multiple times throughout ATS's spreadsheet. *See, e.g.*, ECF 498-2 at 26 (S.D. Gurr 5/1/2024 entry billed to affirmative claim matter number). These time entries relate to issues such as re-filing ATS's Bill of Costs, which was reduced to account for ATS's affirmative claim (*see* ECF 498-2 at 45), and ATS's review of its fees sought after the Court ordered it to remove affirmative claim related time (*see id.*). The inclusion of these time entries in ATS's Second Fee Motion proves that ATS, after it was Court-ordered to remove affirmative time, <u>manually added time from its affirmative matter</u> to its fee request, which it claims solely covers "defensive" work.

10

Further, ATS's claim that any affirmative time sought was "inadvertent" is betrayed by its own actions. We know from its own bills that ATS expressly strategized about seeking affirmative claim time. ECF 498-2 at 14–16 (time entries showing strategy meetings and analysis to determine whether to seek affirmative fees). Then, ATS went ahead and added its affirmative claim time into its fee motion. *Id.* at 15 ("Review, analyze, and incorporate into master fees and costs tracking spreadsheet attorney fees billed to Affirmative Claim . . . **for the purpose of adding Affirmative Claim fees to motion**.") (emphasis added); *id.* at 17 (same). Any argument from ATS at this late date that it "accidentally" included affirmative claim time does not align with these admissions.

3. ATS is Not Entitled to Fees for the State Lawsuit.

Once again, ATS improperly seeks fees related to the parties' Colorado state case. ATS seeks **$14,991.50** in fees related to the state court case, including drafting motions and preparing exhibits that ATS filed in the state court case. **Exhibit 6** (ATS state case related time entries). ATS acknowledged these fees are not recoverable because it removed some (but not all) of these fees it improperly sought in its First Fee Motion. *See* ECF 500 at 10 ("ATS acknowledged . . . state lawsuit fees had been inadvertently billed to the federal matter and agreed to deduct this amount[.]").

4. Reduction of Fees ATS is Not Legally Entitled To.

The JV identified $204,821.00 in fees ATS charged for fixing its own failures; $29,368.50 in affirmative claim fees; and $14,991.50 in state case fees. Together, this **$249,181.00** represents **47.13%** of ATS's total sought. After the Court reduces ATS's fee request to account for its rate hike, it should then reduce the new subtotal by **47.13%** to account for fees ATS is not entitled to.

**C.    *ATS Cannot Recover Excessive Fees Incurred Due to Unreasonably Top-Heavy Work Administration.***

ATS's entries show, once again, it failed to assign work to appropriately leveled attorneys, unreasonably increasing its fees, which ATS has never paid.

Industry standard practice is to delegate level-appropriate tasks to more junior attorneys to ensure cost-effective representation. ECF 496-11 ¶¶ 63–64. ATS failed to follow this maxim. Gurr, Lewis, and Cohen accounted for 62% of post-trial fees. Tasher Supp. Decl. ¶ 27. Lewis, who billed 126.9 post-trial hours, conducted junior tasks including redacting invoices and legal research. *Id.* ¶¶ 27–30. Cohen, who billed 149.8 post-trial hours, devoted substantial time to legal research, preparing first drafts, and reading transcripts. *Id.; see also* **Exhibit 7** (examples of time entries). A reduction to a fee petition is appropriate where a movant seeks excessive fees based on top-heavy work. *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013) (10% reduction to fees of ATS's expert for "partner-heavy staffing").

ATS does not justify its practice. It cites *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). ECF 500 at 11. That case addresses the amount of time spent on a task, not the level of the attorney performing it. *Moreno*, 534 F.3d at 1112 (reversing district court's unexplained reduction to fee petition). The best justification ATS's expert could provide is that Mr. Lewis continued to perform junior work because he had the most "day-to-day knowledge of the facts," and so, without analysis, somehow provided ATS "with the best 'bang for the buck.'" ECF 500-4 ¶ 8. He also claimed Mr. Cohen "provided significant upper-level guidance and work," including on appellate issues. *Id.* That Mr. Lewis is familiar with the case says nothing about why he continued to perform paralegal tasks. Similarly, Mr. Cohen's appellate experience does not justify his performing substantial research and providing the first draft of nearly all ATS's briefing. *See also* Tasher Supp. Decl. ¶¶ 9, 27–30 (explaining flaws in expert analysis).

If the post-trial work performed by Messrs. Lewis and Cohen—nearly all of which was junior in nature—was billed at an associate's rate, ATS's total fees sought would be 14.5% less. Tasher Supp. Decl. ¶ 30. As such, the JV requests at least a **14.5%** reduction to the remaining fees after applying reductions for ATS's rate hikes and fees to which ATS is not legally entitled.

### D.    *A Further Five Percent (5%) Global Reduction is Appropriate.*

At least a **5% global reduction** of the remaining fees is appropriate to remedy poor billing judgment, including billing for administrative tasks, preparing budgets, providing client updates, and more. *Id.* ¶¶ 31–32. A global reduction is appropriate to remedy poor billing judgment. *Shabazz v. Pinnacle Credit Servs. LLC*, 2016 WL 6892948, at *5–6 (D. Colo. Nov. 23, 2016) (applying 20% reduction for lack of billing judgment); *see also Let's Go Aero, Inc. v. Forcome Co., Ltd.*, 2024 WL 4068758, at *3–4 (D. Colo. Sept. 5, 2024) (declining fees for time spent on purely clerical tasks).

