**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant-Counterclaim Plaintiff.

---

**ORDER GRANTING IN PART AND DENYING IN PART
AECOM TECHNICAL SERVICES, INC.'S MOTIONS FOR ATTORNEYS' FEES**

---

      Before the Court is Plaintiff-Counterclaim Defendant AECOM Technical Services,

Inc.'s ("ATS" or "AECOM") Motion for Attorneys' Fees Incurred from Outset of Litigation

Through Conclusion of Trial (ECF No. 457) ("First Fee Motion").  In response to the

Court's subsequent Order granting Defendant-Counterclaim Plaintiff Flatiron | AECOM,

LLC's ("Flatiron" or "the JV") request for limited discovery concerning ATS's asserted

fees (ECF No. 486), ATS filed the Declaration of M. Adam Lewis Regarding Allocation

of ATS's Attorney Fees as Between Affirmative and Defensive Matters (ECF No. 491),

through which ATS withdrew a portion of the fees claimed in the First Fee Motion.

Flatiron filed a response (ECF No. 496), to which ATS filed a reply (ECF Nos. 500).[1]

      Also before the Court is ATS's Motion for Attorneys' Fees Incurred Post-Trial

---

[1] The Court denied Flatiron's subsequent request to file a sur-reply to the First Fee
Motion.  (ECF Nos. 503, 504.)

1

(ECF No. 498) ("Second Fee Motion") (together with the First Fee Motion, "Fee

Motions").  Flatiron filed a response to the Second Fee Motion (ECF No. 505), to which

ATS filed a reply (ECF No. 506).  The Court subsequently ordered ATS to supplement

its Second Fee Motion with documentation substantiating its actual fees incurred

between August 1, 2024 and the conclusion of briefing on the Second Fee Motion, on

October 17, 2024, where it had originally only provided an estimate.  (ECF Nos. 507,

508.)

    The Fee Motions are now ripe for review.[2]  For the reasons set forth below, the

Fee Motions are granted in part and denied in part.  In the aggregate, the Court awards

ATS **$8,293,733.56** in reasonable attorneys' fees.

## I. FLATIRON'S HEARING REQUEST

    As a threshold matter, the Court notes that Flatiron requests an evidentiary

hearing on the Fee Motions "to probe the evidence and to question ATS's expert."

(ECF No. 496 at 15; *see also* ECF No. 505 at 15.)[3]  "[A]n evidentiary hearing is

generally preferred, if not required, when *factual disputes* exist in connection with a

request for attorney fees and costs and those disputes cannot be resolved without a

hearing."  *Cramer v. United States,* 47 F.3d 379, 382 (10th Cir. 1995) (emphasis

added).  Here, however, the Court finds "the record the parties [have] created [is] quite

adequate to resolve the fees issue."  *Robinson v. City of Edmond,* 160 F.3d 1275, 1286

---

[2] The Court will rule on ATS's pending Revised Motion for Litigation Costs Incurred from Outset of Litigation Through Conclusion of Trial (ECF No. 468) ("Revised Costs Motion") by separate order.

[3] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

(10th Cir. 1998) ("courts have long accepted the proposition that there is no need for an evidentiary hearing in an attorney's fees case when a record has been fully developed through briefs, affidavits, and depositions").  Flatiron's request for an evidentiary hearing is, accordingly, denied.

## II. BACKGROUND

This dispute arose from the parties' work on a highway construction project commissioned by the Colorado Department of Transportation ("CDOT"), colloquially known as the C-470 Express Lanes project (the "Project").  (*See generally* ECF No. 1; ECF No. 37.)  In November 2015, in anticipation of Flatiron's submission of a bid for the Project, Flatiron and ATS entered into a Contractor/Designer Teaming Agreement ("Teaming Agreement").  (*Id.*)  In accordance with the Teaming Agreement, ATS developed a preliminary design for the Project to include in Flatiron's proposal to CDOT. (*Id.*)  After CDOT awarded the project to Flatiron, the parties entered into a Subcontract for Design Services ("Subcontract") on May 23, 2016, whereby Flatiron formally hired ATS to serve as the lead designer of the Project.  (*Id.*)

ATS commenced this action against Flatiron in October 2019, asserting one claim for breach of the Subcontract and one claim for unjust enrichment.  (ECF No. 1.) ATS's asserted damages totaled $5.3 million, consisting of alleged unpaid fees for out-of-scope design services Flatiron directed ATS to perform.  (ECF No. 1; ECF No. 220 at 2.)  Flatiron counterclaimed for breach of the Teaming Agreement, negligent misrepresentation, and breach of the Subcontract.  (ECF No. 37.)  Flatiron's asserted damages totaled approximately $263.5 million based on ATS's alleged "botched [] bid design" for the Project.  (ECF No. 220 at 5.)

3

The Court dismissed Flatiron's negligent misrepresentation counterclaim in February 2021.  (ECF No. 97.)  In June 2023, the Court granted summary judgment to ATS on Flatiron's claim for breach of the Teaming Agreement and further found that the Subcontract's limitation of liability clause capped ATS's "aggregate liability" to Flatiron to the roughly $10 million "Total Design Fee."  (ECF No. 252 at 15–17 (quoting ECF No. 37-2 at 6 ¶ 1).)

Having ruled against Flatiron on two of its three counterclaims, the Court ordered that Flatiron "must pay for AECOM's attorneys' fees and litigation costs" pursuant to the fee-shifting provision in the Subcontract.  (ECF No. 252 at 25.)  That provision states:

> If the Party submitting the claim prevails on more than half of the claims it makes, then each party shall pay its own costs of such litigation.  If the Party submitting the claim to litigation prevails on less than half of the claims it makes, *then the Party submitting the claim to litigation shall pay both Parties' costs of such litigation, including reasonable attorneys' fees.*

("Fee-Shifting Provision") (ECF No. 37-2 at 7 ¶ 5 (emphasis added).)

After a four-week jury trial in February 2024, the jury found in favor of ATS on all claims and awarded it $5,259,105.00 in compensatory damages.  (ECF No. 441.) Within 14 days of the entry of final judgment, ATS filed its First Fee Motion seeking $9,580,515 in attorneys' fees allegedly incurred from the inception of the litigation through the conclusion of trial.  (ECF Nos. 454, 457.) [4]  The Court understands the parties thereafter attempted to reach a resolution as to the amount of ATS's recoverable

---

[4] As noted below, the final judgment was subsequently amended in August 2024 based on the parties' Rule 59(e) cross-motions challenging the interest originally awarded to ATS. (*See* ECF Nos. 492, 493.)

fees and costs.  (*See, e.g.,* ECF Nos. 459, 475.)  During those discussions, ATS's

counsel reaffirmed that ATS was not seeking to recover its fees incurred in connection

with its affirmative breach of contract claim against Flatiron.  (ECF No. 482-1 at 2.)

