**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 19-cv-2811-WJM-KAS

AECOM TECHNICAL SERVICES, INC.,

      Plaintiff-Counterclaim Defendant,

v.

FLATIRON | AECOM, LLC,

      Defendant-Counterclaim Plaintiff.

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**AECOM TECHNICAL SERVICES, INC.'S REVISED MOTION FOR COSTS**

---

      Before the Court is AECOM Technical Services, Inc.'s ("ATS" or "AECOM") Revised Motion for Litigation Costs Incurred from Outset of Litigation Through Conclusion of Trial (ECF No. 468) ("Revised Costs Motion").  In response to the Court's subsequent Order granting Defendant-Counterclaim Plaintiff Flatiron AECOM, LLC's ("Flatiron" or "the JV") request for limited discovery concerning ATS's asserted litigation costs (ECF No. 486), ATS filed the Declaration of Bennett L. Cohen Regarding Allocation of Costs as Between Affirmative and Defensive Matters (ECF No. 490), through which ATS withdrew a portion of the fees claimed in the Revised Costs Motion.  Flatiron filed a response (ECF No. 497), to which ATS filed a reply (ECF No. 499).

      For the reasons set forth below, the Revised Costs Motion is granted in part and denied in part.  The Court awards ATS **$5,884,534.69** in nontaxable costs reasonably and necessarily incurred.

1

## I. FLATIRON'S HEARING REQUEST

Flatiron requests an evidentiary hearing "to probe the evidence and to question ATS's expert." (ECF No. 497 at 15.) The Court finds, however, that "it has sufficient knowledge to make a decision without a hearing based on its experience with the case, and briefs and affidavits submitted by the parties." *Gamble, Simmons & Co. v. Kerr-McGee Corp.,* 175 F.3d 762, 774 (10th Cir. 1999); *see also Student Mktg. Grp., Inc. v. College P'ship, Inc.,* 247 F. App'x 90, 103–04 (10th Cir. 2007) (discerning no "abuse its discretion in denying an evidentiary hearing on fees and costs" where party argued "an evidentiary hearing was required under Colorado law"). Flatiron's hearing request is accordingly denied.

## II. BACKGROUND

The Court incorporates by reference the Background section of its Order granting in part and denying in part ATS's motions for attorneys' fees (*see* ECF No. 509) and adds the following.

Within 14 days of the Clerk's entry of final judgment (ECF No. 454), ATS filed its original motion seeking its litigation costs incurred through the conclusion of trial (ECF No. 456) and a proposed bill of costs (ECF No. 458). In the latter filing, ATS asked the Court "to advise the Clerk that the Court will address costs, so the Clerk does not have to." (ECF No. 458 at 3.) The Court instead directed ATS to file an amended costs motion "which appropriately distinguishes costs incurred under Rule 54(d)(1) and those incurred under Rule 54(d)(2)(A)" and advised that "[t]he Clerk's office [would] address costs incurred under Rule 54(d)(1), and the Court [would] address the remainder of the request." (ECF No. 461.)

2

The parties stipulated to $159,975.53 in taxable costs recoverable under Fed. R. Civ. P. 54(d)(1).  (ECF Nos. 473, 474.)  The Court now takes up those additional litigation costs ATS asserts "are beyond the limited scope of 28 U.S.C. § 1920 and federal law" but "allowable under Colorado law . . . through the Subcontract and this Court's [O]rder shifting fees and costs . . . ."  (ECF No. 468 at 2.)

ATS initially sought to recover $7,688,271.64 in nontaxable costs, including $6,025,729.24 in expert costs; $1,512,330.13 in e-discovery costs; and $150,212.27 in miscellaneous "non-expert costs."  (ECF No. 468 at 1; ECF No. 468-3.)  It subsequently agreed to deduct approximately $94,150 in expert costs and $988 in non-expert costs allocable to the prosecution of its affirmative claims, bringing its final request to approximately $7,593,133.  (ECF Nos. 490, 499.)[1]  Flatiron asserts the Revised Costs Motion should be denied outright or, at most, the Court should award ATS $2,648,071.36.  (ECF No. 497 at 3.)