ATS's invoices are littered with administrative, unreasonable, or indiscernible time entries that should have reasonably not been charged to the JV. **Exhibit 8**. For example, ATS billed time to speak with former trial witnesses. *See* ECF 498-2 at 11 ("Prepare for and participate in telephone conference with Mindy Steckmest . . . ."); *id.* at 54 ("Status and strategy conference with Will Carrier."). ATS also billed to prepare monthly updates. *Id.* at 34 ("Prepare monthly update at client request."). It also seeks reimbursement for time entries that are so heavily redacted it is not possible to discern what the task related to. *Id.* at 34 ("Conference call with [REDACTED]"). ATS presented no evidence of any efforts to exclude such time, as it was its burden to show. *See Jane L.*, 61 F.3d at 1510 (requiring good faith effort to remove "excessive, redundant, or otherwise unnecessary" fees). As such, the JV requests a **5% global reduction** to the remaining fees.

### III.    If the Court Awards Some Fees, It Should Reduce ATS's "Estimated Fees."

ATS seeks future fees based on a per diem estimate of post-trial fees thus far incurred. An estimate alone is not sufficient for a fee award—a prevailing party's estimate must later be supported by documentation to prove up its estimate with time entries for the fees actually incurred. *See* FED. R. CIV. P. 54(d)(2)(B)(iii) advisory committee's note to 1993 amendment; *Aircraft Holds.*, 2023 WL 5311486, at *3. If the Court agrees and requires ATS to prove up its future fees, the JV requests the opportunity to address any deficiencies in future fees. Thus, the Court should deny any future fees based solely on ATS's estimate. If the Court awards any portion of ATS's estimate, the Court should reduce the estimate in the same manner as its incurred fees. ATS's estimate suffers the same deficiencies as the incurred fees because it is based on ATS's claimed post-trial daily rate, which is infected by the pervasive issues plaguing both ATS's fee motions (ECF 498 at 13–15; Tasher Supp. Decl. ¶¶ 34–40). The Court should reduce ATS's estimate in the same manner as the fees ATS already incurred. *Id.* (opining ATS's estimated future fees should be no more than $60,409.32).

### IV.    ATS May Not File Another Petition Seeking Fees Incurred in a Potential Hearing.

ATS erroneously attempts to reserve its right to later submit an additional fee request if the Court grants the JV's request for a hearing. ECF 498 at 14. ATS cites *Gatzke v. City of W. Bend, Wis.*, 639 F. Supp. 3d 820 (E.D. Wis. 2022). But *Gatzke* does not stand for that proposition.[6] Indeed, no legal authority permits ATS to submit another fee motion beyond the 14-day deadline for fees not already estimated in a timely fee motion. *See, e.g.*, *King v. Midland Credit Mgmt., Inc.*,

---

[6] Defendants in *Gatzke* were not seeking additional fees, rather they moved for fees once, estimating fees for preparing the motion for summary judgment that resulted in dismissal.

549 F. App'x 791, 794 (10th Cir. 2013) (holding that plaintiff is not entitled to additional fees where the supplemental motion was not filed within 14 days, despite plaintiff's claimed unknowns). ATS admits as much. *See* ECF 498 at 6–7 ("The Court's amended final judgment (ECF 493) triggered the 14-day deadline under Rule 54(d)(2) for ATS to seek its post-trial fees and costs. . . . The Tenth Circuit has held that fees may be requested only in this short Rule 54(d)(2) window."). ATS chose *not* to estimate fees to be incurred related to any granted evidentiary hearing. ATS could have easily (and should have) included an estimate for a modest amount of time for oral argument and potential witness testimony in its Second Fee Motion. *See King*, 549 F. App'x at 794. Because the 14-day deadline passed and ATS did not include a reasonable estimate for future fees regarding the requested hearing, it is prohibited from seeking those fees. *See id.*

**HEARING REQUEST**

The JV repeats its request for an evidentiary hearing on ATS's requests for fees and costs.

**CONCLUSION**

The Court should deny ATS's Second Fee Motion. If it declines to do so, it should reduce ATS's fees incurred ($528,760) in the following order and at a minimum: (1) reduce the request by at least **36.4%** because of ATS's rate hike; (2) reduce the new subtotal by at least **47.13%** for fees ATS is legally not entitled to; (3) reduce the new subtotal by at least **14.5%** to remedy the top-heavy work administration; and (4) apply not less than a **5%** global reduction to the new subtotal, resulting in an award of no more than **$144,415.81** in fees incurred. Ex. 9. The Court should deny ATS's "estimated fees," or reduce the estimate in the same manner as the incurred fees, resulting in an award of no more than **$60,409.32**.

15

DATED: October 3, 2024                     Respectfully Submitted,


 */s/ David Feinberg*                       Buck Beltzer, #37804
Michael C. Davis                           Bret Gunnell, #24579
David L. Feinberg                          **Beltzer Bangert & Gunnell LLP**
**Venable LLP**                            5420 S. Quebec St.
600 Massachusetts Ave. NW                  Suite 103
Washington, DC 20001                       Greenwood Village, CO 80111
(202) 344-4000                             (720) 576-7225
mcdavis@venable.com                        buck@bbglaw.com
dlfeinberg@venable.com                     bret@bbglaw.com

ATTORNEYS FOR FLATIRON | AECOM, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2024, a true and correct copy of the foregoing was filed

with the Clerk of the Court using the Court's CM/ECF system and served on all counsel of record.


*/s/ David Feinberg*