The parties' efforts to reach a settlement ultimately proved unsuccessful, and

Flatiron filed a motion seeking limited discovery from ATS related to its asserted fees

(ECF No. 482) ("Discovery Motion").  Flatiron specifically contended that it "kn[e]w that

not all work related to ATS's Affirmative Claim ha[d] been properly segregated," despite

ATS's representation that it was "not seeking attorneys' fees or disbursements for its

affirmative breach of contract claim but, instead, is only seeking attorneys' fees and

litigation costs for its defense of the JV's claim."  (*Id.* at 1–2.)  Flatiron therefore sought

discovery to "make sure" that ATS was not seeking fees incurred in connection with its

affirmative claim.  (*Id.* at 1.)

The Court granted Flatiron's discovery request, noting that it would "hold ATS to

its prior representations to the JV that it does not seek fees and costs on its affirmative

claim."  (ECF No. 486 at 5–6.)  ATS subsequently agreed to withdraw $282,294.65 in

fees allocable to the affirmative matter and $16,325.50 in fees allocable to a separate

state court action from its First Fee Motion.  (*See* ECF No. 491 at ¶¶ 49–51.)

After the Amended Final Judgment entered in August 2024 (ECF No. 493), ATS

filed its Second Fee Motion, seeking $521,478 in fees incurred from March 1 through

July 31, 2024 (ECF No. 498) and $177,814.50 in fees incurred from August 1, 2024

through the conclusion of briefing on the Fee Motions, on October 17, 2024 (ECF No.

508).  ATS also subsequently agreed to withdraw $7,381.50[5] in fees allocable to the

state court action from its Second Fee Motion.  (ECF No. 506 at 11.)  Thus, in total, ATS

seeks to recover $9,981,188.75 in attorneys' fees.

Flatiron contends, first, that ATS's fee request should be denied in full.  (*See*

*generally* ECF Nos. 496, 505.)  Alternatively, Flatiron asserts that ATS's fee request

should be reduced to, at most, $3,431,429.07 in fees incurred through trial and

$204,825.13[6] in post-trial fees, for a maximum award of $3,636,254.20.  (*See id.*)

### III. FLATIRON'S ARGUMENTS IN FAVOR OF COMPLETE DENIAL

Although the Court has already ruled that ATS is contractually entitled to recover

its reasonable attorneys' fees (*see* ECF No. 252), Flatiron argues the Court should deny

the Fee Motions outright and decline to award ATS *any* fees for several reasons.  Many

of these reasons are intertwined with the Court's discussion of appropriate reductions to

ATS's recoverable fees below, and the Court will not address them for a second time

here.  However, the Court will take up, as a threshold matter, two points raised by

Flatiron.

*First,* Flatiron contends the Court should deny or substantially reduce the fee

award to ATS because "[it] has already been reimbursed for approximately $10 million

through insurance payments—insurance the JV paid for."  (ECF No. 496 at 15.)  Flatiron

explains that, "[a]s a condition of the [P]roject, the JV purchased a $10 million project

specific insurance policy," which it asserts ATS has since "overbilled and exhausted."

---

[5] ATS calculated this figure as $7,281.50 but based on the underlying documentation submitted its summation was off by $100.  (*See* ECF No. 506-3.)

[6] This figure is based, in part, on the estimate ATS initially provided of the fees it would incur between August 1, 2024 and October 17, 2024.

6

(*Id.* at 2.)  Thus, according to Flatiron, "[a]ny recovery of costs and fees above $10 million will effectively pay ATS <u>twice</u>."  (*Id.* at 15.)

The Court agrees with ATS, however, that the insurance "carrier's rights of subrogation and reimbursement require ATS to collect all that it can from Flatiron." (ECF No. 500 at 11.)  "[S]ubrogation serves the purpose of limiting the possibility of a double recovery by the insured, and secures the ultimate discharge of the debt by the one who in equity and good conscience ought to pay it."  *DeHerrera v. Am. Family Mut. Ins. Co.,* 219 P.3d 346, 350 (Colo. App. 2009) (citation omitted); *see also Leprino Foods Co. v. Factory Mut. Ins. Co.,* 653 F.3d 1121, 1134 (10th Cir. 2011) ("In the context of insurance, double recovery is usually avoided though the law of subrogation.") (citing *id.*).  Thus, the Court cannot equitably deny or reduce a fee award to which ATS is contractually entitled (and Flatiron is contractually entitled to pay) to the detriment of the insurance carrier.

*Second,* Flatiron asserts that the Second Fee Motion should be denied in full because "ATS is not entitled to fees incurred from litigating its fees and costs motions"—*i.e.,* "fees on fees."  (ECF No. 505 at 6.)  In the apparent absence of published Colorado authority addressing the recoverability of fees on fees pursuant to a contractual fee-shifting provision, the Court will follow the Tenth Circuit's lead.  "The Tenth Circuit generally allows recovery of fees for an attorney's work in seeking attorney's fees."  *Cummins v. Campbell,* 44 F.3d 847, 855 (10th Cir. 1994).  "However, the award of fees for the preparation of the fee application is not without limits."  *Id.*  A district court has broad discretion to deny an award for hours spent pursuing fees if the fee petitioner was unsuccessful or if the "underlying claim for fees was unreasonable."

7

*Id.*  The Court finds neither condition warrants complete denial of ATS's Second Fee Motion here.  *Cf. Valenzuela v. Coleman,* 2022 WL 2528330, at *17 (D. Colo. July 7, 2022) (awarding "fees-on-fees"); *White v. Chafin,* 2016 WL 9735066, at *6 (D. Colo. Sept. 23, 2016) (same).

Flatiron argues that, "[a]lthough fees on fees can be allowed under *statutory* fee entitlement, fees on fees are not typically awarded under *contractual* provisions unless the clause specifies for such fees."  (*Id.*)  However, Flatiron relies on *New York* law in support of this argument.  *See F.H. Krear & Co. v. Nineteen Named Tr.,* 810 F.2d 1250, 1266 (2d Cir. 1987) (holding that "a general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves").  But ATS's seeks to recover attorneys' fees in *Colorado.  See Ward v. Siebel Living Tr.*, 449 F. App'x 747, 750 (10th Cir. 2011) ("attorney fees are a substantive matter controlled by state law") (citation omitted); (*see also* ECF No. 37-3 at 32 ¶ 16.4 ("This Agreement shall be governed by the law in effect in the state where the Project is located.").)  Flatiron additionally cites *Shwer v. Muench,* an unpublished decision in which a Colorado trial court declined to grant "fees on top of fees" in accordance with a contractual "prevailing party fee-shifting provision."  2017 Colo. Dist. LEXIS 232, at *13 (Colo. Dist. Ct. Nov. 2, 2017).  However, the court's reasoning was predicated on *Anderson v. Pursell,* wherein the Colorado Supreme Court held that "[c]osts and attorney fees are only appropriate in a motion for attorney fees *under section 13-17-102* if the trial court finds that the defense to the motion lacked substantial justification."  244 P.3d 1188, 1198 (Colo. 2010) (emphasis added).  ATS does not seek to recover fees pursuant to section 13-17-102.

The Court accordingly rejects Flatiron's request to deny attorney's fees outright.