### III. ANALYSIS

Ordinarily, "the courts do not have discretion to tax costs that are not expressly allowed by statute because, if Fed. R. Civ. P. 54(d) 'grant[ed] courts discretion to tax whatever costs may seem appropriate, then [28 U.S.C.] § 1920 serves no role whatsoever.'"  *Motto Franchising, LLC v. McCabe,* 2021 WL 1428185, at *2 (D. Colo. Apr. 15, 2021) (quoting *Stender v. Archstone-Smith Operating Tr.,* 958 F.3d 938, 941

---

[1] ATS initially stated it would "apply for its post-trial litigation costs after the conclusion of all post-trial and/or appellate litigation, as this Court or the Tenth Circuit may direct . . . ."  (ECF No. 468 at 4.)  The Court understands from subsequent briefing, however, that ATS is no longer pursuing its post-trial costs.  (*See* ECF No. 498 at 7 ("ATS is not seeking its post-trial costs.").)

3

(10th Cir. 2020) (citation omitted)); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987) ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").

Here, however, the Subcontract's Fee-Shifting Provision obligates Flatiron to "pay both Parties' costs of such litigation, including reasonable attorneys' fees." (ECF No. 37-2 at 7 ¶ 5.) Courts have interpreted similar language to mean that the prevailing party is also entitled to recover its nontaxable costs of litigation. *Cf. Motto Franchising,* 2021 WL 1428185, at *2 (awarding nontaxable fees where Settlement Agreement entitled plaintiff "to recover[y] of **all** reasonable costs incurred in this action, not only those costs that are taxable") (emphasis in original); *see also Ignite Spirits, Inc. v. Consulting by AR, LLC,* 2024 WL 1300060, at *3 (D. Nev. Mar. 27, 2024) (party "entitled to non-taxable litigation costs under the Letter Agreement," where it stated the prevailing party was "entitled to the 'costs and expenses' of litigation, '*not limited to* reasonable attorney's fees'").

The Subcontract is governed by Colorado law, which "is much more generous in awarding costs, although the letter of the law does not appear to be that different from federal law." *Stender,* 958 F.3d at 942; (*see also* ECF No. 37-3 at 32 ¶ 16.4 ("This Agreement shall be governed by the law in effect in the state where the Project is located.").) "Colorado Revised Statute § 13-16-122 provides a limited list of appropriate costs that a state court 'may include.'" *Stender,* 958 F.3d at 942. Those permissible costs are:

(a)    Any docket fee required by article 32 of this title or any other fee or

4

tax required by statute to be paid to the clerk of court;

(b)    The jury fees and expenses provided for in article 71 of this title;

(c)    Any fees required to be paid to sheriffs pursuant to section 30-1-104, C.R.S.;

(d)    Any fees of the court reporter for all or any part of the transcript necessarily obtained for use in this case;

(e)    The witness fees, including subsistence payments, mileage at the rate authorized by section 13-33-103, and charges for expert witnesses approved pursuant to section 13-33-102(4);

(f)    Any fees for exemplification and copies of papers necessarily obtained for use in the case;

(g)    Any costs of taking depositions for the perpetuation of testimony, including reporters' fees, witness fees, expert witness fees, mileage for witnesses, and sheriff fees for service of subpoenas;

(h)    Any attorney fees, when authorized by statute or court rule;

(i)    Any fees for service of process or fees for any required publications;

(j)    Any item specifically authorized by statute to be included as part of the costs.

C.R.S. § 13-16-122 (emphasis added); *see also* Colo. R. Civ. P. 54(d) ("Except when express provision therefor is made either in a statute of this state or in these rules, reasonable costs shall be allowed as of course to the prevailing party considering any relevant factors which may include the needs and complexity of the case and the amount in controversy.").  But, unlike those costs listed in 28 U.S.C. § 1920, these costs are "merely 'illustrative rather than exclusive.'"  *Stender,* 958 F.3d at 942 (quoting *Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 813 (Colo. 1993)).  Thus, "absent a specific prohibition, the trial court has discretion over the awarding of costs." *Voelker,* 859 P.2d at 813.

5

Any such costs, however, "may be awarded only if the item or service was [(1)] necessary for prosecution or defense of the case" and (2) "reasonable."  *United States Welding, Inc. v. TECSYS, Inc.,* 2017 WL 4334009, at *5 (D. Colo. Sept. 8, 2017).  A party seeking necessary costs must also "provide the court with sufficient information and supporting documentation to allow a judge to make a reasoned decision for each cost item presented."  *Brody v. Hellman,* 167 P.3d 192, 206 (Colo. App. 2007).

The Court addresses below each category of expense included in ATS's Revised Costs Motion—namely, its expert witness costs, e-discovery costs, and miscellaneous "non-expert costs."