## IV. REASONABLENESS OF ATS'S ASSERTED FEES

Where, as here, a contract permits a party to recover its "reasonable attorneys' fees" and the contracting parties have not expressed an intent that "reasonable" mean otherwise (ECF No. 37-2 at 7 ¶ 5), courts in this District employ "the familiar 'lodestar' analysis." *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.,* 958 F. Supp. 2d 1238, 1254–55 (D. Colo. 2013); *see also Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.,* 2023 WL 7135306, at *5–6 (D. Colo. July 19, 2023) (assessing fees using lodestar method where applicable "License Agreement contain[ed] a valid fee-shifting provision allowing the prevailing party to recover reasonable attorney fees").[7]

The Court calculates the lodestar amount by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Am. Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 386 (Colo. 1994) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983)). The lodestar amount "carries with it a strong presumption of reasonableness." *Spensieri v. Farmers Alliance Mut. Ins. Co.,* 804 P.2d 268, 271 (Colo. App. 1990). "Nevertheless, after the initial determination, the trial court may, in its discretion, adjust this calculation by consideration of other factors." *Id.* (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)).

While the Court is guided by the lodestar analysis, it notes that the Tenth Circuit has observed that, in contrast with the "close scrutiny" ordinarily given to awards under federal fee-shifting statutes, "where the court is merely enforcing a contractual provision

---

[7] Notably, ATS has briefed its Fee Motions assuming the lodestar analysis applies, and Flatiron does not argue otherwise. (*See, e.g.,* ECF No. 457 at 4.)

authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *U.S. for Use of C.J.C., Inc. v. W. States Mechanical Contractors,* 834 F.2d 1533,1548 (10th Cir. 1987); *see also Public Serv. Co. of Colorado v. Continental Cas. Co.,* 26 F.3d 1508, 1520–21 (10th Cir. 1994) ("While the absence of specific task descriptions may preclude an award of fees in cases arising under a federal fee-shifting statute [citation omitted], the same degree of specificity is not required in the context of contractual fee awards.").

Of course, "[t]his does not mean [] that the trial court should simply award the full amount billed by the prevailing party's attorneys." *W. States Mechanical Contractors,* 834 F.2d at 1548. While "the trial court is not responsible for independently calculating a 'reasonable' fee," it retains "discretion to adjust or even deny a contractual award of fees if such award would be inequitable or unreasonable." *Id.* at 1548–49. "The district court may choose to use" "the familiar factors from the federal cases awarding fees in a statutory context" "not to compute a reasonable fee, but to assist in determining if the fees claimed are unreasonable or inequitable." *Id.* at 1550.

With these principles in mind, the Court now addresses the fee reductions for which Flatiron advocates. Due to the format of ATS's supporting documentation, the Court finds it simplest to organize its analysis by starting with the figure originally sought by ATS *before* accounting for the fee amounts it has agreed to deduct in its Fee Motions. That amount consists of $9,580,515.40 in fees incurred through the conclusion of trial, $528,760.50 in fees incurred from the conclusion of trial through July 31, 2024, and $177,814.50 in fees incurred from August 1, 2024 to October 17, 2024—or, in total, $10,287,090.40. The Court will incorporate ATS's agreed reductions in

10

undertaking its topical analysis below.

**A.      Hourly Rates**

ATS retained Stephen Gurr of Bryan Cave Leighton Paisner LLP ("Bryan Cave")

at the inception of this litigation in 2018.  (ECF No. 457 at 5; ECF No. 457-1 at ¶ 6.)  In

April 2021, Mr. Gurr left Bryan Cave and joined the law firm of Polsinelli PC

("Polsinelli").  (ECF No. 457 at 5; ECF No. 457-1 at ¶ 7.)  At that time, the ATS matter

was transferred from Bryan Cave to Polsinelli, where Mr. Gurr continued to represent

ATS.  (*Id.*)  Thus, in support of its Fee Motions, ATS submits the billing records of Bryan

Cave from 2018 to early 2021, and the billing records of Polsinelli from early 2021

through the conclusion of the briefing on the Fee Motions in October 2024.

Flatiron's challenge to the rates charged by ATS's counsel at these two firms is

two-fold.  First, Flatiron asserts that ATS failed to provide the information required by

Local Rule 54.3(b) for 19 timekeepers, such that the Court cannot assess whether the

rates charged by those timekeepers are reasonable.  Second, and most significantly,

Flatiron argues that ATS's counsel at Polsinelli exponentially and improperly increased

its hourly rates after the Court ruled that Flatiron must pay ATS's fees and costs

pursuant to the Subcontract.

1.      Compliance with Local Rule 54.3

Flatiron argues that ATS violated Local Rule 54.3 by failing to provide information

regarding the "qualifications or experience" of 19 timekeepers who appear on its

counsel's billing statements.  (ECF No. 496 at 8–9.)  As a result, Flatiron contends the

Court should deduct all fees incurred by those 19 timekeepers, amounting to

$1,580,817.79.  (*Id.*)  The Court agrees in part and will therefore deduct $31,272.00 in

11

fees incurred by seven timekeepers for which it lacks sufficient information.

Local Rule 54.3 requires that a motion for attorney fees "include . . . for each person for whom fees are claimed . . . a summary of relevant qualifications and experience." D.C.COLO.LCivR 54.3(b). Flatiron argues that ATS's First Fee Motion is noncompliant with Local Rule 54.3(b) because—out of what the Court counts to be 27 total timekeepers—ATS's counsel's affidavit in support of its First Fee Motion appended biographies for only the six attorneys and one paralegal making up its core trial team. (ECF No. 496 at 8–9.) It thus urges the Court to "deny ATS the fees incurred by the 19 timekeepers, which totals $1,580,817.79." (*Id.* at 9.)

ATS counters that its failure to attach a biography for "every [] person who appears on the six years of invoices, from two firms" was "inadvertent and did not deprive the Court of any meaningful information." (ECF No. 500 at 9.) It contends that all but a few of the 19 attorneys and paralegals have biographies that are publicly available on Bryan Cave or Polsinelli's websites. (*Id.*) ATS attached these biographies, as well as the current company biographies for those timekeepers who were no longer employed at Bryan Cave or Polsinelli, to a supplemental declaration appended to its reply brief. (*See* ECF No. 500-5.) For three timekeepers ATS's counsel was unable to locate a biography, ATS's counsel purports to "supply the required information for them" in his affidavit. (*Id.* at ¶ 16.)

Flatiron is correct that Local Rule 54.3 is strictly enforced by courts in this District. *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1246 (D. Colo. 2015) (declining to "entertain a request for attorneys' fees" for timekeepers for whom plaintiffs failed to "submit 'a summary of relevant qualifications and

experience' . . , as mandated by the Local Rules"); *Baxter Construction Co., LLC v. SF Construction, Inc.,* 2024 WL 1537998, at \*5 (D. Colo. Apr. 9, 2024) (same); *Peterson v. Pickering,* 2023 WL 5153757, at \*2 (D. Colo. July 18, 2023) (same) (Mix, M.J.); *Cuesta v. SMT Holdings LLC,* 2023 WL 3626517, at \*28 (D. Colo. May 24, 2023) (same); *Merrill v. Contract Freighters, Inc.,* 2021 WL 3742242, at \*5 (D. Colo. Aug. 24, 2021) (same) (Crews, M.J.); *Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd.,* 2015 WL 4237950, at \*8 (same), *report and recommendation adopted* 2015 WL 4162586 (D. Colo. July 9, 2015).