## A.    Expert Costs

The bulk of ATS's costs application is attributable to expert witness fees.  ATS submits invoices supporting its claim that it paid (1) $879,969.56 to Alvarez & Marshal Disputes and Investigations, LLC ("A&M") in connection with rebuttal expert David Hall's opinions on damages; (2) $1,488,577.63 to Ankura Consulting Group LLC in connection with rebuttal expert Patrick Kelly's opinions on scheduling; (3) $1,072,167.00 to FTI Consulting in connection with rebuttal expert Mark Buchanan's opinions on construction management; (4) $2,127,287.10 to Secretariat Advisors, LLC in connection with rebuttal expert Wayne Kalayjian's opinions on "all standard of care issues except drainage"; and (5) $457,727.95 to Albert A. Webb Associates in connection with rebuttal expert Matt Webb's opinion on the "standard of care regarding drainage design."  (ECF No. 468 at 12; *see also* ECF Nos. 468-5, 468-6.)  Of these expert witness fees totaling $6,025,729.24, the Court finds $4,793,333.52 were reasonably and necessarily incurred.

6

Expert witness fees are frequently awarded as costs pursuant to Colorado law. *See, e.g., Valentine v. Mountain States Mut. Cas. Co.,* 252 P.3d 1182, 1188–90 (Colo. Ct. App. 2011) (affirming award of $178,343.88 in expert witness costs).  As a general matter, ATS argues its expert costs were "necessarily and reasonably incurred" because "this case was inherently expert intense" and "highly technical."  (ECF No. 468 at 11.)  Specifically, ATS contends "[e]xpert testimony was required" to rebut "Flatiron's counterclaim for $260 million in alleged cost overruns . . . based on the theory that ATS violated professional engineers' standards of care set out in the Teaming Agreement and Subcontract by providing a preliminary pre-bid design [for the Project] that was not 'adequate and sufficient for bidding' . . . ."  (*Id.*)  The design work for the Project itself "required engineering expertise in numerous design disciplines," including "the roadway, drainage, signage, traffic maintenance, etc."  (*Id.*)  And given "Flatiron's strategy was to attack *every* aspect of ATS's design as inadequate," largely through the testimony of its own four experts, testimony from ATS's experts was "absolutely necessary to explain to the jury how ATS's design work did indeed comport with the applicable standards of care . . . ."  (*Id.* at 11–12.)

The Court generally agrees with ATS's assessment of the case as a highly technical battle of the experts.  (*Id.* at 13.)  Indeed, ATS points out that two of Flatiron's experts testified at trial that they, too, charged Flatiron between $1 million and $2.5 million for their expert services.  (*Id.* (citing ECF No. 431 at 2603:18–2604:5).)  Nonetheless, the Court agrees with Flatiron that ATS's expert costs should be reduced for what the Court sees as four reasons.

*First*, as to Kalayjian, Flatiron argues that ATS includes costs associated with

7

stricken or duplicative opinions that were not permitted by the Court. (ECF No. 497 at 6.) Before trial, the Court precluded Kalayjian from offering two of his opinions at trial. (ECF No. 344 at 13–14.) And where both Kalayjian and Webb opined on the standard of care for drainage, ATS clarified at trial that it would "offer[] Mr. Webb as the only and only standard of care expert for drainage." (ECF No. 445 at 2966:3–5.) While Kalayjian did testify as to his remaining opinions at trial, the Court is disinclined to award ATS costs for expert work which he never needed to perform. *Clayton v. Snow*, 131 P.3d 1202, 1203–04 (Colo. Ct. App. 2006) ("[W]hen an expert is hired to testify but does not because his or her testimony is inadmissible, the expert's services cannot be characterized as reasonably necessary. In such circumstances, courts do not award fees."). The Court finds a 20% reduction, or $425,457.42, in Kalayjian's fees is a proportionate remedy.

*Second*, Flatiron points out that the invoices for David Hall and Mark Buchanan include line items for vaguely described "Admin Fee[s]" and "Administrative Expense[s]." (*See, e.g.,* ECF No. 468-6 at 5; *id.* at 225.) The Court lacks any information whatsoever about what these expenses entailed and thus cannot tell if they were reasonably or necessarily incurred. The Court will accordingly deduct 2% from the total fees associated with Hall, or $17,599.39, in conjunction with the 2% "Admin Fee" applied to each of his invoices. (*See, e.g.,* ECF No. 468-6 at 9.) Based on Flatiron's calculation, which ATS does not contest, the Court will also deduct $35,809.07 in administrative expenses from the fees associated with Buchanan. (*See* ECF No. 497-4.)