Nonetheless, in some circumstances, courts have also permitted movants an opportunity to supplement or re-file deficient fee applications. *See Delanni as Tr. of Bd. of Tr. of CWA/ITU Negotiated Pension Plan v. Progress Printing Corp.*, 2018 WL 4680336, at \*12 (D. Colo. Sept. 28, 2018) (ordering supplemental briefing where counsel's affidavit was noncompliant with Local Rule 54.3) (Mix, M.J.); *Sixta v. Bass Pro Outdoor World, LLC,* 2019 WL 13202231, at \*1 (D. Colo. Jan. 3, 2019) (denying motion for attorneys' fees without prejudice and giving plaintiff seven days to refile a motion in compliance with Local Rule 54.3) (Crews, M.J.). To be sure, the Court looks poorly on ATS's failure to strive for full compliance with the Local Rules given the substantial amount at issue. On the other hand, it also finds an over $1.5 million deduction would be a grossly disproportionate penalty for ATS's failure to append biographies. Thus, in its discretion, the Court will consider the additional information ATS has appended to its reply.

Even so, the Court continues to lack sufficient information concerning the relevant qualifications and experience of seven timekeepers appearing on ATS's fee invoices. Specifically, for those three timekeepers ATS's counsel states it was unable

13

to locate a biography—Jenn Pearce, Teresa Romer, and K.R. Barrett—the description

counsel has provided in place thereof simply identifies them as paralegals.  (ECF No.

500-5 at ¶¶ 16–19.)  The Court has also independently determined that it has no

information for a timekeeper listed on Bryan Cave's fee invoices as "E.L. Young."  (*See*

ECF No. 457-3.)  And, while ATS provided current biographies for three other

timekeepers who have since left Bryan Cave or Polsinelli—L.C Schneider, L.S. Perlov,

and M.J. Hofmann—their titles are ambiguously identified as "Other" on the spreadsheet

of fees provided by ATS.  (*See* ECF No. 457-3.)  Thus, while the Court can tell that

Laura Perlov, for example, is currently a partner at another law firm (ECF No. 500-6 at

37), the Court cannot discern whether she held that position when she was billing to this

litigation in 2020.

For these reasons, the Court lacks sufficient information to determine whether

the rates attributable to the seven timekeepers listed below are reasonable:

| Timekeeper | Total Amount Billed |
|---|---|
| Jenn Pearce | $20,629.00 |
| Teresa L. Romero | $1,712.50 |
| K.R. Barrett | $774.00 |
| E.L. Young | $102.00 |
| L.C. Schneider | $528.00 |
| L.S. Perlov | $7,360.00 |
| M.J. Hofmann | $166.50 |
| | $31,272.00 |

The Court will accordingly deduct $31,272.00 from ATS's First Fee Motion for its failure

14

to provide the information required by Local Rule 54.3(b), bringing the running total of
ATS's recoverable fees to $10,255,818.40.

### 2.    Use of Effective Rates

ATS's fees expert, Lauren D. Quiat, opines that the hourly rates of ATS's
principal trial team are reasonable based on their "effective" hourly rates—"that is, the
average rate of each attorney over the course of the litigation, determined by [the] total
amount billed by that attorney divided by that attorney's number of hours."  (ECF No.
457 at 5.)  ATS states the effective rate "captures the average rate for each attorney as
both firms raised their attorneys' rates in keeping with national and regional trends."
(*Id.*)

Flatiron vehemently maintains, however, that ATS's use of effective rates
conceals that, once the Court ruled Flatiron would be liable for ATS's attorneys' fees
and costs, ATS's counsel at Polsinelli "secretly doubl[ed] its rates in preparation for its
fee petition."  (ECF No. 496 at 2.)  By way of example, Flatiron's fees expert, Steven A.
Tasher, explains that, throughout 2021 and 2022, partner Stephen Gurr charged $500
per hour, partner Adam Lewis charged $408 per hour, lead associate Carter McDonnell
charged $325 per hour, and lead paralegal Allie Schneider charged $185 per hour.
(ECF No. 496-11 at ¶ 43.)  But then, in January 2024, "the same timekeepers charged,
respectively: $980 per hour for Mr. Gurr (a 96% increase), $925 per hour for Mr. Lewis
(a 126.72% increase), $660 per hour for Mr. McDonnell (a 103.8% increase), and $330
per hour for Ms. Schneider (a 78.38% increase)."  (*Id.*)  Mr. Tasher calculates that this
substantial fee increase warrants at least a $946,799.92 deduction in ATS's fees
incurred through the conclusion of trial and $192,466.50 in ATS's post-trial fees.  (ECF

15

No. 496 at 8; at ECF No. 505 at 8.)  ATS's counsel, of course, contests that its rate

increase at the start of 2024 was at all nefarious but instead reflected ATS's agreement

to begin paying Polsinelli's standard rates after years of "deep discounts" negotiated by

the insurance carrier.  (*See generally* ECF No. 500-1.)

The Court agrees with Flatiron that the timing of ATS's counsel's rate increase

appears convenient.  Even so, the Court is nonetheless persuaded that considering

counsel's effective rates over the course of this five-year litigation is a fair method for

assessing the reasonableness of their hourly rates.  Flatiron argues that "[c]ourts have a

responsibility to guard against 'moral hazard,' or 'the tendency [by a prevailing party] to

take additional risks (or run up extra costs) if someone else pays the tab.'"  (ECF No.

496 at 4 (quoting *Medcom Holding Co. v. Baxter Travenol Lab'ys,* 200 F.3d 518, 521

(7th Cir. 1999)).)  However, the authority upon which Flatiron relies also states that,

"[i]nstead of doing a detailed, hour-by-hour review after the fashion of a fee-shifting

statute, . . . the district judge should have undertaken an overview of [the plaintiff's]

aggregate costs to ensure that they were reasonable in relation to the stakes of the

case and [the defendant's] litigation strategy . . . ."  *Medcom Holding,* 200 F.3d at 521.

The Court concludes that considering ATS's counsel's effective rates is a fair and

sensical way to analyze the reasonableness of ATS's counsel's rates in the aggregate.

Other courts in this Circuit have taken a similar approach.  *See Xtreme Coil Drilling,* 958

F. Supp. 2d at 1255 (analyzing hourly rates of attorneys "averaged over the 2010–2012

period"); *Briggs as next friend of T.W. v. Friesen,* 2025 WL 103204, at *7 (N.D. Okla.

Jan. 15, 2025) (finding effective hourly rates for class counsel were "reasonable hourly

rates in the Tulsa market"); *Garcia v. Tyson Foods, Inc.,* 2012 WL 5985561, at *3 (D.

16

Kan. Nov. 29, 2012) (assessing reasonable of attorneys' fees based on "an effective blended hourly rate"); *see also In re Lithium Ion Batteries Antitr. Litig.,* 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018) (approving attorney fee award to class counsel where "lodestar cross-check result[ed] in an effective hourly rate far below the market rate . . .").