*Third*, Flatiron argues that the invoices of all of ATS's experts are deficient in a manner that precludes the Court from determining whether all of their fees billed were

8

necessary.  Flatiron argues that each of Kelly, Buchanan, and Kalayjian's invoices include "vague and 'formula' or 'patterned' time entries."  (ECF No. 497 at 7–9; *see also* ECF No. 497-5 (examples).)  The Court additionally notes that it lacks any information concerning the credentials of the staff and associates who appear on these experts' invoices.  The Court finds a 10% reduction is appropriate to remedy these deficiencies. *Cf. United States Welding,* 2017 WL 4334009, at *5 (reducing *testifying* expert's fees by 15% where billing statements generally "contain[ed] a reasonable level of detail" but "some of the entries bill[ed] fairly large amounts of time with only a very general description of the activities involved"); *Watson v. Dillon Companies, Inc.,* 2013 WL 6023692, at *2 (D. Colo. Nov. 13, 2023) (excluding expert witness fees where "general descriptions for tasks billed" "fail[ed] to set forth the particular services provided" by the non-testifying expert such that the district court was "unable to determine . . . whether tasks performed by the [expert] were reasonable and necessary").

Hall and Webb's invoices suffer from some of the same deficiencies described above and more.  Neither experts' invoices include task-specific nor even daily time entries.  Instead, both experts merely include a monthly summary of tasks performed. In Webb's case, that summary is limited in some instances to: "Review of documents; formation of opinions."  (ECF No. 468-6 at 527.)  The Court will apply a 15% reduction to Hall's fees and a 20% reduction to Webb's fees.  *United States Welding,* 2017 WL 4334009, at *5; *Watson,* 2013 WL 6023692, at *2.

*Fourth*, and finally, Flatiron argues that ATS has not accurately and comprehensively allocated Hall's invoices between his work performed in support of ATS's affirmative claims versus its defense to Flatiron's counterclaims.  ATS has agreed

to reduce its request for costs associated with Mr. Hall by roughly $94,150 in
conjunction with his work in support of ATS's affirmative claims. (ECF No. 490 at ¶¶ 7–
25.) Flatiron argues, however, that due to the general nature of his invoices, "it is
impossible to determine if ATS's allocation of affirmative claim costs is accurate or
complete." (ECF No. 497 at 4.) Instead, ATS merely asked Hall to estimate how much
time he spent preparing for his deposition and trial testimony "to the best of his
recollection" and based on "notes and records" which have not been produced to
Flatiron. (*Id.* at 4–5.) Consistent with its analysis in its Order on ATS's Fee Motions,
the Court will apply a 15% reduction to Hall's remaining costs. (*See* ECF No. 509.) In
addition to those roughly $94,150 in fees ATS has already allocated to its affirmative
claims, this amounts to a $15,802 further reduction.

In all, the Court will award ATS $4,793,333.52 in expert costs.

**B.    E-Discovery Costs**

ATS next seeks to recover $1,512,330.13 in fees paid to two e-discovery vendors
"for processing, hosting, and producing electronic documents in this document-intensive
case." (ECF No. 468 at 1.) The Court finds that $984,980.48 in e-discovery costs were
reasonably and necessarily incurred in furtherance of ATS's defense to Flatiron's
counterclaims.

E-discovery costs are not among those expenses expressly permitted under
section 13-16-122. ATS also concedes "there is no Colorado authority addressing
recovery of e-discovery costs." (ECF No. 468 at 14.) Nevertheless, ATS urges the
Court to exercise its discretion to award it its e-discovery costs because "[t]he only way
to competently litigate such a document-intense case is through the use of [a]

10

sophisticated document database." (*Id.* at 13.) Specifically, here, ATS paid "e-discovery vendor Business Intelligence Associates (BIA) to create, host, manage and produce documents from the massive e-discovery database for this litigation." (*Id.* at 14–15.)