Unhelpfully, Mr. Quiat only calculated the effective rates for ATS's core trial team, leaving the Court to do the math for ATS's remaining timekeepers. (ECF No. 457-4 at ¶ 9.) Moreover, he calculated ATS's counsel's effective rates based on their time billed through the conclusion of trial. (*See id.*) For consistency, the Court has re-calculated counsel's effective rates to account for their fees claimed in the Second Fee Motion. Those effective rates are as follows:

| Timekeeper | Title | Amount Billed | Hours Billed | Effective Rate |
|---|---|---|---|---|
| William Meyer | Shareholder | $571,105.50 | 746.5 | $765.04 |
| Garrick P. Vanderfin | Associate | $203,492.50 | 278.1 | $731.72 |
| Michael L. Schuster | Counsel | $2,838.00 | 4.3 | $660.00 |
| Stephen D. Gurr | Shareholder | $1,720,378.00 | 2,693 | $638.38 |
| Robert Tuchman | Partner | $6,211.50 | 10.1 | $615.00 |
| Ben L. Cohen | Of Counsel | $806,811.00 | 1,319.5 | $611.45 |
| Nick Griebel | Associate | $93,867.50 | 180.7 | $519.47 |
| Adam Lewis | Shareholder | $3,260,054.70 | 6,551.6 | $497.60 |
| John H. Scott | Associate | $75,402.00 | 167.2 | $450.97 |
| Stephen Rynerson | Counsel | $313,924.10 | 710.5 | $441.84 |
| Cynthia Lowery-Graber | Shareholder | $409,500.00 | 973.4 | $420.69 |

| | | | | |
|---|---|---|---|---|
| Phillip P. Guttilla | Shareholder | $454.00 | 1.1 | $412.73 |
| Carter S. McDonnell | Associate | $1,533,351.00 | 3,817.3 | $401.68 |
| Dan Levey | Associate | $562,580.60 | 1,451.7 | $387.53 |
| Emily J. Hermreck | Associate | $201,420.00 | 542.6 | $371.21 |
| Henry Bolz | Counsel | $3,640.00 | 10.4 | $350.00 |
| Elise Seale | Associate | $45,936.00 | 139.2 | $330.00 |
| Nick Bedo | Associate | $50,464.00 | 157.7 | $320.00 |
| Allie Schneider | Paralegal | $370,144.00 | 1,566 | $236.36 |
| Robyn S. Mills | Paralegal | $23,915.00 | 105.7 | $226.25 |
| Mark H. Dawson | Paralegal | $220.00 | 1.1 | $200.00 |
| Mary C. Igou | Paralegal | $109.00 | 0.9 | $121.11 |

Mr. Quiat asserts that similar rates to the foregoing have been approved by courts in this District.  (ECF No. 457-4 at ¶ 12 (citing *Biax Corp. v. NVIDIA,* 2013 WL 4051908, at *5–6 (D. Colo. Aug. 12, 2023) (approving 2010 to 2012 hourly rates ranging from $510 to $748 for partners, $429 to $531.25 for associates, and $148.75 to $212.50 for paralegals), *rev'd on other grounds* 626 F. App'x 968 (Fed. Cir. 2015); *L-3 Comm'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* 2015 WL 1218067, at *2–6 (D. Colo. Mar. 12, 2015) (noting Colorado courts have approved legal rates as high as $700 per hour and approving $695 hourly rate for lead counsel); *Dig. Satellite Connections, LLC v. Dish Network Corp.,* 2018 WL 4620337, at *4 (D. Colo. Sept. 26, 2018) ("During [2013 to 2016], the prevailing Denver market rate for high level attorneys in complex business disputes was in the range of $500 to $580 per hour.")).)  While Flatiron takes issue with ATS's fee increase at the start of 2024, it does not challenge any particular timekeeper's

18

effective rate as unreasonable.

In the Court's view, however, the effective hourly rates attributable to associates Garrick P. Vanderfin and, to a lesser extent, Nick Griebel, are disproportionately high. Indeed, their respective hourly rates—$731.27 and $519.47—exceed the hourly rates charged by most of the shareholders representing ATS.[8]  The Court finds a $450 hourly rate is more closely in line with comparable rates in the Denver market for associates of their experience level and the remainder of ATS's trial team.

Applying this rate reduction amounts to a $90,900.00 deduction, bringing ATS's total recoverable fees to $10,164,918.40.

## B.    Number of Hours Expended

In the aggregate, ATS's remaining fees at issue represent 21,428.6 hours in legal work.  *See* Section IV.A.2 *infra*.  Flatiron argues that ATS improperly included certain categories of time in its Fee Motions, including (1) fees attributable to legal work performed in connection with the state court litigation; (2) fees for time spent responding to Flatiron's Rule 702 Motions; (3) fees attributable to ATS's counsel's time spent "correcting its own errors"; and (4) legal work attributable to ATS's affirmative claim. (*See generally* ECF Nos. 496, 505.)  Flatiron additionally argues that a global reduction is appropriate to remedy the poor billing judgment of ATS's counsel, including their top-heavy staffing of the case.  (*Id.*)  The Court addresses each of these issues in turn.

---

[8]  The Court pauses to note that the eye-watering effective hourly rate for Mr. Vanderfin—$731.27—is the highest rate the undersigned has ever seen for an associate attorney, exceeding the hourly fee rates charged by the vast majority or Denver area partners or shareholders during the pertinent period of time.

1.    <u>Fees Related to State Court Case</u>

The parties are engaged in parallel litigation in state court related to the events at issue in this action.  In its First Fee Motion, ATS states that it "does not seek its state court fees here, but anticipates recovering them in the state court action under C.R.S. § 13-17-201."  (ECF No. 457 at 10 n.6.)  Flatiron asserts, however, that $59,059.00 of the fees included in the First Fee Motion and $14,991.50 of the fees included in the Second Fee Motion relate to the state court litigation.  (ECF No. 496 at 9; ECF No. 505 at 11.)  ATS has agreed to deduct $16,325.50 from its First Fee Motion and $7,381.50 from the Second Fee Motion.  (ECF No. 491 at ¶ 50; ECF No. 506-1 at ¶ 47; ECF No. 506-3.)  Accordingly, the Court takes up the remainder in dispute.

Of those fees incurred through trial, Flatiron contends the remainder in dispute relates to ATS's Motion for Anti-Suit Injunction (ECF No. 304).  (ECF No. 496 at 9.)  Flatiron argues ATS should not be able to recover those fees because they, too, "properly relate to the state court action" insofar as ATS "filed the anti-suit injunction to 'enjoin [the JV], including its majority member and manager [Flatiron], from further prosecuting the . . . state court action.'"  (ECF No. 496 at 9–10 (quoting ECF No. 304 at 1) (alterations in original).)  ATS counters that the remaining fees were appropriately incurred in connection with this federal action because, among other reasons, "the motion could only be filed in this federal action, since it asked <u>this</u> Court to enjoin Flatiron's prosecution of parallel (and precluded) litigation in another forum, to prevent inconsistent judgments."  (ECF No. 500 at 10.)