The Court agrees that it has become impracticable to litigate a complex, document-intensive case like this one without making extensive use of an electronic database. And while a Colorado court may have yet to consider the issue, courts across the country have awarded e-discovery costs beyond what would be permitted under § 1920 where they had discretion to do so pursuant to statutory or contractual authority. *See, e.g., Ignite Spirits,* 2024 WL 1300060, at *3 (awarding $1,662.58 in nontaxable costs including "e-discovery costs for processing cell phone images and emails" pursuant to agreement); *Thorncreek Apartments I, LLC v. Village of Park Forest,* 2016 WL 4503559, at *10 (N.D. Ill. Aug. 29, 2016) (collecting cases allowing plaintiff to recover "[p]ayments to e-discovery vendors" as "expenses of litigation" recoverable under § 1988); *Hooked Media Grp., Inc. v. Apple Inc.,* 55 Cal. App. 5th 323, 338–39 (Cal App. 2020) (affirming trial court's award of $92,000 in e-discovery expenses under California law); *Matter of DISH Network Derivative Litig.,* 401 P.3d 1081, 1092–93 (Nev. 2017) (finding district court was "within its sound discretion to determine that the [$151,178.32 in] expenses for the electronic discovery were allowable as costs under" Nevada costs statute).

Nonetheless, the Court again agrees with Flatiron that ATS's e-discovery costs warrant reduction for two reasons.

*First*, Flatiron argues that ATS failed to provide supporting documentation for

11

$353,529.56 in purported e-discovery costs.  (ECF No. 497 at 15; *see also* ECF No. 497-8.)  ATS does not rebut this point in its reply.  (ECF No. 499 at 7–10.)  The Court will accordingly deduct $353,529.56 from ATS's e-discovery costs.

*Second*, Flatiron additionally argues that ATS has not allocated any of its e-discovery costs to the affirmative claim "even though a portion of this cost is irrefutably associated with ATS's affirmative claim for which documents were certainly produced and reviewed."  (ECF No. 497 at 12–13.)  ATS counters that it "did not need to spend $1.5 million on a Relativity database to prove up its simple, straightforward, and unchallenged $5.3 million claim for unpaid change orders."  (ECF No. 499 at 8–9.)  In this way, the parties' arguments as to the appropriate allocation of ATS's e-discovery costs boil down to the same disagreement as to how "common issues"—or in this case, "common costs"—should be allocated between ATS's affirmative claims and its defense to Flatiron's counterclaims.  Consistent with its analysis in its Order on ATS's Fee Motions, the Court will reduce ATS's e-discovery expenses by a further 15%.  (*See* ECF No. 509.)

In all, the Court awards ATS $984,980.48 for e-discovery costs reasonably and necessarily incurred in this action.

## C.    Non-Expert Costs

Finally, ATS seeks to recover $150,212.27 in miscellaneous, "non-expert costs," which include those expenses "incurred by counsel in the ordinary course of litigation," "listed on counsel's monthly invoices," and "paid in ordinary course by ATS."  (ECF No. 468 at 10.)  Flatiron maintains, however, that "included in ATS's non-expert state costs are several categories of costs that are simply not awardable because either ATS has

12

failed to satisfy its burden and/or the sought cost is not awarded under Colorado law."
(ECF No. 497 at 10.)  The Court addresses below those challenged categories of
expenses.

       1.    <u>Trial Director</u>

ATS seeks to recover $31,778.50 for a line item identified in its supporting
documentation as "Professional Videography & Photography."  (ECF No. 468-2.)  ATS
explains this expense relates to the "costs of ATS's Trial Director operator Mr. Butcher."
(ECF No. 499 at 10.)  And Flatiron appears to recognize as much.  (*See* ECF No. 497 at
10 ("ATS seeks **$31,778.50** for 'professional and videography photography' for its trial
technician.").)  Nonetheless, Flatiron argues ATS "failed to satisfy its burden of proving it
is entitled to this cost because it provided <u>no</u> back up documents to support this cost as
necessary or reasonable."  (*Id.* at 11) (emphasis in original).  The Court disagrees.

Even to the extent the Court lacks a receipt issued by Butcher and/or his
company directly, ATS submits that it has paid all those costs "passed through" to it by
its counsel via law firm invoices.  (ECF No. 468-1 at ¶ 9.)  Moreover, the Court has
personal knowledge of Butcher's very competent work throughout the four-week trial.  A
trial director is one of those expenses "which in the court's view . . . expedite[d] the trial"
and assisted in "giv[ing] the court and the parties a clear conception of the points in
issue."  *Am. Water Dev.,* 874 P.3d at 390 (citation omitted).  At least one other Colorado
court has agreed.  *See Valentine,* 252 P.3d at 1195–96 (affirming district court's
decision to award $32,174.05 in costs for outside trial technician).  Accordingly, ATS
may recover this cost.