On this point, the Court agrees with ATS.  ATS's motion was filed pursuant to the Anti-Suit Injunction Act ("AIA"), a *federal* statute enumerating the limited circumstances

20

in which a *federal* court can issue an injunction against a pending state court proceeding. 28 U.S.C. § 2283. Moreover, in its Order reserving ruling on the motion, the Court expressly indicated that ATS's motion was not frivolous. (*See* ECF No. 342.) Rather, it noted "the complexity of the competing legal arguments on the important issues raised in the Motion," while ultimately deferring ruling on the merits in the interest of "comity between the federal and state courts, and their respective jurisdictional and procedural prerogatives." (*Id.* at 4.) The Court thus concludes these fees are appropriately included in ATS's First Fee Motion.

Of the remaining $7,610.00 in post-trial fees disputed by Flatiron, however, the Court agrees that two of the underlying entries, pertaining to an "April 26, 2024 order" and "the JV's substitution of counsel" occurring on or before May 17, 2024, do not appear to align with events from this litigation. (ECF No. 506-3.) The Court will exclude these in their entirety. Five other entries, including one which appears in ATS's most recently filed documentation of its fees incurred through October 17, 2024 (ECF No. 508-1), expressly reference the state court litigation. ATS's counsel explains that these entries "mention the state court action because it was briefly discussed in conferences and analyses that were predominantly (indeed almost entirely) focused on the federal action." (ECF No. 506-1 at ¶ 48.) Based on these representations, the Court will reduce these five entries by 25%. *Cf. Santacruz v. Standley & Assocs., LLC,* 2011 WL 3366428, at *3 (D. Colo. Aug. 4, 2011) (estimating fees "for the hours expended in defending against the state law suit" where it was "difficult to determine the exact number of hours as some of the entries are in a block billing format"). The Court will accordingly deduct an additional $1,848.01 from ATS's post-trial fees.

21

Taken together, the reduction in ATS's fees attributable to the state court litigation totals $26,372.63, bringing the running total of ATS's recoverable fees to $10,138,545.77.

        2.    Rule 702 Briefing Fees

The Court previously took issue with ATS's apparent failure to meaningfully confer on the issues presented in Flatiron's Rule 702 Motions (*see* ECF Nos. 290, 291). Of the nine specific issues addressed by the Court in its Order adjudicating those motions, the Court determined that six issues "were rendered moot by AECOM's tardy concessions that it did not intend to introduce such evidence at trial." (ECF No. 344 at 16.) It accordingly ordered AECOM to show cause "as to why it should not be ordered to pay Flatiron's attorneys' fees and costs reasonably incurred with respect to those portions of the Rule 702 motions . . . ." (*Id.*) The Court further directed that, "should either party file a motion for attorneys' fees at a later stage of this litigation, the Court expects the parties to explicitly exclude fees and costs for time spent briefing Rule 702 issues that they need never have briefed at all." (*Id.* at 3.) Flatiron identifies 55.2 hours it contends ATS should have excluded pursuant to the Court's Order. (ECF No. 496 at 10; ECF No. 496-7.) The Court agrees in part.

First, it appears that ATS's fee application includes the fees it incurred in responding to the Court's show cause order. (*See* ECF No. 496-7.) Although the Court ultimately discharged its show cause order and did not require ATS to pay Flatiron's attorneys' fees and costs in connection with the Rule 702 motions, the Court nonetheless agrees that ATS should not be permitted to recover those fees incurred responding to the show cause order from Flatiron. (*See* ECF No. 455 at 2.) Accounting

for the reduction the Court has already applied to Nick Griebel's hourly rate, the Court
will deduct $12,926.50 in fees attributable to briefing on the show cause order.  (*See*
ECF No. 496-7.)

Second, ATS explains that, with respect to its fees incurred responding to
Flatiron's Rule 702 Motions, it only seeks to recover $13,811 and has already deducted
the remaining $14,663.58 in fees from its request.  (ECF No. 500-7 at ¶¶ 8–13.)  ATS
asserts that it believes this "reduction of 51.49% of the total fees billed to ATS for
briefing Rule 702 issues complied with the Court's [O]rder."  (*Id.* at ¶ 13.)  Given that the
Court found two-thirds of the issues briefed by Flatiron in its Rule 702 Motions to be
moot, the Court finds a proportional reduction would be most sensical.  This amounts to
a further $4,319.47 reduction in ATS's recoverable fees.

In total, the Court deducts $17,245.97 from ATS's First Fee Motion, bringing the
running total of ATS's total recoverable fees to $10,121,299.80.

### 3.    Correcting Errors

Flatiron next argues that ATS is not entitled to recover fees it incurred post-trial
"correcting its own errors."  (ECF No. 505 at 8.)  It specifically asks the Court to deduct
those fees ATS incurred (1) "to re-draft and file the Revised Cost Motion," which it totals
at $62,193.00, and (2) "to remove the improperly sought affirmative claim time from the
First Fee Motion," which it totals at $142,628.00.  (ECF No. 505 at 8; ECF No. 505-4;
ECF No. 505-5.)  The Court again agrees in part.

Regarding the former request, ATS initially filed its Motion for Costs Incurred
from Outset of Litigation Through Conclusion of Trial such that it included both those
taxable costs allowable under 28 U.S.C. § 1920 *and* the nontaxable costs ATS seeks to

23

recover pursuant to the Fee-Shifting Provision.  (ECF No. 456.)  ATS's Proposed Bill of

Costs thus initially included over $8.4 million in costs and included a note to the Clerk of

Court explaining that it sought *all* of its costs "not under FRCP 54(d)(1), but under FRCP

54(d)(2)(A)."  (ECF No. 458 at 3.)  It accordingly "ask[ed] the Court to advise the Clerk

that the Court will address [*all*] costs, so the Clerk does not have to."  (*Id.*)  The Court

disagreed with ATS's approach of "lumping all of its costs request into the Costs Motion"

and directed ATS to file an amended motion "which appropriately distinguishes costs

incurred under Rule 54(d)(1) and those incurred under Rule 54(d)(2)(A)."  (ECF No.

461.)

ATS argues that its initial cost motion "was not an 'error' that had to be corrected"

but instead "a reasonable way of presenting ATS's costs."  (ECF No. 506 at 10–11.)  In

the Court's view, ATS's argument is belied by the fact that the parties were able to

stipulate to ATS's taxable costs recoverable under Fed. R. Civ. P. 54(d)(1) only *after*

ATS filed its Revised Costs Motion (ECF No. 468) appropriately segregating its costs.

(*See* ECF No. 473); *cf. Clawson v. Mountain Coal Co., L.L.C.,* 2007 WL 4225578, at *12

(D. Colo. Nov. 28, 2007) (finding it "inappropriate to require the Defendant to bear the

costs of correcting [Plaintiff's] counsel's miscalculations—miscalculations the

Defendants neither caused nor had the ability to prevent").  The Court thus agrees with

Flatiron that ATS should not be permitted to recover its fees incurred "redoing" its Costs

Motion and thus deducts $62,193.00.