2.     Trial Supplies

ATS seeks to recover $1,262.18 in "trial supplies," which include items such as printer toner, laptop privacy screens, mouthwash, "seats for back support," and drinks. (ECF No. 468-3.)  Flatiron argues these costs are not recoverable because they are effectively overhead costs.  *Madison Co., LLC v. Star Acquisition VIII,* 214 P.3d 557, 562 (Colo. App. 2009) ("[W]here a cost is included with the general costs of doing business, firm overhead, or costs of other litigation or client matters, it is not recoverable."); *Harvey v. Farmers Ins. Exch.,* 983 P.2d 34, 41–42 (Colo. App. 1998) (costs not awardable if not "incurred solely for the benefit of the litigation and are [] commingled with any of the general costs of doing business or the costs of other litigation").  The Court agrees with Flatiron.  And perhaps even more fundamentally, the Court is hard-pressed to find any of these costs "necessary" to ATS's prosecution or defense of the case.  ATS accordingly may not recover the $1,262.18 in "trial supplies."

3.     Trial Office

ATS seeks to recover $12,549.85 for temporary office space it rented across from the courthouse for the duration of trial.  Flatiron argues the case ATS relies on to support this cost, *Am. Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 390 (Colo. 1994), is inapposite.  In that case, the Colorado Supreme Court affirmed the trial court's decision to award $16,873.52 to the United States "for establishing a temporary office in Alamosa" "[g]iven logistical difficulties presented by the location and duration of the trial and extensiveness of the exhibits."  *Id.*

Here, however, the trial took place not in a remote, rural town in southern Colorado but in downtown Denver—where ATS's counsel at Polsinelli has an office less

14

than one mile away.  ATS (and/or its counsel's) decision to expend the funds for

temporary office space across the street from the courthouse to eliminate the "18-

minute," "two-way walk (plus elevators and security)" to Polsinelli's offices was

motivated by convenience—not necessity.  (ECF No. 499 at 11.)  For the same reason,

ATS may not recover the cost of the temporary trial office.

     4.   <u>Meals</u>

Finally, ATS seeks to recover $11,434.73 for "meals at depositions and trial."

(ECF No. 468 at 10; ECF No. 468-3.)  As a preliminary matter, Flatiron argues "ATS has

included costs for meals that were <u>not</u> for depositions or trial, but rather were for weekly

case meetings, client meetings, deposition preps, working lunches, and mediation prep,

as well as meals unrelated to this litigation."  (ECF No. 497 at 12) (emphasis in original).

And even if they had been, the authority cited by ATS supports the notion that "the cost

of meals incurred *as part of necessary travel expenses* may be awarded, so long as the

cost is demonstrated to be reasonable and necessary."  *Madison Capital Co.,* 214 P.3d

at 561.

The Court agrees that a significant portion of the meal expenses submitted by

ATS appear to relate to preparation or reoccurring case strategy meetings rather than

depositions or trial.  (*See, e.g.,* ECF No. 468-3 (including line items for meals purchased

during deposition preparation, case meetings, and "working lunch[es]").)  The Court is

doubtful these expenses were incurred incidental to necessary travel, but even

assuming all or a portion of them were, the Court lacks sufficient information to make

that determination on the documentation submitted.  Particularly given that some courts

are reluctant to award meal costs under *any* circumstance, the Court declines to award

ATS any of its costs incurred for meals.  *Valentine,* 252 P.3d at 1195 ("the better rule is that costs of counsel's meals are not awardable because they are not attributable to the litigation: counsel would need to eat regardless of any litigation").

ATS accordingly stands to recover $124,965.51 in miscellaneous costs. However, Flatiron argues ATS did not allocate any such costs to the prosecution of its affirmative claims.  ATS subsequently agreed to allocate $988 associated with the cost of Jason Brada's deposition transcript to its affirmative claims.  (ECF No. 490 at ¶ 31.) As before, however, the Court will instead deduct 15%.  In total, the Court thus awards ATS $106,220.68 of its miscellaneous, non-expert costs.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that the Revised Motion for Litigation Costs (ECF No. 468) is GRANTED IN PART and DENIED IN PART.  In accordance with the Subcontract, ATS is awarded **$5,884,534.69** in nontaxable litigation costs reasonably and necessarily incurred.

Dated this 11th day of March, 2025.

BY THE COURT:

William J. Martínez
Senior United States District Judge

16