The Court similarly agrees that Flatiron should not be required to bear the cost of

ATS's counsel's failure to diligently and accurately maintain a record of its time spent on

legal work supporting ATS's affirmative claim versus defending against Flatiron's

defensive claim.  However, rather than deduct the $142,628.00 figure cited by Flatiron outright, the Court, in its discretion, has taken into consideration the fees expended by ATS to appropriately allocate its fees in determining an appropriate percentage reduction to ATS's total claimed fees below.  *See* Section IV.B.5 *supra.*

The Court will accordingly deduct only $62,193.00, bringing ATS's running total of recoverable fees to $10,059,106.80.

### 4.    Poor Billing Judgment

The Court next addresses Flatiron's assertion that a 25% reduction should be applied to ATS's total recoverable fees to remedy its counsel's "poor billing judgment." (ECF No. 496 at 13.)  Specifically, Flatiron contends that ATS's counsel exercised poor billing judgment as a result of unreasonably top-heavy case team staffing and repeated instances of redacted, duplicative, or non-legal time entries.  (ECF No. 496 at 13; ECF No. 496-11 at ¶¶ 62–74.)

*Top-Heavy Case Staffing*:  Mr. Tasher opines that nearly 69% of the fees Polsinelli seeks in its First Fee Motion and 62% of the fees it seeks in its Second Fee Motion were generated by partners, shareholders, or "of counsel," as compared with those fees generated by associates and support staff.  (ECF No. 496-11 at ¶ 65; ECF No. 505-10 at ¶ 27.)  He opines that this "top-heavy staffing generated fees that were around 12–15% higher than they should have been if proper staffing had been utilized." (ECF No. 496-11 at ¶ 67; *see also* ECF No. 505-10 at ¶ 30 (estimating top-heavy administration of case resulted in 14.5% increase in post-trial fees).)  Flatiron advocates for a proportional reduction to ATS's recoverable fees.  (ECF No. 496 at 14; ECF No. 505 at 13.)

In Mr. Tasher's view, Polsinelli's fees are unreasonably top-heavy because three timekeepers—Shareholder Adam Lewis, Of Counsel Ben Cohen, and Shareholder Cynthia Lowery-Graber—"performed substantial associate-level work but charged partner rates."  (ECF No. 496-11 at ¶ 66; *see also* ECF No. 505-10 at ¶ 29.)  The Court agrees that some of the tasks cited by Mr. Tasher, such as document review, tagging and coding documents, drafting memos, and preparing deposition notices, could have appropriately been delegated to an associate-level attorney.  (*See* ECF No. 496-11 at ¶ 65.)  But the Court does not find it unreasonable *per se* for a more senior attorney to have been engaged in the other tasks listed by Mr. Tasher, such as outlining testimony for trial, working on a privilege log, and drafting briefs and correspondence.  (*See id.*)

Mr. Quiat counters that Mr. Tasher fails to recognize, among other things, "that Adam Lewis was the primary managing lawyer representing ATS from start to finish (2018 through 2024)" and "was a senior associate at Bryan Cave when the litigation first began."  (ECF No. 500-4 at ¶ 8.)  "As such, he was tasked with performing associate level work, including legal research, document review, and similar types of tasks" and continued in that role when the case was transferred to Polsinelli given "he was the lawyer with the most day-to-day knowledge of the facts of the case."  (*Id.*)  As a general matter, Mr. Quiat also opines that "Mr. Tasher's arbitrary proposed 15% reduction to address top-heavy administration is not in line with how cases with significant financial exposure to clients are handled."  (*Id.*)  Rather, his "proposal that certain work be handled by younger lawyers is more inclined to lead to inefficiencies, given the lack of seasoning that young lawyers have, especially when it comes to getting a multi-faceted case ready for a lengthy trial."  (*Id.*)

The Court independently notes that the highest effective rates do not necessarily correlate with the most senior attorneys. For instance, three associates—Nick Griebel, Garrick P. Vanderin, and J.H. Scott—have effective rates that are higher than that of shareholder Cynthia Lowery-Graber, even accounting for the rate reduction the Court applied above. *See* Section IV.A.2 *infra.* Accordingly, simply comparing the fees incurred by attorneys at the "of counsel" level or higher to those incurred by associates and support staff appears potentially inaccurate.

By the Court's estimation, the proportion of time billed at shareholder Adam Lewis's effective rate ($497.60) or higher—across both Fee Motions—is roughly 63%. While this strikes the Court as a bit high, it does not find it to warrant a 15% reduction, particularly given the complexity of this case and the magnitude of the damages at issue. *Cf. Xtreme Coil Drilling*, 958 F. Supp. 2d at 1259 (10% reduction warranted where associates performed less than 15% of the billable work). The Court will afford the issue of "top-heavy staffing" modest weight when considering a total percentage reduction for ATS's counsel's alleged poor billing judgment below.

*Unreasonable, Duplicative, and Administrative Time*: Apart from alleged top-heavy staffing, Flatiron identifies a slew of other examples of "unreasonable, duplicative, or administrative time" it contends warrant an additional 10% reduction to the First Fee Motion and a 5% reduction to the Second Fee Motion. (ECF No. 496 at 14; ECF No. 505 at 13.) In the Court's view, the most compelling of those issues are the following:

- Recurrent instances of billing for non-legal work and clerical tasks, including preparing monthly bills, monthly updates, and attending workshops (*see, e.g.,* ECF No. 457-2 at 4, 598, 675, 688, 699, 474; ECF No. 498-2 at 34,

27

54);

- Time billed by Nick Griebel and Garrick P. Vanderfin to "get up to speed" on roughly four years of preceding litigation when they were onboarded just before trial (*see, e.g.,* ECF No. 468-3 at 759, 790);

- Recurrent block-billed time entries, in some instances accounting for up to 10 hours of attorney time in one entry (*see, e.g.,* ECF No. 496-10 at 710, 78, 814, 817, 819); and

- The inclusion of six "ancillary timekeepers," each of whom billed 10.4 hours to the litigation or less (*see* Section IV.A.2 *infra*).

The Court agrees that a modest reduction is also appropriate to remedy these issues. However, in combination with the top-heavy staffing issue discussed above, the Court finds an over $2.5 million dollar reduction in ATS's fees is far too severe a remedy. Instead, the Court concludes a global 3% reduction, amounting to a $301,773.20 deduction, is proportionate to redress the deficiencies identified in this section. Applying this reduction brings the running total of ATS's total recoverable fees to $9,757,33.60.

### 5. Fees Related to Affirmative Claims

The parties most vehemently contest ATS's alleged failure to "accurately and comprehensively distinguish between fees and costs associated with litigating its Affirmative Claim and defending against the JV's counterclaim." (ECF No. 486 at 3.) In all, the Court is confident that ATS's complex methodology for retroactively reallocating time to the affirmative matter has yielded an underestimate, and Flatiron's expert's proposed 31.7% percentage reduction would yield an overestimate. In its discretion, the Court will instead apply a global 15% reduction to ATS's running total of recoverable

fees.

As a threshold matter, the fact that ATS more than doubled the amount of fees allocable to the affirmative matter *post hoc* demonstrates to the Court that it did not diligently segregate its fees throughout the five-year life of this litigation. At the outset of the litigation, Bryan Cave created two matter numbers for billing purposes: (1) "a matter for ATS's work defending against Flatiron's anticipated counterclaim," and (2) "a matter for ATS's affirmative claim for unpaid design work." (ECF No. 491 at ¶ 10.) According to ATS, it "made a good faith effort to allocate legal work as between the affirmative matter and defensive matter" throughout the litigation, having billed $191,931 (of its nearly $10 million in total fees) to the affirmative matter in real time. (*Id.* at ¶¶ 23–24.) However, through its retroactive efforts to "further extract any time written to the defensive matter that, in hindsight review, related to the affirmative matter and could have been billed to that matter," ATS's counsel has reallocated $282,294.65 in fees to the affirmative matter. (*Id.* at ¶ 25.)[9] At this point, neither ATS, Flatiron, nor this Court can devise a formula that would serve as a perfect substitute for allocating fees between claims as the fees are incurred.

The Court is convinced, however, that ATS's proposed reduction is too little for several reasons. For one, Flatiron identifies several examples of entries that ATS ostensibly failed to remove from its First Fee Motion as part of its retroactive reallocation

---

[9] Notably, these efforts also apparently included moving some time entries that *were* originally billed to the affirmative matter to the defensive matter in preparation for ATS's fee application. (ECF No. 506 at 6 ("some work had been written to the affirmative matter that was properly recoverable and therefore belonged in the defensive matter . . . [t]hat is why a few time entries in the post-trial fee motion have the affirmative matter number").)

efforts, at least some of which refer to ATS's affirmative claims on their face.  (ECF No.
496-2.)  The Court is also persuaded by Flatiron's argument that ATS "entirely ignored
numerous 'common-issue' topics that necessarily relate to both claims, such as legal
research, document review, client calls and litigation strategy sessions."  (ECF No. 496
at 7; ECF No. 496-3; *see also* ECF No. 496 at 12–13.)  Seemingly consistent with this,
the declaration submitted by ATS's counsel suggests to the Court that, where a time
entry was of arguably equal import to both ATS's affirmative claim and its defense to
Flatiron's counterclaims, ATS defaulted to billing that time to the defensive matter.
(ECF No. 491 at ¶ 15 ("While the initial purpose for maintaining two matters was to
separate the defensive legal work which may have been subject to some coverage by
ATS's insurers, as the litigation evolved it became apparent that evidence supporting
ATS's affirmative claim also supported ATS's defense to Flatiron's counterclaim.").)
Indeed, ATS "billed **<u>zero</u>** hours to the affirmative matter between October 2020 and
June 2021, September 2021 and November 2021, and March 2022 and July 2023."
(ECF No. 496 at 7.)

The Court similarly views ATS's calculation of the proportion of time expended at
trial on its affirmative claims versus Flatiron's counterclaims (3.8%) is likely an
underestimation.  (*See* ECF No. 491-2.)  As Flatiron points out, ATS resisted Flatiron's
motion for entry of judgment on ATS's affirmative claims to obviate the need to expend
time on the affirmative claims at trial.  Therein, ATS made much ado of the effort it had
expended in preparing its affirmative case in its opposition to the motion.  (ECF No. 369
at 5 ("ATS was previously willing to consider a simple, straightforward confession of
judgment on its affirmative claims when that judgment would have saved it the massive

effort of fully preparing for the upcoming trial as plaintiff.").)  While ultimately finding that it could not force the parties to effectively settle the affirmative claims, the Court observed in its Order denying Flatiron's motion that "in practical terms it borders on the absurd to try AECOM's claims under these circumstances."  (ECF No. 377 at 2.)  Nonetheless, the parties proceeded to trial under the assumption that the first week of trial would be dedicated to ATS's affirmative case.  (ECF No. 496 at 12 (citing ECF No. 485-1 (joint email from parties stating "AECOM will put on its affirmative case on its breach of contract and unjust enrichment claims beginning Monday, January 29, 2024 . . . and concluding Friday, February 2, 2024 (Trial Days 1–5)")).)

Mr. Tasher opines that a 31.7% reduction to ATS's recoverable fees is most appropriate.  (ECF No. 496-11 at ¶ 83.)  He calculates this figure based on the total number of hours Polsinelli billed during the first week of trial (647.2 hours) and dividing it by the total number of hours billed from January 29, 2024 to February 23, 2024 (2,042.00 hours, exclusive of *voir dire,* opening statements, weekend work, and Mr. Hall's affirmative claim testimony that came later).  (*Id.*)  But, the Court also finds this percentage too high.

ATS emphasizes "how the affirmative and defensive matters were closely intertwined" and that "ATS's $5.3 million affirmative claim was about 2% of Flatiron's counterclaim" for $263.5 million.  (*Id.* at ¶ 14.)  And the Court does find persuasive value in the notion that an appropriate proxy for apportioning fees turns on the relative proportion of damages attributable to them.  *See McGrath v. Central Masonry Corp.,* 2010 WL 11549416, at *7 (D. Colo. Feb. 26, 2010) (reducing requested fees by 15% for "fail[ure] to differentiate between Plaintiff's two claims" based on proportion of damages

31

sought for the claim for which attorneys' fees were not recoverable divided by the jury's total award). Although, at least as of June 2023, ATS's expectation that its liability exposure may amount to over $250 million was greatly diminished after the Court determined the Subcontract's limitation of liability clause capped Flatiron's recoverable damages at roughly $10 million. *See* Section II *infra*.

Moreover, with respect to the proportion of time allocable to the parties' respective claims at trial, when denying Flatiron's motion for the Court also admonished that there was "no justifiable reason that Flatiron waited until days before trial to request such relief." (ECF No. 377 at 2.) And to ATS's credit, the Court can appreciate that at least some of its effort expended in trial preparation revolved around the order in which it expected to present its case.

Based on all of the foregoing considerations, the Court finds a global 15% reduction, amounting to $1,463,600.04, to account for ATS's counsel's failure to diligently allocate its time between the affirmative and defensive matters over the five-year duration of this action is proportionate. Put differently, in addition to those $282,294.65 in fees ATS has itself reallocated to the affirmative matter, the Court finds a further $1,181,305.39 reduction is justified.

As a result, deducting all of the amounts discussed and referenced above from ATS's total aggregate fee request in the Fee Motions, the Court FINDS that ATS's total recoverable fees incurred from the outset of the litigation through October 17, 2024 amounts to $8,293,733.56.

**V. CONCLUSION**

For the reasons set forth above, the Court ORDERS that ATS's Motion for Attorneys' Fees Incurred from Outset of Litigation Through Conclusion of Trial (ECF No. 457) and ATS's Motion for Attorneys' Fees Incurred Post-Trial (ECF No. 498) are GRANTED IN PART and DENIED PART.  ATS is awarded **$8,293,733.56** in attorneys' fees reasonably incurred in this action.

Dated this 6th day of March, 2025.

BY THE COURT:

William J. Martínez
Senior United States District Judge